**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **AMBROSE MOSES III,** ) | |
| 1900 Polaris Parkway, Suite 450-017 ) | |
| Columbus, Ohio 43240 ) | **Case No.:** |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **JUDGE:** |
| ) | |
| **MORAKINYO A.O. KUTI,** ) | |
| *Individually and in his official capacity as* ) | |
| *President of Central State University*, ) | |
| 1400 Brush Row Road ) | |
| Wilberforce, Ohio 45384 ) | |
| ) | **COMPLAINT** |
| and, ) | **FOR DECLARATORY AND** |
| ) | **INJUNCTIVE RELIEF AND DAMAGES** |
| **JOSE U. TOLEDO,** ) | |
| *Individually and in his official capacity as* ) | |
| *Vice-President of Research and Economic* ) | |
| *Development and Director of 1890 Land-* ) | |
| *Grant Programs at Central State University*, ) | |
| 1400 Brush Row Road ) | |
| Wilberforce, Ohio 45384 ) | |
| ) | |
| and, ) | |
| ) | |
| **ALCINDA FOLCK,** ) | |
| *Individually and in her official capacity as* ) | |
| *Associate Administrator of Extension at* ) | |
| *Central State University*, ) | |
| 1400 Brush Row Road ) | |
| Wilberforce, Ohio 45384 ) | |
| ) | |
| and, ) | |
| ) | |
| **PAMELA BOWMAN,** ) | |
| *Individually and in her official capacity* ) | |
| *Director of Human Resources at Central* ) | |
| *State University*, ) | |
| 1400 Brush Row Road ) | |
| Wilberforce, Ohio 45384 ) | |
| ) | |
| and, ) | |
| ) | |
| **SHAU'DE KNIGHT,** ) | |
| *Individually and in her official capacity as* ) | |
| *Assistant Director of Human Resources at* ) | |
| *Central State University*, ) | |
| 1400 Brush Row Road ) | |
| Wilberforce, Ohio 45384 ) | |
| ) | |
| and, ) | |
| ) | |

**MARK RENDLEMAN,** )
*Individually and in his official capacity as* )
*Program Leader of Community and* )
*Economic Development at Central State* )
*University,* )
1400 Brush Row Road )
Wilberforce, Ohio 45384 )
 )
and, )
 )
**CENTRAL STATE UNIVERSITY and the** )
**BOARD OF TRUSTEES OF CENTRAL** )
**STATE UNIVERSITY,** )
*Declaratory and Injunctive Relief Only*, )
1400 Brush Row Road )
Wilberforce, Ohio 45384 )
 )
     Defendants. )

## COMPLAINT
## FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiff, Ambrose Moses III, for his Complaint alleges as follows:

### I. INTRODUCTION

1.     This civil rights action seeks redress for retaliation and deprivations of constitutional rights arising from Plaintiff's protected speech and petitioning regarding matters of public concern, and from constitutionally infirm disciplinary and termination procedures used by Central State University ("CSU") leadership during 2023–2025.

2.     Plaintiff engaged in extensive protected speech and petitioning from 2018 to 2025, including whistleblower reports to University leadership and state/federal authorities, the filing of a federal program discrimination complaint, and the filing and prosecution of a federal civil action.

3.     In response, the Defendants coordinated and executed a series of materially adverse actions, including, but not limited to, reprimand, suspension, obstruction of routine program approvals, issuance of a performance

improvement plan (PIP), denial of a requested name-clearing hearing, and termination culminating in Plaintiff's removal on January 31, 2025.

4. Plaintiff seeks reinstatement (or front pay if reinstatement is impracticable), back pay, compensatory and punitive damages (as allowed) against individual-capacity defendants, and declaratory and injunctive relief—including a constitutionally adequate name-clearing hearing—against CSU/Board and official-capacity defendants.

## II. JURISDICTION AND VENUE

### A. Jurisdiction and Venue

5. This Court has federal-question and civil-rights jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments.

6. The Court may award attorney's fees and costs under 42 U.S.C. § 1988.

7. Venue lies in this District and Division under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Ohio, Western Division, including at CSU's campus in Wilberforce, Greene County, Ohio.

8. The Court has personal jurisdiction over all Defendants because they reside in, are employed in, or committed the acts or omissions giving rise to this action in Ohio.

### B. Parties and Capacities

9. Plaintiff Ambrose Moses III is an Ohio resident and former Cooperative Extension Educator employed by CSU's 1890 Land-Grant Programs. He served from 2017 until his termination effective January 31, 2025.

10. Defendant Morakinyo A.O. Kuti is CSU's President. He is sued in his individual capacity for damages and in his official capacity for prospective declaratory and injunctive relief.

11. Defendant Jose U. Toledo is CSU's Vice-President of Research & Economic Development and Director of 1890 Land-Grant Programs. He is sued in his individual and official capacities.

12. Defendant Alcinda Folck is CSU's Associate Administrator of Extension. She is sued in her individual and official capacities.

13. Defendant Pamela Bowman is CSU's Director of Human Resources. She is sued in her individual and official capacities.

14. Defendant Shau'de Knight is CSU's Assistant Director of Human Resources. She is sued in her individual and official capacities.

15. Defendant Mark Rendleman is CSU's Program Leader of Community & Economic Development. He is sued in his individual and official capacities.

16. Defendant Central State University is an instrumentality of the State of Ohio. Defendant CSU Board of Trustees is CSU's governing board. CSU and the Board are named for declaratory and injunctive relief only..

**C. Eleventh Amendment and Ex parte Young**

17. Damages claims are not asserted against CSU or its Board because they are arms of the State and not "persons" for § 1983 damages. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

18. Plaintiff seeks prospective declaratory and injunctive relief against CSU, the Board, and the official-capacity defendants to end ongoing violations of federal law and to require constitutionally adequate procedures, including a name-clearing hearing and expungement of unconstitutional discipline,

consistent with *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985); and *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991).

**D. Leaman Safeguard; Reservation of State Law Claims**

19.     Plaintiff expressly reserves all state law claims, including but not limited to claims sounding in contract, wrongful discharge in violation of public policy, and Ohio whistleblower protections, for pursuit, if at all, in a separate action in the Ohio Court of Claims. See *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 952–53 (6th Cir. 1987) (*en banc*).

20.     Plaintiff does not assert any state law claim here and makes no election or waiver under *Leaman*; nothing in this Complaint should be construed as a waiver of state law claims or remedies.

## III.  FACTUAL ALLEGATIONS

**A. Background**

21.     CSU is Ohio's 1890 Land-Grant institution. Plaintiff was hired as a County Extension Agent (now titled Extension Educator) under an employment contract (offer letter with terms and conditions) dated January 11, 2017 that was fully signed and accepted on January 12, 2017.   (See Exhibit 1)

22.     Plaintiff's role required community-based engagement with public, private, nonprofit, and individual stakeholders and constituents, conducting needs assessments, development of Extension programs, and delivery of programming to Ohio residents, including historically underserved and limited resource communities, consistent with the Land-Grant mission.

**B. Plaintiff's Protected Speech and Petitioning (2018–2025)**

23.     From 2018 through 2025, Plaintiff engaged in a sustained course of protected speech and petitioning on matters of public concern, including disclosures of misuse of public grant funds, falsification of university records, discrimination in hiring, and violations of federal and state mandates governing Cooperative Extension programming. These reports were made outside his ordinary job duties and in furtherance of public accountability. They included whistleblower disclosures under Ohio Rev. Code § 124.341 and 41 U.S.C. § 4712, as well as formal complaints to state and federal oversight agencies.

24.     **2018 –** On July 9, 2018, Plaintiff submitted a written whistleblower report to CSU leadership concerning non-compliance with CSU's Departmental Reorganization Process and misuse of Extension resources. On August 24, 2018, he filed an appeal and supporting materials with the Ohio State Personnel Board of Review ("SPBR") seeking investigation and reclassification. No corrective action followed.

25.     2019 – On November 27, 2019, Plaintiff reported to the CSU President and Board that the CSU employee-residency requirement was unlawful and had a disparate racial impact. No remedial response was provided.

26.     2020 – On February 27, 2020, Plaintiff reported to Land-Grant leadership that he had been denied participation in the HBCU Blockchain Summit despite external fellowship support, identifying the denial as retaliatory and inconsistent with university policy.

27.     2021 – On November 4, 2021, Plaintiff reported to CSU's Human Resources, Director of Land-Grant, and University Counsel that a CSU administrator had falsified documents and forged signatures.

28.     2022 – November 23, 2022, Plaintiff reported to University leadership continuing due-process and equal-protection violations. On December 1, 2022, Plaintiff submitted to CSU's Board of Trustees and University President, and University General Counsel a written "Request for Investigation of Unlawful Discriminatory Practices and Retaliation" and a "Request for Suspension of Interviews." CSU's General Counsel acknowledged receipt of Plaintiff's submission but took no action.

29.     2023 – On October 5, 2023, Plaintiff submitted a written report to Defendant Kuti about Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates, identifying conflicts of interest involving Defendant Folck. Kuti dismissed the concern without addressing the conflicts. On October 10, 2023, Plaintiff filed a USDA/NIFA Program Discrimination Complaint. On November 28, 2023, he submitted a written § 124.341 whistleblower report to the CSU President, Board Chair, and Director of Land-Grant requesting an independent external investigation. (See Exhibit 6.)

30.     2024 – On April 17, 2024, Plaintiff filed an internal Formal Complaint for Violations of Professional Code of Conduct, University Policy No. 8, and Policy 607.1 and a Formal Complaint of Copyright Infringement, False Attribution, Plagiarism, Academic Dishonesty, Retaliation, and Hostile Work Environment. On June 7, 2024, he filed a federal civil-rights complaint (S.D. Ohio No. 2:24-cv-03130). On October 14, 2024, he made a further whistleblower disclosure to HR

and General Counsel citing Ohio R.C. 124.341 and 41 U.S.C. § 4712. (See Exhibit 7)

31.      2025 – On January 6, 2025, Plaintiff delivered a Critical Service Notice and ethics report to Vice President Toledo and University Counsel identifying ongoing misuse of public resources and retaliation. On January 10, 2025, he sent a follow-up whistleblower email to Toledo, Folck, and Rendleman. On January 27, 2025, Plaintiff was elected the 1890 Representative to the National Association of Community Development Extension Professionals (NACDEP) Board of Directors; CSU referenced this election in his January 31, 2025 termination letter. (See Exhibit 2)

32.      Plaintiff incorporates by reference the Overview of Protected and Whistleblower Activity (dated April 17, 2025) as Exhibit 8, which summarizes the foregoing and additional protected disclosures, petitions, and reports forming the factual basis of Counts I and V.

**C. Materially Adverse Actions and Retaliatory Conduct (2019–2025)**

33.      Following Plaintiff's protected disclosures and petitions, CSU officials, including the named Defendants in both their individual and official capacities, engaged in a coordinated and escalating pattern of materially adverse actions in retaliation for his protected speech and petitioning activity. Acting with retaliatory motive and outside the lawful scope of their employment, Defendants undertook actions designed to deter and punish Plaintiff for continuing to report misconduct. These pervasive and severe retaliatory measures were coordinated, sustained, and of such magnitude that they would dissuade a reasonable employee from engaging in further protected activity.

34.     Denial of Professional Opportunities (2019 – 2021) — After Plaintiff's early whistleblower reports, CSU leadership denied him promotion and excluded him from professional development opportunities, including attendance at the HBCU Blockchain Summit despite the Plaintiff earning a fellowship to attend.

35.     Retaliatory Supervision (2022) — Defendants, including Defendant Bowman, acted contrary to CSU policy by assigning Plaintiff to be evaluated and supervised by individuals who were neither his designated supervisors nor impartial evaluators, and whom Plaintiff had previously reported for unlawful misconduct involving falsification of documents and forged signatures. This retaliatory reassignment subjected Plaintiff to biased evaluation and ongoing hostility in direct response to his protected disclosures.

36.     Coordinated Discipline (2023 – 2024) — Internal communications among Defendants Rendleman and Folck show a plan to "circle the wagons" and "coordinate our reprimand strategies for Ambrose and Amber," evidencing deliberate reprisal. (See Exhibit 9)

37.     On or about January 9, 2024, Defendant Rendleman sent an email from his CSU account to Defendant Folck stating, *"It is definitely time to circle the wagons."* (See Exhibit 9). The email was authored and transmitted in the ordinary course of CSU business and is maintained on CSU's servers.

38.     Upon information and belief, Defendant Rendleman's January 9, 2024 message to Defendant Folck—stating *"It is definitely time to circle the wagons"*— was written in the context of Plaintiff's ongoing protected activity and continuing opposition to Defendants' interference with his federally mandated Cooperative Extension duties. (See Exhibit 9)

39. On or about January 22, 2024, Defendant Rendleman sent an email from his CSU account to Defendant Folck stating, *"Let's coordinate our reprimand strategies for Ambrose and Amber."* (See Exhibit 9). The email was authored and transmitted in the ordinary course of CSU business and is maintained on CSU's servers.

40. Upon information and belief, Defendant Rendleman's January 22, 2024 message to Defendant Folck—stating *"Let's coordinate our reprimand strategies for Ambrose and Amber"*—was written in furtherance of a coordinated disciplinary plan to retaliate against Plaintiff for his protected whistleblower activity and petitioning on matters of public concern. (See Exhibit 9)

41. The January 2024 email exchanges demonstrate that Plaintiff's February discipline was not spontaneous or performance-based but reflected a coordinated plan among CSU management to retaliate for his protected activity. Within approximately two weeks of Defendant Rendleman's January 22, 2024 message directing that they "coordinate our reprimand strategies for Ambrose and Amber," Defendants Rendleman and Folck—acting in concert with other CSU officials—prepared and issued the February 8, 2024 written reprimand to Plaintiff, consistent with the strategy outlined in their correspondence. (See Exhibit 9)

42. In preparation for the February 8, 2024 written-reprimand meeting, Defendants Rendleman, Folck, and Bowman coordinated to provide Plaintiff with what Defendant Bowman described as "an undated job description" purporting to modify or redefine his duties. The timing and manner of this action—occurring on the same day as the reprimand and without prior notice or acknowledgment by

Plaintiff—demonstrate the prearranged and retaliatory character of Defendants' conduct.

43. The "undated job description" given to Plaintiff was never processed or approved through a Personnel Action Form ("PAF"), the required mechanism for revising or authorizing position duties at CSU. Its lack of documentation and approval underscores that it was not an authentic or contemporaneous employment record.

44. Defendant Bowman, CSU's Director of Human Resources, personally directed and coordinated with Defendants Rendleman and Folck the issuance of the "undated job description." As the official responsible for ensuring compliance with employment and personnel policies, her role in distributing an undated, unapproved document demonstrates fabrication, retroactive justification, and a deliberate failure to provide Plaintiff clear notice of the standards by which he was later disciplined. Bowman's actions, and those of the Human Resources Department under her supervision, including Defendant Knight, further reflect HR's active participation in the coordinated effort that Defendant Rendleman described as "circle the wagons" and "let's coordinate our reprimand strategies for Ambrose and Amber."

45. Written Reprimand (February 8, 2024) — Defendants issued Plaintiff a written reprimand without adequate notice of the charges or a meaningful opportunity to present good-cause defenses. The reprimand followed the January 2024 coordination emails in which Defendants discussed "reprimand strategies" for Plaintiff, reflecting a predetermined outcome rather than a bona fide performance-based action.

46.     Five-Day Suspension (June 27, 2024) — On June 27, 2024, Defendants imposed a five-day suspension without pay following an investigation that lacked notice of charges, opportunity to respond, or impartial review. The investigation report falsely stated that Defendant Rendleman had responded to Plaintiff's NACDEP 2024 conference approval request. Plaintiff repeatedly asserted a good-cause defense under CSU Policy No. 608, but Defendants ignored it. CSU deducted five days of pay before the suspension period had concluded, compounding the deprivation of property and due process.

47.     Suspension Appeal and Post-Suspension Retaliation — Plaintiff timely appealed the five-day suspension, identifying multiple factual inaccuracies, procedural violations, and disparate treatment compared to similarly situated colleagues. Defendants ignored his appeal and failed to provide a fair review, instead escalating retaliatory conduct by obstructing his professional activities and communications within the Cooperative Extension Service.

48.     Retaliatory Obstruction of Duties (2024) — Throughout 2024, CSU leadership, acting through Defendants Rendleman, Folck, Toledo, Kuti, and Bowman, obstructed Plaintiff's performance of federally mandated Cooperative Extension duties by selectively delaying or denying approvals, communications, and resources necessary to carry out programs. These deliberate acts of obstruction materially hindered Plaintiff's ability to serve stakeholders and were undertaken in retaliation for his protected activities.

49.     Performance Appraisal and Performance-Improvement Plan (October 4, 2024) — Defendant Rendleman delivered Plaintiff's annual appraisal more than three months late and simultaneously imposed a performance-improvement plan ("PIP") during a meeting attended by Assistant HR Director Knight. The

concurrent issuance of the appraisal and PIP departed from standard CSU procedures and served as another step in the coordinated retaliation against Plaintiff.

50.     Name-Clearing Request (October 4, 2024) — Immediately after receiving the appraisal and PIP, Plaintiff requested a name-clearing hearing to contest stigmatizing accusations placed in his personnel record. CSU failed to respond or schedule a hearing, thereby denying Plaintiff his liberty-interest right to clear his name.

51.     Termination (January 31, 2025) — On January 31, 2025, Defendants Kuti, Knight, and other CSU officials terminated Plaintiff's employment effective immediately, resulting in loss of salary, benefits, and health-insurance coverage. The abrupt termination, occurring during ongoing whistleblower and recent federal-lawsuit activity, evidences retaliatory motive and malice.

52.     Timing, Knowledge, and Continuing Retaliation (2025) — Defendants knew that on January 27, 2025, Plaintiff had been elected as the 1890 Representative to the National Association of Community Development Extension Professionals ("NACDEP") Board of Directors and expressly referenced that election in the January 31, 2025 termination letter. The close temporal proximity between Plaintiff's election and his termination, followed by Defendants' subsequent contacts with NACDEP officers months later to report and emphasize Plaintiff's termination, evidences a continuing pattern of retaliatory conduct intended to damage his professional standing and reputation within the national Extension community. These post-termination communications further demonstrate Defendants' retaliatory motive and constitute additional adverse actions causing reputational and professional harm.

### D. Comparators and Class-of-One Allegations

53.    Comparators — Similarly situated colleagues, including Eric Smith, Stephen Washington, Camille Johnson, and Kunta Jackson, were treated more favorably in approvals, discipline, evaluation timing, and enforcement of performance standards.

54.    Plaintiff's suspension for participating in the NACDEP 2024 Conference stands in direct contrast to the treatment of his white colleague, Eric Smith, who was permitted to submit an abstract and present at the same conference with full approval from Defendant Rendleman.

55.    Selective Enforcement — Defendants departed from objective, non-discretionary criteria and selectively enforced standards more harshly against Plaintiff for irrational and retaliatory reasons, demonstrating class-of-one and unequal-treatment discrimination.

### E. Policy, Custom, and Ratification

56.    Institutional Pattern and Prior Findings of Retaliation — The direction and approval schemes within CSU's Land-Grant and Human Resources leadership reflect an entrenched policy or custom of retaliatory obstruction and coordinated discipline toward employees who engage in protected activity, including Plaintiff. This pattern was confirmed by a 2023 decision of the Ohio State Personnel Board of Review ("SPBR") in Sritharan v. Central State University, Case No. 2023-WHB-04-0069, in which the Administrative Law Judge found that Defendant Morakinyo Kuti had retaliated against another CSU Land-Grant administrator for making a whistleblower report about misuse of USDA-NIFA funds, and that Defendant Pamela Bowman, as Director of Human Resources, failed to verify personnel records and enabled the retaliatory non-renewal. The

SPBR adopted the ALJ's findings and ordered reinstatement with full rights and benefits. These adjudicated findings placed CSU leadership, including Defendants Kuti and Bowman, on actual notice by 2023 that their conduct violated whistleblower protections and due-process norms, yet the same leadership continued the same pattern of retaliatory obstruction culminating in Plaintiff's 2024 discipline and 2025 termination.

57.     Senior officials, including Defendants Kuti and Bowman, were on notice of constitutional and procedural defects yet ratified or failed to correct them, thereby adopting the retaliatory conduct as official policy.

**F.  Prior Adjudication Indicating Retaliatory Practices at CSU (SPBR 2023)**

58.     On information and belief, between August and October 2023, the Ohio State Personnel Board of Review ("SPBR") issued an order adopting an Administrative Law Judge's Report and Recommendation granting a CSU employee's R.C. 124.341 whistleblower appeal. The case arose from CSU's Land-Grant division overseen by Defendant Kuti, with Defendant Bowman participating as HR Director.

59.     The Administrative Law Judge found that CSU engaged in retaliatory non-renewals, shifting rationales, and failures to verify personnel facts, conduct attributed to Kuti and criticized with respect to Bowman's handling. The SPBR adopted those findings and ordered the employee restored with all rights and benefits.

60.     Plaintiff pleads this subsection to establish notice, motive, and pattern—rather than for claim or issue preclusion—showing that by 2023 CSU leadership, including Kuti and Bowman, had actual notice of substantiated findings of retaliatory practices.

61. CSU's failure to remediate following that SPBR order—coupled with the subsequent "circle the wagons" and "coordinate our reprimand strategies" communications—demonstrates continuity of retaliatory practice culminating in Plaintiff's 2024 discipline and January 31, 2025 termination.

62. Plaintiff incorporates this subsection by reference into Count I (motive and pattern), Count II (notice of defective practices), Count IV (selective or animus-driven enforcement), and Count V (continuity and agreement among leadership).


## IV. CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 – First Amendment Retaliation (Speech & Petition)

63. Plaintiff incorporates all preceding paragraphs.

64. Plaintiff engaged in speech and petitioning on matters of public concern— whistleblower disclosures, ethics complaints, and the filing and prosecution of a federal civil-rights action. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983); *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011).

65. To the extent any communications occurred within his employment, they were outside ordinary job duties and involved citizen petitioning on misuse of public resources; such speech is protected under *Lane v. Franks*, 573 U.S. 228 (2014), limiting *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

66. Defendants responded with materially adverse actions that would deter a person of ordinary firmness from continuing protected activity—written reprimand, suspension, obstruction of professional duties, denial of approvals,

PIP, denial of name-clearing, and termination. *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).

67. Temporal proximity, explicit coordination emails ("circle the wagons," "coordinate our reprimand strategies"), and the prior SPBR 2023 retaliation finding against Defendants Kuti and Bowman establish motive and pattern. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

68. Plaintiff's speech on public funding and compliance plainly outweighs any asserted institutional interest under *Pickering*. Defendants' conduct violated clearly established First-Amendment rights.

69. At the time of Defendants' conduct, the constitutional prohibitions on retaliation for protected speech (*Pickering*, *Garcetti* as limited by *Lane v. Franks*), denial of procedural due process (*Loudermill*), and selective enforcement (*Olech*) were clearly established in this Circuit.

70. Defendants' conduct is the actual and proximate cause of harm, loss, and damages to Plaintiff, violated the First Amendment, and is actionable under § 1983. Plaintiff seeks damages against individual-capacity defendants and prospective injunctive/declaratory relief against official-capacity defendants.

## COUNT II
## 42 U.S.C. § 1983 – Procedural Due Process (Fourteenth Amendment)

71. Plaintiff incorporates all preceding paragraphs.

72. Plaintiff possessed a property interest in continued employment created by contract, statute, policy, and mutual understanding, and a liberty interest in his good name. *Bd. of Regents v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972).

73.    Defendants deprived him of these interests by imposing reprimand, suspension, and termination without adequate notice or opportunity to respond, violating Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), and Mathews v. Eldridge, 424 U.S. 319 (1976).

74.    Defendants further disseminated stigmatizing allegations to NACDEP officers after termination, compounding reputational harm and triggering a right to a name-clearing hearing. Paul v. Davis, 424 U.S. 693 (1976); Codd v. Velger, 429 U.S. 624 (1977); Chilingirian v. Boris, 882 F.2d 200 (6th Cir. 1989).

75.    Despite the 2023 SPBR decision that had already found retaliatory and procedurally defective actions by Defendants Kuti and Bowman, CSU leadership repeated the same practices.

76.    Defendants' conduct is the actual and proximate cause of harm, loss, and damages to Plaintiff.  Plaintiff seeks damages from individual-capacity defendants and prospective relief—reinstatement or front pay, a name-clearing hearing, and expungement—from official-capacity defendants.

77.    Defendants' post-termination communications to NACDEP officers publicly stigmatized Plaintiff in connection with his discharge, further entitling him to a name-clearing hearing under *Codd v. Velger* and related authority.

78.    CSU leadership was on actual notice that its removal and personnel processes were constitutionally infirm due to the SPBR 2023 adjudication adopted by the Board; nonetheless, CSU persisted in similar deprivations against Plaintiff.

79.    At the time of Defendants' conduct, the constitutional prohibitions on retaliation for protected speech (*Pickering*, *Garcetti* as limited by *Lane v. Franks*),

denial of procedural due process (*Loudermill*), and selective enforcement (*Olech*) were clearly established in this Circuit.

80.     Plaintiff seeks damages against individual-capacity defendants and prospective injunctive/declaratory relief—including a name-clearing hearing, expungement, and reinstatement—against official-capacity defendants.

## COUNT III
### 42 U.S.C. § 1983 – Substantive Due Process (Fourteenth Amendment)

81.     Plaintiff incorporates all preceding paragraphs.

82.     Defendants' actions—including knowingly false or retaliatory discipline culminating in a career-ending termination intentionally timed to inflict maximum harm immediately after Plaintiff's election to a national professional board—were arbitrary and capricious, shocking to the conscience, and deprived Plaintiff of fundamental fairness. See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998); EJS Props., LLC v. City of Toledo, 698 F.3d 845, 861 (6th Cir. 2012).

83.     At the time of Defendants' conduct, the constitutional prohibitions on retaliation for protected speech (*Pickering*, *Garcetti* as limited by *Lane v. Franks*), denial of procedural due process (*Loudermill*), and selective enforcement (*Olech*) were clearly established in this Circuit.

84.     Plaintiff pleads this count narrowly and in the alternative to Count II. He seeks damages against individual-capacity defendants and prospective injunctive relief against official-capacity defendants.

## COUNT IV
### 42 U.S.C. § 1983 – Equal Protection (Fourteenth Amendment)
### Race Disparate Treatment and Class-of-One

85.     Plaintiff incorporates all preceding paragraphs.

86.     Race-based disparate treatment. Plaintiff was treated differently than similarly situated non-Black colleagues in discipline, access to approvals, and evaluation timing, motivated at least in part by discriminatory purpose. See Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265–68 (1977); Brown v. Bd. of Educ., 347 U.S. 483, 493–95 (1954).

87.     Class-of-one. Plaintiff was intentionally treated differently from similarly situated colleagues (including Eric Smith, Stephen Washington, Camille Johnson, and Kunta Jackson), without a rational basis and with retaliatory animus. See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); Nelson v. City of Cleveland, 571 F. App'x 426, 439 (6th Cir. 2014).

88.     To the extent Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 603–04 (2008), limits class-of-one claims in highly discretionary contexts, Plaintiff alleges departures from objective standards and selective enforcement motivated by animus/retaliation, placing this matter within recognized exceptions and Sixth Circuit applications permitting such claims where objective comparators and criteria exist.

89.     The SPBR 2023 order and subsequent coordination emails corroborate a selective, animus-driven enforcement culture within CSU's Land-Grant/HR chain of command, supporting inferences of discriminatory and/or irrational singling-out.

90.     At the time of Defendants' conduct, the constitutional prohibitions on retaliation for protected speech (*Pickering*, *Garcetti* as limited by *Lane v. Franks*), denial of procedural due process (*Loudermill*), and selective enforcement (*Olech*) were clearly established in this Circuit.

91. Plaintiff seeks damages against individual-capacity defendants and prospective injunctive/declaratory relief against official-capacity defendants.

**COUNT V**
**42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights**

92. Plaintiff incorporates all preceding paragraphs.

93. Defendants Rendleman and Folck, with knowledge and tacit approval from Defendants Bowman and Kuti, entered into an agreement and understanding to retaliate against Plaintiff for his protected activity. Their January 2024 emails—"It is time to circle the wagons" and "Let's coordinate our reprimand strategies for Ambrose and Amber"—memorialize that agreement.

94. Within weeks, Defendants executed overt acts in furtherance of the conspiracy: the February 8 2024 reprimand, June 27 2024 suspension, October 2024 PIP, denial of a name-clearing hearing, and January 31 2025 termination. Each act deprived Plaintiff of rights secured by the First and Fourteenth Amendments. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985).

95. The timing and content of these emails, followed by the February 8, 2024 reprimand, June 27, 2024 suspension, and October 2024 performance appraisal and PIP, constitute overt acts in furtherance of the conspiracy. Each act deprived Plaintiff of his First and Fourteenth Amendment rights to free speech, petition, due process, and equal protection.

96. These communications are direct evidence of conspiratorial intent and deliberate coordination among CSU officials and defeat any assertion that the disciplinary actions were independent or undertaken in good faith.

97.    Defendants reached an understanding and agreement—reflected in internal emails to "circle the wagons" and "coordinate our reprimand strategies"—to deprive Plaintiff of his First-Amendment and Fourteenth-Amendment rights; they committed specific overt acts (reprimand, suspension, approvals blockade, PIP, denial of name-clearing, termination) causing deprivation and damages. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Hooks v. Hooks, 771 F.2d 935, 943–44 (6th Cir. 1985); Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir. 1994).

98.    The intra-enterprise doctrine does not bar this claim because the alleged agreement included multiple actors, some acting outside the scope of legitimate authority and/or with personal retaliatory motives, and because the conspiracy is evidenced by specific coordinated acts not compelled by policy.

99. The coordinated communications and resulting actions constitute a continuing agreement to obstruct Plaintiff's exercise of protected rights.

100.    At the time of Defendants' conduct, the constitutional prohibitions on retaliation for protected speech (*Pickering*, *Garcetti* as limited by *Lane v. Franks*), denial of procedural due process (*Loudermill*), and selective enforcement (*Olech*) were clearly established in this Circuit.

101.    Defendants' conduct is the actual and proximate cause of Plaintiff's harm, loss, and damages.  Plaintiff seeks damages against individual-capacity defendants and prospective injunctive/declaratory relief against official-capacity defendants.

## V. DECLARATORY AND INJUNCTIVE RELIEF (EX PARTE YOUNG)

102.    Plaintiff seeks prospective declaratory and injunctive relief requiring CSU, the Board, and official-capacity defendants to:

a. Reinstate Plaintiff to his former or a substantially equivalent position with restoration of seniority and benefits; or, if reinstatement is impracticable, provide front pay;

b. Provide a prompt, public, and constitutionally adequate name-clearing hearing with appropriate pre-hearing disclosure and post-hearing remedies;

c. Expunge unconstitutional discipline from Plaintiff's personnel file and cease and desist from retaliatory or unequal enforcement practices;

d. Implement constitutionally adequate pre-disciplinary and disciplinary procedures consistent with Loudermill and Mathews.

## VI. DAMAGES

103.    Plaintiff seeks back pay, lost benefits, consequential and compensatory damages for emotional distress and reputational injury, and punitive damages against individual-capacity defendants for willful and reckless indifference to federally protected rights, together with pre- and post-judgment interest, as permitted by law.

## VII. JURY DEMAND

104.    Plaintiff demands a trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendants, jointly and severally, and grant the following relief:

105.    **Reinstatement** to his former position or a substantially equivalent position with full restoration of seniority, benefits, and attendant rights, or **front pay** in lieu of reinstatement if reinstatement is impracticable;

106. **Back pay** with interest and restoration of all lost benefits and service credit;

107. **Compensatory damages** against the individual-capacity Defendants for emotional distress, reputational harm, and other actual injury caused by their constitutional violations;

108. **Punitive damages** against the individual-capacity Defendants to deter and punish willful and malicious misconduct;

109. **Declaratory and injunctive relief** against CSU, its Board of Trustees, and the official-capacity Defendants, including orders that:

a. Require a constitutionally adequate **name-clearing hearing**;

b. Direct **expungement** of all unconstitutional disciplinary actions from Plaintiff's record; and

c. Enjoin Defendants from continuing retaliatory or unequal enforcement practices and require implementation of **policy, training, and monitoring measures** sufficient to ensure future compliance with constitutional standards;;

110. An award of attorney's fees, costs, and expenses under 42 U.S.C. § 1988 and any other applicable law; and

111. Such other and further relief as the Court deems just, equitable, and proper.

Dated this 6th day of October, 2025

s/ Ambrose Moses III

**Ambrose Moses III   (0055231)**
Attorney at Law
1900 Polaris Parkway, Suite 450-017
Columbus, Ohio 43240
(614) 418-7898
info@MosesLaw.pro

Plaintiff *Pro Se*

## JURY DEMAND

Plaintiff Ambrose Moses III hereby demands a trial by jury on all issues so triable.

s/ Ambrose Moses III

**Ambrose Moses III   (0055231)**



EXHIBIT 1



Central
State
University
1 8 9 0
1890 LAND-GRANT
INSTITUTION

**COORPERATIVE EXTENSION SERVICE**

PO BOX 1004 • WILBERFORCE OH 45384-1004 • 937-376-6625 • FAX 937-376-6680

January 11, 2017

Ambrose Moses, III
7888 Danbridge Way,
Westerville, OH 43082

Dear Mr. Moses:

I am pleased to offer you the position of County Agent for Cooperative Extension Service, in the Division of Academic Affair, as a part of CSU's 1890 Land Grant initiatives, effective service February 1, 2017 at an annual salary of $55,000. Your performance will be evaluated annually to determine continuation in the role. This position reports directly to the Associate Director of Cooperative Extension and is dependent on the receipt of funding from federal and state agencies each fiscal year. The offer is contingent on receiving a clear background check with non-discrepancies.

You will be eligible to receive the benefits package provided to staff of the university. Our Human Resources Department will forward you a complete package of benefits for your review. If you have questions after receiving the information please feel free to contact Gayle Berry at (937)376-6018.

Your employment is subject to the applicable laws and regulations of the United State and the State of Ohio, and the policies, rules and regulations of the university. By accepting employment with the university, you agree to comply with these laws, policies, rules and regulations, as amended from time to time.

The Immigration Reform and Control Act of 1986 requires us to make this offer contingent upon proof of work authorization and identity. Please meet with staff in the Office of Human Resources immediately upon your arrival at Central State to complete the Employment Eligibility Verification Form (I-9).

I know you share my enthusiasm about the future of Central State University. If the terms set forth in this letter meet with your approval, please sign and date this letter and return it to me on or before January 17, 2017

Sincerely,

Clarence Bunch, Ph.D.
Associate Director
Cooperator Extension Program (CEP)

Transforming Communities and Changing Lives

*Service...Protocol...Civility*

Complaint Exhibit 1 - 1



**COORPERATIVE EXTENSION SERVICE**
PO BOX 1004 ◆ WILBERFORCE OH 45384-1004 ◆ 937-376-6625 ◆ FAX 937-376-6680

cc: Alton Johnson, Ph.D
     E.Gordon, Interm Director of Human Resources

**CSU Offer Letter** – Ambrose Moses, III
January 11, 2017
Page2

I accept this appointment.

_____              _____
Signature                                            Date

1/12/2017

EXHIBIT 2

O Outlook

**Critical Service Delivery Impact - CED Phase 1 Approval Requests Status Update**

**From** Ambrose Moses III <amoses@centralstate.edu>

**Date** Mon 1/6/2025 8:10 PM

**To** Jose Toledo <jtoledo@centralstate.edu>

**Cc** Alcinda Folck <afolck@centralstate.edu>; Mark Rendleman <mrendleman@centralstate.edu>; Laura Wilson <lwilson@centralstate.edu>

**Bcc** Ambrose Moses III <amoses@centralstate.edu>

Dr. Toledo:

Following your guidance to work through supervisors regarding approvals, I am writing to update you on the critical status of multiple CED Phase 1 requests for approval:

1. Initial requests submitted February 2, 2024 (Growing Equity Partnership Grant-Franklin County Cohort 1) and then April 22, 2024 (numerous stakeholders)

2. Requests resubmitted weekly and on December 10, 2024 following newly clarified 3-Phase CED Approval Process

3. Multiple follow-ups with Mr. Rendleman without response

4. Elevated to Dr. Folck on December 17, 18, 19, 20, 30, 2024 and January 2, 2025, without resolution

Since April 2024, I have submitted over 100 Phase 1 requests for stakeholder engagement in Franklin County. Only one request has been approved (Growing Equity Partnership Grant Cohort 1 – initially submitted February 2, 2024 and approved on July 25, 2024). All other requests remain pending without response or without resolution, preventing engagement with key stakeholders and potential partners including:

- Columbus Urban League

- U.S. Small Business Administration

- Franklin County Commissioners

- Columbus City Council

- Ohio Department of Development

- Multiple community organizations and individuals seeking our CED-related cooperative extension assistance

As additional context for this matter, as you may be aware, the Final Investigation Report issued to the University on October 31, 2024 included the following recommendation and proposal -- "*The Investigator proposes that the CED Educators be provided with the name and contact information of an additional employee at the University who can be copied on any written*

*requests for approval to Rendleman, whom Rendleman also will copy on his responses, to assure clarity in what requests are being made and if responses are being timely provided.*"

Additionally, I am obligated to inform you that the systematic non-response to CED Phase 1 approval requests appears to be preventing the University from fulfilling its 1890 land-grant mission and cooperative extension service obligations for which state and federal funding is provided. This matter may constitute a misuse of public resources and/or violation of state and federal law by effectively blocking delivery of required services to stakeholders. As a public employee, I am reporting these concerns through proper channels pursuant to R.C. 124.341.

This pattern of non-response appears to conflict with multiple aspects of the University's Professional Code of Conduct, including our obligations of Service, Protocol, and Civility, as well as specific requirements regarding stewardship, compliance, and diligence in supporting the University's mission and priorities.

Given the ethical implications of this matter regarding use of public resources and delivery of mandated services, I am copying University general counsel on this communication in accordance with University policy regarding ethical concerns.

The continued non-response is severely impacting our ability to deliver on the University's Land-Grant mission, including but not limited to, for January and February 2025. I respectfully request your guidance on how to proceed.

Respectfully,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, January 2, 2025 9:02 PM
**To:** Alcinda Folck <afolck@centralstate.edu>
**Cc:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Request for Associate Administrator Guidance re: Phase 1 Approval Requests - Timeline and Process Clarification

Dr. Folck,

I am writing to update you on the status of my Phase 1 Requests for Approval:

1. Initial requests were submitted to Mr. Rendleman on April 22, 2024.

2. Requests were resubmitted on December 10, 2024 following the new 3-Phase CED Approval Process.

3. Despite multiple follow-ups, I have received no response or decision.

4. The delay and inaction is causing numerous stakeholder needs and requests to now be time-sensitive and unduly delayed.

5. The delay and inaction are blocking program activity in the Southwest Region (Franklin County) for January and February 2025.

Could you please provide guidance on how to proceed given the lack of response?

Respectfully,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*CED Extension Educator*
**Cooperative Extension Service**
**Central State University**
**amoses@CentralState.edu** | www.CentralState.edu/csuextension



---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Monday, December 30, 2024 6:34 PM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Cc:** Alcinda Folck <afolck@centralstate.edu>
**Subject:** Re: Follow-up: Phase 1 Approval Requests - Timeline and Process Clarification


Mark,

Following Dr. Folck's guidance to discuss this with you directly, I am following up on the Phase 1 Requests for Approval submitted December 10, 2024. Could you please provide an update on their status or indicate what additional information you need about the outreach?

Respectfully,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*CED Extension Educator*
**Cooperative Extension Service**
**Central State University**
**amoses@CentralState.edu** | www.CentralState.edu/csuextension

**From:** Alcinda Folck <afolck@centralstate.edu>
**Sent:** Monday, December 30, 2024 5:53 PM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Cc:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-up: Phase 1 Approval Requests - Timeline and Process Clarification

Hi Mr. Moses,

Please discuss this with Mr. Rendleman as your Program Leader and provide any information he needs about the outreach.


**Cindy Folck, PhD (Alcinda)**
*Associate Extension Administrator*
*State Program Leader, Agriculture & Natural Resources*
**Central State University Extension**
**1890 Land Grant Programs**
**A210 Emery Hall | 1400 Brush Row Road | Wilberforce, Ohio 45384**
O: 937-376-6101
**afolck@centralstate.edu** | **centralstate.edu**

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Monday, December 30, 2024 10:13 AM
**To:** Alcinda Folck <afolck@centralstate.edu>
**Cc:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-up: Phase 1 Approval Requests - Timeline and Process Clarification


Dr. Folck,

Given that no response or additional information has been requested since my Phase 1 Approval Requests that were submitted on December 10, 2024, could you please advise and provide guidance on:

1. The expected timeline for Phase 1 review
2. How to respond to time-sensitive stakeholder requests during the Phase 1 review period
3. The process for urgent matters now that we've returned from holiday break

This guidance will help ensure proper stakeholder communication and service delivery.

Respectfully,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*CED Extension Educator*
**Cooperative Extension Service**
**Central State University**
**amoses@CentralState.edu** | www.CentralState.edu/csuextension



---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Friday, December 20, 2024 8:46 AM
**To:** Alcinda Folck <afolck@centralstate.edu>
**Cc:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-up: Phase 1 Approval Requests - Timeline and Process Clarification

Dr. Folck,

As this is our last workday before the holiday break, I am following up on yesterday's questions regarding Phase 1 review timelines and stakeholder response protocols. Any guidance you can provide today would be greatly appreciated.

Respectfully,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, December 19, 2024 2:19 PM
**To:** Alcinda Folck <afolck@centralstate.edu>
**Cc:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-up: Phase 1 Approval Requests - Timeline and Process Clarification

Dr. Folck,

Thank you for your response. Given that Mr. Rendleman has not requested any additional information or clarification since my December 10 submission, could you please advise on:

1. The expected timeline for Phase 1 review

2. How to respond to time-sensitive stakeholder requests during the review period

3. Whether there is an interim process for urgent matters before the holiday break

This guidance will help ensure proper stakeholder communication and service delivery.

Respectfully,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*CED Extension Educator*
**Cooperative Extension Service**
**Central State University**
**amoses@CentralState.edu** | www.CentralState.edu/csuextension



---

**From:** Alcinda Folck <afolck@centralstate.edu>
**Sent:** Thursday, December 19, 2024 2:07 PM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Cc:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-up: Phase 1 Approval Requests - Timeline and Process Clarification

Hi Mr. Moses,

Technical assistance and programs need to be approved by the program leader with the designated approval process within each program area. During the approval process, the program leader is able to ask for additional information, clarification, or changes which are part of the process before technical assistance or programs can be approved.

Thank you,
Cindy Folck

**Cindy Folck, PhD (Alcinda)**
*Associate Extension Administrator*
*State Program Leader, Agriculture & Natural Resources*
**Central State University Extension**
**1890 Land Grant Programs**
**A210 Emery Hall | 1400 Brush Row Road | Wilberforce, Ohio 45384**
O: 937-376-6101
**afolck@centralstate.edu** | **centralstate.edu**

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, December 19, 2024 9:56 AM
**To:** Alcinda Folck <afolck@centralstate.edu>
**Cc:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-up: Phase 1 Approval Requests - Timeline and Process Clarification

Dr. Folck,

I am following up on yesterday's email regarding the pending Phase 1 approval requests. With tomorrow being our last workday before the holiday break, I wanted to highlight the timeline impact on our stakeholders:

Current Pending Items:

1. 15 Phase 1 requests submitted December 10th, seeking approval to engage with potential partner organizations in Franklin County

2. Time-sensitive technical assistance requests from current program participants

Given the upcoming holiday schedule (December 23-27) and my scheduled vacation (December 30-31), any guidance you can provide before the break would help us maintain effective stakeholder relationships and program momentum into January.

Thank you for your consideration of this matter.

Respectfully,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Wednesday, December 18, 2024 12:09 PM
**To:** Alcinda Folck <afolck@centralstate.edu>
**Cc:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Follow-up: Phase 1 Approval Requests - Timeline and Process Clarification

Dr. Folck,

Following Dr. Toledo's guidance to work through supervisory channels, I am seeking your assistance regarding pending Phase 1 approval requests. Below is the complete timeline of events:

December 6, 2024: Mr. Rendleman introduced new 3-Phase CED Approval Process

December 10, 2024: I Submitted 15 Phase 1 requests following the new process guidelines

- Scope: 72-228 program activities (108-342 hours of class time)

- Includes current program participants needing immediate assistance

- All requests follow prescribed format with required information

Follow-up Communications to Mr. Rendleman:

- December 11, 2024: Initial follow-up

- December 12, 2024: Follow-up with scope impact details

- December 13, 2024: Third follow-up

- December 16, 2024: Fourth follow-up

- December 17, 2024: Fifth follow-up

- No responses received to any follow-up requests

Impact on Service Delivery:

1. Current participants (e.g., Ms. Ava Johnson) awaiting assistance

2. Partner organizations requiring commitment confirmation

3. Time-sensitive programming decisions pending

4. Community engagement opportunities at risk

Given the scope of impact and time-sensitive nature of these requests, I am seeking your guidance on:

1. Expected timeline for Phase 1 review process

2. Protocol when responses are not received

3. How to manage stakeholder expectations during delays

Thank you for your attention to this matter.

Respectfully,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Wednesday, December 18, 2024 12:01 PM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-Up on Phase 1 Requests for Approval

Mark,

I am following up on the Phase 1 Requests for Approval I submitted to you on December 10, 2024. Could you please provide an update on their status or let me know if additional information is needed to move forward?

Your timely response would be greatly appreciated, as it will help ensure we meet community and stakeholder expectations effectively.

Thank you for your attention to this matter.

Best regards,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Tuesday, December 17, 2024 10:23 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-Up on Phase 1 Requests for Approval

Mark,

I am following up on the Phase 1 Requests for Approval I submitted to you on December 10, 2024. Could you please provide an update on their status or let me know if additional information is needed to move forward?

Your timely response would be greatly appreciated, as it will help ensure we meet community and stakeholder expectations effectively.

Thank you for your attention to this matter.

Best regards,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

amoses@CentralState.edu | www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Monday, December 16, 2024 10:30 PM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-Up on Phase 1 Requests for Approval

Mark,

I am following up on the Phase 1 Requests for Approval I submitted to you on December 10, 2024. Could you please provide an update on their status or let me know if additional information is needed to move forward?

Your timely response would be greatly appreciated, as it will help ensure we meet community and stakeholder expectations effectively.

Thank you for your attention to this matter.

Best regards,

Ambrose Moses III

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Friday, December 13, 2024 11:21 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-Up on Phase 1 Requests for Approval

Good Morning Mark,

I am following up on the Phase 1 Requests for Approval I submitted to you on December 10, 2024. Could you please provide an update on their status or let me know if additional information is needed to move forward?

Your timely response would be greatly appreciated, as it will help ensure we meet community and stakeholder expectations effectively.

Thank you for your attention to this matter.

Best regards,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*CED Extension Educator*
**Cooperative Extension Service**

**Central State University**
**amoses@CentralState.edu** | www.CentralState.edu/csuextension



---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, December 12, 2024 10:03 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Re: Follow-Up on Phase 1 Requests for Approval

Good Morning Mark,

I am following up on the Phase 1 Requests for Approval I submitted to you on December 10, 2024. Could you please provide an update on their status or let me know if additional information is needed to move forward?

Again, the 15 requests for approval outlined below represent an expanded scope of activity and impact, potentially covering 72 to 228 program activities or 108 to 342 hours of class time.  This level of engagement will impact changes in knowledge, actions, and conditions for our audience and communities.

Your timely response would be greatly appreciated, as it will help ensure we meet community and stakeholder expectations effectively.

Thank you for your attention to this matter.

Best regards,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension


---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Wednesday, December 11, 2024 9:55 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Follow-Up on Phase 1 Requests for Approval


Good Morning Mark,

I wanted to follow up on the Phase 1 Requests for Approval I submitted. Could you please provide an update on their status or let me know if additional information is needed to move forward?

Your timely response would be greatly appreciated, as it will help ensure we meet community and stakeholder expectations effectively.

Thank you for your attention to this matter.

Best regards,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*CED Extension Educator*
**Cooperative Extension Service**
**Central State University**
**amoses@CentralState.edu** | **www.CentralState.edu/csuextension**

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Tuesday, December 10, 2024 12:36 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>; Jose Toledo <jtoledo@centralstate.edu>; Alcinda Folck <afolck@centralstate.edu>; Yu-Lu Hsiung <yhsiung@centralstate.edu>; Shau'De Knight <sknight@centralstate.edu>
**Subject:** THE NEW 3-PHASE CED APPROVAL PROCESS - Re: Requests for Approval: Growing Equity Partnership Grant (GEPG) Cohort 2 & Money Smart Series 1-

Mark:

Thank you for sharing the new 3-Phase CED Approval Process, communicated to the CED Team via email on Friday, December 6, 2024, at 3:45 PM. I appreciate the effort to introduce a more structured process, which I see as a positive step forward for our work.

For transparency, clarity, and open communication, I have included leadership on this email. Their guidance remains vital in addressing ongoing systemic and policy concerns within Extension and CED. As always, I am committed to advocating for respectful, equitable, and impactful service to our community.

In the second email of this thread, dated October 18, 2024, you stated, "Ambrose, I will not be approving your 14 requests to conduct educational activities." To clarify, those 14 requests represented 19 CED program activities, accounting for approximately 29 hours of class time. The current 15 requests for approval outlined below represent a significantly expanded scope, potentially covering 72 to 228 program activities or 108 to 342 hours of class time.

Below, I have consolidated all 15 requests into a single email to simplify tracking and referencing. Each request addresses the four Phase 1 questions. If you prefer that I submit

separate email threads for each request, please let me know, and I will promptly provide individual submissions.

Additionally, given that the EPARS process is expected to take 45 days (as stated in your December 6, 2024, email), could you provide an estimate for the duration of Phase 1 and Phase 2 of the CED Approval Process? This information would greatly assist CED Extension Educators in managing community and stakeholder expectations, as timing is critical in ensuring effective engagement.

**Here are the requests for Phase 1 approval:**

**1.**
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Initiative: Growing Equity Partnership Grant Program Series

Lead Contact: Ambrose Moses III, CED Extension Educator for the Southwest Region (Franklin County)

**Phase 1 - Initial Engagement Approval**
1. Name of the Initiative: Growing Equity Partnership Grant Program Series, located in Columbus, Ohio.

2. Main Point of Contact: Ambrose Moses III, CED Extension Educator for the Southwest Region (Franklin County).

3. Description of the Initiative: The Growing Equity Partnership Grant Program Series, led by Ambrose Moses III, provides Business Technical Assistance (BTA) to beginning farmers and urban agriculture entrepreneurs. This program focuses on enhancing equity and access in business development through a series of workshops covering topics such as Business Mission, Vision, and Values; Business Structures and Planning; Marketing; Financial Records and Budgeting; and Business Operations. Each session aims to equip participants with the skills and knowledge needed to establish sustainable farming businesses that support local food systems and community resilience.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA).

**2.**
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Initiative: Small Business Education Series

Lead Contact: Ambrose Moses III, CED Extension Educator for the Southwest Region (Franklin County)

**Phase 1 - Initial Engagement Approval**
1. Name of the Initiative: Small Business Education Series, located in Columbus, Ohio.

2. Main Point of Contact: Ambrose Moses III, CED Extension Educator for the Southwest Region (Franklin County).

3. Description of the Initiative: The Small Business Education Series, led by Ambrose Moses III, utilizes the FDIC's Money Smart for Small Business curriculum to enhance entrepreneurial ecosystems. This program focuses on improving participant knowledge in financial literacy, risk management, and business planning through structured learning. Key objectives include conducting two cohorts, each with at least 10 participants, and measuring participant progress using pre/post surveys and quizzes. The program empowers small business owners with essential skills to strengthen their businesses and contribute to community and economic development.

4. CED Activities to Promote: The Small Business Education Series (Money Smart for Small Business curriculum) with a focus on improving entrepreneurial ecosystems.

**3.**

Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: Central Ohio African American Chamber of Commerce (COAACC)

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: Central Ohio African American Chamber of Commerce (COAACC), located in Columbus, Ohio.

2. Main Point of Contact: J. Averi Frost, Executive Director.

3. Description of the Organization: The Central Ohio African American Chamber of Commerce (COAACC) serves as an advocate for Black-owned businesses in Central Ohio. Founded in 2018, COAACC provides business development opportunities, access to capital, and entry into new markets. The organization represents businesses that are 51% or more owned by African Americans operating in or doing business in Central Ohio. COAACC contributes to Community and Economic Development (CED) through advocacy, removing barriers to capital and contracts, and providing resources for business growth. While its primary focus is on business development, the support it offers can indirectly benefit urban agriculture initiatives.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and additional activities identified through needs assessment.

**4.**
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Individual: Ava Johnson, Growing Equity Partnership Cohort 1 Participant

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Individual: Ava Johnson, participant in the Growing Equity Partnership Cohort 1, located in Columbus, Ohio.

2. Main Point of Contact: Ava Johnson.

3. Description of the Organization: Ava Johnson is the founder of Southeast Gardens and Urban Farm in Columbus, Ohio. Originally established as a community garden to promote healthy eating habits, the initiative has grown into a nonprofit organization focused on sustainable agriculture and community engagement. Ava utilizes organic and ecologically friendly practices to grow crops significant to the African American community, such as greens. Her work includes educational programs for children and partnerships with schools to foster agricultural literacy, while addressing food insecurity through increased access to healthy foods.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative BTA (Business Technical Assistance).

**5.**

Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Individual: Jodi Spencer, Growing Equity Partnership Cohort 1 Participant

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Individual: Jodi Spencer, participant in the Growing Equity Partnership Cohort 1, located in Columbus, Ohio.

2. Main Point of Contact: Jodi Spencer.

3. Description of the Organization: Jodi Spencer is a horticulturist and entrepreneur, managing Copper Bark Farms and the Dorothy England Legacy Farm in Columbus, Ohio. Her focus is on regenerative farming practices, providing organic seeds, seedlings, and produce for the local community. Jodi has collaborated with local institutions like the Westgate Farmers Market and Franklin Park Conservatory to address food needs and promote community engagement in agriculture. She emphasizes sustainability and stewardship in all her farming and community initiatives.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative BTA (Business Technical Assistance).

**6.**

Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: U.S. Small Business Administration (SBA) Columbus District Office

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: U.S. Small Business Administration (SBA) Columbus District Office, located in Columbus, Ohio.

2. Main Point of Contact: Everett M. Woodel, Jr., District Director.

3. Description of the Organization: The U.S. Small Business Administration (SBA) is a federal agency that supports small businesses through funding programs, counseling, and contracting expertise. The Columbus District Office services 60 counties in southern Ohio, offering assistance with financial programs, training, and government contracting opportunities. SBA programs, such as the Microloan Program, counseling through SBDCs, and federal procurement assistance, are valuable for business development and can benefit sectors like urban agriculture.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and additional activities identified through needs assessment.

**7.**
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: Franklin County Board of Commissioners

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: Franklin County Board of Commissioners, located in Columbus, Ohio.

2. Main Point of Contact: Commissioner John O'Grady, leader in economic development initiatives.

3. Description of the Organization: The Franklin County Board of Commissioners serves as the administrative head of Franklin County, setting strategic and fiscal priorities. The Board emphasizes a human-centered approach to governance, addressing social, economic, and environmental needs for all residents. Through its investments in economic development projects like the Scioto Peninsula redevelopment and sustainable financing models, the Board contributes significantly to Community and Economic Development (CED). Additionally, the Urban Agriculture Critical Infrastructure Grant program supports local growers with ARPA funding, enhancing the local food supply chain and strengthening urban agriculture initiatives.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and additional activities identified through needs assessment.

**8.**
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: Columbus City Council

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: Columbus City Council, located in Columbus, Ohio.

2. Main Point of Contact: Councilmember Nicholas J. Bankston, Chair of the Economic Development, Small & Minority Business, and Technology Committees.

3. Description of the Organization: Columbus City Council serves as the legislative branch of the City of Columbus, overseeing legislative actions, budgeting, and city planning. It plays a critical role in Community and Economic Development (CED) by supporting initiatives such as the Small Business Recovery Fund, the Ground Floor Growth Initiative, and urban agriculture grants. The Council also collaborates with organizations like the Columbus Urban League to provide resources for minority-owned businesses. Its urban agriculture projects aim to enhance local food production and support community resilience.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and additional activities identified through needs assessment.

**9.**
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: Ohio Department of Development

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: Ohio Department of Development, located in Columbus, Ohio.

2. Main Point of Contact: Lydia Mihalik, Director of the Ohio Department of Development.

3. Description of the Organization: The Ohio Department of Development is committed to empowering communities by investing in Ohio's people, places, and businesses. The department provides various programs to support community and economic development, including initiatives to create and retain jobs, improve community infrastructure, and support businesses of all sizes. While not directly focused on urban agriculture, its efforts in fostering community development indirectly benefit such initiatives.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and additional activities identified through needs assessment.

**10.**
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: Small Business Development Center (SBDC) at Columbus State Community College

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: Small Business Development Center (SBDC) at Columbus State Community College, located in Columbus, Ohio.

2. Main Point of Contact: Mike Bowers, Center Director.

3. Description of the Organization: The Ohio Small Business Development Center (SBDC) at Columbus State Community College is a public-private partnership supported in part by the U.S. Small Business Administration and the Ohio Department of Development. Its mission is to accelerate business success and be a premier resource for small business owners. The SBDC provides services such as business counseling, workshops and training programs, and access to capital. While not directly focused on urban agriculture, the SBDC's resources can support entrepreneurs in this sector by helping them establish and grow their businesses.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and additional activities identified through needs assessment.

**11.**
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: Minority Business Assistance Center (MBAC)

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: Minority Business Assistance Center (MBAC), located in Columbus, Ohio.

2. Main Point of Contact: Andrea D. Wilkes, Regional Director.

3. Description of the Organization: MBAC provides management, technical, and professional assistance to small, minority-owned, and socially and economically disadvantaged businesses. Services include access to capital, surety bonding, connection to business opportunities, and certification assistance for programs such as Minority Business Enterprise (MBE), Encouraging Diversity, Growth, and Equity (EDGE), Women-Owned Business Enterprise (WBE), and Veteran-Friendly Business Enterprise (VFBE). Hosted by the Columbus Urban League, MBAC contributes to economic empowerment by supporting businesses in strategy development, financial planning, and accessing resources necessary for growth. While not directly focused on urban agriculture, the center's support for minority-owned businesses can indirectly benefit entrepreneurs in that sector.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and additional activities identified through needs assessment.

12.
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: Ohio Ecological Food and Farm Association (OEFFA)

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: Ohio Ecological Food and Farm Association (OEFFA), located in Columbus, Ohio.

2. Main Point of Contact: Khara Strum, Executive Director.

3. Description of the Organization: Founded in 1979, OEFFA promotes sustainable and organic agriculture. It envisions a future where sustainable farmers thrive, local food nourishes communities, and agriculture protects the environment. OEFFA supports community and economic development through initiatives like grants and loans for agricultural entrepreneurs, educational programs on sustainable farming practices, and policy advocacy to create favorable conditions for local food systems and beginning farmers. The organization also fosters urban agriculture and food security through resources and training for urban farmers.

4. CED Activities to Promote: Heirs Property, Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and additional activities identified through needs assessment.

**13.**
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: South Side Family Farms

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: South Side Family Farms, located in Columbus, Ohio.

2. Main Point of Contact: Minister Aaron K. Hopkins, Founder and Director.

3. Description of the Organization: South Side Family Farms (SSFF), established in 2014, began as a community garden and has evolved into a network of urban farms dedicated to addressing food insecurity and promoting sustainable agriculture in Columbus's South Side community. SSFF's mission includes increasing access to fresh produce, offering educational outreach, fostering economic development, and engaging youth in agriculture. The organization transforms vacant lots into urban farms to combat food deserts, provide fresh produce, and promote community cohesion. SSFF also creates economic opportunities and supports agricultural entrepreneurship, particularly for Black and Brown communities.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and additional activities identified through needs assessment.

**14.**

Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**
Prepared for: CED Collaboration Approval Process

Collaborating Organization: Columbus Urban League

**Phase 1 - Initial Engagement Approval**
1. Name of the Collaborating Organization: Columbus Urban League, located in Columbus, Ohio.

2. Main Point of Contact: Stephanie A. Hightower, President & Chief Executive Officer.

3. Description of the Organization: Founded in 1918, the Columbus Urban League (CUL) is an affiliate of the National Urban League and one of the largest community-based organizations in Central Ohio. It ranks among the top 5% of the 90-affiliate network of the Urban League movement nationally. CUL empowers African Americans and disenfranchised groups through economic, educational, and social progress. Its Minority Business Assistance Center (MBAC) provides services like technical assistance, professional consulting, access to capital, and help in securing state contract opportunities. Additionally, the Healthy Hearts Youth Garden promotes urban agriculture and healthy living practices.

4. CED Activities to Promote: Growing Equity Partnership Grant Initiative (Series and BTA), Small Business Development (Money Smart for Small Business), Technical Assistance, and other activities identified through needs assessment.

15.
Mark,

Per the CED Approval Process that was communicated to the CED Team via email on Friday, December 6, 2024 at 3:45 pm, I am, again, submitting the following Request for Approval:

**CED Collaboration Approval Request**

**Prepared for:** CED Collaboration Approval Process
**Collaborating Individual:** Guy Emmons, Growing Equity Partnership Cohort 1 Participant

**Phase 1 - Initial Engagement Approval**

**1. Name of the Collaborating Individual:**
Guy Emmons, participant in the Growing Equity Partnership Cohort 1, located in Columbus, Ohio.

**2. Main Point of Contact:**
Guy Emmons.

**3. Description of the Individual:**
Guy Emmons is an urban gardener based in Columbus, Ohio, utilizing his backyard space for cultivation. As a participant in the Growing Equity Partnership Cohort 1, Guy focuses on advancing his agricultural practices while contributing to the local food system. He actively engages in programs aimed at business development and technical assistance to promote sustainable urban agriculture and support community economic development.

**4. CED Activities to Promote:**
Growing Equity Partnership Grant Initiative BTA (Business Technical Assistance).


Thank you for your attention to these requests. I look forward to your guidance and support in moving these approvals forward so we can continue serving our community effectively.

Best regards,

Ambrose Moses III
CED Extension Educator



**Ambrose Moses III, Esq.**
*CED Extension Educator*
**Cooperative Extension Service**
**Central State University**
**amoses@CentralState.edu** | www.CentralState.edu/csuextension



---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Friday, November 1, 2024 4:30 PM
**To:** Mark Rendleman <mrendleman@centralstate.edu>; Jose Toledo <jtoledo@centralstate.edu>; Alcinda Folck <afolck@centralstate.edu>; Yu-Lu Hsiung <yhsiung@centralstate.edu>
**Subject:** Re: TIME-SENSITIVE: Re: Request for Approval: Growing Equity Partnership Grant (GEPG) Cohort 2 & Money Smart Series 1

Mark,

I have not initiated engagement efforts without advance approval from you.  Read the email thread, I am literally asking for your advance approval to engage with potential partners and program activities.  Per your request, each of the requests have been submitted to you twice in separate emails, and you still have not made a decision to approve or deny.  (Please note that I intend to have several more separate written requests for approval submitted to you for your review and decision in the near future.)

Are you supposed to issue a written approval before a program is entered into EPARS for your second approval of the same thing?

Thank you.

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Mark Rendleman <mrendleman@centralstate.edu>
**Sent:** Thursday, October 31, 2024 4:06 PM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Subject:** RE: TIME-SENSITIVE: Re: Request for Approval: Growing Equity Partnership Grant (GEPG) Cohort 2 & Money Smart Series 1

Ambrose,

Again, you have initiated engagement efforts without advance approval from me, the CED Program Leader, and this is noted. You need to follow established processes and procedures associated with the documentation, pursuit of engagement requests, and subsequent approvals.

You compiling too many separate partners into one cohort? Our intention is not grand gatherings of multiple partners' constituents. There should be separate cohorts for each partner. The long-standing objective for CED is multiple points of impact throughout the State of Ohio. The expectation is that you're collaborating with individuals, organizations, and or partners, that have the trust of and offer services to pools of constituents that fit our preferred demographics.

Expectations:
- You have listed a Minister's name as a partner. You have not identified why this person is an ideal candidate for partnership. Does he have a congregation? Where is his church located?
- You list the Columbus Urban League as a partner. I understand they serve numerous constituents within the City of Columbus, but they have their own business center and other resources. I'm especially interested in the basis and premise for this collaboration. Their home office is located on Mount Vernon avenue, so if approved, I would expect that cohort to be near where they are located.
- You list the African American Chamber of Commerce as a partner. Who is your contact? What is the premise of their operation. Do they assist start-up businesses? Where are they located?
- You have been previously directed not to use Ohio Ecological Food and Farm Association (OEFFA), as an engagement stakeholder, that directive still stands. Any noted efforts will be addressed.
- I need to know your intended strategies for accessing constituents for each of the partners you have listed.

I see that the location for your educational efforts is undetermined.  I know for a fact that each of the stakeholders you have listed has space available for you to conduct educational efforts.  The location(s) for your cohorts need to be located convenient to the constituents for each organization.  Their convenience is our highest priority.

Respond to my questions and concerns stated above, and we will consider proceeding to initial approval.

**Mark Rendleman, MBA**
*State Program Leader, Community and Economic Development*
**Central State University Extension - E.J. Emery Hall,  A201**
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
**mrendleman@CentralState.edu | CentralState.edu**



**An 1890 LAND-GRANT INSTITUTION**

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, October 31, 2024 8:03 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>; Shau'De Knight <sknight@centralstate.edu>
**Cc:** Alcinda Folck <afolck@centralstate.edu>; Jose Toledo <jtoledo@centralstate.edu>; Yu-Lu Hsiung <yhsiung@centralstate.edu>
**Subject:** TIME-SENSITIVE: Re: Request for Approval: Growing Equity Partnership Grant (GEPG) Cohort 2 & Money Smart Series 1
**Importance:** High


Good morning Mark,

Given the time-sensitive nature of my pending requests, could you please provide your approval to engage with the identified potential partners and proceed with the detailed program activities submitted below?

*Attached below is a summary of the program details for your reference.*

**Program Series Details:**

1. **Growing Equity Partnership Grant (GEPG) - Cohort 2**

    - **Duration:** November 5 - December 10, 2024

    - **Schedule:** Tuesdays, 11:00 AM - 12:30 PM

    - **Format:** In-person

    - **Location:** TBD

    - **Partners:**

        - Minister Aaron Hopkins

- Columbus Urban League

- African American Chamber of Commerce

- Ohio Ecological Food and Farm Association (OEFFA)

1. **Money Smart for Small Business - Series 1**

  - **Duration:** December 17, 2024 - March 25, 2025
  - **Schedule:** Tuesdays, 11:00 AM - 12:30 PM
  - **Format:** In-person
  - **Location:** TBD

Please let me know if you need any additional information.

Your prompt response would be greatly appreciated.

Thank you.

Best regards,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Wednesday, October 30, 2024 12:36 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>; Shau'De Knight <sknight@centralstate.edu>
**Cc:** Alcinda Folck <afolck@centralstate.edu>; Jose Toledo <jtoledo@centralstate.edu>; Yu-Lu Hsiung <yhsiung@centralstate.edu>
**Subject:** Request for Approval: Growing Equity Partnership Grant (GEPG) Cohort 2 & Money Smart Series 1

Mark,

Following our discussion on October 4, 2024, October 29, 2024, and per your documented advance approval process, I am submitting your required pre-EPARS request for approval of our upcoming program activities that were previously submitted via EPARS pursuant to the formal EPARS guidelines issued CSUE by CSUE management and leadership.  This proposal includes two educational series targeting urban agricultural entrepreneurs and small business owners in Franklin County.

Program Series Details:

1. Growing Equity Partnership Grant (GEPG) - Cohort 2
- Duration: November 5 - December 10, 2024
- Schedule: Tuesdays, 11:00 AM - 12:30 PM

- Format: In-person
- Location: TBD
- Partners: (See emails dated October 22, 2024 for more information)
  * Minister Aaron Hopkins (farming and nonprofit expertise)
  * Columbus Urban League
  * African American Chamber of Commerce
  * Ohio Ecological Food and Farm Association (OEFFA)

2. Money Smart for Small Business - Series 1
- Duration: December 17, 2024 - March 25, 2025
- Schedule: Tuesdays, 11:00 AM - 12:30 PM
- Format: In-person
- Location: TBD

The complete session schedules for both programs are attached for your review. These programs align with our GEPG objectives and CED mission to strengthen economic opportunities in our urban communities.

Given our upcoming reporting deadlines and the need to maintain program continuity for our stakeholders, I respectfully request your review and response by November 1, 2024.

Best regards,

Ambrose Moses III, Esq.
Extension Educator
Community & Economic Development
Central State University Extension

| GROWING EQUITY PARTNERSHIP GRANT | | | | | |
|---|---|---|---|---|---|
| **Business Technical Assistance** | | | **GEPG - Cohort 2 (2024) Location: Columbus (Franklin County)** | | |
| Session | Topic | Description | Lead Presenter | Date | Time |
| 1 | **Business Mission Vision Values** | Define core principles and long-term goals for your business. | Ambrose | 11/5/2024 | 11 a – 12:30 p |
| 2 | **Business Structures** | Explore and select appropriate legal entity for your venture. | Ambrose | 11/12/2024 | 11 a – 12:30 p |
| 3 | **Business Planning** | Develop comprehensive strategy for business growth and sustainability. | Ambrose | 11/19/2024 | 11 a – 12:30 p |

| 4 | **Business Marketing** | Create effective strategies to reach and engage target customers. | Ambrose | 11/26/2024 | 11 a – 12:30 p |
| 5 | **Business Records and Financials** | Establish systems for accurate financial management and reporting. | Ambrose | 12/3/2024 | 11 a – 12:30 p |
| 6 | **Business Operations and Resources** | Optimize processes and identify key resources for efficient operations. | Ambrose | 12/10/2024 | 11 a – 12:30 p |
| | | | | ***As of 10/18/2024 @ 3:00 PM*** | |

| Money Smart for Small Business | | | | | |
| --- | --- | --- | --- | --- | --- |
| **Business Training Schedule** | | | **Series 1 (2025) Location: Columbus (Franklin County)** | | |
| **Session** | **Topic** | **Description** | **Educator** | **Date** | **Time** |
| 1 | **Is Owning a Small Business a Fit?** | Evaluate personal readiness and suitability for entrepreneurship. | Ambrose | 12/17/2024 | 11 a – 12:30 p |
| 2 | **Planning for a Healthy Business** | Develop strategies for long-term business sustainability and growth. | Ambrose | 1/7/2025 | 11 a – 12:30 p |
| 3 | **Banking Services** | Understand essential financial services for small business operations. | Ambrose | 1/14/2025 | 11 a – 12:30 p |
| 4 | **Organizational Types** | Compare legal structures and choose appropriate business entity. | Ambrose | 1/21/2025 | 11 a – 12:30 p |
| 5 | **Time Management** | Optimize productivity through effective scheduling and | Ambrose | 1/28/2025 | 11 a – 12:30 p |

| Session | Topic | Description | Educator | Date | Time |
|---|---|---|---|---|---|
| | | prioritization techniques. | | | |
| 6 | **Financial Management** | Master basic accounting and financial planning for business. | Ambrose | 2/4/2025 | 11 a – 12:30 p |
| 7 | **Recordkeeping** | Implement efficient systems for tracking business transactions and documents. | Ambrose | 2/11/2025 | 11 a – 12:30 p |
| 8 | **Strong Business Credit** | Build and maintain positive credit history for business. | Ambrose | 2/18/2025 | 11 a – 12:30 p |
| **Session** | **Topic** | **Description** | **Educator** | **Date** | **Time** |
| 9 | **Risk Management** | Identify potential risks and develop mitigation strategies. | Ambrose | 2/25/2025 | 11 a – 12:30 p |
| 10 | **Insurance for a Small Business** | Understand various insurance types to protect business assets. | Ambrose | 3/4/2025 | 11 a – 12:30 p |
| 11 | **Tax Planning and Reporting** | Navigate tax obligations and strategies for small businesses. | Ambrose | 3/11/2025 | 11 a – 12:30 p |
| 12 | **Selling Your Business and Succession Planning** | Prepare exit strategies and ensure business continuity. | Ambrose | 3/18/2025 | 11 a – 12:30 p |
| 13 | **Managing Cash Flow** | Optimize income and expenses for financial stability. | Ambrose | 3/25/2025 | 11 a – 12:30 p |
| | | | | *As of 10/18/24 @ 2:00 PM* | |

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

Complaint Exhibit 2 - 29

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Tuesday, October 22, 2024 1:46 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>; Shau'De Knight <sknight@centralstate.edu>
**Subject:** Re: EPARS Approvals (Performance Improvement Plan)

Mark:

Though you still have not sent (or re-sent the "documented advance approval process), this morning I have also submitted requests for approval for a cohort of the Growing Equity Partnership Grant and Money Smart for Small Business with OEFFA and a cohort of Growing Equity Partnership Grant with Minister Aaron Hopkins.  These coincide with the program activity submitted via EPARS for your approval.

Thank you.

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Monday, October 21, 2024 8:09 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>; Shau'De Knight <sknight@centralstate.edu>
**Subject:** Re: EPARS Approvals (Performance Improvement Plan)

Good morning, Mark:

My initial responses to your list of concerns regarding the EPARS submissions related to the performance improvement plan are in brown:

- You failed to follow our documented advance approval process.
  What is the "documented advance approval process"?  On October 4, 2024, you stated that you would send (or re-send) the documented advance approval process to me.  On October 7, 2024, I asked you to send (or re-send) it to me.  On October 15, 2024, you, again, stated that you would send the documented advance approval process to me.  As of October 21, 2024, you **have not** sent (or re-sent) the "documented advance approval process" to me. **Please provide me with the "documented advance approval process".**


- You have not identified the stakeholders you're engaging.

The program activity submitted in EPARS does not identify any stakeholders because you have not indicated which you approve and which you disapprove. A list of proposed stakeholders have been awaiting your approval, since 4/22/2024. They have been submitted to you as you requested in a list. They have been submitted to you as you later requested via separate emails. Supplemental information has been provided as you requested. As of October 21, 2024, you still have not approved or disapproved them. **Please make a decision on the potential partners/stakeholders that have been pending with you since 4/22/2024.**

- Currently, we are not conducting virtual educational efforts.
  This is new and very odd. When was it decided and communicated to the CED Team that "we are not conducting virtual educational efforts"? Your approach appears to be inconsistent with best practices and the realities of Extension educational activity post-Covid-19. At any rate, I have reserved a conference room at the Columbus Metropolitan Library for the classes. **The EPARS submissions have been updated with in-person meeting locations. When will you have an opportunity to review and approve them?**

Please advise as to next steps and how this impacts the performance improvement plan. Thank you.

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Mark Rendleman <mrendleman@centralstate.edu>
**Sent:** Friday, October 18, 2024 10:13 AM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Subject:** RE: EPARS Approvals

Ambrose,

I will not be approving your 14 requests to conduct educational activities.

The following list of concerns are noted:
- You failed to follow our documented advance approval process.
- You have not identified the stakeholders you're engaging.
- Currently, we are not conducting virtual educational efforts.

These classes will remain in an open status (Without approval) until you have followed stipulated approval steps.

If you have any questions, please contact me.

**Mark Rendleman, MBA**

*State Program Leader, Community and Economic Development*

**Central State University Extension - E.J. Emery Hall,  A201**

**1400 Brush Row Road | Wilberforce, Ohio 45384**

**937.376.6088**

**mrendleman@CentralState.edu | CentralState.edu**



**An 1890 LAND-GRANT INSTITUTION**

---

**From:** Ambrose Moses III <amoses@centralstate.edu>

**Sent:** Thursday, October 17, 2024 10:34 AM

**To:** Mark Rendleman <mrendleman@centralstate.edu>

**Subject:** EPARS Approvals

Mark:

There are several program activities awaiting your approval in the EPARS system.  When do you anticipate reviewing and approving them?  Thank you.

Ambrose Moses III

**Ambrose Moses III, Esq.**

*Extension Educator*

*Community & Economic Development*

**Central State University Extension**

E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

**EXHIBIT 3**



OFFICE OF THE PRESIDENT

DR. MORAKINYO A.O. KUTI

CSU Faculty and Staff,

As we move forward together to advance Central State University's mission, we must do so with a renewed and shared commitment to excellence in every interaction, every role, and every responsibility. During my investiture speech, I introduced the **Marauder Ethos**, a university-wide standard of service excellence grounded in three guiding principles:

1. **Respectful Engagement** – We treat every individual with dignity and professionalism, fostering a culture of inclusion and respect.
2. **Responsiveness** – We actively listen, address concerns promptly, and ensure that our communication is timely and clear.
3. **Solution-Focused Support** – We provide accurate, helpful information and remain committed to resolving issues effectively and efficiently.

These guiding principles are essential, not aspirational. They provide the path to how we must grow, serve our students, support one another, and fulfill our collective purpose.

To fulfill the Marauder Ethos, timely and respectful communication must be a standard of service across campus.

**Effective immediately, all employees are expected to respond to internal and external inquiries - whether by email, phone, or walk-in - within two business days. This includes acknowledgement of requisitions and electronic documents sent through Adobe sign or other means. Review of legal documents of other more complex items are not affected if the time for such review is defined and communicated to affected parties.**

This standard of service will be incorporated into formal performance evaluations for all employees. Repeated failures to meet this expectation will be documented and addressed accordingly. When we delay or neglect to respond, we create barriers that ripple across departments, disrupt operations, and diminish the CSU experience for students, colleagues, stakeholders, and partners.

Our financial sustainability, academic distinction, and campus culture depend on more than strategic plans; they require a service mindset rooted in accountability, collaboration, and care. Every team, every department, and every individual contribute to the university's forward movement. We must see beyond our individual roles and realize that the way we work together determines how far we can go.

The Marauder Ethos is how we bring that mindset to life every day. Let's move forward together, united in purpose, committed to excellence, as we strive toward a brighter future.

**EXHIBIT 4**

Outlook

---

**Status of CED Phase 1 Requests for Approval Submitted on December 10, 2024**

---

**From** Ambrose Moses III <amoses@centralstate.edu>

**Date** Fri 1/10/2025 3:01 PM

**To**  Jose Toledo <jtoledo@centralstate.edu>; Alcinda Folck <afolck@centralstate.edu>; Mark Rendleman <mrendleman@centralstate.edu>

Dr. Toledo, Dr. Folck, and Mr. Rendleman:

As you know, I submitted 15 CED Phase 1 Requests for Approval to the CED Program Leader on December 10, 2024. As of the writing of this email on January 10, 2025, I have received no response, approval, denial, request for more information, or decision from the CED Program Leader.

We had a one-on-one meeting scheduled for 2 pm on Monday, January 6, 2025. This would have been an opportunity to discuss the 15 CED Phase 1 Requests for Approval. However, the CED Program Leader was a no call, no message, no show for that meeting. I waited approximately 15 minutes and then logged off.

Below is an excerpt of the report that we, as CED Extension Educators, are required to submit to the CED Program Leader. It is a list of some of the Requests for Approval that I submitted to the CED Program Leader during calendar year 2024. Many of my Requests for Approval submitted on December 10, 2024 were also submitted as early as April 22, 2024 and still have no approval or denial decision from the CED Program Leader.

Per the CED Program Leader's directives, "All CED Activity" must have prior CED Program Leader approval. This includes the CED Extension Educator's performance of essential duties and responsibilities as —

- Conducting needs assessments to identify critical issues and educational needs of targeted communities
- Developing communication and working relationships with colleagues, partners, and stakeholders within the communities
- Providing research-based educational programs and services to small businesses, entrepreneurs, and to individuals and families to assist with the creation of vibrant and sustainable communities
- Establishing relationships with faculty on campus to enhance Extension programming
- Cultivating external funding sources to enhance educational programming
- Working collaboratively with other regions and teams
- Collecting qualitative and quantitative data to evaluate the impact of programs and services
- Performing other related duties as required.

To that end, as of December 6, 2024, Phase 1 of the 3-Phase CED Approval Process is to . . .

- Respond to these questions for initial collaborator engagement approval from Program Leader:

    1. The name of the collaborating organization.

    2. Who is the main point of contact for the organization?

    3. Provide a brief description of the organization.

    4. Which CED activities are you interested in promoting.

    5. Initial collaborator engagement will be approved if no additional information is requested.

    6. If approved, schedule and conduct initial engagement with collaborator.

*Within Land-Grant and the Cooperative Extension Service, what is a reasonable amount of time to respond, ask questions, approve, or deny such a request?  Why is Franklin County being denied Land-Grant and Cooperative Extension Services?*

| Approval Requested | Approval Response | Outreach Effort | Status |
|---|---|---|---|
| 2/2/2024 | | Growing Equity Partnership Grant-Franklin County Cohort 1 | 2/2/2024 to 7/25/2024-No approval from CED PL |
| 4/22/2024 | | Columbus Urban League | 4/29, 5/6, 5/13, 5/20, 5/27, 6/3, 6/10, 6/17, 6/24-No response from CED PL |

| Date | Entity | Response |
|---|---|---|
| 4/22/2024 | SBA | 4/29, 5/6, 5/13, 5/20, 5/27, 6/3, 6/10, 6/17, 6/24-No response from CED PL |
| 4/22/2024 | Min. Aaron Hopkins | 4/29, 5/6, 5/13, 5/20, 5/27, 6/3, 6/10, 6/17, 6/24-No response from CED PL |
| 4/22/2024 | OEFFA | 4/29, 5/6, 5/13, 5/20, 5/27, 6/3, 6/10, 6/17, 6/24-No response from CED PL |
| 4/22/2024 | MBAC | 4/29, 5/6, 5/13, 5/20, 6/3, 6/10, 6/17, 6/24-No response from CED PL |
| 4/29/2024 | We Grow NES | 5/6, 5/13, 5/20, 5/27, 6/3, 6/10, 6/17, 6/24-No response from CED PL |
| 4/29/2024 | Ohio Department of Development | 5/6, 5/13, 5/20, 5/27, 6/3, 6/10, 6/17, 6/24-No response from CED PL |
| 4/29/2024 | Urban Farmers Coalition | 5/6, 5/13, 5/20, 5/27, 6/3, 6/10, 6/17, 6/24-No response from CED PL |
| 4/29/2024 | SBDC | 5/6, 5/13, 5/20, 5/27, 6/3, 6/10, 6/17, 6/24-No response from CED PL |
| 4/29/2024 | African American Chamber of Commerce | 5/6, 5/13, 5/20, 5/27, 6/3, 6/10, 6/17, 6/24-No response from CED PL |
| 5/6/2024 | Columbus Urban League | 5/13-No response from CED PL |
| 5/6/2024 | SBA | 5/13-No response from CED PL |
| 5/6/2024 | Min. Aaron Hopkins | 5/13-No response from CED PL |
| 5/6/2024 | OEFFA | 5/13-No response from CED PL |
| 5/6/2024 | MBAC | 5/13-No response from CED PL |
| 5/6/2024 | We Grow NES | 5/13-No response from CED PL |
| 5/6/2024 | Ohio Department of Development | 5/13-No response from CED PL |
| 5/6/2024 | Urban Farmers Coalition | 5/13-No response from CED PL |
| 5/6/2024 | SBDC | 5/13-No response from CED PL |
| 5/6/2024 | African American Chamber of Commerce | 5/13-No response from CED PL |
| 5/13/2024 | Columbus Urban League | 5/20-No response from CED PL |
| 5/13/2024 | SBA | 5/20-No response from CED PL |
| 5/13/2024 | Min. Aaron Hopkins | 5/20-No response from CED PL |
| 5/13/2024 | OEFFA | 5/20-No response from CED PL |
| 5/13/2024 | MBAC | 5/20-No response from CED PL |
| 5/13/2024 | We Grow NES | 5/20-No response from CED PL |
| 5/13/2024 | Ohio Department of Development | 5/20-No response from CED PL |
| 5/13/2024 | Urban Farmers Coalition | 5/20-No response from CED PL |
| 5/13/2024 | SBDC | 5/20-No response from CED PL |
| 5/13/2024 | African American Chamber of Commerce | 5/20-No response from CED PL |
| 5/20/2024 | Columbus Urban League | 5/27-No response from CED PL |
| 5/20/2024 | SBA | 5/27-No response from CED PL |
| 5/20/2024 | Min. Aaron Hopkins | 5/27-No response from CED PL |
| 5/20/2024 | OEFFA | 5/27-No response from CED PL |
| 5/20/2024 | MBAC | 5/27-No response from CED PL |
| 5/20/2024 | We Grow NES | 5/27-No response from CED PL |
| 5/20/2024 | Ohio Department of Development | 5/27-No response from CED PL |
| 5/20/2024 | Urban Farmers Coalition | 5/27-No response from CED PL |
| 5/20/2024 | SBDC | 5/27-No response from CED PL |
| 5/20/2024 | African American Chamber of Commerce | 5/27-No response from CED PL |

Complaint Exhibit 4 - 2

| | | |
|---|---|---|
| 5/27/2024 | Columbus Urban League | 6/3-No response from CED PL |
| 5/27/2024 | SBA | 6/3-No response from CED PL |
| 5/27/2024 | Min. Aaron Hopkins | 6/3-No response from CED PL |
| 5/27/2024 | OEFFA | 6/3-No response from CED PL |
| 5/27/2024 | MBAC | 6/3-No response from CED PL |
| 5/27/2024 | We Grow NES | 6/3-No response from CED PL |
| 5/27/2024 | Ohio Department of Development | 6/3-No response from CED PL |
| 5/27/2024 | Urban Farmers Coalition | 6/3-No response from CED PL |
| 5/27/2024 | SBDC | 6/3-No response from CED PL |
| 5/27/2024 | African American Chamber of Commerce | 6/3-No response from CED PL |
| 6/3/2024 | Columbus Urban League | 6/10-No response from CED PL |
| 6/3/2024 | SBA | 6/10-No response from CED PL |
| 6/3/2024 | Min. Aaron Hopkins | 6/10-No response from CED PL |
| 6/3/2024 | OEFFA | 6/10-No response from CED PL |
| 6/3/2024 | MBAC | 6/10-No response from CED PL |
| 6/3/2024 | We Grow NES | 6/10-No response from CED PL |
| 6/3/2024 | Ohio Department of Development | 6/10-No response from CED PL |
| 6/3/2024 | Urban Farmers Coalition | 6/10-No response from CED PL |
| 6/3/2024 | SBDC | 6/10-No response from CED PL |
| 6/3/2024 | African American Chamber of Commerce | 6/10-No response from CED PL |
| 6/10/2024 | Columbus Urban League | 6/17-No response from CED PL |
| 6/10/2024 | SBA | 6/17-No response from CED PL |
| 6/10/2024 | Min. Aaron Hopkins | 6/17-No response from CED PL |
| 6/10/2024 | OEFFA | 6/17-No response from CED PL |
| 6/10/2024 | MBAC | 6/17-No response from CED PL |
| 6/10/2024 | We Grow NES | 6/17-No response from CED PL |
| 6/10/2024 | Ohio Department of Development | 6/17-No response from CED PL |
| 6/10/2024 | Urban Farmers Coalition | 6/17-No response from CED PL |
| 6/10/2024 | SBDC | 6/17-No response from CED PL |
| 6/10/2024 | African American Chamber of Commerce | 6/17-No response from CED PL |
| 6/17/2024 | Columbus Urban League | 6/24-No response from CED PL |
| 6/17/2024 | SBA | 6/24-No response from CED PL |
| 6/17/2024 | Min. Aaron Hopkins | 6/24-No response from CED PL |
| 6/17/2024 | OEFFA | 6/24-No response from CED PL |
| 6/17/2024 | MBAC | 6/24-No response from CED PL |
| 6/17/2024 | We Grow NES | 6/24-No response from CED PL |
| 6/17/2024 | Ohio Department of Development | 6/24-No response from CED PL |
| 6/17/2024 | Urban Farmers Coalition | 6/24-No response from CED PL |
| 6/17/2024 | SBDC | 6/24-No response from CED PL |
| 6/17/2024 | African American Chamber of Commerce | 6/24-No response from CED PL |
| 6/24/2024 | Columbus Urban League | 7/8-No response from CED PL |
| 6/24/2024 | SBA | 7/8-No response from CED PL |
| 6/24/2024 | Min. Aaron Hopkins | 7/8-No response from CED PL |
| 6/24/2024 | OEFFA | 7/8-No response from CED PL |
| 6/24/2024 | MBAC | 7/8-No response from CED PL |
| 6/24/2024 | We Grow NES | 7/8-No response from CED PL |
| 6/24/2024 | Ohio Department of Development | 7/8-No response from CED PL |
| 6/24/2024 | Urban Farmers Coalition | 7/8-No response from CED PL |
| 6/24/2024 | SBDC | 7/8-No response from CED PL |

| | | | |
|---|---|---|---|
| 6/24/2024 | | African American Chamber of Commerce | 7/8-No response from CED PL |
| 7/8/2024 | | Columbus Urban League | 7/15-No response from CED PL |
| 7/8/2024 | | SBA | 7/15-No response from CED PL |
| 7/8/2024 | | Min. Aaron Hopkins | 7/15-No response from CED PL |
| 7/8/2024 | | OEFFA | 7/15-No response from CED PL |
| 7/8/2024 | | MBAC | 7/15-No response from CED PL |
| 7/15/2024 | | We Grow NES | 7/22-No response from CED PL |
| 7/15/2024 | | Ohio Department of Development | 7/22-No response from CED PL |
| 7/15/2024 | | Urban Farmers Coalition | 7/22-No response from CED PL |
| 7/15/2024 | | SBDC | 7/22-No response from CED PL |
| 7/15/2024 | | African American Chamber of Commerce | 7/22-No response from CED PL |
| 7/22/2024 | | Columbus Urban League | 7/29-No response from CED PL |
| 7/22/2024 | | SBA | 7/29-No response from CED PL |
| 7/22/2024 | | Min. Aaron Hopkins | 7/29-No response from CED PL |
| 7/22/2024 | | OEFFA | 7/29-No response from CED PL |
| 7/22/2024 | | MBAC | 7/29-No response from CED PL |
| **7/22/2024** | **Initial approval given on 7/25/24** | **We Grow NES** | **7/25-Approved by CED PL for GEPG** |
| 7/22/2024 | | Ohio Department of Development | 7/29-No response from CED PL |
| **7/22/2024** | **Initial approval given on 7/25/24** | **Urban Farmers Coalition** | **7/25-Approved by CED PL for GEPG** |
| 7/22/2024 | | SBDC | 7/29-No response from CED PL |
| 7/22/2024 | | African American Chamber of Commerce | 7/29-No response from CED PL |
| 7/29/2024 | | Columbus Urban League | 8/19-No response from CED PL |
| 7/29/2024 | | SBA | 8/19-No response from CED PL |
| 7/29/2024 | | Min. Aaron Hopkins | 8/19-No response from CED PL |
| 7/29/2024 | | OEFFA | 8/19-No response from CED PL |
| 7/29/2024 | | MBAC | 8/19-No response from CED PL |
| 7/29/2024 | | Ohio Department of Development | 8/19-No response from CED PL |
| 7/29/2024 | | SBDC | 8/19-No response from CED PL |
| 7/29/2024 | | African American Chamber of Commerce | 8/19-No response from CED PL |
| 8/19/2024 | | Columbus Urban League | 8/26-No response from CED PL |
| 8/19/2024 | | SBA | 8/26-No response from CED PL |
| 8/19/2024 | | Min. Aaron Hopkins | 8/26-No response from CED PL |
| 8/19/2024 | | OEFFA | 8/26-No response from CED PL |
| 8/19/2024 | | MBAC | 8/26-No response from CED PL |
| 8/19/2024 | | Ohio Department of Development | 8/26-No response from CED PL |
| 8/19/2024 | | SBDC | 8/26-No response from CED PL |
| 8/19/2024 | | African American Chamber of Commerce | 8/26-No response from CED PL |
| 8/26/2024 | | Columbus Urban League | 9/3-No response from CED PL |
| 8/26/2024 | | SBA | 9/3-No response from CED PL |
| 8/26/2024 | | Min. Aaron Hopkins | 9/3-No response from CED PL |
| 8/26/2024 | | OEFFA | 9/3-No response from CED PL |
| 8/26/2024 | | MBAC | 9/3-No response from CED PL |
| 8/26/2024 | | Ohio Department of Development | 9/3-No response from CED PL |
| 8/26/2024 | | SBDC | 9/3-No response from CED PL |
| 8/26/2024 | | African American Chamber of Commerce | 9/3-No response from CED PL |

| Date | | Organization | Status |
|---|---|---|---|
| 9/3/2024 | | Columbus Urban League | 9/3-Separate request emailed to CED PL |
| 9/3/2024 | | SBA | 9/3-Separate request emailed to CED PL |
| 9/3/2024 | | Min. Aaron Hopkins | 9/3-Separate request emailed to CED PL |
| 9/3/2024 | | OEFFA | 9/3-Separate request emailed to CED PL |
| 9/3/2024 | | MBAC | 9/3-Separate request emailed to CED PL |
| 9/3/2024 | | Ohio Department of Development | 9/3-Separate request emailed to CED PL |
| 9/3/2024 | | SBDC | 9/3-Separate request emailed to CED PL |
| 9/3/2024 | | African American Chamber of Commerce | 9/3-Separate request emailed to CED PL |
| 9/9/2024 | | Columbus Urban League | 9/4-Responded to CED PL questions |
| 9/9/2024 | 9/4-CED PL denied request | SBA | 9/4-CED PL denied outreach request |
| 9/9/2024 | | Min. Aaron Hopkins | 9/4-Responded to CED PL questions |
| 9/9/2024 | | OEFFA | 9/4-Responded to CED PL questions |
| 9/9/2024 | | MBAC | 9/4-Responded to CED PL questions |
| 9/9/2024 | | Ohio Department of Development | 9/4-Responded to CED PL questions |
| 9/9/2024 | | SBDC | 9/4-Responded to CED PL questions |
| 9/9/2024 | | African American Chamber of Commerce | 9/9-No response from CED PL |
| 9/16/2024 | | Columbus Urban League | 9/16-Awaiting reply from CED PL |
| 9/16/2024 | | Min. Aaron Hopkins | 9/16-Awaiting reply from CED PL |
| 9/16/2024 | | OEFFA | 9/16-Awaiting reply from CED PL |
| 9/16/2024 | | MBAC | 9/16-Awaiting reply from CED PL |
| 9/16/2024 | | Ohio Department of Development | 9/16-Awaiting reply from CED PL |
| 9/16/2024 | | SBDC | 9/16-Awaiting reply from CED PL |
| 9/16/2024 | | African American Chamber of Commerce | 9/16-Awaiting reply from CED PL |
| 9/23/2024 | | Columbus Urban League | 9/23-Awaiting reply from CED PL |
| 9/23/2024 | | Min. Aaron Hopkins | 9/23-Awaiting reply from CED PL |
| 9/23/2024 | | OEFFA | 9/23-Awaiting reply from CED PL |
| 9/23/2024 | | MBAC | 9/23-Awaiting reply from CED PL |
| 9/23/2024 | | Ohio Department of Development | 9/23-Awaiting reply from CED PL |
| 9/23/2024 | | SBDC | 9/23-Awaiting reply from CED PL |
| 9/23/2024 | | African American Chamber of Commerce | 9/23-Awaiting reply from CED PL |
| 9/30/2024 | | Columbus Urban League | 9/30-Awaiting reply from CED PL |
| 9/30/2024 | | Min. Aaron Hopkins | 9/30-Awaiting reply from CED PL |
| 9/30/2024 | | OEFFA | 9/30-Awaiting reply from CED PL |
| 9/30/2024 | | MBAC | 9/30-Awaiting reply from CED PL |
| 9/30/2024 | | Ohio Department of Development | 9/30-Awaiting reply from CED PL |
| 9/30/2024 | | SBDC | 9/30-Awaiting reply from CED PL |
| 9/30/2024 | | African American Chamber of Commerce | 9/30-Awaiting reply from CED PL |
| 10/7/2024 | | Columbus Urban League | 10/7-Awaiting reply from CED PL |
| 10/7/2024 | | Min. Aaron Hopkins | 10/7-Awaiting reply from CED PL |
| 10/7/2024 | | OEFFA | 10/7-Awaiting reply from CED PL |

| | | |
|---|---|---|
| 10/7/2024 | MBAC | 10/7-Awaiting reply from CED PL |
| 10/7/2024 | Ohio Department of Development | 10/7-Awaiting reply from CED PL |
| 10/7/2024 | SBDC | 10/7-Awaiting reply from CED PL |
| 10/7/2024 | African American Chamber of Commerce | 10/7-Awaiting reply from CED PL |
| 10/14/2024 | Columbus Urban League | 10/14-Awaiting reply from CED PL |
| 10/14/2024 | Min. Aaron Hopkins | 10/14-Awaiting reply from CED PL, on 10/11 Stakeholder was referred to me for Technical Assistance by ANR Educator |
| 10/14/2024 | OEFFA | 10/14-Awaiting reply from CED PL |
| 10/14/2024 | MBAC | 10/14-Awaiting reply from CED PL |
| 10/14/2024 | Ohio Department of Development | 10/14-Awaiting reply from CED PL |
| 10/14/2024 | SBDC | 10/14-Awaiting reply from CED PL |
| 10/14/2024 | African American Chamber of Commerce | 10/14-Awaiting reply from CED PL |
| 10/21/2024 | Columbus Urban League | 10/21-Awaiting reply from CED PL |
| 10/21/2024 | Min. Aaron Hopkins | 10/21-Awaiting reply from CED PL |
| 10/21/2024 | OEFFA | 10/21-Awaiting reply from CED PL |
| 10/21/2024 | MBAC | 10/21-Awaiting reply from CED PL |
| 10/21/2024 | Ohio Department of Development | 10/21-Awaiting reply from CED PL |
| 10/21/2024 | SBDC | 10/21-Awaiting reply from CED PL |
| 10/21/2024 | African American Chamber of Commerce | 10/21-Awaiting reply from CED PL |
| 10/28/2024 | Columbus Urban League | 10/28-Awaiting reply from CED PL |
| 10/28/2024 | Min. Aaron Hopkins | 10/28-Awaiting reply from CED PL |
| 10/28/2024 | OEFFA | 10/28-Awaiting reply from CED PL |
| 10/28/2024 | MBAC | 10/28-Awaiting reply from CED PL |
| 10/28/2024 | Ohio Department of Development | 10/28-Awaiting reply from CED PL |
| 10/28/2024 | SBDC | 10/28-Awaiting reply from CED PL |
| 10/28/2024 | African American Chamber of Commerce | 10/28-Awaiting reply from CED PL |
| 10/28/2024 | Columbus City Council | |
| 10/28/2024 | Franklin County Commissioners | |
| 10/28/2024 | U.S. Small Business Administration | |
| 11/11/2024 | Columbus Urban League | 11/11-Awaiting reply from CED PL |
| 11/11/2024 | Min. Aaron Hopkins | 11/11-Awaiting reply from CED PL |
| 11/11/2024 | OEFFA | 11/11-Awaiting reply from CED PL |
| 11/11/2024 | MBAC | 11/11-Awaiting reply from CED PL |
| 11/11/2024 | Ohio Department of Development | 11/11-Awaiting reply from CED PL |
| 11/11/2024 | SBDC | 11/11-Awaiting reply from CED PL |
| 11/11/2024 | African American Chamber of Commerce | 11/11-Awaiting reply from CED PL |
| 11/11/2024 | Columbus City Council | 11/11-Awaiting reply from CED PL |
| 11/11/2024 | Franklin County Commissioners | 11/11-Awaiting reply from CED PL |
| 11/11/2024 | U.S. Small Business Administration | 11/11-Awaiting reply from CED PL |
| 11/18/2024 | Columbus Urban League | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | Min. Aaron Hopkins | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | OEFFA | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | MBAC | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | Ohio Department of Development | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | SBDC | 11/18-Awaiting reply from CED PL |

| | | |
|---|---|---|
| 11/18/2024 | African American Chamber of Commerce | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | Columbus City Council | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | Franklin County Commissioners | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | U.S. Small Business Administration | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | Jodi Spencer | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | Ava Johnson | 11/18-Awaiting reply from CED PL |
| 11/18/2024 | Guy Emmons | 11/18-Awaiting reply from CED PL |
| 12/2/2024 | Columbus Urban League | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | Min. Aaron Hopkins | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | OEFFA | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | MBAC | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | Ohio Department of Development | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | SBDC | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | African American Chamber of Commerce | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | Columbus City Council | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | Franklin County Commissioners | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | U.S. Small Business Administration | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | Jodi Spencer | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | Ava Johnson | 12/2-Awaiting reply from CED PL |
| 12/2/2024 | Guy Emmons | 12/2-Awaiting reply from CED PL |
| 12/9/2024 | Columbus Urban League | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | Min. Aaron Hopkins | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | OEFFA | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | MBAC | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | Ohio Department of Development | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | SBDC | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | African American Chamber of Commerce | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | Columbus City Council | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | Franklin County Commissioners | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | U.S. Small Business Administration | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | Jodi Spencer | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | Ava Johnson | 12/9-Awaiting reply from CED PL |
| 12/9/2024 | Guy Emmons | 12/9-Awaiting reply from CED PL |
| 12/10/2024 | Growing Equity Partnership Grant Program Series | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Small Business Education Series | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Central Ohio African American Chamber of Commerce (COAACC) | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Ava Johnson | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Jodi Spencer | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | U.S. Small Business Administration (SBA) Columbus District Office | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Franklin County Board of Commissioners | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Columbus City Council | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Ohio Department of Development | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Small Business Development Center (SBDC) at Columbus State Community College | 12/10-Awaiting reply from CED PL |

| | | |
|---|---|---|
| 12/10/2024 | Minority Business Assistance Center (MBAC) | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Ohio Ecological Food and Farm Association (OEFFA) | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | South Side Family Farms | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Columbus Urban League | 12/10-Awaiting reply from CED PL |
| 12/10/2024 | Guy Emmons | 12/10-Awaiting reply from CED PL |
| 1/6/2025 | Growing Equity Partnership Grant Program Series | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Small Business Education Series | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Central Ohio African American Chamber of Commerce (COAACC) | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Ava Johnson | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Jodi Spencer | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | U.S. Small Business Administration (SBA) Columbus District Office | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Franklin County Board of Commissioners | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Columbus City Council | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Ohio Department of Development | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Small Business Development Center (SBDC) at Columbus State Community College | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Minority Business Assistance Center (MBAC) | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Ohio Ecological Food and Farm Association (OEFFA) | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | South Side Family Farms | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Columbus Urban League | 1/6-Awaiting reply from CED PL |
| 1/6/2025 | Guy Emmons | 1/6-Awaiting reply from CED PL |

**There are serious systemic concerns within Central State University, its 1890 Land-Grant Programs, the Cooperative Extension Service, and the Community & Economic Development program area which are an impediment to the delivery of 1890 Land-Grant mission-based, Cooperative Extension Services to the residents and communities of Ohio.**

**Please understand, there is damage that has been caused by the above-documented failure to approve the delivery of Cooperative Extension Services in Franklin County, Ohio.** And that damage is compounded by the University's recent placement under fiscal watch. The University's Extension Educators are the front line, face, and professional educational service providers. Think about the core structure in the early days . . . Tuskegee Institute, Booker T. Washington, George Washington Carver, Thomas Monroe Campbell. From that you got the Jessup Wagon and the Movable School.

Please share your guidance and leadership on the matters set forth above. **My next report is due Monday, January 13, 2025**. Thank you.

Respectfully,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu** | www.CentralState.edu/csuextension



State of Ohio
State Personnel Board of Review
65 East State Street, 12th Floor
Columbus, Ohio 43215
(614) 466-7046 (voice)
(614) 466-6539 (fax)
spbr@spbr.ohio.gov



*EXHIBIT 5*

# NOTICE OF APPEAL / REQUEST FOR INVESTIGATION

Please **do not submit** any confidential, proprietary or sensitive personally identifiable information (e.g., **social security number; date of birth; driver's license number; medical records; or credit card, bank account or other financial information**). **Please redact this information from exhibits where necessary.**

| 1. Name of Appellant (individual filing appeal / request for investigation): |||
|---|---|---|
| Ambrose Moses III |||
| **Address:** <br> 7888 Danbridge Way | **Telephone:** <br> (614) 432-4300 | **Fax:** <br> ( ) |
| **City, State, ZIP** <br> Westerville, Ohio 43082 | **Email:** <br> AmbroseMoses@gmail.com ||
| 2. Name of Appellee (employer, agency, department, board, commission): |||
| Central State University |||
| **Address:** <br> 1400 Brush Row Road | **Telephone:** <br> (937) 376-6013 | **Fax:** <br> ( ) |
| **City, State, ZIP** <br> Wilberforce, Ohio 45384-1004 | **Email:** <br> lwilson@centralstate.edu ||

3. **Reason(s) for filing:**

Notice is hereby given that Appellant appeals to the State Personnel Board of Review from the Order or Notice of: (☑ all that apply; each checkmark will be assigned a separate case number)

- ☒ Removal
- ☐ Transfer
- ☒ Investigation
- ☒ Other: <br>   Abuse of Power

- ☐ Layoff
- ☐ Abolishment
- ☐ Reclassification
- ☒ Suspension: (☑ one)
  - ☐ Working
  - ☒ Non-Working
  - 5 # of Days

- ☐ Reduction in Pay or Position
- ☐ Fine
- ☐ Involuntary Disability Separation
  - ☐ Failure to Reinstate from IDS
- ☒ Retaliatory Discipline: (☑ all that apply)
  - ☒ Whistleblower
  - ☐ Health and Safety (includes OSHA and Public Employment Risk Reduction Program)

| 4. When did you receive notice of the action being appealed? |
|---|
| January 31, 2025 |
| **5. When was the action being appealed effective?** |
| January 31, 2025 |

If applicable:

| 6. Name of Attorney for Appellant: |||
|---|---|---|
| | ||
| **Address:** | **Telephone:** <br> ( ) | **Fax:** <br> ( ) |
| **City, State, ZIP** | **Email:** ||

Pursuant to Ohio Administrative Code Section 124-5-01, this appeal / request for investigation must be filed in writing with the State Personnel Board of Review. The completed document may be hand-delivered, sent by regular USPS mail or courier service, sent by fax or sent by electronic mail to the address at the top of the form.

Revised (12/24)

Page 1 of 1

EXHIBIT 1

**CENTRAL STATE UNIVERSITY**

**OFFICE OF HUMAN RESOURCES**
PO BOX 1004 ⬧ WILBERFORCE OH 45384 ⬧ 937-376-6540 ⬧ FAX 937-376-6245

**VIA Campus Email and US Mail**

January 31, 2025

Ambrose Moses, III
7888 Danbridge Way
Westerville, Ohio 43082

**SUBJ:** Discharge/Termination of Employment

A pre-disciplinary meeting was held on Friday, January 17, 2025, regarding misconduct and insubordination concerning the following:

- Advanced approval is required from the Program Leader regarding all program activities.

- Per program leader directive, class instruction is to be in-person only. However, class instruction was revised as hybrid without approval and subsequently, referenced classes will be taught as hybrid

After the meeting, you were provided with an opportunity to respond to the issues noted above as well as provided an opportunity to respond in writing. I received your response and supporting documentation on January 22, 2025.

I have had an opportunity to review your response and review the documentation concerning misconduct and insubordination. It is my recommendation to terminate your employment effective immediately.

Any CSU property must be returned to the University (University ID, ProCard, laptop, monitors, charging cord(s), keyboard, mouse, camera, tablet, cell phone, and printer). Please plan for all University property to be returned on or by February 7, 2025. Contact Cynthia Michael, CSU Auxiliary Director, cmichael@centralstate.edu for instruction to return your equipment. Failure to do so may result in the cost of replacement.

Any accrued unused vacation **calculated** at the time of your termination will be paid to you on February 28, 2025, via direct deposit to the bank account we have on file.

Please be sure to contact Human Resources if you have a change of address. As a terminating employee, you should be aware that your benefits (if applicable) will end on January 31, 2025. You will receive information in the mail within the next few weeks regarding continuation of coverage under COBRA for medical and other applicable benefits.

Page **1** of **2**

**CENTRALSTATE.EDU**

PHYSICAL ADDRESS
1400 BRUSH ROW ROAD ⬧ WILBERFORCE, OH 45384-1004

*Service...Protocol...Civility*

In addition, it is my understanding that you were appointed to the National Association of Community Development Extension Professionals (NACDEP) Board. Please know that if you remain on the NACDEP Board after your termination, your continued appointment should not reference any continued employment at or affiliation with Central State University.

We wish you well in your future endeavors.

Best Wishes,

Shau'De B. Knight, DBA, MLS
Assistant Director of Human Resources

**CC:** Mark Rendleman, Program Leader, Research and Economic Development and 1890 Land
Grant Programs
Alcinda Folck, Associate Director Extension, Research and Economic Development and 1890 Land Grant Programs

I concur with the recommendation to terminate the employment of Ambrose Moses, III.

| | |
|---|---|
| _Morakinyo Kuti_ | Jan 31, 2025 |
| _____ | _____ |
| Dr. Morakinyo A. O. Kuti, | Date |
| President, Central State University | |

I acknowledge the receipt of this communication.

_____         _____
Employee Signature                                         Date

Page **2** of **2**



**EXHIBIT 2**

**Position Statement**
**In the Matter of the Pre-Disciplinary Hearing Regarding Alleged Insubordination /**
**Misconduct**

*"It is definitely time to circle the wagons."*
-Mark Rendleman to Alcinda Folck
January 9, 2024

### I. My Protected Activity and the University's Efforts to "Circle the Wagons"

I, **Ambrose Moses III**, submit this Position Statement in response to the Pre-disciplinary Meeting Notice I received on January 16, 2025 and the Pre-disciplinary meeting conducted on January 17, 2025 ("pre-disciplinary process") by Shau'De Knight, Assistant Director, Human Resources at Central State University.

Context matters. This "pre-disciplinary process" is a sham and was initiated in bad faith. It is retaliatory. It is part of a system of administrative failure that maintains a hostile work environment at Central State University. Let me show you.

On January 9, 2024, CED Program Leader Mark Rendleman expressed coordinated, retaliatory, and hostile actions and inactions by University management and leadership when he wrote to Interim Associate Administrator of Extension Alcinda Folck, **"It is definitely time to circle the wagons."**

> Good morning,
> Cindy, as I told you previously, I'm headed to Findley, Ohio today for second interviews with two prospects.
>
> I wanted to forward to you this email from Ambrose. He sent it to my entire group upon returning after the holidays. I have not responded to it yet. Instead, focusing on catching up with carried over responsibilities accumulated during my holiday vacation. I intend to prepare a response by the end of this week.
>
> I will also be forwarding a second chain of emails from Amber. They both are locked in a disruption mode to start out this new year. It is definitely time to circle the wagons. Her response will also be completed by the end of this week.
>
> Otherwise, all is well.
>
> Mark Rendleman, MBA
> *State Program Leader, Community and Economic Development*

The question is, **"Who are the others that are "circling wagons" with Mr. Rendleman and Dr. Folck?"** Based on their words, actions, and inactions in 2024, at a minimum, the circling wagons include **CED Program Leader** Mark Rendleman, **Associate Administrator of Extension** Alcinda Folck, **Director of Human Resources** Pamela Bowman, **Assistant Director of Human Resources** Shau'De Knight, **Vice President of Economic Development and Director of 1890 Land-Grant Programs** Morakinyo Kuti (Dr. Kuti is currently University President).

Page **1** of **16**

Mr. Rendleman and some of the others with whom he is circling the wagons, were also co-defendants in the federal lawsuit I filed against them in 2024.

As a detailed history and context of this matter prior to July 2024, I incorporate herein by reference the **Amended Complaint** filed in the federal lawsuit, *Moses v. Central State University, et al.*, U.S. District Court, (SD Ohio), Case No. 2:24-CV-03130.  See **Exhibit A**, attached hereto.

The **Amended Complaint** provides a detailed, factual account evidencing misuse of state and federal resources intended to support Central State University's 1890 Land-Grant mission, retaliation, and a hostile work environment maintained by Mr. Rendleman, Dr. Folck, Ms. Bowman, Dr. Kuti, and others, who were named as co-defendants in their official and individual capacities.  The Amended Complaint also details **my protected activity**, including but not limited to, First Amendment expressions, filing complaints under University policies, submitting multiple whistleblower reports, participating in a formal investigation, and prosecution of the civil rights lawsuit.  (I voluntarily dismissed the lawsuit without prejudice on December 9, 2024.)

## Growing Equity Partnership Grant

So, let's talk about the Growing Equity Partnership Grant (GEPG) project.  That is the project I successfully delivered in Franklin County, Ohio, which I shared with Mr. Rendleman and leadership via my status report dated October 24, 2024.

Prior to, and during, the Pre-disciplinary Meeting on January 17, 2025, I asked Dr. Knight to provide me with all of the records that have been provided to her concerning this matter.  She shared 7 partial email threads from Mark Rendleman going back as far as July 2023, 1 email thread from Yu-Lu Hsiung, and a performance improvement plan.

The partial email threads are incomplete, don't provide an accurate factual narrative that a neutral and unbiased human resources department can use as it conducts an objective review of the matter as it relates to Central State University's Professional Code of Conduct, Policies, Procedures, 1890 Land-Grant Mission, and state and federal law.  I have attached the complete email threads for each of the partial email threads provided by Dr. Knight.  See Exhibits ___.

So, GEPG.  Here it is.

On **February 2, 2024**, Mr. Rendleman, via email, shared with the CED Team that we had received a Growing Equity Partnership Grant to provide business and technical assistance (BTA) to underserved producers.  The email described the curriculum, the assigned territories for each CED Extension Educator (Ambrose was assigned Greater Columbus area and SE Region), and a timetable.  **Importantly, there was no in-person only requirement in the assignment from Mr. Rendleman.**

In fact, when reviewing the official materials from the funder, the funder expected that there might be online or virtual of the BTA delivered by the GEPG partners.

The Timetable in Mr. Rendleman's February 2, 2024 email stated "Commence your coordination with me, identifying proposed partners by **Friday, February 9, 2024**."

It is important to note that the Covid-19 emergency had ended and we had added new CED staff.  I was excited about the opportunity to implement the GEPG project.  I saw it as an opportunity to get back out there with our new tools (ie Microsoft Teams, new content modules, etc.) and increased capacity (ie more CED staff) that we had built during the Covid-19 emergency.

The Covid-19 pandemic limited our face-to-face engagement with the community.  However, because the Covid-19 pandemic forced people to learn more about online communications such as Zoom and Microsoft Teams, their desire and preference for more flexibility in the delivery of Extension education had changed.  They now wanted and needed access to online options for engaging with Extension Educators.  This, also, was exciting because **the CED Team had developed a successful hybrid delivery model for Extension education consisting of simultaneous in-person and online engagement**.  We were becoming nationally recognized (and even received an award) within the **National Association of Community Development Professionals (NACDEP)** via our presentations and sharing at national conferences about what Central State University was doing with hybrid and online programs like "**Ready, Set, Grow: Agriculture**" and "**CED Office Hour Live**".   See the Amended Complaint, Exhibit __.

On **February 2, 2024**, I submitted my "**Proposed Partner Plan for Greater Columbus and the Southeast Region**".  I submitted my proposed plan ahead of the **February 9, 2024 deadline**.  To my knowledge, I was the first CED Extension Educator to submit his proposed plan to Mr. Rendleman.  Over the next 6 months, I answered all of the questions, gave all of the clarifications, adapted to all of the changes in territories, changes in delivery methods, and confusion of the communications that Mr. Rendleman imposed.  Despite all of this, Mr. Rendleman, without just cause or explanation, delayed, delayed, and delayed some more concerning granting approval for me to do the Growing Equity Partnership Grant project in Franklin County, Ohio.  I documented and reported these delays and Mr. Rendleman's failure to conduct one-on-one meetings with me to Dr. Kuti.

**It was not until July 25, 2024 that Mr. Rendleman gave his approval for me to implement the GEPG in Franklin County, Ohio**.

To my knowledge, Dr. Kuti did not require his Extension management and leadership personnel (i.e. Dr. Folck and Mr. Rendleman) immediately to cease the delays and to also begin attending the one-on-one meetings.

**To this day, Mr. Rendleman has refused and otherwise failed to attend most of our scheduled one-on-one meetings, doing so only sporadically and engaging in no substantive, supportive, leadership, mentoring, or guiding Program Leader-to-Extension Educator engagment.  During the last one-on-one meeting Mr. Rendleman attended with me, he didn't want to, and intentionally didn't talk about my pending requests for approval or any concerns he had about the Growing Equity Partnership Grant project, the GEPG status report is shared with him on October 24, 2024, or anything else about my work performance or work product. This occurred on Tuesday, November 26, 2024 at 12:04 p.m.**

In the **Final Investigation Report**, the investigator Jennifer McHugh found that Mr. Rendleman often was delayed in responding or nonresponsive to requests for approval or other actions as CED Program Leader.  Ms. McHugh reported that Mr. Rendleman was even significantly delayed in responding to her requests for information from him. See Final Investigation Report dated October 31, 2024, Exhibit ___.

On June 17, 2024, Mr. Rendleman emailed me indicating that he had reviewed my Growing Equity Partnership Grant project proposal that was submitted to him **three months** earlier on **March 15, 2024**.  He provided feedback, and changed the requirements of the program to include that the teachings will be in-person only.  No virtual.

> Following are other points that need to be changed in your planned activity:
> 1. Don't rename the CSUE CED's "Growing Equity Partnership Grant Initiative."
> 2. Your participation with this grant initiative will be focused solely on Franklin County, Ohio.
> 3. Your teachings will be in-person, only.  No virtual.

On June 22, 2024, I responded to Mr. Rendleman's feedback and stated "**Ok, but this is likely to decrease the reach and impact of the project.**"

> Following are other points that need to be changed in your planned activity:
> 1. Don't rename the CSUE CED's "Growing Equity Partnership Grant Initiative." Ok
> 2. Your participation with this grant initiative will be focused solely on Franklin County, Ohio. This was already addressed in the previous versions of the proposal.
> 3. Your teachings will be in-person, only.  No virtual. Ok, but this is likely to decrease the reach and impact of the project.

Page **4** of **16**

On July 25, 2024, Mr. Rendleman granted initial approval to proceed with my Growing Equity Partnership Grant Participation, as follows:



**IMPORTANT NOTE:**  Mr. Rendleman's approval on July 25, 2024 and detailed description of what was to be included changed again.  The new description DID NOT list in-person only as a requirement.  The scope and details of the GEPG requirements from Mr. Rendleman changed multiple times throughout 2024.

Page **5** of **16**

On August 20, 2024, I submitted the GEPG program series into EPARS for Mr. Rendleman's approval.

On August 23, 2024, Mr. Rendleman gave his subsequent approval of the GEPG program series and moved it into "Published" status.

I prepared a flyer and circulated to the approved partners.  The flyer indentified the location and included a link and QR code for registration.



On September 10, 2024, I attended the in-person only event.  While we had registrations, there was zero participants in attendance.

On September 11, 2024, I emailed the two approved partners to gather information and evaluate options to increase participant attendance and engagement.

On Wed, Sep 11, 2024 at 12:58 PM Ambrose Moses III <amoses@centralstate.edu> wrote:

**Dear Julialynne and David:**

Good afternoon. I wanted to provide an update on the **Growing Equity Partnership Grant (GEPG) - Cohort 1** series that began last night, and also ask for your feedback and suggestions on how we can improve engagement moving forward.

**Session 1 Overview:**

- **Number of Registrations**: 4
- **Number of Attendees**: 0

While we had four participants registered for the first session on September 10, 2024, no one attended in person. I believe there may be some barriers to participation that we can address as we continue with the program. In light of this, I'm considering some adjustments to the format to better accommodate participants, such as adding a virtual option to make the sessions more accessible.

**Request for Feedback:**

I would greatly value your input as a partner in this initiative. Specifically:

1. **Do you have any insights on why participants may not have attended, despite registering?**
2. **What strategies would you suggest to increase attendance and engagement for future sessions?**
3. **Would you recommend offering a hybrid format (in-person and virtual) to give participants more flexibility?**

Your feedback will be incredibly helpful as I work to ensure that this program meets the needs of our community and delivers the intended impact.

I appreciate your partnership and look forward to hearing your thoughts.

**Sincerely,**

Ambrose Moses III

//outlook.office.com/mail/id/AAMkADBjNzQ0ZWQ2LWZjNGEtNDhhOS04YjE3LWE4ZThiMzc3MGZiNgBGAAAAAABvVj%2FKw7I6TlUNF17QyHJ...  2/3

25, 3:41 PM                                      Mail -Ambrose Moses III - Outlook

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

amoses@CentralState.edu| www.CentralState.edu/csuextension

Page **7** of **16**

Complaint Exhibit 5 - 10

On September 11, 2024, I emailed Mr. Rendleman to report the situation and propose a solution based upon what we (CSU Extension) had done in Zanesville, Ohio (Muskingum County) when we pivoted from in-person to successfully add a hybrid (simultaneous in-person and online) component to the Ready, Set, Grow!: Agriculture program series.  To date, Mr. Rendleman has not replied to my email or request.



On September 11, 2024, one of our approved partners emailed me, explained about the health care concerns, and other challenges that registrants had. The partner thought that adding an online option would be helpful.

**From:** David Harvan <davidharvan19@gmail.com>
**Sent:** Wednesday, September 11, 2024 1:43 PM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Cc:** info@bronzevillegrowersmarket.com <info@bronzevillegrowersmarket.com>
**Subject:** Re: GEPG Program Update and Request for Feedback

CAUTION: This email originated from outside Central State University. Do not click links or open attachments unless you recognize the sender and know the content is safe.

://outlook.office.com/mail/id/AAMkADBjNzQ0ZWQ2LWZjNGEtNDhhOS04YjE3LWE4Z7hMzz3MG2iNyBGAAAAAAB9VjXj22Kw7i66TUUNFH7QyHU...   1

25, 3:41 PM                                                        Mail - Ambrose Moses III - Outlook

Hi Ambrose,

I would recommend adding a virtual component. It is better to have it than not I believe.
I was contacted by a few people yesterday as to why they were absent. Some of it was health care related, and some was unexpected commitments came up. Hopefully thise two cases will dissolve going forward. As for the absences, I do not know why currently
To increase future presence, I think advertising in places where people already go and engage is critical. The HCC is going to advertise our flyer for us, but I think it would be beneficial for someone to go to the HCC classes and remind people in person. I think that is a bit more effective on retention.

David

On September 17, 2024, after receiving no response, support, guidance, or assistance from Mr. Rendleman, I made a professional judgment call to pivot and begin delivering the GEPG sessions via a hybrid (i.e. simultaneously in-person and online) so that I, as an Extension Educator, and in the performance of the essential duties in my job description, could continue serving the University's 1890 Land-Grant mission, adapt to the identified needs of the underserved community we are serving, and to build the relationship that the CED Team had begun with Capital One Bank and the Capital One Café system. It was was also an opportunity to gather data on community participation in hybrid program activities so that our CED program area and other program areas could evaluate and learn from the experience.

**Session Attendance Breakdown**

1. Business Mission/Vision: 5 participants (1 in-person, 4 online)
2. Business Structures: 6 participants (1 in-person, 5 online)
3. Business Planning: 2 participants (1 in-person, 1 online)
4. Business Marketing: 4 participants (0 in-person, 4 online)
5. Business Records & Finance: 1 participant (0 in-person, 1 online)
6. Business Operations: 4 participants (0 in-person, 4 online)

Page **9** of **16**

On September 24, 2024, I reported during our CED Team meeting that I was doing the GEPG Cohort 1 in Franklin County.  Mr. Rendleman asked no questions and expressed no concerns about the GEPG.

On September 30, 2024, Mr. Rendleman was a no call, no show for our scheduled one-on-one meeting.

On October 4, 2024, during the performance appraisal meeting that was over 90 days late, Mr. Rendleman and Dr. Knight did not ask any questions or express any concerns about the GEPG.

On October 24, 2024, I submitted a project status report to CED Program Leader Mark Rendleman to inform him of the program success, share the outcomes, and recommend some things that we, as a CED Team, might want to explore and evaluate as we look to grow and improve our Extension education services and the performance of the Central State University 1890 Land-Grant mission.

---

## II. Context Matters.

1. **This Situation is Not Occurring in a Vacuum**
   The allegations in this pre-disciplinary action must be evaluated within the broader framework of the documented **administrative failure**, **retaliation**, and a **hostile work environment** at in the Community & Economic Development program area of Central State University's Cooperative Extension Service, which has continued unabated even to the current time.

2. As detailed in **Exhibit A (Amended Complaint)**, the environment is marked by:

   - **Retaliatory Motives**: University officials turning a blind eye to or outright condoning retaliatory behaviors.

   - **Selective Enforcement**: Under the direction of Human Resources leadership, including Ms. Pamela Bowman, the Professional Code of Conduct is enforced selectively against employees like me but not applied to supervisors, management, or leadership.

   - **Failure to Provide Approvals**: Numerous requests for program activity approvals have lingered without response.

3. **Professional Code of Conduct and Supervisory Obligations**

   - **CSU Policy 607.1 and Other Policies**: Although the University's Professional Code of Conduct applies to "all employees," there is little

Page **10** of **16**

Complaint Exhibit 5 - 13

evidence that it has been enforced against supervisors or leadership for failures in communication, timeliness, and fair dealing.

- o **Administrative Failures**: Beyond the present matter, there is a consistent pattern of **unresponsiveness** and **delays** from the CED Program Leader (Mr. Rendleman) and Human Resources regarding legitimate requests, complaints, and appeals.

4. **Contrived Disciplinary Process**

- o **Misuse of Process**: As addressed in more detail below, the University's Human Resources Department and Mr. Rendleman have initiated a "pre-disciplinary hearing" against me without fully understanding or explaining the alleged "documented advance approval process," now suddenly titled the "3-Phase CED Approval Process".

- o **Continuing Retaliation**: These actions represent yet another retaliatory measure intended to create a hostile work environment, especially in light of my whistleblower complaints, ethical dilemma reports, and federal litigation.

---

## III. Protected Activity

1. **Overview**
   I have engaged in various forms of protected activity, including but not limited to:

   - o **Filing Formal Complaints & Grievances**

   - o **Participating in Internal and External Investigations**

   - o **Submitting Whistleblower Reports at State and Federal Levels**

   - o **Initiating and Prosecuting Federal Civil Rights Claims** (*Exhibit A*)

2. **Specific Actions**

   - o **Federal Litigation**: *Moses v. Central State University, et al.*, Case No. 2:24-CV-03130 (voluntarily dismissed without prejudice but with the option to re-file) exposed claims of retaliation and a hostile work environment.

   - o **October 14, 2024 Formal Complaint**: Submitted to the Department of Human Resources, alleging dishonesty, falsification of public records, retaliation, harassment, and hostile work environment against Mr. Rendleman and others—no meaningful action to date.

   - o **Whistleblower and Ethical Dilemma Reports**: Submitted to Dr. Jose Toledo (January 6, 2025) and University General Counsel (October 14, 2024 & January 6, 2025), detailing unethical conduct and retaliation.

Page **11** of **16**

Complaint Exhibit 5 - 14

3. **Relevance**
   These protected activities **precede** the current disciplinary action, suggesting that the true motivation behind this proceeding is **retaliation** rather than legitimate performance or conduct concerns.

---

## IV. Request for Independent, Impartial Pre-Disciplinary Hearing

1. **Conflict of Interest in HR**

   o **Named Defendant**: The Director of Human Resources, Ms. Pamela Bowman, was a defendant in my federal lawsuit (Exhibit A) and testified in the State Personnel Board of Review (Case No. 2023-WHB-04-00069). This creates a direct **conflict of interest** and undermines the integrity of HR's role in investigating or adjudicating these claims.

   o **Unprocessed Complaints**: Despite filing a **Formal Complaint** on October 14, 2024 (see above), I have received **no formal decision or follow-up** as mandated by CSU Policy 607.1.

2. **Sham Nature of the Hearing**

   o **Lack of Inquiry**: During the January 17, 2024 pre-disciplinary hearing, the Assistant Director of Human Resources admitted an unwillingness to understand the "CED Approval Process" central to the alleged policy violation.

   o **Form Over Substance**: The HR representative explicitly stated they did not need to explore the specifics of the "work rule," effectively **disregarding** the factual context needed to determine whether actual insubordination occurred.

3. **Formal Request**
   **I formally request** that this matter be referred to an **external, independent, and impartial pre-disciplinary hearing officer or entity** to ensure **due process**, given the existing conflict of interest, lack of impartiality, and the ongoing retaliation.

---

## V. "Good Cause" in the Context of Insubordination

1. **Policy No. 608**

   o **Definition**: Insubordination is the "refusal or failure **without good cause** to accept or perform job assignments as directed by the supervisor."

Page **12** of **16**

Complaint Exhibit 5 - 15

- o **Misconduct Not Defined**: The term "misconduct" does not appear in Policy 608; the Assistant Director of HR conflated "misconduct" with "insubordination" despite no definition or separate policy basis.

2. **Good Cause Explained**
   "Good cause" exists where there is a **legitimate, documented, and reasonable basis** for any alleged "refusal" or "failure," such as when:

   - o The instruction or "work rule" is unclear, inconsistently applied, or **never provided** despite repeated requests.

   - o The employee's action (e.g., a hybrid program format) is demonstrably aligned with **University goals**, **best practices**, and the **1890 Land-Grant mission**.

3. **Application to My Case**

   - o **No Refusal Without Cause**: I proposed a hybrid model for GEPG only **after** seeing zero attendance for the in-person session. This is a logical, mission-oriented response—**not** a refusal to follow directions.

   - o **Shifting Approval Process**: Mr. Rendleman has changed or failed to clarify the approval process (Exhibit F and Exhibit I), rendering it nearly impossible to comply with a "rule" that remains undefined or retroactively altered.

---

## *VI. Professional Code of Conduct

1. **Policy No. 608**

   - o **Definition**: Insubordination is the "refusal or failure **without good cause** to accept or perform job assignments as directed by the supervisor."

   - o **Misconduct Not Defined**: The term "misconduct" does not appear in Policy 608; the Assistant Director of HR conflated "misconduct" with "insubordination" despite no definition or separate policy basis.

2. **Good Cause Explained**
   "Good cause" exists where there is a **legitimate, documented, and reasonable basis** for any alleged "refusal" or "failure," such as when:

   - o The instruction or "work rule" is unclear, inconsistently applied, or **never provided** despite repeated requests.

Complaint Exhibit 5 - 16

- o The employee's action (e.g., a hybrid program format) is demonstrably aligned with **University goals**, **best practices**, and the **1890 Land-Grant mission**.

3. **Application to My Case**

- o **No Refusal Without Cause**: I proposed a hybrid model for GEPG only **after** seeing zero attendance for the in-person session. This is a logical, mission-oriented response—**not** a refusal to follow directions.

- o **Shifting Approval Process**: Mr. Rendleman has changed or failed to clarify the approval process (Exhibit F and Exhibit I), rendering it nearly impossible to comply with a "rule" that remains undefined or retroactively altered.

---

## VII. Duties & Obligations of the Supervisor

1. **Requirement to Provide Clear, Timely Decisions**
Supervisors have an obligation to respond promptly to requests for approvals or modifications, particularly when those requests directly impact the **University's land-grant mission** to serve communities effectively.

2. **Failure by the CED Program Leader**

- o **No Response to Hybrid Proposals**: Despite receiving well-documented emails and proposals for GEPG (Exhibits D, E, G), Mr. Rendleman failed to provide a **timely or unambiguous** response before initiating disciplinary measures.

- o **Contradiction & Silence**: The lack of clarity in the "3-Phase CED Approval Process" only emerged on December 6, 2024, **long after** I requested details. This shifting, uncommunicated standard fails to meet basic supervisory obligations.

3. **Precedent: "Ready, Set, Grow: Agriculture"**

- o The success of **"Ready, Set, Grow: Agriculture"** in Zanesville, which was transitioned to a hybrid model in November 2023 to March 2024, demonstrates that CSU has **supported** (or at least not objected to) hybrid programming.

- o My proposal to do the same for GEPG was consistent with **prior University practice** and aimed at increasing outreach and participation (see *Exhibit D* and *Email to David Harvane* within Exhibit E).

---

Complaint Exhibit 5 - 17

**VIII. Application of Facts to the Alleged Violation**

1. **Policy 608 Analysis**

   o **No Legitimate Claim of Insubordination**: I have consistently **communicated**, **requested approval**, and **followed up** regarding the GEPG format. When zero participants attended the first in-person session, I adapted to the real-time need of the community. This is **not** "refusal or failure without good cause."

   o **"Misconduct" Charge is Baseless**: Since "misconduct" is not defined in Policy 608, any charge under that label should be **stricken**.

2. **Selective Enforcement of the Professional Code of Conduct**

   o Supervisors and HR leadership have **not** been held accountable under the Professional Code of Conduct for ignoring formal complaints, failing to approve or deny requests, or neglecting timely responses.

   o This double standard underscores **retaliation** and a **hostile work environment** rather than a fair application of policy.

3. **Retaliatory Motive & Hostile Work Environment**

   o As detailed in **Exhibit A (Amended Complaint)** and **Exhibit B (Investigation Report)**, the University has been made aware of ongoing retaliation and a hostile environment. Rather than address these issues, the University has escalated its retaliatory tactics.

---

**IX. Relief Requested**

1. **Referral to Independent Hearing Officer**
   Given the **conflict of interest** involving HR leadership, I respectfully **renew my request** for an **external, independent, and impartial** pre-disciplinary hearing officer or entity.

2. **Dismissal of Unsupported Charges**

   o The charge of "misconduct" should be **dismissed** immediately, as it has no basis under Policy 608.

   o The insubordination allegation should be **withdrawn** or found **unsubstantiated** based on the factual record and the legitimate "good cause" for adjusting the GEPG format.

3. **Implementation of Investigator's Recommendations**

Complaint Exhibit 5 - 18

- o The **Final Investigation Report** (Exhibit B) provided specific recommendations to help **remedy** the retaliatory and hostile environment. I respectfully request that CSU **implement** these recommendations to prevent further harassment and retaliation.

4. **Cessation of Retaliatory and Hostile Conduct**

- o I ask that the University **cease** all retaliatory actions against me and **remedy** the existing hostile work environment. This includes proper oversight of supervisors, clear communication of policies, and consistent enforcement of the Professional Code of Conduct.

---

## X. Conclusion

The record, including attached exhibits, demonstrates that the current pre-disciplinary action against me is **contrived**, **retaliatory**, and **unsupported** by CSU's own policies. Rather than addressing my well-founded complaints and the documented failures by the CED Program Leader and HR to uphold professional standards, the University has initiated a flawed proceeding that lacks independence and fairness.

- **I remain committed** to fulfilling Central State University's 1890 Land-Grant mission and serving our communities through effective programming.

- **I respectfully request** that this matter be assigned to an **independent**, **external**, and **impartial** hearing officer, and that the University immediately cease retaliatory actions and adopt the investigator's recommendations to ensure a workplace free from hostility and retaliation.

Thank you for your prompt attention to these matters. I stand ready to provide any additional documentation or clarification as needed.

**Respectfully submitted,**

_____

**Ambrose Moses**
CED Extension Educator
Central State University

Page **16** of **16**

AD-3027

OMB Control Number: 0508-0002
Expiration Date: 05/31/2024

## U.S. Department of Agriculture
### USDA Program Discrimination Complaint Form



**EXHIBT 6**

| Complainant Information | | |
|---|---|---|
| First name<br>Ambrose | Middle Initial | Last Name<br>Moses III |

Mailing Address
7888 Danbridge Way, Westerville, OH 43082

| Primary Phone Number<br>(614) 432-4300 | Alternate Phone Number<br>(614) 899-7449 | Email<br>AmbroseMoses@gmail.com |
|---|---|---|

Best way to reach you:          Mail          Phone          ☒ Email          Other

| Representative Information | | |
|---|---|---|
| Do you have a representative?          ☐Yes          ☒No | Do you have written authorization from representative?<br><br>If so, please attach.          ☐Yes          ☒No | |
| First name<br>n/a | Last Name<br>n/a | |

Mailing address
n/a

| Phone | Email<br>n/a | |
|---|---|---|

### Complaint Information
*(attach additional pages and supporting documentation as needed)*

1. Provide the name of the program you applied for (if known/applicable).

Central State University, 1890 Land-Grant Programs, Cooperative Extension Service

2. Select the USDA agency that conducts the program or provides Federal financial assistance for the program.

   ☐FNS     ☐FS     ☐FSA     ☐RD     ☐NRCS     ☐Other  NIFA?_____     ☒Unknown

| 3. Date of recent alleged discrimination (mm/dd/yyyy) 10/05/2023 | 4. Location and/or address of the office where discrimination occurred<br>Cleveland. Columbus. Westerville. Wilberforce Ohio. |
|---|---|

5. Who do you believe discriminated against you?  Include the name(s) of person(s) involved in the alleged discrimination (if known).

Alton Johnson, Siddhartha Dasgupta, Michelle Corley, Morakinyo Kuti, Alcinda Folck, Pamela Bowman

6. What happened to you? (please include dates of each allegation)

As detailed in my Written Reports submitted to CSU leadership, I have faced discrimination, reprisal, unfair employment practices, and a hostile work environment.  Please see the additional pages and supporting documentation.

7. It is a violation of the law to discriminate against you based on the following: race, color, national origin, religion, sex (including gender identity and expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, and political beliefs. (Not all bases apply to all programs). Reprisal is prohibited based on prior civil rights activity.

   I believe I was discriminated against based on:   Race and National Origin, and also subjected to both Reprisal and a Hostile Work Environment.

### Remedies

8. How would you like to see this complaint resolved?

See the attached additional pages and supporting documentation for Remedies.

9. Have you filed a complaint about the incident(s) with another federal, state, or local agency or with a court?

I have submitted R.C. §124.341 Reports and complaints to the Central State University Board of Trustees, et al.

| 10. If yes, with what agency or court did you file?<br>Central State University Board of Trustees, et al. | 11. If yes, when did you file? (mm/dd/yyyy)<br>**11/27/2019, 11/23/2022, 12/1/2022** |
|---|---|

Ambrose Moses III

_____     10/09/2023     _____     _____
Complainant Signature                              Date                    Representative Signature          Date

OMB Control Number: 0508-0002
Expiration Date: 05/31/2024

| INSTRUCTIONS |
|---|
| **PURPOSE:**This form may be used if you believe you have experienced discrimination in any USDA program or activity, and you wish to file a complaint of discrimination. The form can be used to file a complaint of discrimination based on race, color, national origin, religion, sex (including gender identity and expression), sexual orientation, disability, age, marital status, family/parental status, income derived from public assistance program and political beliefs. If you need assistance filling out the form, you may call any of the telephone numbers listed at the bottom of the complaint form. You are not required to use the complaint form. You may write a letter instead. If you write a letter it must contain all of the information requested in the form and be signed by you or your authorized representative.<br><br>We must have a signed copy of your complaint.  Incomplete information or an unsigned form will delay the process of your complaint<br><br>**FILING DEADLINE:**A program discrimination complaint must be filed within 180 days from the date you knew or should have known of the alleged discrimination unless the time for filing is extended by USDA. Complaints sent by mail are considered filed on the date the complaint was signed, unless the date on the complaint letter differs by seven days or more from the postmark date, in which case the postmark date will be used as the filing date. Complaint documentation or Complaint Forms sent by fax or mail will be considered filed on the day the complaint is faxed or mailed. Complaints filed after the 180-day deadline must include a 'good cause' explanation for the delay. For example, if:<br><br>1.　You could not reasonably have been expected to know of the discriminatory act within the 180-day period;<br>2.　You were seriously ill or incapacitated; or<br>3.　The same complaint was filed with another Federal, state, or local agency and that agency failed to act on your complaint. |
| **USDA POLICY:** Federal law and policy prohibits discrimination against you based on the following: race, color, national origin, religion, sex (including gender identity and expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, and political beliefs. (Not all bases apply to all programs).<br><br>USDA will determine if it has jurisdiction under the law to process the complaint on the bases identified in the complaint and in the programs indicated in the complaint. Reprisal that is based on prior civil rights activity is prohibited. |
| **OFFICE LOCATION WHERE DISCRIMINATION OCCURED:**List the location and/or address of the office where discrimination occurred. If not known, this part of the form can be left blank. |
| **WHERE TO FILE YOUR COMPLAINT: You may submit your completed form or letter to USDA by:**<br>　**Mail:** U.S. Department of Agriculture, Office of the Assistant Secretary for Civil Rights, 1400 Independence, Ave, SW, STOP 9410, Washington, DC 20250-9410;<br>　**Fax:** 1 (833) 256-1665 or (202) 690-7442; or<br>　**e-Mail:** program.intake@usda.gov.<br><br>You may also visit our website at:https://www.usda.gov/oascr/how-to-file-a-program-discrimination-complaint. |
| **LEGAL INFORMATION** |
| **CONSENT: T**his USDA Program Discrimination Complaint Form is provided in accordance with the Privacy Act of 1974 (5 U.S.C. §552a),andis used to solicit information for processing complaints of discrimination. The United States Department of Agriculture's Office of the Assistant Secretary for Civil Rights (OASCR) requests this information pursuant to 7 CFR Part 15.<br><br>If the completed form is accepted as a complaint, the information collected during the investigation will be used to process your program discrimination complaint. |
| **REPRISAL** *(RETALIATION)* **PROHIBITED:**No Agency, officer, employee, or agent of the USDA, including persons representing the USDA and its programs, shall intimidate, threaten, harass, coerce, discriminate against, or otherwise retaliate against anyone who has filed a complaint of alleged discrimination or who participates in any manner in an investigation or other proceeding raising claims of discrimination. |
| **PRIVACY ACT STATEMENT( *5 U.S.C. § 552a*)** |
| **AUTHORITIES:** Collection of this information is authorized by Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d); and Sections 504 and 508 of the Rehabilitation Act of 1973 (29 U.S.C. §§ 790-790f) and any other anti-discrimination statutes, rules and regulations. |
| **PURPOSE:** The information solicited on this form is used for processing complaints of discrimination under the statutes listed in the "Authorities" section of this notice. Any information obtained from this form will be maintained in our system of record. |
| **ROUTINE USES:** To respond to requests from individuals and agencies outside the Department *(such as the White House, Congress, and the Equal Employment Opportunity Commission)* regarding the status of a complaint. More information on the routine uses for the system can be found in the System of Records Notice USDA-2021-0007 records maintained by the OASCR. |
| **DISCLOSURE:** Providing this information is voluntary. Failure to complete this form may lead to a delay in processing of the complaint or rejection of the complaint due to an inadequate information to continue processing. |
| **PAPERWORK REDUCTION ACT STATEMENT** |
| The Paperwork Reduction Act of 1995 *(44 U.S.C. 3501 et seq.)* requires us to inform you that this information is being collected to ensure that your complaint contains all the information required to process it fully. The Office of the Assistant Secretary for Civil Rights will use the information to process your discrimination complaint.<br><br>Response to this request is voluntary. The information you provide on this form will only be shared with persons who have an official need to know, and will be protected from public disclosure pursuant to the provisions of the Privacy Act, (5 U.S.C. § 552a(b)). The estimated time required to complete this form is 60 minutes. You may send comments regarding the accuracy of this estimate and any suggestions for reducing the time for completion of the form to the U.S. Department of Agriculture, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, Mail Stop 9410, Washington, DC 20250. An agency may not conduct or sponsor, nor is a person required to respond to, a collection of information unless it displays a currently valid OMB Control Number. **The OMB Control Number for this form is 0508-0002.** |

Complaint Exhibit 6 - 2

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**USDA Program Discrimination Complaint**

**October 10, 2023**

**Ambrose Moses III,**
**7888 Danbridge Way**
**Westerville, Ohio 43082**
**(614) 432-4300**
**AmbroseMoses@gmail.com**
**Complainant**

> *To the extent it applies or is necessary, a waiver of the 180-day filing deadline is requested because the reprisal and discrimination has been continuous and unabated since 2019, and there are multiple complaints open and unresolved that the University has failed to investigate, evaluate, and resolve.

## ADDITONAL PAGES AND SUPPORTING DOCUMENTATION

### Overview

On June 20, 2019, following USDA-NIFA's Title VI Civil Rights Compliance Review of the Cooperative Extension Services at The Ohio State University and Central State University, Director, Civil Rights Bobbie A. Moore wrote a letter to the universities that outlined "Elements of Concern" along with a Corrective Action Plan "CAP".   While there were some initial actions taken in 2019, since that time Central State University has failed to consistently implement and address the Program Area/Deficiencies and Objectives detailed in the Corrective Action Plan.

There were already active Title VI violations occurring at Central State University in 2019.  Problems became worse in 2020 and continued unabated to the present time. The University committed numerous failings and violations during this time, independent of Covid-19 challenges. Discrimination, reprisal, hostility, and unfair hiring cannot be excused.

Critically, the University prevented Extension staff, particularly Educators, from conducting comprehensive needs assessments in the community and has refused to provide Educators training on needs assessments. These needs assessments are

Complaint Exhibit 6 - 3

fundamental duties in the cooperative extension methodology.

This failure to allow staff effectively to identify, respond to, and serve the dire needs of the Black community is inexcusable. It occurred as multiple counties and cities declared racism a public health crisis based on extensive research into racial disparities in education, economics, housing, and more.

Most notably, University leadership failed to adequately address credible complaints of discrimination, reprisal, hostile work environment, and unfair hiring practices raised by Extension employees, including Ambrose Moses III. The leadership responded dismissively, declining to investigate or resolve the issues reported. Their inaction represents an abdication of responsibility. Discrimination, reprisal, unfair hiring practices, and a culture of hostility must be addressed, particularly toward Black staff and communities.

Given CSU's status as a historically Black university, the facts presented indicate severe deficiencies in upholding its duties and obligations as an 1890 land-grant institution. Mr. Moses has faced reprisal for speaking out against unlawful practices and attempting to serve underrepresented communities. A full external investigation by USDA is warranted to ensure compliance with civil rights laws and equitable delivery of services. Proactive changes under USDA guidance are needed to create a fair, ethical, diverse, and inclusive workplace in service to all Ohio residents.

The following is a chart of some of the actionable facts:

| Date | Description | Detail |
|---|---|---|
| July 9, 2018 | Protected Activity | Moses submitted R.C. §124.341 Report re: Dr. Alton Johnson's (Dean and Director of Land-Grant) and Extension leadership's violation of state, federal, or local law, rule, or regulation, or a misuse of public resources. Specifically, the failure to comply with the Central State University Departmental Reorganization Process policy when changing County Agents to Extension Agents and Extension Educators. (Exhibit G, |

Ambrose Moses III — Program Discrimination Complaint — Additional Pages - Page **2** of **5**

| | | Page 11) |
|---|---|---|
| August 16, 2018 | Reprisal | Imposition of unlawful residency requirement on Moses (Exhibit G, Page 12) |
| August 16, 2018 | Discrimination – Race and National Origin | Imposition of unlawful residency requirement on Moses.  Dr. Johnson, who is of Liberian national origin was biased against Black men of American national origin.  Dr. Johnson did not impose the same unlawful residency requirement upon Caucasian female employees who worked within the Cooperative Extension Service and resided outside of the county in which they worked. |
| August 24, 2018 | Protected Activity | Moses filed Notice of Appeal with the State Pesonnel Board of Review.  (Exhibit G, Page 12) |
| May 13-23, 2019 | Civil Rights Audit | USDA/NIFA's Comprehensive Title VI Civil Rights Compliance Review (Exhibit G, Page 12) |
| June 20, 2019 | NIFA "Elements of Concern" | USDA/NIFA's letter to Dr. Alton Johnson re: "Elements of Concern". (Exhibit A) |
| June 20, 2019 | NIFA Corrective Action Plan | USDA/NIFA's Corrective Action Plan issued to The Ohio State University Extension and Central State University Extension (Exhibit B) |
| November 7, 2019 | Reprisal | Moses applied for all four (4) newly created Regional Extension Associate (REA) positions.  Dr. Johnson (Dean and Director of Land-Grant) declared that Moses was not to be hired or promoted to any of the newly created REA positions.  The University did not promote Moses and, instead, hired exclusively Caucasians for all four REA positions.  The University also did not hire Moses for either of the newly created regional CED Extension Educator positions for which he applied. (Exhibit G, Page 14) |
| November 7, 2019 | Discrimination – Race and National Origin | Moses applied for all four (4) newly created Regional Extension Associate (REA) positions.  Dr. Johnson (Dean and Director of Land-Grant) declared that Moses was not to be hired or promoted to any of the newly created REA positions.  The University did not promote Moses and, instead, hired exclusively Caucasians for all four REA positions.  The University also did not hire Moses for either of the newly created regional CED Extension Educator positions for which he applied. (Exhibit G, Page 14) |
| November 27, 2019 | Protected Activity | Moses submitted R.C. §124.341 Report to Central State University leadership and Board of Trustees.  Among other things, Moses reported how the imposition of unlawful residency requirements on newly created Regional Extension Associate (REA) positions would have a disparate impact upon Black American applicants in Ohio.  To date, Moses has received no formal response to his report.  To  Moses' knowledge, there has been no investigation, determination, or corrective action taken.  (Exhibit D; Exhibit G, Page 13) |
| November 4, 2021 | Protected Activity | Moses submitted R.C. §124.341 Report and complaint to his direct supervisor of alterations and forged |

Ambrose Moses III – Program Discrimination Complaint – Additional Pages - Page **3** of **5**

| | | signatures done by or at the direction of Dr. Siddartha Dasgupta, the Associate Administrator of Extension. (Exhibit G, Page 15) |
|---|---|---|
| December 2, 2021 | Reprisal | Dr. Michelle Corley (Dean and Director of Land-Grant) and Dr. Siddartha Dasgupta (Associate Administrator of Extension) denied Moses the promotion and opportunity to serve as Interim CED Program Leader following the resignation of the incumbent.  The resigning CED Program Leader and members of the CED Team all supported Moses serving as Interim CED Program Leader.  The position of CED Program Leader would remain vacant for more than a year.  (Exhibit G, Page 15) |
| May 2022 | Reprisal | In violation of Central State University Policy No. 618, Extension leadership and the Director of Human Resources subjected Moses to a performance evaluation by someone other than his supervisor.  Specifically, the performance evaluation was performed by Dr. Siddartha Dasgupta.  Dr. Dasgupta was the subject of the forgery that Moses reported on November 4, 2021.   (Exhibit G, Page 16) |
| November 16, 2022 | Discrimination - Race | Dr. Alcinda Folck, in concert with the Director of Human Resources and others in leadership, engaged in discrimination and unlawful employment practices to deny Moses an opportunity to apply and compete for the vacant CED Program Leader position. (Exhibit G, Page 17) |
| November 16, 2022 | Reprisal | Dr. Alcinda Folck, in concert with the Director of Human Resources and others in leadership, engaged in discrimination and unlawful employment practices to deny Moses an opportunity to apply and compete for the vacant CED Program Leader position. (Exhibit G, Page 17) |
| November 23, 2022 | Protected Activity | Moses submitted R.C. §124.341 Report and complaint to University leadership concerning Noncompliance with State and Federal Law: Wrongful and Unlawful Employment Practices, Denial of Substantive and Procedural Due Process, Denal of Equal Protection, 42 U.S.C. 1983 – Civil action for deprivation of rights, Disparate Impact Upon African Americans (Exhibit F) |
| December 1, 2022 | Protected Activity | Moses submitted a Request for Investigation of Unlawful Discriminatory Practices & Retaliation and a Request for Suspension of Interviews on December 7, 2022, Pending Investigation. |
| December 1, 2022 | Email from University General Counsel | Ms. Laura Wilson, Central State University General Counsel, emailed Moses stating that she had received his December 1, 2022 Request for Investigation, and his prior correspondence and that she is reviewing the provided documents.  Ms. Wilson wrote that she would be in touch once she had finished her review of the documents.  To date, Ms. Wilson has not contacted Moses concerning these matters.  (Exhibit H) |

Ambrose Moses III – Program Discrimination Complaint – Additional Pages - Page **4** of **5**

Complaint Exhibit 6 - 6

| December 9, 2022 | Quick Meeting – No Follow-up | Dr. Morakinyo Kuti, Interim Dean and Director of Land-Grant met with Moses briefly via Microsoft Teams. Dr. Kuti stated that he was going to review the document and information that Moses had shared with him and that they would look at next steps after the holiday break. (Exhibit I) |
|---|---|---|
| October 4, 2023 | Hostile Work Environment | Moses has made multiple inquiries to Dr. Kuti about meeting, but, to date, Dr. Kuti has not followed up with Moses concerning the subject of the December 9, 2022 meeting. (Exhibit I) |
| October 5, 2023 | Protected Activity | Moses submitted a report about Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates including the inherent conflicts of interests of Dr. Folck being interviewed by a committee consisting primarily of her subordinates within Extension. (Exhibit J) |
| October 5, 2023 | Hostile Work Environment | Dr. Kuti responded to Moses' report and questions in a dismissive manner without addressing the inherent conflicts of interest. (Exhibit J) |
| October 5, 2023 | Reprisal | Dr. Kuti responded to Moses' report and questions in a dismissive manner without addressing the inherent conflicts of interest. (Exhibit J) |
| July 9, 2018 to October 10, 2023 | Hostile Work Environment | The ongoing, unabated reprisal, discrimination, and failure to investigate and address the reported unlawful activity has created and maintains a hostile work environment. (Exhibits A, B, C, D, E, F, G, H, I, J) |
| | | |

**Attached Exhibits**

Exhibits A, B, C, D, E, F, G, H, I, and J are attached hereto as supporting documentation.

**Remedies**

The University must be 1) held accountable for these failings, 2) be required to correct the deficiencies, and 3) be required to make Moses and the other employees whole.

Respectfully submitted,

*Ambrose Moses, III*

Ambrose Moses III

Ambrose Moses III — Program Discrimination Complaint — Additional Pages - Page **5** of **5**



| **USDA** United States Department of Agriculture | Research, Education, and Economics | National Institute of Food and Agriculture | 1400 Independence Avenue SW Washington, DC 20250 |



June 20, 2019

Dr. Cathann A. Kress
Vice President for Agricultural
  and Environmental Sciences
Ohio State University
140 Agricultural Administration
2120 Fyffe Road
Columbus, Ohio  43210

Dr. Alton B. Johnson
Dean, College of Engineering,
Sciences, Technology, and Agriculture
Central State University
1400 Bush Row Road
P.O. Box 1004
Wilberforce, Ohio  45384

RE:  "Elements of Concern"

Dear Dr. Kress and Dr. Johnson:

This memorandum serves to convey concerns about significant deficiencies that the U.S. Department of Agriculture, National Institute of Food and Agriculture (NIFA) observed during the comprehensive Title VI Civil Rights Compliance Review of both the Ohio State University Extension (OSU Extension) and Central State University Extension (CSU Extension) programs that was conducted May 13 – 23, 2019.

NIFA's compliance review team conducted 133 interviews of OSU Extension and CSU Extension personnel who were employed at both the State and County levels.  NIFA visited 20 Counties and analyzed an extensive amount of participant data for the 4-H and other Extension programs.  Further, the review team reviewed an array of documents that both entities (OSU and CSU) provided to the Agency for review.

NIFA has outlined the following concerns (by Review area as denoted in NIFA's Civil Rights Compliance Review Guide – Extension Programs) that require your immediate attention and resolution before (or within) a six (6) month timeframe:

1.  **Resource and Structure (Staff Training and Conferences)**

    Neither the OSU Extension nor the CSU Extension provided:

    - Any written procedures for the staff members' participation in any Equal Opportunity (EO) and/or Diversity training;

    - Any evidence (and neither did the County-level personnel confirm) that they annually require the workforce to undergo Title VI Equal Opportunity training; and

    - Any evidence (and neither did their County-level personnel confirm) that they periodically discussed Civil Rights compliance and planning during the staff meetings.

Complaint Exhibit 6 - 8

3. **Advisory Committees, Boards and other Relevant Committees**

OSU Extension and CSU Extension did not have:

- Internal and external advisory boards and committees that are diverse and/or representative of the population of the counties or geographic areas in which services are provided;

- Any potential plans to solicit diverse nominations for committees and advisory boards; and

- Selection and/or appointment processes for the local staff committees and advisory boards.

4. **Procedures for Processing Program and Employment Discrimination Complaints**

- Interviews with the OSU Extension and CSU Extension staff revealed that they did not have knowledge of the Civil Rights program and employment complaint procedures; and

- OSU Extension and CSU Extension have not adequately informed the staff members, clientele, volunteers and the general public of the procedures for filing program and/or employment complaints.

5. **Statewide Equal Opportunity/Diversity Plan**

Neither the OSU Extension nor CSU Extension have developed or implemented a statewide EO/diversity plan that:

- Ensures that the entities would provide educational benefits to a diverse audience on a nondiscriminatory basis;

- Expresses the organization's intent to maintain compliance with EO nondiscrimination rules and regulations as applicable to the Extension programs;

- Clearly states the organization's commitment in valuing diversity with respect to its staff, volunteers, and citizens;

- Describes how it will secure and utilize citizen input through lay committees and collaborative boards to determine clientele program needs and assessments;

- Establishes its commitment that lay committees will reflect the diversity in the communities being served;

- Identifies the frequency of conducting internal Civil Rights reviews with all program units, including plans for taking appropriate corrective measures, and the Extension's recognition of staff members' successes in addressing EO issues;

2

Complaint Exhibit 6 - 9

- Includes written policy and procedures for informing the public of both the University's and the Extension's responsibility for implementing the requirements for EO;

- Establishes procedures that guide staff in insuring that education assistance is not provided to any organization or group that excludes individuals because of their race, ethnicity, or gender; and

- Establishes a system to collect program participant data.

**8. Extension Program Participation Data**

OSU Extension and CSU Extension did not:

- Establish and maintain a system for collecting and reporting race, ethnicity, and gender (REG) data for actual clientele participation in several of its other (non-4-H) Extension Programs. Specifically, both institutions did not have sign-in sheets that solicited the REG data of its program participants; and

- Have a process in place for its personnel to determine if the percentage of actual participants, according to race, ethnicity, or gender, in its Extension programs was less than the percentage of potential customers.

**9. Public Notifications**

OSU Extension and CSU Extension did not:

- Put (or utilize) a nondiscrimination statement on its printed publications, including bulletins, leaflets, circulars, fact sheets, program announcements, and miscellaneous publications; and

- Clearly train or notify its staff members, clientele, volunteers and the general public as to how they can make a request for and/or provide a reasonable disability accommodation for individuals with disabilities.

**12. Internal Compliance Reviews**

OSU Extension and CSU Extension did not ensure that:

- Internal civil rights review plans are in place for assuring program compliance by Extension staff members, on an equal opportunity basis.

**13. Limited English Proficiency (LEP)**

OSU Extension and CSU Extension did not:

3

Complaint Exhibit 6 - 10

- Have Limited English Proficiency plans in place at the time of the compliance review. Neither Extension operation had standardized processes in place to ensure that LEP persons had access to extension programs and/or information;

- Train or notify its staff members, clientele, volunteers and the general public as to how they can request and/or provide accommodations for individuals whose primary language is not English; and

- Have self-evaluation processes to assess services to potential program recipients with LEP, including the eligible LEP population.

## 14. Interaction of 1862 and Other Minority Land-Grant Institutions

- OSU Extension and CSU Extension have not jointly established, where appropriate, mutually developed and comprehensive Extension programming.

Moreover, such areas of concern may potentially hinder the Extension programs of both institutions from fully implementing their respective Plans of Work. These deficiencies also have the potential to diminish the level of programming provided to the Ohio citizenry, in general, and minorities and Hispanics. Consequently, NIFA respectfully requests that both institutions submit action plans that outline the method in which the OSU Extension and CSU Extension programs will address and resolve the noted concerns within six (6) months to include check-in meetings at the two (2), and four (4) month timeframe. We have provided a format for recording your corrective actions (Corrective Action Matrix).

Last, NIFA extends its heartfelt gratitude to the OSU Extension and CSU Extension programs for the cooperation that both institutions demonstrated to the Civil Rights Compliance Review team during its visit to the State of Ohio. Your positive attention and consideration of the concerns above are of utmost importance.

If you have any questions regarding the noted concerns or need additional assistance, please feel free to contact Daruss Golden, Acting Senior Equal Opportunity Specialist, or Philemon Rheins, Equal Opportunity Specialist (Team Leader) at (202) 720-2700.

Bobbie A. Moore
Director, Civil Rights
USDA-NIFA

Enclosure

cc:   Dr. Roger Rennekamp/Mr. Anthony Barwick/Dr. J. Scott Angle/Dr. Robert Holland/
      Mr. Daruss Golden/Mr. Philemon Rheins

4

**U.S. Department of Agriculture**
**National Institute of Food and Agriculture**
**Title VI Civil Rights Compliance Review Corrective Action Plan (CAP)**
Ohio State University Extension and Central State University Extension



**EXHIBIT B**

| PROGRAM AREA/DEFICIENCIES | OBJECTIVE | RESPONSIBLE OFFICIAL | TARGET COMPLETION DATE |
|---|---|---|---|
| **1.  RESOURCE AND STRUCTURE (STAFF TRAINING AND CONFERENCES)** | | | |
| **Neither the OSU Extension nor the CSU Extension provided:** | **OSU Extension and CSU Extension must:** | | |
| • Any written procedures for the staff members' participation in any Equal Opportunity (EO) and/ or Diversity training. | Provide written procedures for the staff members' participation in any Equal Opportunity (EO) and/ or Diversity training. | OSU Extension/ CSU Extension Appointed Official | 08/30/2019 – Final completion date |
| • Any evidence (and neither did the County-level personnel confirm) that they annually require the workforce to undergo Title VI EO training. | Develop and implement annually required Title VI Equal Opportunity training for OSU Extension and CSU Extension Workforces. | OSU Extension/ CSU Extension Appointed Official | 08/30/2019 – Status report due to NIFA<br><br>10/24/2019 – 120 calendar days (Status report due)<br><br>12/10/2019 – Final completion date |
| • Any evidence (and neither did their County-level personnel confirm) that they periodically discussed Civil Rights compliance and planning during staff meetings. | Begin and maintain periodic discussions of Civil Rights compliance and planning during staff meetings. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Final completion date |
| **3.  ADVISORY COMMITTEES, BOARDS AND OTHER RELEVANT COMMITTEES** | | | |
| **OSU Extension and CSU Extension did not have:** | **OSU Extension and CSU Extension will:** | | |
| • Internal and external advisory boards and committees that are diverse and/or representative of the population of the counties or | Establish and maintain internal and external advisory boards and committees that are diverse and/or representative of the population of the | OSU Extension/ CSU Extension Appointed Official | 08/30/2019 – Status report due to NIFA<br><br>10/25/2019 – 120 calendar days (Status report due) |

Page **1** of **8**

Complaint Exhibit 6 - 12

**U.S. Department of Agriculture**
**National Institute of Food and Agriculture**
**Title VI Civil Rights Compliance Review Corrective Action Plan (CAP)**
Ohio State University Extension and Central State University Extension

| PROGRAM AREA/DEFICIENCIES | OBJECTIVE | RESPONSIBLE OFFICIAL | TARGET COMPLETION DATE |
|---|---|---|---|
| geographic areas in which services are provided. | counties or geographic areas in which services are provided. | | 12/13/2019 – Final completion date |
| • Any potential plans to solicit diverse nominations for committees and advisory boards. | Establish and implement plans to solicit diverse nominations for committees and advisory boards. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Final completion date |
| • Selection and/or appointment processes for the local staff committees and advisory boards. | Establish and implement selection and/or appointment processes for the local staff committees and advisory boards. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Status report due<br><br>10/24/2019 – 120 calendar days (Status report due)<br><br>12/13/2019 – Final completion date |
| **4. PROCEDURES FOR PROCESSING PROGRAM AND EMPLOYMENT DISCRIMINATION COMPLAINTS** | | | |
| • Interviews with the OSU Extension and CSU Extension staff revealed that they did not have knowledge of the Civil Rights program and employment complaint procedures. | OSU Extension and CSU Extension will train its staffs in order that they fully understand the Civil Rights program and employment complaint procedures. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Status report due<br><br>10/24/2019 – 120 calendar days (Status report due to NIFA)<br><br>12/13/2019 – Final completion date |
| • OSU Extension and CSU Extension have not adequately informed the staff members, clientele, volunteers and the general public of the procedures for filing program and /or employment complaints. | OSU Extension and CSU Extension will adequately inform its staff members, clientele, volunteers and the general public of the procedures for filing program and/or employment complaints. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 –Status report due to<br><br>10/24/2019 – 120 calendar days (Status report due)<br><br>12/13/2019 – Final completion date |

Page **2** of **8**

Complaint Exhibit 6 - 13

# U.S. Department of Agriculture
## National Institute of Food and Agriculture
### Title VI Civil Rights Compliance Review Corrective Action Plan (CAP)
Ohio State University Extension and Central State University Extension

| PROGRAM AREA/DEFICIENCIES | OBJECTIVE | RESPONSIBLE OFFICIAL | TARGET COMPLETION DATE |
|---|---|---|---|
| **5. STATEWIDE EQUAL OPPORTUNITY/DIVERSITY PLAN** | | | |
| **Neither the OSU Extension nor CSU Extension have developed or implemented a statewide EO/diversity plan that:** | **OSU Extension and CSU Extension will develop or implement a statewide EO/diversity plan that:** | | |
| • Ensures that the entities would provide educational benefits to a diverse audience on a nondiscriminatory basis; | Ensures that the entities will provide educational benefits to a diverse audience on a nondiscriminatory basis; | OSU Extension/ CSU Extension Appointed Official | 8/24/2019 – Status report due<br><br>10/24/2019 – 120 calendar days (Status report due to NIFA)<br><br>12/13/2019 – Final completion date |
| • Expresses the organization's intent to maintain compliance with EO non-discrimination rules and regulations as applicable to the Extension programs; | Expresses the organization's intent to maintain compliance with EO non-discrimination rules and regulations as applicable to the Extension programs; | | |
| • Clearly states the organization's commitment in valuing diversity with respect to its staff, volunteers and citizens; | Clearly states the organization's commitment in valuing diversity with respect to its staff, volunteers and citizens; | | |
| • Describes how it will secure and utilize citizen input through lay committees and collaborative boards to determine clientele program needs and assessments; | Describes how it will secure and utilize citizen input through lay committees and collaborative boards to determine clientele program needs and assessments; | | |

Page **3** of **8**

Complaint Exhibit 6 - 14

**U.S. Department of Agriculture**
**National Institute of Food and Agriculture**
**Title VI Civil Rights Compliance Review Corrective Action Plan (CAP)**
Ohio State University Extension and Central State University Extension

| PROGRAM AREA/DEFICIENCIES | OBJECTIVE | RESPONSIBLE OFFICIAL | TARGET COMPLETION DATE |
|---|---|---|---|
| • Establishes its commitment that lay committees will reflect the diversity in the communities being served; <br><br> • Identifies the frequency of conducting internal Civil Rights reviews with all program units, including plans for taking appropriate corrective measures, and the Extension's recognition of staff members' successes in addressing EO issues; <br><br> • Includes written policy and procedures for informing the public of both the University's and the Extension's responsibility for implementing the requirements for EO; <br><br> • Establishes procedures that guide staff in insuring that education assistance is not provided to any organization or group that excludes individuals because of their race, ethnicity, or gender; and | Establishes its commitment that lay committees will reflect the diversity in the communities being served; <br><br> Identifies the frequency of conducting internal Civil Rights reviews with all program units, including plans for taking appropriate corrective measures, and the Extension's recognition of staff members' successes in addressing EO issues; <br><br> Includes written policy and procedures for informing the public of both the University's and the Extension's responsibility for implementing the requirements for EO; <br><br> Establishes procedures that guide staff in insuring that education assistance is not provided to any organization or group that excludes individuals because of their race, ethnicity, or gender; and | | |

Page **4** of **8**

Complaint Exhibit 6 - 15

**U.S. Department of Agriculture**
**National Institute of Food and Agriculture**
**Title VI Civil Rights Compliance Review Corrective Action Plan (CAP)**
Ohio State University Extension and Central State University Extension

| PROGRAM AREA/DEFICIENCIES | OBJECTIVE | RESPONSIBLE OFFICIAL | TARGET COMPLETION DATE |
|---|---|---|---|
| • Establishes a system to collect program participant data. | Establishes a system to collect program participant data. | | |
| **8. EXTENSION PROGRAM PARTICIPATION DATA** | | | |
| **OSU Extension and CSU Extension did not:** | **OSU Extension and CSU Extension must:** | | |
| • Establish and maintain a system for collecting and reporting race, ethnicity, and gender (REG) data for actual clientele participation in several of its other (non 4-H) Extension Programs. Specifically, both institutions did not have sign-in sheets that solicited the REG data of its program participants. | Establish and maintain a system for collecting and reporting race, ethnicity, and gender (REG) data for actual clientele participation in all of its other (non 4-H) Extension Programs. Both institutions must have sign-in sheets that solicit REG data of its program participants. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Final completion date |
| • Have a process in place for personnel to determine if the percentage of actual participants, according to race, ethnicity, or gender, in its Extension programs was less than the percentage of potential customers. | Develop and implement a process so that personnel can determine if the percentage of actual participants, according to race, ethnicity, or gender, in its Extension programs is less than the percentage of potential customers. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Status report due to NIFA<br><br>10/24/2019 – 120 calendar days (Status report due)<br><br>12/13/2019 – Final completion date |

Page **5** of **8**

Complaint Exhibit 6 - 16

**U.S. Department of Agriculture**
**National Institute of Food and Agriculture**
**Title VI Civil Rights Compliance Review Corrective Action Plan (CAP)**
Ohio State University Extension and Central State University Extension

| PROGRAM AREA/DEFICIENCIES | OBJECTIVE | RESPONSIBLE OFFICIAL | TARGET COMPLETION DATE |
|---|---|---|---|
| **9. PUBLIC NOTIFICATIONS** | | | |
| **OSU Extension and CSU Extension did not:** | **OSU Extension and CSU Extension must:** | | |
| • Put (or utilize) a nondiscrimination statement on its printed publications, including bulletins, leaflets, circulars, fact sheets, program announcements, and miscellaneous publications. | Put (or utilize) a nondiscrimination statement on its printed publications, including bulletins, leaflets, circulars, fact sheets, program announcements, and miscellaneous publications. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Final completion date |
| • Clearly train or notify its staff members, clientele, volunteers and the general public as to how they can make a request for and/or provide a reasonable disability accommodation for individuals with disabilities. | Train or notify its staff members, clientele, volunteers and the general public as to how they can make a request for and/or provide a reasonable disability accommodation for individuals with disabilities. | OSU Extension/ CSU Extension Appointed Official | 08/12/2019 – Final completion date |
| **12. INTERNAL COMPLIANCE REVIEWS** | | | |
| **OSU Extension and CSU Extension did not ensure that:** | **OSU Extension and CSU Extension must ensure that:** | | |
| • Internal civil rights review plans are in place for assuring program compliance by Extension staff members, on an equal opportunity basis. | Internal civil rights review plans are in place for assuring program compliance by Extension staff members, on an equal opportunity basis. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Status report due to NIFA<br><br>10/24/2019 – 120 calendar days (Status report due)<br><br>12/13/2019 – Final completion date |

Page **6** of **8**

Complaint Exhibit 6 - 17

**U.S. Department of Agriculture**
**National Institute of Food and Agriculture**
**Title VI Civil Rights Compliance Review Corrective Action Plan (CAP)**
Ohio State University Extension and Central State University Extension

| PROGRAM AREA/DEFICIENCIES | OBJECTIVE | RESPONSIBLE OFFICIAL | TARGET COMPLETION DATE |
|---|---|---|---|
| **13. LIMITED ENGLISH PROFICIENCY (LEP)** | | | |
| **OSU Extension and CSU Extension did not:** | **OSU Extension and CSU Extension must:** | | |
| • Have Limited English Proficiency plans in place at the time of the compliance review. Neither extension operation had standardized processes in place to ensure that LEP persons had access to extension programs and/or information. | Develop and implement Limited English Proficiency plans that establishes standardize processes to ensure that LEP persons have access to extension programs and/or information. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Status report due to NIFA<br><br>10/24/2019 – 120 calendar days (Status report due)<br><br>12/13/2019 – Final completion date |
| • Train or notify its staff members, clientele, volunteers and the general public as to how they can request and/or provide accommodations for individuals whose primary language is not English. | Train or notify its staff members, clientele, volunteers and the general public as to how they can request and/or provide accommodations for individuals whose primary language is not English. | OSU Extension/ CSU Extension Appointed Official | 08/24/2019 – Final completion date |
| • Have self-evaluation processes to assess services to potential program recipients with LEP, including the eligible LEP population. | Develop and implement self-evaluation processes to assess services to potential program recipients with LEP, including the eligible LEP population. | OSU Extension/ CSU Extension Appointed Official | 08/12/2019 – Status report due to NIFA<br><br>10/24/2019 – 120 calendar days (Status report due)<br><br>12/10/2019 – Final completion date |

Page **7** of **8**

Complaint Exhibit 6 - 18

**U.S. Department of Agriculture**
**National Institute of Food and Agriculture**
**Title VI Civil Rights Compliance Review Corrective Action Plan (CAP)**
Ohio State University Extension and Central State University Extension

| PROGRAM AREA/DEFICIENCIES | OBJECTIVE | RESPONSIBLE OFFICIAL | TARGET COMPLETION DATE |
|---|---|---|---|
| **14. INTERACTION OF 1862 AND OTHER MINORITY LAND-GRANT INSTITUTIONS** | | | |
| • OSU Extension and CSU Extension have not jointly established, where appropriate, mutually developed and comprehensive Extension programming. | OSU Extension and CSU Extension must jointly establish, where appropriate, mutually developed and comprehensive Extension programming. | OSU Extension/ CSU Extension Appointed Official | 08/12/2019 – Status report due to NIFA<br><br>10/24/2019 – 120 calendar days (Status report due)<br><br>12/13/2019 – Final completion date |

Page **8** of **8**

Complaint Exhibit 6 - 19



**EXHIBIT C**

Career Fair at Ohio State University

Alcinda Folck <afolck@centralstate.edu>
Mon 9/23/2019 12:00 PM
To:Ambrose Moses III <amoses@centralstate.edu>
Cc:Anthony Barwick <abarwick@centralstate.edu>

Hi Ambrose,

Just following up from our conversation at Farm Science Review about the upcoming career fair at Ohio State University. It's on Sept. 26 from 2-5 p.m. at the Fawcett Center near the Columbus campus. Are you available to help in the booth?

We are mainly there for awareness and to encourage soon-to-be graduates to visit the Central State jobs site for upcoming job openings. Here's the details:

**Career Fair Description**

# 2019 Food, Agricultural, and Environmental Sciences Career Expo at The Ohio State University

**This event is an excellent opportunity to gain visibility for your organization with interested and highly qualified Ohio State students seeking co-op, internship, and career employment opportunities.**

Thursday, September 26, 2019
Fawcett Center - 2400 Olentangy River Rd, Columbus, OH 43210
2-5pm

**Schedule:**
- 12-2pm | Check in and set up for employers
- 2-5pm | Career Expo open to students
- 5-6pm | Tear-down (place all packages with shipping labels in designated area)

**Food/Beverages:**
- food available from 12-2pm in the Employer Lounge
- beverages available from 12-5pm in the Employer Lounge

**Registration Fees:**
(6' table, chairs, parking passes, snacks, and beverages are included)

- *Corporate Table Rate | $300 (1-4 representatives total)*
- *Non-Profit/Government Table Rate | $150 (1-4 representatives total)*

**Parking:**
- Please note, parking passes will be provided to attendees when they arrive the day of the event or can be downloaded at the specific event website. cfaes.osu.edu/careerexpo.

**WiFi:**
- WiFi@osu.edu is an open network for OSU guests

**Questions:**
- Adam Cahill, Career Development Manager, cahill.71@osu.edu or 614-292-1589.

**Cindy Folck, PhD (Alcinda)**
*State Program Leader, Agriculture & Natural Resources*
**Central State University Extension**
B101A Emery Hall | 1400 Brush Row Road | Wilberforce, Ohio 45384
O: 937-376-6101
**afolck@centralstate.edu** | **centralstate.edu**

1890 LAND-GRANT INSTITUTION

Complaint Exhibit 6 - 20



**EXHIBIT D**

**Report**

November 27, 2019

**TO:**

**Supervisor:** Anthony Barwick (abarwick@centralstate.edu)
**Appointing Authority:** Board of Trustees c/o Mark Hatcher, Esq. (mhatcher@bakerlaw.com)
and Larry Macon Jr., Esq. (copastor@mtzionoakwood.org)
President: Dr. Cynthia Jackson-Hammond (chammond@centralstate.edu)
Dean: Dr. Alton Johnson (ajohnson@centralstate.edu)
Associate Director of Extension: Anthony Barwick (abarwick@centralstate.edu)
General Counsel: Laura Wilson, Esq. (lwilson@centralstate.edu)
Human Resources: Tonya Turner (tturner@centralstate.edu)
Central State University
1400 Brush Row Road
P. O. Box 1004
Wilberforce, OH 45384-1004

**FROM:**

Ambrose Moses III, Esq.(amoses@centralstate.edu)
Cuyahoga County Educator
Central State University Extension
12200 Fairhill Road, E-Building
Cleveland, OH 44120

**RE:** Noncompliance with State and Federal Law:
Residency Requirements Prohibited in Ohio and Could have Racially Discriminatory
Disparate Impact Upon African-Americans

I hereby submit and otherwise file this written report pursuant to R.C. §124.341.

On November 6, 2019, I, as a Central State University employee, received a notification
about job postings, including, but not limited to, for Regional Extension Associate. There
are four (4) Regional Extension Associate positions posted. As of November 26, 2019,
each of the Regional Extension Associate job postings contains a residency requirment
that is prohibited by Ohio law.

Specifically, each of the Regional Extension Associate positions **contains a residency requirement** as a minimum qualification that is prohibited by Ohio statutory law and Ohio Supreme Court case law:

**Position:** Regional Extension Associate-Southwest
**Minimum Qualifications:** "• Upon hire must reside in the Southwest Region."
**Job Summary:** "Southwest Region includes the following Counties: Adams Brown, Butler, Clermont, Clinton, Darke, Fayette, Franklin, Greene, Hamilton, Highland, Miami, Mercer, Montgomery Pickaway, Preble, Ross, Shelby and Warren."

**Position:** Regional Extension Associate-Southeast
**Minimum Qualifications:** "• Upon hire must reside in the Southeast Region."
**Job Summary:** "Southeast Region includes the following Counties: Athens, Belmont, Gallia, Guernsey, Jackson, Lawrence, Meigs, Monroe, Morgan, Muskingum, Noble, Perry, Pike, Scioto, Washington, and Vinton."

**Position:** Regional Extension Associate, Northwest
**Minimum Qualifications:** "• Upon hire must reside in the Northwest Region."
**Job Summary:** "Northwest Region includes the following Counties: Crawford, Hardin, Lucas, Marion, Wood, Wyandot, Allen, and Auglaize"

**Position:** Regional Extension Associate, Northeast
**Minimum Qualifications:** "• Upon hire must reside in the Northeast Region."
**Job Summary:** "Northeast Region includes the following Counties: Ashtabula, Carroll, Columbiana, Cuyahoga, Geauga, Harrison, Jefferson, Lake, Mahoning, Portage, Stark, Trumbull, Tuscarawas,"

Ohio law prohibits the imposition of Residency Requirements upon higher education employees and certain other employees.

- R.C. §9.481 Residency requirements prohibited for certain employees.
- R.C. §124.70 No residency requirement for higher education employees.
- The Ohio Supreme Court, in Lima v State, 2009-Ohio-2597, held that a state law *prohibiting* general residency requirements for public employees is valid and supersedes local laws to the contrary.

According to the Ohio Development Services Agency, in Ohio, "nearly four out of every ten African Americans in the state live in the cities of Cincinnati, Cleveland, or Columbus." The impact of the residency requirement could also disproportionately eliminate African American Ohio residents from competing for a majority of the restricted positions, in violation of state and federal civil rights laws.

Respectfully submitted,

Ambrose Mosesili, Esq
Cuyahoga County Educator
Central State University Extension

- Page2



**Re: Extension Standard Operating Practices**

Ambrose Moses III <amoses@centralstate.edu>
Wed 8/19/2020 10:56 AM
To:Anthony Barwick <abarwick@centralstate.edu>

Anthony,

First, it is encouraging to see my colleagues in leadership discussing these issues. It would be even better to have input from rank-and-file staff as well because they are an important part of the team and they are the voice, face, and presence of Extension in the community.

Second, the nature of an 1890 Land-Grant institution is to bring more Black Americans into the land-grant system and deliver the benefits of the land-grant system to Black Americans. The 1890 Land-Grant component of the land-grant system came about in response to the systemic racism that existed then, and which continues to exist today.

The State of Ohio has a history of and present condition of systemic racism. In fact, many of the counties and cities that Central State University Extension has served, to date, have declared racism a public health crisis. Columbus, Cleveland, Cincinnati, Dayton, Franklin County, Hamilton County, Cuyahoga County, Summit County, and Montgomery County have all declared racism a public health crisis.

Governor Mike DeWine recently stated that racism is a public health crisis, "We have to do everything within our power to deal with this," DeWine said. "It really is a work in progress. … Racism is a public health crisis. It is something we have to work on every day."

During my first year as Central State University's first County Agent, I, along with Brittany Jones, attended a retreat for new extension staff across Ohio. The large meeting room was packed with tables and people from Ohio State University Extension and two from Central State University Extension. There were only two Black Americans in that room. Unfortunately, after over 100 years in existence, there is not much Black representation or presence in Extension across the State of Ohio.

Central State University Extension's expansion provides a once-in-a-lifetime opportunity to change and improve the face of Extension in Ohio. It provides an opportunity to dramatically improve and increase the diversity of ideas, perspectives, experiences, knowledge, and strategies within Extension, statewide. CSUE's expansion provides an opportunity for Black Americans to learn about and consider Extension as a career option.

My point is this, we need Black Ohioans in Extension. If we don't do it now, it will not happen and the once-in-a-lifetime opportunity will have been squandered. We have a significant and growing population of Black Ohioans going into agriculture. We need an Extension service that they can identify with. Now is the time to address this. Consider that the USDA Office of Urban Agriculture and Innovative Production even selected Cleveland as one of the first cities in which to pilot its new urban agriculture and urban-suburban county committee initiative.

I don't mind if you share this with our colleagues in leadership. My father used to say, "You might not like what I say. You might not like how I say it. But, it's the truth, and the truth will stand on its own merit."

I still believe in Extension and Central State University Extension. Let's do this!

Respectfully,

Ambrose

**Ambrose Moses III, Esq.**
*Cuyahoga County Educator*
**Central State University Extension**
12200 Fairhill Road, E-Building |Cleveland, OH 44120

O: 330-599-7732 | F: 216-429-3146
**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Anthony Barwick <abarwick@centralstate.edu>
**Sent:** Wednesday, August 19, 2020 9:46 AM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Subject:** Fw: Extension Standard Operating Practices

Ambrose - FYI. Please review the email thread below.

**Anthony E. Barwick, B.S., B.A., MBA**
*Program Leader – Community and Economic Development*
**Central State University**
**Cooperative Extension Service**

Case: 3:25-cv-00336-MJN-PBS Doc #: 1 Filed: 10/06/25 Page: 111 of 382 PAGEID #: 111

E.J. Emery Hall
1400 Brush Row Road | Wilberforce, Ohio 45384
abarwick@centralstate.edu | CentralState.edu/csuextension

*Service…Protocol…Civility®*
1890 LAND-GRANT INSTITUTION

**Click to view CSU's Land-Grant video: https://youtu.be/GQ-LUzty83E**

---

**From:** Siddhartha Dasgupta <sdasgupta@centralstate.edu>
**Sent:** Wednesday, August 19, 2020 9:39 AM
**To:** Anthony Barwick <abarwick@centralstate.edu>; Alcinda Folck <afolck@centralstate.edu>; Mary Kershaw <mkershaw@centralstate.edu>; Prosper Doamekpor <pdoamekpor@centralstate.edu>
**Cc:** Michelle Smith <msmith2@centralstate.edu>
**Subject:** RE: Extension Standard Operating Practices

Mr. Barwick,
I intend to address some of the issues.
Please understand that some of the issues are beyond my control.
I believe that we need to address fair treatment and professionalism in our work.

I tried to recruit some excellent African American people into CSUE who have along and successful record into ANR, but they did not want to leave their old lives/jobs, for which I don't blame them.

Typically in a small Extension service like ours, there is not a lot of room for advancement (there is some, but very limited).  Extension is not like academics with advancement opportunities, and that should be discussed in the hiring process.  By the way, I have very little influence in that area at CSU.

I will find training for all Extension for some of these issues.
Thank you
Dr. Sid Dasgupta
Associate Extension Administrator and Professor
College of Engineering, Science, Technology, and Agriculture
1890 Land Grant Program
Central State University
1400 Brush Row Road, Wilberforce, Ohio 45384
Ph: (937)376-6625

---

**From:** Anthony Barwick <abarwick@centralstate.edu>
**Sent:** Wednesday, August 19, 2020 9:31 AM
**To:** Siddhartha Dasgupta <sdasgupta@centralstate.edu>; Alcinda Folck <afolck@centralstate.edu>; Mary Kershaw <mkershaw@centralstate.edu>; Prosper Doamekpor <pdoamekpor@centralstate.edu>
**Cc:** Michelle Smith <msmith2@centralstate.edu>
**Subject:** Re: Extension Standard Operating Practices

Dr. Dasgupta,

Thank you for your inquiry and request for input to the Extension Standard Operating Practices.  In regards to your concerns about what our new hires will face in relations to kindness and courtesy challenges, I feel that it will be prudent to early equip them with established professional development trainings through a continuous course curriculum series in fields of conflict management, social/economic disparity awareness, and cultural sensitivity to name a few.  As an Extension unit, we have not implemented any soft skill trainings as staff requirements, nor as any kind of established bi-annual and annual review line items.  During my term as the Interim Associate Administrator, I tried to implement bi-annual and annual review processes and soft skill training modules, but due to other pressing matters, it did not come to fruition.

From a big picture perspective, there are a number of existing internal concerns that I believe will perpetuate lacks of kindness and courtesy that have and will continue to permeate our Extension unit, including:
*Alarming limited number of new hires of color - Are we making a concerted effort of soliciting and seeking diverse talent across all demographics?  Are we ensuring unbiased review, selection, and hiring processes are in place?
*Limited leadership positions and career climb opportunities for people of color and existing Extension staff
*Lack of skill-set professional development - professional certifications, advanced academic attainment, attendance of professional conferences, on-line training tools
*Lack of professional respect among staff, job titles, work assignments, and positions
*Lack of professional communication among staff, job titles, work assignments, and positions
*Cronyism and overt biases
*Lack of identified job assignments and responsibilities
*Lack of team building excercises and retreats
*No internal full-staff Extension team meetings

Complaint Exhibit 6 - 24

In my efforts to "practice what I preach", I am thankful that you are supporting my decision to provide soft skills training (and other training modules) to Ambrose and my four new hires in the aforementioned training modules. In my professional opinion, I believe that it will be prudent to extend this suggestion to all of our Extension staff to demonstrate concerted and deliberate efforts to acknowledge our short-comings and continuously strive towards solutions to improve them.

**Anthony E. Barwick, B.S., B.A., MBA**
*Program Leader – Community and Economic Development*
**Central State University**
**Cooperative Extension Service**
E.J. Emery Hall
1400 Brush Row Road | Wilberforce, Ohio 45384
abarwick@centralstate.edu | CentralState.edu/csuextension

*Service...Protocol...Civility®*
1890 LAND-GRANT INSTITUTION

**Click to view CSU's Land-Grant video: https://youtu.be/GQ-LUzty83E**

---

**From:** Siddhartha Dasgupta <sdasgupta@centralstate.edu>
**Sent:** Tuesday, August 18, 2020 5:01 PM
**To:** Alcinda Folck <afolck@centralstate.edu>; Mary Kershaw <mkershaw@centralstate.edu>; Prosper Doamekpor <pdoamekpor@centralstate.edu>; Anthony Barwick <abarwick@centralstate.edu>
**Cc:** Michelle Smith <msmith2@centralstate.edu>
**Subject:** Extension Standard Operating Practices

Hi Program Leaders,

I hope that you are going to act on my previous email about coming up with a plan for a mobile classroom.

I have tried to put together some Standard Operating Procedures for Extension. Drs. Kershaw and Folck have already contributed towards the document. Ms. Smith is reviewing it now, after each one of you will need to review it before we get it looked at by Dr. Johnson and the CSU legal team.

As you know, the world is becoming an angrier place where people from all sides are showing little patience or kindness.

If you're wondering where I'm going with this, it is not hard to imagine some of the challenges our new hires will face.

I am asking for some input in the SOP about tools to treat people with courtesy and kindness, even if we don't agree or even don't necessarily like them. I know that treating others with courtesy is not the same as respecting their points of view. I believe, as an Extension service, we all need to learn some skills in this department. Otherwise, I foresee difficulties coming down the road.

I would appreciate greatly, if you can help with some ideas about how to treat people with courtesy, even if we disagree with them most strenuously.

Thank you

Dr. Sid Dasgupta
Associate Extension Administrator and Professor
College of Engineering, Science, Technology, and Agriculture
1890 Land Grant Program
Central State University
1400 Brush Row Road, Wilberforce, Ohio 45384
Ph: (937)376-6625

Complaint Exhibit 6 - 25



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ◆ WILBERFORCE, OH 45384-1004 ◆ 937-376-6652 ◆ FAX 937-376-6680



**Report**

November 23, 2022

**TO:**

Supervisor (CED Program Leader):  Vacant
Appointing Authority:  Board of Trustees c/o Mark Hatcher, Esq. (mhatcher@bakerlaw.com)
Jacqueline Y. Gamblin (jgamblin@jyginnovations.com)
Marlon R. Moore (marlon@marlonmoore.com)
Christopher L. Wyche (cwyche@centralstate.edu)
Jason R. Manns  (jason.r.manns@gmail.com)
Natalia S. Harris (nharris@centralstate.edu)
Richard C. Perry (rperry@pinkney-perry.com)
Linda D. Mattherws (lmatthews@centralstate.edu)
President:  Dr. Jack Thomas (jthomas@centralstate.edu)
Dean (Interim):  Dr. Morakinyo Kuti (mkuti@centralstate.edu)
Associate Administrator of Exension (Interim):  Dr. Alcinda Folck (afolck@centralstate.edu)
General Counsel:  Laura Wilson, Esq. (lwilson@centralstate.edu)
Human Resources:  Pamela Bowman (pbowman@centralstate.edu)
**Central State University**
1400 Brush Row Road
P.O. Box 1004
Wilberforce, OH 45384-1004

**FROM:**

Ambrose Moses III, Esq. (amoses@centralstate.edu)
Extension Educator, Community & Economic Development
Cooperative Extension Service
Central State University

**RE:    Noncompliance with State and Federal Law:**
    **Wrongful and Unlawful Employment Practices**
    **Denial of Substantive and Procedural Due Process**
    **Denial of Equal Protection**
    **41 U.S.C.  1983 – Civil action for deprivation of rights**
    **Disparate Impact Upon African Americans**

    **Notice of Intent to Sue**

I hereby submit and otherwise file this written report pursuant to R.C. §124.341 and give notice of my intent to initiate a lawsuit unless this matter is appropriately resolved.

Page **1** of **4**

**Engaging Communities and Transforming Lives**                    *Service...Protocol...Civility*®



**CENTRAL STATE UNIVERSITY EXTENSION**

P.O. BOX 1004 ◆ WILBERFORCE, OH 45384-1004 ◆ 937-376-6652 ◆ FAX 937-376-6680

The details of this R.C. §124.341 report and notice of intent to sue are set forth in the attached documents.

Central State University is a state university, a public institution of higher learning which is a body politic and corporate, and a subdivision of the state of Ohio.

The Board of Trustees of the Central State University is the body in whom the government of Central State University is vested.  Ohio law requires that the Board of Trustees shall do all things necessary for the proper maintenance and successful and continuous operation of Central State University.  Ohio law also requires that the Board of Trustees shall take, keep, and maintain exclusive authority, direction, supervision, and control over the operations and conduct of such university, so as to assure for said university the best attainable results with the aid secured to it from the state.

Ohio law further requires that the Board of Trustees of the Central State University shall elect, fix the compensation of, and have the right to remove the president, who shall be the chief executive officer of the university, and elect, fix the compensation of, and remove such number of professors, teachers, and other employees as is necessary.

The employment practices of Central State University's Cooperative Extension Service favor non-African Americans in recruiting, interviewing, hiring, performance appraisals, compensation, and other terms and conditions of employment.  For instance, the job posting on the Central State University website for CED Program Leader was finally updated to have a minimum requirement of a master's degree with the PhD preferred.  However, as of today, November 23, 2022, the postings for the CED and FCS Program Leader positions on the www.BlackAchieversJobs.com website STILL say PhD required.  That is supposed to be part of the University's outreach effort to get more African American applicants into the pool of candidates.  Yet, qualified African Americans are systematically discouraged by the inclusion of incorrect information in the job posting.  Intentional, negligent, reckless?  Who knows?  In 2022, if you are qualified and still excluded, what does it matter if it was intentional, negligent, or reckless?  . . . at the HBCU.

By way of a summary, on November 17, 2022, I, as a Central State University employee, applied for the position of Program Leader, Community and Economic Development (Position Number 0801304).  I am wrongfully and unlawfully being denied an opportunity to compete for the position.

Page **2** of **4**



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ◆ WILBERFORCE, OH 45384-1004 ◆ 937-376-6652 ◆ FAX 937-376-6680

I had previously seen the posting but was initially discouraged from applying because it included newly added terms and conditions of employment that were added to the position description for both the CED and FCS Program Leader positions.  The newly added terms and conditions of employment targeted me and Renita Porter, among the most tenured and outspoken Extension Educators in those two program areas and who are also African American.

On November 16, 2022, I learned that Extension leadership staff was engaging with select Caucasian employees, encouraging them to apply for the Program Leader positions, and offering to seek changes to the targeted terms and conditions of employment for those select applicants.  This was not done for the other applicants and the African American applicants, including me and Renita Porter.  After I began asking questions and raised an issue about what was happening, leadership staff then informed a select Caucasian applicant that the Dean would not make the accommodating changes to the targeted terms and conditions.  The select Caucasian applicant, who by that time was one of the two finalists and had been selected for the second interview, withdrew himself from further consideration for the position.  **So, even after one of the two finalists withdrew from consideration, I still was not offered an opportunity to interview.**

I hereby request –

1.  That the interview process for the CED Program Leader immediately be suspended until this matter is resolved;
2.  That I, Ambrose Moses III, be allowed to apply, compete, and be fairly and genuinely considered for the CED Program Leader position, including but not limited to, being allowed to interview on December 7, 2022;
3.  That the current Search Committee be disbanded;
4.  That a new Search Committee be formed with all new members.

**Notice of Intent to Sue**

I have attempted to resolve this matter via communications, requests, and sharing of information with the Associate Administrator of Extension, the Dean and Director of Land-Grant, and the Director of Human Resources.  My most significant questions have gone unanswered.  My request for copies of policies have gone unanswered.  I have been told that my application will not be accepted and that my application was rejected.  The screening round of interviews has occurred.  I was not interviewed.  The second interviews is scheduled for December 7, 2022.  I would like to inteview.  I am qualified and deserve an opportunity to compete.

Page **3** of **4**



**CENTRAL STATE UNIVERSITY EXTENSION**

P.O. BOX 1004 ⬦ WILBERFORCE, OH 45384-1004 ⬦ 937-376-6652 ⬦ FAX 937-376-6680

My intention is to complete the complaint over the holiday weekend and to file the lawsuit in either state or federal court on Monday, November 28, 2022.

Your thoughtful consideration, response, and approval of this request is greatly appreciated. Thank you.

Sincerely,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University**
1400 Brush Row Road | Wilberforce, Ohio 45384
(614) 432-4300 mobile

Page **4** of **4**

**Engaging Communities and Transforming Lives**

*Service...Protocol...Civility*®

# AMBROSE MOSES, III

7888 Danbridge Way, Westerville OH 43082

**Phone:** 614-432-4300                                    **Email:** ambrosemoses@gmail.com

## PROFESSIONAL PROFILE

Ambrose is an experienced cooperative extension professional who began his cooperative extension career in 2017 as the first County Extension Agent for Central State University in Wilberforce, Ohio.

As a County Agent, Ambrose learned cooperative extension from a holistic perspective because of his responsibilities for planning, coordinating, delivering, and evaluating researched-based educational programming in all four program areas -- Community & Economic Development (60%), Agriculture and Natural Resources (10%), 4-H and Youth Development (10%), and Family and Consumer Science (10%), as well as Administrative duties (10%). While his area of expertise is CED, he understands how the program areas intersect and complement one another.  He has more than five (5) years of experience working on entrepreneurship, business development, small business development, workforce development, and agribusiness in the context of cooperative extension.

Ambrose is a licensed attorney with over thirty years of experience advising, counseling, and representing individuals, families, and groups, with particular focus on startup entrepreneurs and growing businesses.

He is also a committed community economic development professional who, as co-founder of a successful community development corporation, through teaching business-related classes and collaborating with nonprofit organizations, state, local, and federal governmental agencies, and educational institutions, actively works to promote job creation, increase the development of more viable microbusinesses, and strives to empower underserved individuals and groups to influence and control their own destinies and that of their communities through increased self-sufficiency and self-reliance.

**Cooperative Extension Philosophy**:  Education is the greatest weapon which you can use to change the world.  Good extension education can only be achieved when one understands the social context in which that education is to be delivered and utilized.

**Awards/Recognition/Achievements**

- 2021 – Completed the 1890 Extension Leadership Academy
- 2020 – Awarded the OhioMBE Frank W. Watson Advocacy Award
- 2015 – Recognized as the U.S. Small Business Administration (SBA) Legal Assistance Champion of the Year

Complaint Exhibit 6 - 30

## AREAS OF EXPERTISE

- **Community Economic Development**
- **Counseling and Advising Businesses**
- **Advising Growing Businesses**
- **Development of Business Case**
- **Evaluation of Market Potential**
- **Teaching Business-related Classes**
- **Negotiations**
- **Business Plan Assistance**

- **Agribusiness Development**
- **Strategic Planning**
- **Financial Strategy**
- **Equity Investments / Debt Funding**
- **Problem-Analysis/Problem-Solving**
- **Project Management**
- **Commercialization**
- **Legal Services as a Tool for Community Economic Development**

- **Business and Commercial Law**
- **Contract Law**
- **Intellectual Property Law**
- **Real Estate Law**
- **Crowdfunding Law**
- **Business Litigation**
- **Mentoring and Coaching**
- **Online Content Delivery**

## PROFESSIONAL EXPERIENCE

**Central State University, Wilberforce, Ohio**                    2020 to Present
    **Extension Educator, CED (Statewide)**

- Specializes in and is responsible state-wide for Central State University Extension projects related to Community & Economic Development.
- Develops and implements educational programs:
    - Ready, Set, Grow!: Business Development Program
    - RSG! Entrepreneur Toolkit
    - RSG! Agriculture
    - PRiMR: Extension Disaster Management Education
    - CED Office Hour Live!
- Develops and Coordinates a statewide Small Business/Agribusiness Summit
- Facilitated development of a cooperative by urban growers in Cleveland, Ohio
- Engages with state, local, and federal agencies and officials concerning the cooperative extension service in relation to addressing identified community needs.
- Engages with cooperative extension personnel at other 1862 and 1890 land-grant institutions in addressing identified community needs.
- Extension Disaster Education Network (EDEN), Delegate
- 1890-EDEN Advisory Group, Member
- The Role of Universities, Colleges and Practitioners in Disaster Preparedness, Response, Innovation, Mitigation, and Recovery (PRIMR), Programming Committee Member

**Central State University, Wilberforce, Ohio**                    2018 to 2020
    **County Educator**

- Working with public, private, and community organizations to oversee activities related to entrepreneurial training, small business development, business plan development, strategic planning, neighborhood development, and other community development related activities in Cuyahoga County, Ohio.

Complaint Exhibit 6 - 31

- Coordinate and facilitate education activities related to 4-H, family and consumer science, and Agriculture and Natural Resources in communities.

## Central State University, Wilberforce, Ohio                    2017 to 2018
### County Agent

- Responsible for coordinating, facilitating, and delivering county-wide Central State University Extension projects related to Community & Economic Development, 4-H and Youth Development, Family and Consumer Science, and Agriculture & Natural Resources.
- Working with public, private, and community organizations to oversee activities related to entrepreneurial training, small business development, business plan development, strategic planning, neighborhood development, and other community development-related activities in Cuyahoga County.

## Law Office of Ambrose Moses III, Columbus Ohio                    1991 to Present

### Attorney

- Collaborated with local entrepreneur support organization (ESO) to develop, fund, and implement a Small Business Legal Aid program that addresses some of the unmet legal needs of underserved and underrepresented businesses in Ohio.
- Advising and counseling startups and growing businesses.  Drafting, revising, and negotiating documents and transactions related to the establishment and financing of growing and startup businesses, such as operating agreements, articles of organization, series LLC formation, corporate by-laws, contracts, shareholder and investment agreements, promissory notes, and strategic business plans.
- Advising business owners in matters relating to business formation and development, operations, expansion, contract negotiations, intellectual property, real estate, labor and employment, equity investments, debt funding, and crowdfunding.
- Counseling artists, producers, and entrepreneurs concerning entertainment-related matters such as contracts, investment and financing arrangements, and a wide range of other legal and business matters.
- Conducting legal research, preparing pleadings, motions, and discovery relevant to the prosecution and defense of civil and criminal litigation in federal and state courts.  Preparing briefs and delivering oral arguments in appellate cases.

## Legal Aid Society of Columbus, Columbus Ohio                    2004 to 2009
### Staff Attorney

- Networked and established relationships with community-based organizations as part of the Legal Aid Neighborhood Services (LANS) team.

Complaint Exhibit 6 - 32

- Utilized business law, affordable housing, and community development corporation (CDC) background and experience to develop and implement an expansion of services to include small business advice and counsel in low and moderate income communities.
- Initiated the creation of a Community Economic Development (CED) division of the Legal Aid Society.

**OCSEA/AFSCME Local 11, AFL-CIO, Columbus Ohio**          2000 to 2001
**Associate General Counsel**

- Promoted, procured, and protected the social and economic interests of Union membership through legal advocacy.
- Provided legal representation in state and federal courts, arbitration proceedings, and administrative agencies.
- Negotiated settlements and mutually agreeable resolutions to contract disputes.

**Sterling Commerce, Dublin, Ohio**          1999 to 2000
**Contract Specialist, Business Administration**

- Worked with team members in sales, marketing, management, finance and accounting, research and development, and human resources to achieve Company strategic goals and objectives.
- Drafted, revised, and negotiated a wide range of contracts related to electronic commerce, internet business solutions, and electronic data interchange, including network service agreements, consulting agreements, software license agreements, service schedules, and reseller agreements.
- Administered Company's patent program and addressed other intellectual property issues.

## EDUCATION

- Juris Doctorate, The Ohio State University College of Law
  *Academic emphasis on Business Law, Intellectual Property, and Tax Law.*
- Bachelor of Arts, Criminology, The Ohio State University

Complaint Exhibit 6 - 33

## Re: Proposed Solutions regarding the CED Program Leader interview and applicant selection process

**Ambrose Moses III** <amoses@centralstate.edu>

Tue 11/22/2022 11:39 AM

To: Morakinyo Kuti <mkuti@centralstate.edu>;Alcinda Folck <afolck@centralstate.edu>;Pamela Bowman <pbowman@centralstate.edu>

Good morning, Dr. Kuti:

May I be included and allowed to compete in the second round of interviews for the CED Program Leader position?  I meet both the minimum and preferred qualifications for the position.

Please note that I was not removed from the Search Committee.  I voluntarily withdrew (recused) myself from the Search Committee _prior_ to submitting my application and resume for the CED Program Leader position.  There was no policy shared with search committee invitees concerning whether or when they would become ineligible as a candidate for open positions (CED, FCS, or otherwise) at Central State University as a result of their participation on a search committee.  The University should err on the side of due process, diversity, inclusion, and the likelihood of finding the best available candidate.

I have no unfair advantage.  All applicants have access to the same information.  The Ohio Supreme Court, in the case of <u>State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.</u>, 97 Ohio St.3d 58, 2002-Ohio-5311, has ruled that the names and resumes of applicants are public records under Ohio law.  Thus, each of the applicants has access to the same information (i.e. names and resumes of all applicants).  The general public has access to the same information.  I have no unfair advantage.

I was not, and am not, conflicted out because I did not participate in any interviews.  While I was on the Search Committee, there was no ranking of applicants because there was no scoring or categorization of them prior to the interviews, and, to my knowledge, all applicants up to that point were invited to interview.  Additional applicants, such as me, can still be considered because the position is open until filled.

I am simply asking for a fair opportunity to compete for the position of CED Program Leader.  Thank you.


Sincerely,

Ambrose Moses III


**Ambrose Moses III, Esq.**

_Extension Educator_
_Community & Economic Development_
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**[mailto:amoses@CentralState.edu|]amoses@CentralState.edu|** www.CentralState.edu/csuextension

Complaint Exhibit 6 - 34

**From:** Morakinyo Kuti <mkuti@centralstate.edu>
**Sent:** Friday, November 18, 2022 5:32 PM
**To:** Ambrose Moses III <amoses@centralstate.edu>; Alcinda Folck <afolck@centralstate.edu>; Pamela Bowman <pbowman@centralstate.edu>
**Subject:** RE: Proposed Solutions regarding the CED Program Leader interview and applicant selection process

Mr. Moses,

Good afternoon,

There was Community & Economic Development representation on the Search Committee before you applied and had to be replaced on the Committee. You were removed from the Search Committee because you became conflicted upon applying for the position.

Your application was rejected because you had information on the other applicants prior to applying, giving you an unfair advantage over the other applicants. You applied after the candidates were ranked and scheduled for interviews.

If the committee does not find a suitable candidate and reopens the position, you can apply.

I will ensure that Community & Economic Development is represented in the search process.

Thank you.

**Morakinyo A.O. Kuti, Ph.D.,**
**Interim Dean, John W. Garland College of Engineering, Science, Technology, and Agriculture**
**and Director of the 1890 Land Grant Programs**
**Associate Provost for Research**
1400 Brush Row Road | Wilberforce, Ohio 45384
O: 937-376-6547 | F: 937-376-6598
mkuti@centralstate.edu | CentralState.edu
LinkedIn

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Friday, November 18, 2022 12:13 PM
**To:** Morakinyo Kuti <mkuti@centralstate.edu>; Alcinda Folck <afolck@centralstate.edu>; Pamela Bowman <pbowman@centralstate.edu>
**Subject:** Proposed Solutions regarding the CED Program Leader interview and applicant selection process

Good afternoon, Dr. Kuti:

I write to propose solutions to the CED Program Leader interview and applicant selection process.

The search committee decided that there would be two rounds of interviews. The first round of interviews is a screening of candidates. Then 2 or 3 of the screened candidates would be selected for the second round of interviews.

The search committee composition was to include a CED representative so that there is program area/subject matter expertise input in the process. *There should be some Community & Economic Development experience involved in the interview and evaluation of candidates for the Community & Economic Development Program Leader.*

Complaint Exhibit 6 - 35

Currently, if there was no replacement Community & Economic Development representative added to the search committee, that would be a deficiency in the first round of interviews. To my knowledge, Amber Twitty remains available and willing to serve on the search committee as a CED representative.

During my time on the search committee, I did not interview any candidates, score any candidates, or exclude any candidates from the first round of interviews. To my knowledge, all applicants were offered an opportunity to interview.

*I meet both the minimum qualifications <u>and</u> the preferred qualifications for the position.* I have included my resume with this email. From a screening perspective and an objective review of my resume and history with the University, the search committee has information that supports me being included as a candidate in the second round of interviews.

I propose the following two options as approaches to this matter that balances the interests of all involved and allows the University to move forward towards selecting the best available candidate for the position.

**Option A**

1. Add a replacement CED representative on the search committee.
2. Allow Ambrose to participate and compete in the second round of interviews.
3. If selected, extend to Ambrose any and all terms and conditions of employment that were made to other applicants and potential applicants, including, but not limited to, accommodations to the provision "This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio".

**Option B**

1. Add a replacement CED representative on the search committee.
2. Revise the job descriptions for the FCS and CED Program Leaders to make them consistent with the ANR and 4-H/Youth Development Program Leaders by removing the provision "This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio".
3. Repost the FCS and CED Program Leader positions.
4. Allow Ambrose to apply and compete for the CED Program Leader position.

Thank you.

Sincerely,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

[mailto:amoses@CentralState.edu|]**amoses@CentralState.edu**| [www.CentralState.edu/csuextension](http://www.CentralState.edu/csuextension)

Complaint Exhibit 6 - 36

## Questions per Telephone Conversation with Dr. Alcinda Folck

Ambrose Moses III <amoses@centralstate.edu>

Thu 11/17/2022 8:29 AM

To: Pamela Bowman <pbowman@centralstate.edu>

Good morning, Ms. Bowman:

I had a telephone conversation with Dr. Alcinda Folck yesterday afternoon, Wednesday, November 17, 2022.

My understanding is that Dr. Folck emailed me and asked me to call her office in response to the email that I sent to you, Dr. Kuti, and Dr. Folck yesterday morning, Wednesday, November 17, 2022. During the call, Dr. Folck indicated that she had to deliver some news to me. She went on to state that "We can't accept your application for the program leader because you've been on the search committee."

Dr. Folck indicated that she had talked with HR about this and that once somebody is on the search committee and has had the opportunity to rank and select applicants for interviews, they cannot then submit their own application for the position. I then indicated to Dr. Folck that I will still submit my application for the program leader position. Dr. Folck responded and stated that Ms. Bowman in HR said that if I have any questions, I can reach out directly to her.

As a follow-up to my call with Dr. Folck, here are my questions for you:

1. Would you please provide me with the Central State University policy concerning search committees, and the policy which states that once somebody is on the search committee and has had the opportunity to rank and select applicants for interviews, they cannot then submit their own application for the position?

2. Is the job description provision "This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio" a negotiable term for the FCS and CED Program Leader positions?

3. Why is the job description provision "This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio" only in the current FCS and CED Program Leader job postings?

4. Would you please provide me with the Central State University policy concerning what leadership staff members can and cannot do when recruiting or encouraging certain individuals or staff members to apply for open positions with the University?

5. Can a leadership staff member incentivize or encourage an individual to apply for an open position by representing to the individual that accommodations may be made to certain provisions within the job description to make the position more convenient for that particular individual if hired? Specifically, can a leadership staff member do so regarding the provision that "This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio."?

6. Have you investigated the concerns raised in the email I sent to you, Dr. Kuti, and Dr. Folck yesterday morning concerning the inclusion of the provision "This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio" in the FCS and CED Program Leader job postings and that it targets the most senior African American Extension Educators, namely, Ambrose Moses III and Renita Porter?

Complaint Exhibit 6 - 37

I look forward to your assistance in answering these questions.  Thank you.

Sincerely,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

[mailto:amoses@CentralState.edu|]amoses@CentralState.edu| www.CentralState.edu/csuextension

Complaint Exhibit 6 - 38

DRAFT

**IN THE COMMON PLEAS COURT**
**GREENE COUNTY, OHIO**
**CIVIL DIVISION**

AMBROSE MOSES III,                                   )
7888 Danbridge Way                                   )
Westerville, Ohio 43082                              )  **Case No.:**
                                                     )
        Plaintiff,                                   )
                                                     )
vs.                                                  )  **JUDGE:**
                                                     )
CENTRAL STATE UNIVERSITY,                            )
1400 Brush Row Road                                  )
Wilberforce, Ohio 45384                              )
                                                     )
and,                                                 )
                                                     )
BOARD OF TRUSTEES OF THE                             )
CENTRAL STATE UNIVERSITY,                            )
1400 Brush Row Road                                  )
Wilberforce, Ohio 45384                              )
                                                     )
and,                                                 )
                                                     )
JACK THOMAS, PRESIDENT                               )
CENTRAL STATE UNIVERSITY,                            )
*Individually and in his official capacity*,         )
1400 Brush Row Road                                  )
Wilberforce, Ohio 45384                              )
                                                     )
and,                                                 )
                                                     )
MORAKINYO KUTI, INTERIM DEAN,                        )
CENTRAL STATE UNIVERSITY,                            )
*Individually and in his official capacity*,         )
1400 Brush Row Road                                  )
Wilberforce, Ohio 45384                              )
                                                     )
and,                                                 )
                                                     )
ALCINDA FOLCK, INTERIM ASSOCIATE )
ADMINISTRATOR OF EXTENSION,                          )
CENTRAL STATE UNIVERSITY,                            )
*Individually and in her official capacity*,         )
1400 Brush Row Road                                  )
Wilberforce, Ohio 45384                              )
                                                     )
and,                                                 )
                                                     )
PAMELA BOWMAN, DIRECTOR OF                           )
HUMAN RESOURCES,                                     )
CENTRAL STATE UNIVERSITY,                            )
*Individually and in her official capacity*,         )
1400 Brush Row Road                                  )
Wilberforce, Ohio 45384                              )
                                                     )
and,                                                 )

Complaint - 1

Complaint Exhibit 6 - 39

DRAFT

**MARK RENDLEMAN,** )
Address Unknown )
)
and, )
)
**TENOLA OLIVER,** )
Address Unknown )
)
_____Defendants._____ )

**COMPLAINT FOR DECLARATORY JUDGMENT**
**AND INJUNCTIVE RELIEF**

Now comes the Plaintiff Ambrose Moses III, upon information and belief, and for his

Complaint state as follows:

**INTRODUCTION**

Ambrose Moses III seeks to be included and allowed to compete for the position

of Community & Economic Development Program Leader within Central State

University's Cooperative Extension Service.

This lawsuit arises from Central State University's continuous, unabated, pattern

of wrongful and unlawful employment practices, racial discrimination against African

Americans in general and specifically African American men within the University's

Cooperative Extension Service, and retaliation against Ambrose Moses III ("Moses") for

raising these issues and also filing a R.C. 124.341 report with the Board of Trustees of

the Central State University on or about November 27, 2019. (See attached.)

**Central State University's Most Recent Wrongful and Unlawful Acts**

The University's most recent wrongful and unlawful action against Moses is the

discriminatory employment practices and the denial of due process and equal protection

concerning Moses' efforts to compete for the vacant Community & Economic

Development Program Leader position.

One condition that was added to the CED and FCS Program Leader position

postings is "This position will report to work Monday – Friday, 8a-5p, at the Central

Complaint Exhibit 6 - 40

State University main campus in Wilberforce, Ohio". Upon information and belief, Moses asserts that this newly added provision, which does not exist in the ANR and 4-H Program Leader job descriptions, was intended to discourage applications from the most tenured Extension Educators in CED and FCS, namely Ambrose Moses and Renita Porter, respectively. Moses and Porter are both African American.

Moses, upon information and belief, has learned that Defendant Alcinda Folck was supporting and encourging the application of a Caucasian applicant for the position by representing to the Caucasian applicant that Folck would speak with Defendant Morakinyo Kuti about waiving that term and condition of employment and allowing the Caucasian applicant to report to campus one or two days per week instead of five days per week as posted.

Upon learning of Folck's efforts to make modifications in the terms and conditions of employment specifically for her select applicant without making those modifications in the terms and conditions of employment for Moses and other applicants, Moses began to question and challenge the matter. Moses asked Defendant Pamela Bowman, Director of Human Resources at Central State University, whether the provision was negotiable and for a copy of the policy concerning what Unversity leadership staff can or cannot do when recruiting or encouraging certain individuals or staff members to apply for open positions with the University. To date, Bowman has failed to respond to Moses' request for information and records.

After Moses' continued questions about the special accommodations that were being offered to select other applicant(s), upon information and belief, Folck eventually communicated to the Caucasian applicant that Kuti was not going to make the special accommodation. The Caucasian applicant, who was allowed to interview and was one of

Complaint - 3

the two final candidates invited back for a second interview, subsequently withdrew himself from consideration for the position.

**Moses' 3rd Application for CED Program Leader**

Moses has applied for the position of Community & Economic Development Program Leader on 3 occasions since 2017. Each time Moses was added to the pool, something happened to where Moses was not selected and the position was not filled.

**June 8, 2017** – Moses applied for one of the two Community and Economic Development Field Specialist/Program Leader vacancies (Posting Number 0800743).

**April 24, 2019** – Moses applied for the Community & Economic Development Program Leader vacancy (Posting Number 0800896). Upon information and belief, the position was withdrawn by Dr. Alton Johnson (Dean of CESTA) after Moses was added to the pool of applicants.

**December 2 and 10, 2021** – In response to the then pending resignation of Anthony Barwick as CED Program Leader as of January/2022, Moses and Barwick requested of Dr. Sidhartha Dasgupta and Dr. Michelle Corley that Moses be appointed as the Interim Community & Economic Development Field Specialist/Program Leader within the Cooperative Extension Service at Central State University. Dasgupta responded that it was a decision for Corley. Corley affirmed that it was her decision whether, if at all, to designate an interim CED Program Leader. To date, after nearly a year, no interim Program Leader has been appointed for CED.

**November 17, 2022** – Moses applied for the Program Leader, Community and Economic Development vacancy (Posting Number 0801304). The CED Program Leader was posted with the newly added terms and conditions discussed above. Moses had grown weary of having to fight so hard for so long for respect, fair treatment, due process, and equal opportunity to build a career and advance within the Cooperative

Complaint - 4

DRAFT

Extension Service.  Because of the newly added terms and conditions that were targeted to discourage Moses from applying, he initially figured that he would avoid the drama and not apply.  Moses was then invited to join the Search Committee for the CED Program Leader position.  He accepted.  Moses met with the Search Committee and Bowman from Human Resources.  The Search Committee decided that all of the applicants would be interviewed.  There was no scoring, ranking, or categorizing of the applicants.  Upon information and belief, all of the applicants were invited to the first round of interviews.

Moses did not interview any candidates.  On November 16, 2022, at 9:14 am, prior to the first interview, Moses notified Kuti, Folck, and Bowman via email that 1) he was withdrawing from the CED Program Leader interview committee, 2) he intended to apply for the CED Program Leader position, and 3) he was concerned that the statement in the position description "This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio" is not a bonafide occupational requirement for the position and appears to be targeted to dissuade or exclude applicants like Moses from the CED Program Leader position and Renita Porter from the FCS Program Leader position.

At approximately 4:00 pm on November 16, 2022, Folck spoke with Moses and stated that "We can't accept your application for the program leader because you've been on the search committee."  Folck indicated that she had talked with HR about this and that once somebody is on the search committee and has had the opportunity to rank and select applicants for interviews, they cannot then submit their own application for the position.  Moses then indicated to Folck that he will still submit his application for the program leader position.  Folck responded and stated that Ms. Bowman in HR said that if Moses had any questions, he can reach out directly to her.

Complaint - 5

Complaint Exhibit 6 - 43

On November 18, 2022, Kuti responded to Moses' email stating that Moses was removed from the Search Committee because he became conflicted upon applying for the position. Moses replied to Kuti's statement and noted that Moses was not removed from the Search Committee. Moses voluntarily withdrew (recused) himself from the Search Committee prior to submitting his application and resume for the CED Program Leader position. There was no policy shared with search committee invitees concerning whether or when they would become ineligible as a candidate for open positions (CED, FCS, or otherwise) at Central State University as a result of their participation on a search committee.

Kuti further stated that Moses' application was rejected because Moses had information on the other applicants prior to applying, giving Moses an unfair advantage over the other applicants. Moses advised Kuti that Moses had no unfair advantage because all applicants have access to the same information. The Ohio Supreme Court, in the case of State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn., 97 Ohio St.3d 58, 2002-Ohio-5311, has ruled that the names and resumes of applicants are public records under Ohio law. Thus, each of the applicants has access to the same information (i.e. names and resumes of all applicants). The general public has access to the same information. Moses has no unfair advantage.

Kuti further stated that Moses applied after the candidates were ranked and scheduled for interviews. Again, all applicants (except for Moses) were invited to interview. There was no scoring, ranking, or categorizing of the applicants before the first round of interviews. Moses did not interview any candidates. BEFORE the interviews occurred, Moses was no longer a member of the Search Committee. Moses was not, and is not, conflicted out because he did not participate in any interviews. While Moses was on the Search Committee, there was no ranking of applicants because there

<div align="center">Complaint - 6</div>

Complaint Exhibit 6 - 44

DRAFT

was no scoring or categorization of them prior to the interviews, and, to Moses' knowledge, all applicants up to that point were invited to interview.  Additional applicants, such as Moses, can still be considered because the position is open until filled.

November 23, 2022, Bowman emailed Moses and stated "With respect to the position for which you expressed interest, please be aware that the second round candidates have been selected and notified.  The search committee will not be considering additional applications at this time."  However, the job posting states that the position is open until filled.  Upon information and belief, it is Moses' understanding that the second interview is scheduled for December 7, 2022.  A temporary restraining order and permanent injunction is needed to maintain the status quo and avoid irreparable harm to Moses' legal and constitutional rights.

**Overview of Ambrose Moses III's Qualifications**

Moses is an experienced cooperative extension professional who began his cooperative extension career in 2017 as the first County Extension Agent for Central State University in Wilberforce, Ohio.  His territory was Cuyahoga County (Cleveland).  Ambrose resided in Delaware County (Westerville) and commuted over 240 miles round-trip each day for work.

As a County Agent, Moses learned cooperative extension from a holistic perspective because of his responsibilities for planning, coordinating, delivering, and evaluating researched-based educational programming in all four program areas -- Community & Economic Development (60%), Agriculture and Natural Resources (10%), 4-H and Youth Development (10%), and Family and Consumer Science (10%), as well as Administrative duties (10%). While his area of expertise is CED, he understands how the program areas intersect and complement one another.  He has more than five (5) years of

experience working on entrepreneurship, business development, small business development, workforce development, and agribusiness in the context of cooperative extension.

Moses has a Juris Doctorate from The Ohio State University College of Law and is licensed by the Ohio Supreme Court as an attorney with over thirty years of experience advising, counseling, and representing individuals, families, and groups, with particular focus on startup entrepreneurs and growing businesses.

He is also a committed community economic development professional who, as co-founder of a successful community development corporation, through teaching business-related classes and collaborating with nonprofit organizations, state, local, and federal governmental agencies, and educational institutions, actively works to promote job creation, increase the development of more viable microbusinesses, and strives to empower underserved individuals and groups to influence and control their own destinies and that of their communities through increased self-sufficiency and self-reliance.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this declaratory judgment matter pursuant to R.C. 2721.02(A), which authorizes the Court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed."

2. This Court has personal jurisdiction over Defendants as they are a subdivision of the state of Ohio, its employees and prospective employees, who conduct business in Ohio, and /or have the requisite minimum contacts with Ohio necessary to constitutionally permit the Court to exercise jurisdiction over them.

3. Venue is proper in Greene County pursuant to Civ.R. 3(C)(1), Civ.R. 3(C)(2), Civ.R. 3(C)(3), and Civ.R. 3(B)(4).  Defendants have conducted, are conducting, and will conduct, and/or has directed, is directing, or will direct, activity that gave rise to MOSES'

request for declaratory relief in Greene County, and part of the need for declaratory relief arose in, and will have an impact in Greene County.

## THE PARTIES

### A. Plaintiff

4.          Plaintiff Ambrose Moses III (also referred to herein as "MOSES") is African American, a United States citizen, and resident of Westerville, Delaware County, Ohio. MOSES began his employment with Central State University in March 2017 as the first County Extension Agent in the University's Cooperative Extension Service.

### B. Defendants

5.          Defendant Central State University (also referred to herein as "CENTRAL STATE" or the "UNIVERSITY") is a state university, a public institution of higher learning which is a body politic and corporate, and a subdivision of the state of Ohio.

6.          Defendant Board of Trustees of the Central State University (also referred to herein as the "BOARD OF TRUSTEES") is the body in whom the government of Defendant Central State University is vested.  Ohio law requires that the Defendant BOARD OF TRUSTEES shall do all things necessary for the proper maintenance and successful and continuous operation of Defendant Central State University.  Ohio law also requires that the BOARD OF TRUSTEES shall take, keep, and maintain exclusive authority, direction, supervision, and control over the operations and conduct of such university, so as to assure for said university the best attainable results with the aid secured to it from the state.  Ohio law further requires that the BOARD OF TRUSTEES of the Central State University shall elect, fix the compensation of, and have the right to remove the president, who shall be the chief executive officer of the university, and elect,

Complaint Exhibit 6 - 47

DRAFT

fix the compensation of, and remove such number of professors, teachers, and other employees as is necessary.

7. Defendant Jack Thomas (also referred to herein as "THOMAS"), individually and in his official capacity, is the President and chief executive officer of the UNIVERSITY.

8. Defendant Morakinyo Kuti (also referred to herein as "KUTI"), individually and in his official capacity, is the Interim Dean of the John W. Garland College of Engineering, Science, Technology, and Agriculture, and Director of 1890 Land-Grant Programs at the UNIVERSITY. KUTI, as Director, has responsibility for directing UNIVERSITY'S 1890 Land-Grant Program, including but not limited to, the Cooperative Extension Service.

9. Defendant Alcinda Folck (also referred to herein as "FOLCK"), individually and in her official capacity, is the Interim Associate Administrator of Extension for the UNIVERSITY and manages the Cooperative Extension Service.

10. Defendant Pamela Bowman (also referred to herein as "BOWMAN") is the Director of the Department of Human Resources at CENTRAL STATE. BOWMAN is responsible for directing employment procedures, job postings, search committees, and more. The Department of Human Resources at Central State University purports to be a progressive organization dedicated to providing excellent employee benefits, competitive compensation and rewards systems, timely training and organizational development opportunities, empowering employee and labor relations methodologies, customer-friendly employment procedures, and automated HR/Payroll reporting systems.

11. Defendant Mark Rendleman (also referred to herein as "RENDLEMAN") as a candidate for the position of Community & Economic Development Program Leader who is scheduled for a second interview on or about December 7, 2022, may have an interest in this action for declaratory judgment.

Complaint Exhibit 6 - 48

12.     Defendant Tenola Oliver (also referred to herein as "OLIVER") as a candidate for the position of Community & Economic Development Program Leader who is scheduled for a second interview on or about December 7, 2022, may have an interest in this action for declaratory judgment.

...

Complaint – 11

Complaint Exhibit 6 - 49



Log in

# Program Leader, Community and Economic Development

Central State University Extension

↩ **BACK TO SEARCH RESULTS**

🕐 **LAST UPDATED: 10/29/22**

## Job Description

**Job Summary:**

The CESTA/1890 Land Grant Extension's Community and Economic Development (CED) program leader takes a holistic approach to the development of programming that is designed to improve the well-being of Ohio residents. They plan, deliver, and evaluate research-based educational programs. Programming is tied to community needs and the selected individual will be expected to help develop small business and agribusiness enterprises for underserved areas. The position specializes in entrepreneurship, business development, small business development, workforce development, agricultural economics, or agribusiness.

**Essential Duties and Responsibilities:**

- Develop and deliver CED objective and research-based educational programs in one of the above specialty areas to meet the needs of diverse audiences in Ohio.
- Partner and collaborate with State agencies, nonprofit, and other organizations and the public to meet the educational needs of Ohio residents.
- Provide statewide leadership for developing CED program goals and objectives and identify needed financial and human resources.

Complaint Exhibit 6 - 50

- Use appropriate technologies to plan and deliver educational programs through workshops. seminars, conferences, media. one-on-one visits, field trips, tours, and other methods.

- Collaborate with academic department faculty on research agendas.

- Secure extramural funding through grants, contracts, industry supported partnerships, user fees and cost recovery to support mission critical programming.

- Report impacts, outcomes to clientele, public, administrators, and other key stakeholders.

- Serve as an educational advisor and liaison for CESTA/1890 Land Grant Extension and the University to appropriate public issue and program related organizations. Represent CESTA/1890 Land Grant Extension with federal, state, and local agencies and educational institution at regional and national levels.

- Provides leadership to educators, coordinators, specialists, and program assistants in delivering CED programs.

- Be active in Extension, research, and service activities at the state level; pilot new approaches and advance existing techniques in collaboration with personnel from other states where applicable.

- Utilizes the expertise of advisory groups, community leaders, public officials, and representatives of intended audiences to analyze data, identify needs, and assist in developing educational programs.
    - The position will require some travel (including overnight stays) and evening/weekend work and activities.

### Experience and Qualifications:

**Required**

- An earned doctorate/Ph.D. degree in economic development, business administration, small business, entrepreneurship, marketing, agricultural economics, agribusiness, public administration, or related community and economic development area.

- Excellent verbal, written and interpersonal skills.

- Demonstrated understanding of community and economic development, including financial management.

**Preferred**

- Knowledge of Extension's educational delivery systems and other aspects of the Land Grant system.

Complaint Exhibit 6 - 51

*To apply for this position, please visit the Central State University Job Opportunity Board:*
*Link to posting*

<div style="border:1px solid #ccc; text-align:center; padding:16px;">

**LOG IN OR REGISTER TO APPLY**

</div>

<div style="border:1px solid #ccc; text-align:center; padding:16px;">

**APPLY BY UPLOADING A RESUME**

</div>

<div style="border:1px solid #ccc; text-align:center; padding:16px;">

**SAVE JOB** 💾

</div>

By applying you agree to our Terms of Service

COMPANY DETAILS



# Central State University Extension

📍 Wilberforce, Ohio, United States

Central State University (CSU) is a Historical Black College and the second institution in Ohio to hold Land-Grant status. CSU became an 1890 Land-Grant University on February 7, 2014. The designation enables CSU to establish its Research and Extension Program and the opportunity to provide quality extension education that can focus on (a) sustainable agriculture, (b) water resources management fo…

© 2022 All Rights Reserved - Black Achievers Jobs is a registered trademark of DiverseTalentPool.

Powered by HiringOpps Job Board Software.


**Central State University**
**EXTENSION**

### Report

November 27, 2019

**TO:**

**Supervisor:** Anthony Barwick (abarwick@centralstate.edu)
**Appointing Authority:** Board of Trustees c/o Mark Hatcher, Esq. (mhatcher@bakerlaw.com) and Larry Macon Jr., Esq. (copastor@mtzionoakwood.org)
President: Dr. Cynthia Jackson-Hammond (chammond@centralstate.edu)
Dean: Dr. Alton Johnson (ajohnson@centralstate.edu)
Associate Director of Extension: Anthony Barwick (abarwick@centralstate.edu)
General Counsel: Laura Wilson, Esq. (lwilson@centralstate.edu)
Human Resources: Tonya Turner (tturner@centralstate.edu)
Central State University
1400 Brush Row Road
P. O. Box 1004
Wilberforce, OH 45384-1004

**FROM:**

Ambrose Moses III, Esq. (amoses@centralstate.edu)
Cuyahoga County Educator
Central State University Extension
12200 Fairhill Road, E-Building
Cleveland, OH 44120

**RE:** Noncompliance with State and Federal Law:
Residency Requirements Prohibited in Ohio and Could have Racially Discriminatory Disparate Impact Upon African-Americans

I hereby submit and otherwise file this written report pursuant to R.C. §124.341.

On November 6, 2019, I, as a Central State University employee, received a notification about job postings, including, but not limited to, for Regional Extension Associate. There are four (4) Regional Extension Associate positions posted. As of November 26, 2019, each of the Regional Extension Associate job postings contains a residency requirment that is prohibited by Ohio law.

Complaint Exhibit 6 - 53

Specifically, each of the Regional Extension Associate positions **contains a residency requirement** as a minimum qualification that is prohibited by Ohio statutory law and Ohio Supreme Court case law:

**Position:** Regional Extension Associate-Southwest
**Minimum Qualifications:** "• Upon hire must reside in the Southwest Region."
**Job Summary:** "Southwest Region includes the following Counties: Adams Brown, Butler, Clermont, Clinton, Darke, Fayette, Franklin, Greene, Hamilton, Highland, Miami, Mercer, Montgomery Pickaway, Preble, Ross, Shelby and Warren."

**Position:** Regional Extension Associate-Southeast
**Minimum Qualifications:** "• Upon hire must reside in the Southeast Region."
**Job Summary:** "Southeast Region includes the following Counties: Athens, Belmont, Gallia, Guernsey, Jackson, Lawrence, Meigs, Monroe, Morgan, Muskingum, Noble, Perry, Pike, Scioto, Washington, and Vinton."

**Position:** Regional Extension Associate, Northwest
**Minimum Qualifications:** "• Upon hire must reside in the Northwest Region."
**Job Summary:** "Northwest Region includes the following Counties: Crawford, Hardin, Lucas, Marion, Wood, Wyandot, Allen, and Auglaize"

**Position:** Regional Extension Associate, Northeast
**Minimum Qualifications:** "• Upon hire must reside in the Northeast Region."
**Job Summary:** "Northeast Region includes the following Counties: Ashtabula, Carroll, Columbiana, Cuyahoga, Geauga, Harrison, Jefferson, Lake, Mahoning, Portage, Stark, Trumbull, Tuscarawas,"

Ohio law prohibits the imposition of Residency Requirements upon higher education employees and certain other employees.

- R.C. §9.481 Residency requirements prohibited for certain employees.
- R.C. §124.70 No residency requirement for higher education employees.
- The Ohio Supreme Court, in Lima v State, 2009-Ohio-2597, held that a state law *prohibiting* general residency requirements for public employees is valid and supersedes local laws to the contrary.

According to the Ohio Development Services Agency, in Ohio, "nearly four out of every ten African Americans in the state live in the cities of Cincinnati, Cleveland, or Columbus." The impact of the residency requirement could also disproportionately eliminate African American Ohio residents from competing for a majority of the restricted positions, in violation of state and federal civil rights laws.

Respectfully submitted,

Ambrose Moses III, Esq
Cuyahoga County Educator
Central State University Extension

● Page 2

# Regional Extension Associate-Southwest

## Posting Details

Posting Details

| | |
|---|---|
| **Posting Number** | 0800973 |
| **Classification Title** | Regional Extension Associate-Southwest |
| **Working Title** | |
| **Department** | 1890 Land Grant Extension |
| **Job Summary/Basic Function** | Southwest Region includes the following Counties: Adams Brown, Butler, Clermont, Clinton, Darke, Fayette, Franklin, Greene, Hamilton, Highland, Miami, Mercer, Montgomery Pickaway, Preble, Ross, Shelby and Warren.<br>Job Summary:<br>The Regional Extension Associate will lead an effective work team of CSU Extension educators in the assigned region to deliver high quality educational programs designed to meet the needs across the region. This position will assist in hiring training and supporting the regional team. The Regional Extension Associate will report to the Operations and Program Manager.<br>Essential Duties and Responsibilities:<br>• Must reside in the region of assignment.<br>• Work with Program Leaders to manage day to day activities of program staff with in the region.<br>• Oversee implementation and evaluation of all programming in assigned multi-county region.<br>• Oversee professional development of regional team, ensuring the team has the resources and expertise needed to effectively carry out their job duties.<br>• Oversee and coordinate the development and implementation of partner level agreements in the region.<br>• Analyze programmatic data and financial information to determine ways to better focus resources for effectively and efficiently reaching the regional communities and residents<br>• Manage and monitor data and budget for projects and programs.<br>Program Development and Implementation<br>• Develop strategies and facilitate the regional implementation of train-the-trainer and or programming opportunities for regional organizations.<br>• Conduct programming in area of expertise delivering evidence-based programs in a community setting.<br>• Maintain a sound understanding of and familiarity with the key regional partners and stakeholders.<br>Communications and Community Partnerships<br>• Serve as the official liaison of cooperative efforts with other institutions agencies and organizations in the region.<br>• Lead positive communications and ongoing updates internally and externally with all stakeholders regionally.<br>• Coordinate and facilitate meetings with staff, stakeholders and partners.<br>• Develop community advisory boards. Lead the quarterly meetings.<br>• Develop relationships with local county OSU Extension offices to determine joint programs and projects.<br>• Cultivate new partnerships and maintain professional relationships to further Extension programming to improve the lives of individuals and families within the region in both rural and urban communities.<br>• Understand the needs of culturally and economically diverse audiences.<br>• Prepare timely reports of programmatic activities and success stories in the region.<br>• Other responsibilities assigned as needed |
| **Minimum Qualifications** | Minimum Qualifications<br>• Master's degree in education, communications, agriculture, community development health, nutrition, family relationships, youth development or a closely related discipline.<br>• Experience with program development and management.<br>• Ability to communicate clear work direction and broad understanding of programming priorities.<br>• Ability to work effectively in an environment that combines independent action and teamwork with colleagues and external organizations.<br>• Ability to build effective work teams and manage conflict.<br>• Respectful, professional communication style both oral and in written.<br>• Organizational and time management skills with attention to detail.<br>• Computer skills: Able to effectively use Microsoft Office Suite of software programs.<br>• Ability to plan and maintain a flexible work schedule, including evening and weekend work to meet time demands and/or special needs of program management.<br>• Valid driver's license, reliable vehicle with required liability insurance, to be utilized for frequent travel.<br>• Must be able to lift 25 pounds.<br>• Upon hire must reside in the Southwest Region. |
| **Preferred Qualifications** | Preferred Qualifications<br>• 1-3 years of experience in teaching, community organizing, community and/or community education.<br>• Direct experience in grants management and administration.<br>• Ability to oversee the compliance of budgetary requirements and financial policies and procedures. |
| **Posting Date** | 11/06/2019 |

Complaint Exhibit 6 - 55

| Closing Date | 12/20/2019 |
|---|---|
| Open Until Filled | No |
| Special Instructions to Applicants | Three Letters of Recommendation and Official Transcripts are required. A Letter of Recommendation request will be sent to your references if you are selected for interview. Please ensure you provide your references' name and email address where indicated on the application. Send Official Transcripts to:<br>Central State University<br>Attn: Michelle Smith<br>PO Box 1004<br>1400 Brush Row Road<br>Wilberforce, OH 45384<br>For questions or general inquiries, email Michelle Smith at msmith2@centralstate.edu. |
| Position Category | Staff - Monthly (Exempt) |

## Supplemental Questions

Required fields are indicated with an asterisk (*).

1. * What is the highest degree you hold?

   - Doctorate
   - Completed all Doctorate coursework, but has not completed dissertation
   - Master's Degree
   - Bachelor's Degree
   - Assoicate's Degree
   - High School Diploma or GED

2. * Do you have a valid Driver's License?

   - Yes
   - No

## Required Documents

### Required Documents

1. Resume
2. Cover Letter
3. Unofficial Transcripts

### Optional Documents

1. Curriculum Vitae

Complaint Exhibit 6 - 56

# Regional Extension Associate-Southeast

## Posting Details

Posting Details

| | |
|---|---|
| **Posting Number** | 0800975 |
| **Classification Title** | Regional Extension Associate-Southeast |
| **Working Title** | |
| **Department** | 1890 Land Grant Extension |
| **Job Summary/Basic Function** | Southeast Region includes the following Counties: Athens, Belmont, Gallia, Guernsey, Jackson, Lawrence, Meigs, Monroe, Morgan, Muskingum, Noble, Perry, Pike, Scioto, Washington, and Vinton. |

Job Summary:
The Regional Extension Associate will lead an effective work team of CSU Extension educators in the assigned region to deliver high quality educational programs designed to meet the needs across the region. This position will assist in hiring training and supporting the regional team. The Regional Extension Associate will report to the Operations and Program Manager.
Essential Duties and Responsibilities:
• Must reside in the region of assignment.
• Work with Program Leaders to manage day to day activities of program staff with in the region.
• Oversee implementation and evaluation of all programming in assigned multi-county region.
• Oversee professional development of regional team, ensuring the team has the resources and expertise needed to effectively carry out their job duties.
• Oversee and coordinate the development and implementation of partner level agreements in the region.
• Analyze programmatic data and financial information to determine ways to better focus resources for effectively and efficiently reaching the regional communities and residents
• Manage and monitor data and budget for projects and programs.
Program Development and Implementation
• Develop strategies and facilitate the regional implementation of train-the-trainer and or programming opportunities for regional organizations.
• Conduct programming in area of expertise delivering evidence-based programs in a community setting.
• Maintain a sound understanding of and familiarity with the key regional partners and stakeholders.
Communications and Community Partnerships
• Serve as the official liaison of cooperative efforts with other institutions agencies and organizations in the region.
• Lead positive communications and ongoing updates internally and externally with all stakeholders regionally.
• Coordinate and facilitate meetings with staff, stakeholders and partners.
• Develop community advisory boards. Lead the quarterly meetings.
• Develop relationships with local county OSU Extension offices to determine joint programs and projects.
• Cultivate new partnerships and maintain professional relationships to further Extension programming to improve the lives of individuals and families within the region in both rural and urban communities.
• Understand the needs of culturally and economically diverse audiences.
• Prepare timely reports of programmatic activities and success stories in the region.
• Other responsibilities assigned as needed

| | |
|---|---|
| **Minimum Qualifications** | Required Qualifications |

• Master's degree in education, communications, agriculture, community development health, nutrition, family relationships, youth development or a closely related discipline.
• Experience with program development and management.
• Ability to communicate clear work direction and broad understanding of programming priorities.
• Ability to work effectively in an environment that combines independent action and teamwork with colleagues and external organizations.
• Ability to build effective work teams and manage conflict.
• Respectful, professional communication style both oral and in written.
• Organizational and time management skills with attention to detail.
• Computer skills: Able to effectively use Microsoft Office Suite of software programs.
• Ability to plan and maintain a flexible work schedule, including evening and weekend work to meet time demands and/or special needs of program management.
• Valid driver's license, reliable vehicle with required liability insurance, to be utilized for frequent travel.
• Must be able to lift 25 pounds.
• Upon hire must reside in the Southeast Region.

| | |
|---|---|
| **Preferred Qualifications** | Preferred Qualifications |

• 1-3 years of experience in teaching, community organizing, community and/or community education.
• Direct experience in grants management and administration.
• Ability to oversee the compliance of budgetary requirements and financial policies and procedures.

| | |
|---|---|
| **Posting Date** | 11/06/2019 |

Complaint Exhibit 6 - 57

| Closing Date | 12/20/2019 |
|---|---|
| Open Until Filled | No |
| Special Instructions to Applicants | Three Letters of Recommendation and Official Transcripts are required. A Letter of Recommendation request will be sent to your references if you are selected for interview. Please ensure you provide your references' name and email address where indicated on the application. Send Official Transcripts to: Central State University Attn: Michelle Smith PO Box 1004 1400 Brush Row Road Wilberforce, OH 45384 For questions or general inquiries, email Michelle Smith at msmith2@centralstate.edu. |
| Position Category | Staff - Monthly (Exempt) |

## Supplemental Questions

Required fields are indicated with an asterisk (*).

1. * Do you have a valid Driver's License?

- Yes
- No

2. * What is the highest degree you hold?

- Doctorate
- Completed all Doctorate coursework, but has not completed dissertation
- Master's Degree
- Bachelor's Degree
- Assoicate's Degree
- High School Diploma or GED

## Required Documents

### Required Documents

1. Resume
2. Cover Letter
3. Unofficial Transcripts

### Optional Documents

1. Curriculum Vitae

Complaint Exhibit 6 - 58

# Regional Extension Associate, Northwest

## Posting Details

Posting Details

| | |
|---|---|
| **Posting Number** | 0800976 |
| **Classification Title** | Regional Extension Associate, Northwest |
| **Working Title** | |
| **Department** | 1890 Land Grant Extension |
| **Job Summary/Basic Function** | Northwest Region includes the following Counties: Crawford, Hardin, Lucas, Marion, Wood, Wyandot, Allen, and Auglaize |

Job Summary:

The Regional Extension Associate will lead an effective work team of CSU Extension educators in the assigned region to deliver high quality educational programs designed to meet the needs across the region. This position will assist in hiring training and supporting the regional team. The Regional Extension Associate will report to the Operations and Program Manager.

Essential Duties and Responsibilities:
- Must reside in the region of assignment.
- Work with Program Leaders to manage day to day activities of program staff with in the region.
- Oversee implementation and evaluation of all programming in assigned multi-county region.
- Oversee professional development of regional team, ensuring the team has the resources and expertise needed to effectively carry out their job duties.
- Oversee and coordinate the development and implementation of partner level agreements in the region.
- Analyze programmatic data and financial information to determine ways to better focus resources for effectively and efficiently reaching the regional communities and residents
- Manage and monitor data and budget for projects and programs.

Program Development and Implementation
- Develop strategies and facilitate the regional implementation of train-the-trainer and or programming opportunities for regional organizations.
- Conduct programming in area of expertise delivering evidence-based programs in a community setting.
- Maintain a sound understanding of and familiarity with the key regional partners and stakeholders.

Communications and Community Partnerships
- Serve as the official liaison of cooperative efforts with other institutions agencies and organizations in the region.
- Lead positive communications and ongoing updates internally and externally with all stakeholders regionally.
- Coordinate and facilitate meetings with staff, stakeholders and partners.
- Develop community advisory boards. Lead the quarterly meetings.
- Develop relationships with local county OSU Extension offices to determine joint programs and projects.
- Cultivate new partnerships and maintain professional relationships to further Extension programming to improve the lives of individuals and families within the region in both rural and urban communities..
- Understand the needs of culturally and economically diverse audiences.
- Prepare timely reports of programmatic activities and success stories in the region.
- Other responsibilities assigned as needed

| **Minimum Qualifications** | Required Qualifications |

- Master's degree in education, communications, agriculture, community development health, nutrition, family relationships, youth development or a closely related discipline.
- Experience with program development and management.
- Ability to communicate clear work direction and broad understanding of programming priorities.
- Ability to work effectively in an environment that combines independent action and teamwork with colleagues and external organizations.
- Ability to build effective work teams and manage conflict.
- Respectful, professional communication style both oral and in written.
- Organizational and time management skills with attention to detail.
- Computer skills: Able to effectively use Microsoft Office Suite of software programs.
- Ability to plan and maintain a flexible work schedule, including evening and weekend work to meet time demands and/or special needs of program management.
- Valid driver's license, reliable vehicle with required liability insurance, to be utilized for frequent travel.
- Must be able to lift 25 pounds.
- Upon hire must reside in the Northwest Region.

| **Preferred Qualifications** | Preferred Qualifications |

- 1-3 years of experience in teaching, community organizing, community and/or community education.
- Direct experience in grants management and administration.
- Ability to oversee the compliance of budgetary requirements and financial policies and procedures.

| **Posting Date** | 11/06/2019 |

Complaint Exhibit 6 - 59

| | |
|---|---|
| **Closing Date** | 12/20/2019 |
| **Open Until Filled** | No |
| **Special Instructions to Applicants** | Three Letters of Recommendation and Official Transcripts are required. A Letter of Recommendation request will be sent to your references if you are selected for interview. Please ensure you provide your references' name and email address where indicated on the application. Send Official Transcripts to: Central State University Attn: Michelle Smith PO Box 1004 1400 Brush Row Road Wilberforce, OH 45384 For questions or general inquiries, email Michelle Smith at msmith2@centralstate.edu. |
| **Position Category** | Staff - Monthly (Exempt) |

## Supplemental Questions

Required fields are indicated with an asterisk (*).

1. * What is the highest degree you hold?

   - Doctorate
   - Completed all Doctorate coursework, but has not completed dissertation
   - Master's Degree
   - Bachelor's Degree
   - Assoicate's Degree
   - High School Diploma or GED

2. * Do you have a valid Driver's License?

   - Yes
   - No

## Required Documents

### Required Documents

1. Resume
2. Cover Letter
3. Unofficial Transcripts

### Optional Documents

1. Curriculum Vitae

2 of 2

11/21/2019, 6:55 AM

# Regional Extension Associate, Northeast

## Posting Details

### Posting Details

| | |
|---|---|
| **Posting Number** | 0800974 |
| **Classification Title** | Regional Extension Associate, Northeast |
| **Working Title** | |
| **Department** | 1890 Land Grant Extension |
| **Job Summary/Basic Function** | Northeast Region includes the following Counties: Ashtabula, Carroll, Columbiana, Cuyahoga, Geauga, Harrison, Jefferson, Lake, Mahoning, Portage, Stark, Trumbull, Tuscarawas, Job Summary: The Regional Extension Associate will lead an effective work team of CSU Extension educators in the assigned region to deliver high quality educational programs designed to meet the needs across the region. This position will assist in hiring training and supporting the regional team. The Regional Extension Associate will report to the Operations and Program Manager. Essential Duties and Responsibilities: • Must reside in the region of assignment. • Work with Program Leaders to manage day to day activities of program staff with in the region. • Oversee implementation and evaluation of all programming in assigned multi-county region. • Oversee professional development of regional team, ensuring the team has the resources and expertise needed to effectively carry out their job duties. • Oversee and coordinate the development and implementation of partner level agreements in the region. • Analyze programmatic data and financial information to determine ways to better focus resources for effectively and efficiently reaching the regional communities and residents • Manage and monitor data and budget for projects and programs. Program Development and Implementation • Develop strategies and facilitate the regional implementation of train-the-trainer and or programming opportunities for regional organizations. • Conduct programming in area of expertise delivering evidence-based programs in a community setting. • Maintain a sound understanding of and familiarity with the key regional partners and stakeholders. Communications and Community Partnerships • Serve as the official liaison of cooperative efforts with other institutions agencies and organizations in the region. • Lead positive communications and ongoing updates internally and externally with all stakeholders regionally. • Coordinate and facilitate meetings with staff, stakeholders and partners. • Develop community advisory boards. Lead the quarterly meetings. • Develop relationships with local county OSU Extension offices to determine joint programs and projects. • Cultivate new partnerships and maintain professional relationships to further Extension programming to improve the lives of individuals and families within the region in both rural and urban communities. • Understand the needs of culturally and economically diverse audiences. • Prepare timely reports of programmatic activities and success stories in the region. • Other responsibilities assigned as needed |
| **Minimum Qualifications** | Required Qualifications • Master's degree in education, communications, agriculture, community development health, nutrition, family relationships, youth development or a closely related discipline. • Experience with program development and management. • Ability to communicate clear work direction and broad understanding of programming priorities. • Ability to work effectively in an environment that combines independent action and teamwork with colleagues and external organizations. • Ability to build effective work teams and manage conflict. • Respectful, professional communication style both oral and in written. • Organizational and time management skills with attention to detail. • Computer skills: Able to effectively use Microsoft Office Suite of software programs. • Ability to plan and maintain a flexible work schedule, including evening and weekend work to meet time demands and/or special needs of program management. • Valid driver's license, reliable vehicle with required liability insurance, to be utilized for frequent travel. • Must be able to lift 25 pounds. • Upon hire must reside in the Northeast Region. |
| **Preferred Qualifications** | Preferred Qualifications • 1-3 years of experience in teaching, community organizing, community and/or community education. • Direct experience in grants management and administration. • Ability to oversee the compliance of budgetary requirements and financial policies and procedures. |
| **Posting Date** | 11/06/2019 |

1 of 2

11/21/2019, 6:54 AM

Complaint Exhibit 6 - 61

| | |
|---|---|
| **Closing Date** | 12/20/2019 |
| **Open Until Filled** | No |
| **Special Instructions to Applicants** | Three Letters of Recommendation and Official Transcripts are required. A Letter of Recommendation request will be sent to your references if you are selected for interview. Please ensure you provide your references' name and email address where indicated on the application. Send Official Transcripts to:<br>Central State University<br>Attn: Michelle Smith<br>PO Box 1004<br>1400 Brush Row Road<br>Wilberforce, OH 45384<br>For questions or general inquiries, email Michelle Smith at msmith2@centralstate.edu. |
| **Position Category** | Staff - Monthly (Exempt) |

## Supplemental Questions

Required fields are indicated with an asterisk (*).

1. * What is the highest degree you hold?

   - Doctorate
   - Completed all Doctorate coursework, but has not completed dissertation
   - Master's Degree
   - Bachelor's Degree
   - Assoicate's Degree
   - High School Diploma or GED

2. * Do you have a valid Driver's License?

   - Yes
   - No

## Required Documents

### Required Documents

1. Resume
2. Cover Letter
3. Unofficial Transcripts

### Optional Documents

1. Curriculum Vitae

Complaint Exhibit 6 - 62



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ⬥ WILBERFORCE, OH 45384-1004 ⬥ 937-376-6652 ⬥ FAX 937-376-6680



*EXHIBIT G*

December 1, 2022

**TO:**

Board of Trustees:
Chairman Mark Hatcher, Esq. ([mhatcher@bakerlaw.com](mailto:mhatcher@bakerlaw.com))
Jacqueline Y. Gamblin ([jgamblin@jyginnovations.com](mailto:jgamblin@jyginnovations.com))
Marlon R. Moore ([marlon@marlonmoore.com](mailto:marlon@marlonmoore.com))
Christopher L. Wyche ([cwyche@centralstate.edu](mailto:cwyche@centralstate.edu))
Jason R. Manns  ([jason.r.manns@gmail.com](mailto:jason.r.manns@gmail.com))
Natalia S. Harris ([nharris@centralstate.edu](mailto:nharris@centralstate.edu))
Richard C. Perry ([rperry@pinkney-perry.com](mailto:rperry@pinkney-perry.com))
Linda D. Mattherws ([lmatthews@centralstate.edu](mailto:lmatthews@centralstate.edu))
President:  Dr. Jack Thomas ([jthomas@centralstate.edu](mailto:jthomas@centralstate.edu))
Provost & Vice President: F. Erik Brooks ([febrooks@centralstate.edu](mailto:febrooks@centralstate.edu))
**Central State University**

**FROM:**

Ambrose Moses III, Esq. ([amoses@centralstate.edu](mailto:amoses@centralstate.edu))
Extension Educator, Community & Economic Development
Cooperative Extension Service
**Central State University**

**RE:      Request for Investigation of Unlawful Discriminatory Practices & Retaliation**
**Request for Suspension of Interviews on December 7, 2022, Pending Investigation**

Chairman Hatcher:

I hereby request that the Board of Trustees of Central State University initiate and request an independent investigation of the pattern of unlawful employment practices and retaliation as set forth in the attached Verified Complaint for Declaratory and Injunctive Relief, the R.C. §124.341 Report dated November 23, 2022, and the R.C. §124.341 Report dated November 27, 2019.

I hereby request that the Board of Trustees, President, and Provost suspend the interviews scheduled for **December 7, 2022** pending the investigation, for the position of CED Program Leader.

I hereby request that you respond and notify me by close of business on December 2, 2022 as to the action you are taking so that I may decide whether to file the attached Verified Complaint for Declaratory and Injunctive Relief on Monday, December 5, 2022.

Page **1** of **3**



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ◆ WILBERFORCE, OH 45384-1004 ◆ 937-376-6652 ◆ FAX 937-376-6680

On November 23, 2022, I submitted and otherwise filed with the Board of Trustees a written report pursuant to R.C. §124.341 and gave notice of my intent to initiate a lawsuit unless this matter is appropriately resolved. To date, I have received no response from the Board of Trustees or anyone within your leadership chain of command addressing the matters that I reported to you and the solutions that I proposed.

The Board of Trustees responded with similar silence to the R.C. §124.341 report I submitted to you on November 27, 2019. How would the Board of Trustees like me to interpret what you have, *and have not*, communicated to me? At first blush, it comes across as if the Board of Trustees is indifferent to or dismissive of these serious workplace matters.

My commitment to the mission of this 1890 Land-Grant Institution in service to the residents of Ohio is strong.

My confidence in the University's commitment to transparency, fundamental fairness, and diversity, equity, and inclusion of Black Americans within the University's Cooperative Extension Service is shaken. It is shaken because I have witnessed and have been subjected to a continuous pattern of unlawful employment practices and retaliation. The reports, and now Verified Complaint, that I have submitted to you have been truthful and accurate. Yet, you have continued to "allow the fox to guard the henhouse".

Many of the identified problems could have been (and still can be) addressed and many of them could have been avoided by well-informed, well-intentioned, engaged and sincere leadership.

For example, how are you going to have a manager who has built an all-Caucasian staff within their program area at an HBCU appointed as the interim head of the entire Cooperative Extension Service and not expect racially discriminatory employment practices to continue? Be it intentional discrimination, disparate treatment, disparate impact, prejudice, or implicit bias, the result is the same. The fox is guarding the henhouse.

Check and investigate the facts set forth in the Verified Complaint. There is no exaggeration therein. The rooster sounding the alarm is not your enemy. Since at least 2018, you have continued to have foxes guarding the henhouse.

Page **2** of **3**



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ◆ WILBERFORCE, OH 45384-1004 ◆ 937-376-6652 ◆ FAX 937-376-6680

I don't know what else to tell you.  I am done being disrespected in the terms and conditions of employment, advancement opportunities, and compensation by University leadership as I look to serve the residents of Ohio with particular interest in addressing the identified needs of those for whom 1890 Land-Grant Institutions were created to assist.

You can ask around about me and my commitment to service.  Contact Congresswoman Joyce Beatty, Ray Miller, Bill Patmon, Melinda Carter, and Leonard Hubert and ask.  Ask leadership at the U.S. Small Business Adminstration about my commitment to service.

Sometimes, leadership has to step forward and do the right thing simply because it is the right thing to do.

I don't want to fight with Central State Univeristy.  However, to date, what choice have you given me?

Your thoughtful consideration, response, and sincere effort towards a resolution of this matter is greatly appreciated.

Sincerely,

/s/Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University**
1400 Brush Row Road | Wilberforce, Ohio 45384
(614) 432-4300 mobile

Page **3** of **3**

**IN THE COMMON PLEAS COURT**
**GREENE COUNTY, OHIO**
**CIVIL DIVISION**

| | |
|---|---|
| **AMBROSE MOSES III,** <br> 7888 Danbridge Way <br> Westerville, Ohio 43082 <br><br>     Plaintiff, <br><br> vs. <br><br> **CENTRAL STATE UNIVERSITY,** <br> 1400 Brush Row Road <br> Wilberforce, Ohio 45384 <br><br> and, <br><br> **BOARD OF TRUSTEES OF THE** <br> **CENTRAL STATE UNIVERSITY,** <br> 1400 Brush Row Road <br> Wilberforce, Ohio 45384 <br><br> and, <br><br> **JACK THOMAS, PRESIDENT** <br> **CENTRAL STATE UNIVERSITY,** <br> *Individually and in his official capacity*, <br> 1400 Brush Row Road <br> Wilberforce, Ohio 45384 <br><br> and, <br><br> **MORAKINYO KUTI, INTERIM DEAN,** <br> **CENTRAL STATE UNIVERSITY,** <br> *Individually and in his official capacity*, <br> 1400 Brush Row Road <br> Wilberforce, Ohio 45384 <br><br> and, <br><br> **ALCINDA FOLCK, INTERIM ASSOCIATE** <br> **ADMINISTRATOR OF EXTENSION,** <br> **CENTRAL STATE UNIVERSITY,** <br> *Individually and in her official capacity*, <br> 1400 Brush Row Road <br> Wilberforce, Ohio 45384 <br><br> and, <br><br> **PAMELA BOWMAN, DIRECTOR OF** <br> **HUMAN RESOURCES,** <br> **CENTRAL STATE UNIVERSITY,** <br> *Individually and in her official capacity*, <br> 1400 Brush Row Road <br> Wilberforce, Ohio 45384 <br><br> and, | **Case No.:** <br><br> **JUDGE:** <br><br> *DRAFT* |

Verified Complaint - Page **1** of **25**

**MARK RENDLEMAN,**          )
Address Unknown          )
          )
and,          )
          )
**TENOLA OLIVER,**          )
Address Unknown          )
          )
      Defendants.          )

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Now comes the Plaintiff Ambrose Moses III, upon information and belief, and for his Complaint state as follows:

### FIRST CAUSE OF ACTION

1. This is an action for declaratory judgment, and preliminary and permanent injunction brought pursuant to R.C. §§2727.02 et seq, and is a civil action being filed pursuant to R.C. §4112.052(B)(2)(a) and seeks only injunctive relief for the unlawful discriminatory practices relating to employment that are set forth in this Verified Complaint for Declaratory and Injunctive Relief.

2. Plaintiff Ambrose Moses III (also referred to herein as "Moses") requests a temporary restraining order, preliminary injunction, and a permanent injunction that –

    A. Requires the Defendants in their individual and official capacities to suspend all interviews, candidate evaluations, and hiring decisions for the position of Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022), including but not limited to the Second Interviews scheduled for December 7, 2022, until after --

        i. The Defendants disband the current Search Committee and replace it with a new Search Committee that is comprised of all new qualified and unbiased members;

        ii. The Defendants accept Moses' application for the position of Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022); and

        iii. The Defendants' new Search Committee has interviewed Moses.

B. Requires the Defendants to cease and desist from all unlawful discriminatory practices and retaliation, and to act in good faith in allowing Moses to apply, interview, compete, be genuinely considered, and properly hired for the position of Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022).

3.  Moses also seeks declaratory judgment that –

A.  Ambrose Moses III is eligible to apply, be interviewed, compete, and be hired for the position of Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022).

B.  The names and resumes of all applicants for the Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022) position are public records pursuant to Ohio's Public Records Act.  See, the Ohio Supreme Court case of State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn., 97 Ohio St.3d 58, 2002-Ohio-5311, where the Court ruled that the names and resumes of applicants are public records under Ohio law.

C.  One applicant's viewing of another applicant's name and resume does not, in and of itself, afford the viewing applicant an unfair advantage.

D.  The applicants for the position of Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022) were not ranked prior to the first round of interviews on November 16, 2022.

E.  It is an unlawful discriminatory practice relating to employment for the Defendants in their individual and official capacities to retaliate against Moses for questioning, challenging, and seeking redress for unlawful and discriminatory actions.

F.  It is an unlawful discriminatory practice relating to employment for the Defendants in their individual and official capacities to support, encourage, and incentivize the application submission of a Caucasian applicant for the job posting by representing to the Caucasian applicant that Defendant Folck would speak with Defendant Kuti about waiving or modifying the "*This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio*" term and condition of employment and allowing the Caucasian applicant to report to campus a fewer number of days per week instead of five days per week as posted, without making the same terms and conditions of employment available to Moses and other similarly situated Black American applicants.

4.       This lawsuit arises out of Defendant Central State University's workplace culture that a) is deficient in established policies and procedures for processing program and employment discrimination complaints, and b) poorly communicates, if at all, the limited policies and procedures it does have. See, Memorandum from the USDA-NIFA to Dean of CESTA/Director 1890 Land-Grant re: "Elements of Concern", dated June 20, 2019.

5.       A workplace that is deficient in policies and procedures and that poorly communicates policies and procedures is a fertile breeding ground for unlawful employment practices and retaliation.

6.       On November 30, 2022, the Dayton Daily News reported that according to records obtained by the newspaper, "[t]he Ohio Attorney General's Office has appointed an outside investigator to look into allegations of harassment and discrimination brought by several women against Central State University . . ." The complaint by the identified women represents the "tip of the iceberg" of unlawful employment practices and racial discrimination matters at Central State University.

7.       More specifically, this lawsuit arises from the Defendants' continuous, unabated, pattern of wrongful and unlawful employment practices, racial discrimination against Black-Americans within the University's Cooperative Extension Service, and retaliation against the Plaintiff Ambrose Moses III (also referred to herein as "Moses") for raising and reporting issues concerning unlawful employment practices, forgery of staff signatures, unlawful imposition of residency requirements, and also filing an R.C. 124.341 report with the Board of Trustees of the Central State University on or about November 27, 2019.

8.       Moses filed a second R.C. 124.341 report and Notice of Intent to Sue with the Board of Trustees of the Central State University on November 23, 2022.

9. The objective of this lawsuit for declaratory and injunctive relief is for Moses to be included and allowed to apply, interview, and compete for the position of Community & Economic Development Program Leader (also referred to herein as "CED Program Leader") within Central State University's Cooperative Extension Service without being subjected to bias, retaliation, denial of due process, and denial of equal protection by the Defendants in their individual and official capacities.

10. The Defendants are scheduled to hold the second and final round of interviews on December 7, 2022.

11. The facts of this case show that Moses is likely to prevail on the merits concerning a) his eligibility for employment as CED Program Leader, b) the Defendants' pattern of unlawful employment practices and retaliation towards Moses, and c) the denial of due process and equal protection.

12. If this Court does not a) enjoin the Defendants from proceeding with the second round of interviews on December 7, 2022, b) require Defendants to disband the current Search Committee and to form a new Search Committee comprised of qualified, unbiased members, c) require the Defendants to accept Moses' application, c) require the Defendants to interview Moses if he meets the minimum qualifications, and d) require the Defendants to act in good faith and allow Moses to compete for the position of CED Program Leader, then Moses will suffer irreparable harm as the Defendants are likely to hire one of the other two, less qualified, candidates for the position without Moses ever having an opportunity to apply, interview, and compete without being subjected to bias, retaliation, denial of due process, and denial of equal protection by the Defendants.

13. Because Central State University is an 1890 Land-Grant Institution with one of only two cooperative extension services in the State of Ohio, the CED Program Leader at Central State University is a unique and one-of-a-kind position within the State of Ohio.

Complaint Exhibit 6 - 70

14.     The Defendants in this lawsuit have refused to accept Moses' application, rejected Moses' application, refused to interview Moses, and then arbitrarily and capriciously closed the applications even though the position is formally listed as "open until filled".

15.     The Defendants have, are, and unless enjoined by this Court will continue to discriminate against, retaliate against, deny due process, and deny equal protection to Moses.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this declaratory judgment matter pursuant to R.C. 2721.02(A), which authorizes the Court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed."

17.     This Court has personal jurisdiction over Defendants as they are a subdivision of the state of Ohio, its employees and prospective employees, who conduct business in Ohio, and /or have the requisite minimum contacts with Ohio necessary to constitutionally permit the Court to exercise jurisdiction over them.

18.     Venue is proper in Greene County pursuant to Civ.R. 3(C)(1), Civ.R. 3(C)(2), Civ.R. 3(C)(3), and Civ.R. 3(B)(4). Defendants have conducted, are conducting, and will conduct, and/or has directed, is directing, or will direct, activity that gave rise to the request for declaratory relief in Greene County, and part of the need for declaratory relief arose in, and will have an impact in Greene County.

## THE PARTIES

### A. Plaintiff

19.     Plaintiff Ambrose Moses III (also referred to herein as "Moses") is a Black-American, a United States citizen, and resident of Delaware County, Ohio. Moses began his employment with Central State University in March 2017 as the first County Extension Agent in Central State University's Cooperative Extension Service.

Complaint Exhibit 6 - 71

**B. Defendants**

20.     Defendant Central State University (also referred to herein as "Central State", "CSU", or the "University") is a state university, a public institution of higher learning which is a body politic and corporate, and a subdivision of the state of Ohio.

21.     Defendant Board of Trustees of the Central State University (also referred to herein as the "Board of Trustees") is the body in whom the government of Defendant Central State University is vested.  Ohio law requires that the Defendant Board of Trustees shall do all things necessary for the proper maintenance and successful and continuous operation of Defendant Central State University.  Ohio law also requires that the Board of Trustees shall take, keep, and maintain exclusive authority, direction, supervision, and control over the operations and conduct of such university, so as to assure for said university the best attainable results with the aid secured to it from the state.  Ohio law further requires that the Board of Trustees of the Central State University shall elect, fix the compensation of, and have the right to remove the president, who shall be the chief executive officer of the university, and elect, fix the compensation of, and remove such number of professors, teachers, and other employees as is necessary.

22.     Defendant Jack Thomas (also referred to herein as "Thomas"), individually and in his official capacity, is the President and chief executive officer of the University.

23.     Defendant Morakinyo Kuti (also referred to herein as "Kuti"), individually and in his official capacity, is the Interim Dean of the John W. Garland College of Engineering, Science, Technology, and Agriculture (also referred to herein as "CESTA"), and Director of 1890 Land-Grant Programs (also referred to herein as "Land-Grant") at the University. Kuti, as Director of Land-Grant, has responsibility for directing the University's 1890 Land-Grant Program, including but not limited to, the Cooperative Extension Service (also referred to herein as "Extension").

Complaint Exhibit 6 - 72

24.      Defendant Alcinda Folck (also referred to herein as "Folck"), individually and in her official capacity, is the Interim Associate Administrator of Extension for the University and manages the Cooperative Extension Service.

25.      Defendant Pamela Bowman (also referred to herein as "Bowman") is the Director of the Department of Human Resources at the University. Bowman is responsible for directing employment procedures, job postings, search committees, and more. The Department of Human Resources at Central State University purports to be a progressive organization dedicated to providing excellent employee benefits, competitive compensation and rewards systems, timely training and organizational development opportunities, empowering employee and labor relations methodologies, customer-friendly employment procedures, and automated HR/Payroll reporting systems.

26.      Defendant Mark Rendleman (also referred to herein as "Rendleman") as a candidate for the position of Community & Economic Development Program Leader who is scheduled for a second interview on or about December 7, 2022, may have an interest in this action for declaratory and injunctive relief. Mark Rendleman's address is currently unknown to the Plaintiff.

27.      Defendant Tenola Oliver (also referred to herein as "OLIVER") as a candidate for the position of Community & Economic Development Program Leader who is scheduled for a second interview on or about December 7, 2022, may have an interest in this action for declaratory and injunctive relief. Tenola Oliver's address is currently unknown to the Plaintiff.

### FIRST CAUSE OF ACTION - CONTINUED

**Protected Activity - Moses Discloses Defendants' Failure to Follow Policy**

28.      On July 9, 2018, Defendants changed Moses and other County Agents within Extension from County Agents to Extension Agents.

29. On July 9, 2018, during a meeting of Cooperative Extension Service staff, Moses provided Extension leadership, including but not limited to Alton Johnson as the Dean of CESTA and Director of Land-Grant, with a written report of violation of state, federal, or local law, rule, or regulation, or a misuse of public resources. Specifically, the Defendants failed to comply with the Central State University Departmental Reorganization Process policy when changing the County Agents to Extension Agents.

30. After receiving the written report from Moses, the Dean of CESTA/Director of Land-Grant became visibly angry with Moses in the meeting.

31. On August 8, 2018, Defendants then proceeded to further change Moses and others from Extension Agents to County Educators in continued violation of the Departmental Reorganization Process policy.

**Retaliation - Defendants Impose Unlawful Residency Requirements on Moses**

32. On August 16, 2018, Defendants, through requirements imposed by the Dean of CESTA/Director of Land-Grant, in retaliation to Moses' protected activity, gave Moses a directive that he must establish and maintain residency in Cuyahoga County, Ohio even though he actually resided in Delaware County, Ohio. Moses opposed this action.

33. On August 24, 2018, Moses filed a Notice of Appeal with the State Personnel Board of Review.

34. Moses continued daily to commute from his residence in Delaware County to Cuyahoga County until March, 2020, at which time Moses and other CSU Extension staff were instructed to work remotely from home due to the Coronavirus (Covid-19) Pandemic.

**Workplace Culture - USDA/NIFA's Comprehensive Civil Rights Audit**

35. From May 13 – 23, 2019, the U.S. Department of Agriculture, National Institute of Food and Agriculture (also refered to herein as "NIFA") conducted a comprehensive

Verified Complaint - Page **9** of **25**

Title VI Civil Rights Compliance Review of both the Ohio State University Extension and Central State University Extension programs.

36.     In a memorandum dated June 20, 2019, NIFA conveyed concerns about significant deficiencies that were observed during that compliance review. One area of deficiency is the procedures for processing program and employment discrimination complaints. NIFA stated that interviews with CSU Extension staff revealed that they did not have knowledge of the Civil Rights program and employment complaint procedures. NIFA further stated that CSU Extension has not adequately informed the staff members, clientele, volunteers and the general public of the procedures for filing program and/or employment complaints.

**Protected Activity - Moses Files an R.C. 124.341 Report with the Board of Trustees**

37.     On November 27, 2019, Moses submitted and otherwise filed a written report pursuant to R.C. 124.341 with his supervisor and with the Defendant Board of Trustees of the Central State University as the appointing authority concerning "Noncompliance with State and Federal Law: Residency Requirements Prohibited in Ohio and Could have Racially Discriminatory Disparate Impact Upon African-Americans".

38.     As stated above, in 2018, Defendants had previously sought to impose an unlawful residency requirement upon Moses in his role as the University's first County Agent, where his territory was Cuyahoga County, Ohio while he resided in Delaware County, Ohio.

39.     In 2019, Defendants again sought to impose residency requirements. This time, Defendants added residency requirements to job postings for Regional Extension Associates ("REA"). Moses was interested in applying for the REA positions. Having served as a County Agent and commuting to-and-from his territory for nearly two (2)

Verified Complaint - Page **10** of **25**

years, Moses knew that the REA position could be performed without the REA residing in the identified region.

40. Moses' R.C. 124.341 report dated November 27, 2019 notified the Defendants that Ohio law prohibits the imposition of Residency Requirements upon higher education employees and certain other employees.

- R.C. 9.481 Residency requirements prohibited for certain employees.
- R.C. 124.70 No residency requirment for higher education employees.
- The Ohio Supreme Court, in <u>Lima v. State</u>, 2009-Ohio-2597, held that a state law prohibiting general residency requirements for public employees is valid and supersedes local laws to the contrary.

41. Moses further reported to the Defendants that "[a]ccording to the Ohio Development Services Agency, in Ohio, "nearly four out of every ten African Americans in the state live in the cities of Cincinnati, Cleveland, or Columbus." The impact of the residency requirement could also disportionately eliminate Black American Ohio residents from competing for a majority of the restricted positions, in violation of state and federal civil rights laws."

**<u>Retaliation - Defendants Retaliate Against Moses in Advancement Opportunity</u>**

42. On November 7, 2019, Moses was qualified and applied for all four (4) of the newly created Regional Extension Associate positions. Based upon information and belief, it is Moses' understanding that the Dean of CESTA was still angry at Moses for his protected activity and had declared that Moses was not to be hired or promoted to any of the available positions. Moses was eventually interviewed but not selected for any of the available REA positions. Defendants hired exclusively Caucasian candidates for all four (4) REA positions.

43. Moses, who was then a County Educator, was not even hired for either of the two CED Extension Educator positions for which he applied.

Complaint Exhibit 6 - 76

**Protected Activity – Moses Reports and Complains About Forged Signatures**

44.     On November 4, 2021, Moses sent an email to his direct supervisor, i.e. the CED Program Leader Anthony Barwick.  Moses reported to Barwick that the "approved" RFTs (Request for Travel) that Moses had received back from University leadership had been altered and Moses' signature had been forged onto the document.   Moses further reported to Barwick that a similar thing had happened to other CED Educators.  Moses asked Barwick to "[p]lease see the information below and the attachments which show a number of inaccurate, improper and wrongful actions concerning those "approved" RFT's, some of which may also be violations of state and/or federal law".

45.     Barwick reviewed the matter and, on November 8, 2021, reported it up the chain of command to the Associate Administrator of Extension.

46.     At the request of Moses and others, Barwick then reported the matter further up the chain of command to the Dean and Director of Land-Grant Programs.

47.     Based upon information and belief, it is Moses' understanding that the alteration and forged signatures were done by or at the direction of the Associate Administrator of Extension.

**Retaliation–Defendants Deny Moses Opportunity to Serve as Interim CED Program Leader**

48.     On or about December 2, 2021, Barwick announced that he was resigning as CED Program Leader and recommended to the Associate Administrator of Extension that Moses be named to serve as Interim CED Program Leader.  The Associate Administrator stated that it was a decision that would have to be made by the Dean and Director of Land-Grant Programs.

49.     On December 10, 2021, Barwick requested and recommended to the Dean and Director of Land-Grant Programs that Moses be named to serve as the Interim Program Leader for the Community & Economic Development unit until the position has been

Complaint Exhibit 6 - 77

formally filled through the hiring process. Barwick stated, "He is our most senior Extension Educator within CSU Extension and has served as a vital staff member of the Community and Economic Development unit since 2017 following the designation of Central State University as a Land Grant Institution in 2014. I believe Ambrose is qualified to manage the CED staff and continue our programming activities. CSU has a 15% merit pay increase for interim positions that he would be eligible for if he were allowed to serve as interim Program Leader."

50.     Moses, also, volunteered and submitted a request to serve as Interim CED Program Leader to the Dean and Director of Land-Grant Programs.

51.     The Dean and Director of Land-Grant Programs did not appoint Moses or any other person as the Interim CED Program Leader. To date, the CED Program Unit has operated for nearly a year without an interim or permanent CED Program Leader.

52.     The Defendants' failure to name Moses as the Interim CED Program Leader was in retaliation against him for his protected activity as described in the above paragraphs.

**Retaliation – Defendants' Refusal to Follow University Policy on Performance Appraisals**

53.     Pursuant to Central State University's Policy No. 618, "It is the policy of the University that the job performance of all staff members of non-bargaining units should be evaluated formally by the **employee's supervisor**, at least annually." (emphasis added.)

54.     Moses is employed as a CED Extension Educator. CED Extension Educators are supervised by the CED Program Leader.

55.     In 2022, Defendants failed to appoint an interim CED Program Leader. As a result, there was no supervisor to conduct a performance appraisal pursuant to Policy No. 618 for Moses.

Complaint Exhibit 6 - 78

56. In and about May, 2022, Defendants allowed the Associate Administrator of Extension, who Moses had reported for forgery, to conduct the performance appraisal of Moses. As expected, the Associate Administrator of Extension retaliated against Moses by not following the performance appraisal process set forth in and required by Policy Nos. 618 and 618.1, and by giving Moses an unfair, untrue, low score on his performance appraisal.

57. In an email dated May 13, 2022 that was sent to Defendants Dean/Director of Land-Grant, Associate Administrator of Extension, and Director of Human Resources, Moses objected to the violation of University policy. Though Policy No. 618 states "[t]he performance appraisal system is administered by the Director of Human Resources", to date, Defendant Bowman has failed to respond to Moses' objection.

**Unlawful Employment Practices**

58. The University's most recent wrongful and unlawful action against Moses is the discriminatory employment practices and the denial of due process and equal protection concerning Moses' efforts to apply, interview, and compete for the vacant Community & Economic Development Program Leader position.

59. One term and condition of employment that was added to the CED Program Leader position posting is "This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio". Upon information and belief, it is reasonable to conclude that the addition of this provision to the job posting targeted and was intended to discourage Moses from applying for the CED Program Leader position.

60. On or about **September 16, 2022**, Defendant Alcinda Folck was appointed Interim Associate Administrator of Extension.

Complaint Exhibit 6 - 79

61.    Prior to being appointed Interim Associate Administrator of Extension, Defendant Folck had served as Program Leader for Agriculture and Natural Resources (also referred to herein as ANR), and was known for hiring and maintaining an all-Caucasian staff within the ANR program area.

62.    On **November 16, 2022**, Moses, upon information and belief, learned that Defendant Alcinda Folck was supporting and encourging the application of a Caucasian applicant for the position by representing to the Caucasian applicant that Folck would speak with Defendant Kuti about waiving or modifying the "*This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio*" term and condition of employment and allowing the Caucasian applicant to report to campus a fewer number of days per week instead of five days per week as posted.

63.    Upon learning of Folck's efforts to make modifications in the terms and conditions of employment specifically for her select applicant without making those modifications in the terms and conditions of employment for Moses and other applicants, Moses began to question and challenge the matter.

64.    On **November 17, 2022**, Moses, via email, asked Defendant Pamela Bowman, Director of Human Resources at Central State University, whether the provision was negotiable and for a copy of the policy concerning what Unversity leadership staff can or cannot do when recruiting or encouraging certain individuals or staff members to apply for open positions with the University.  To date, Defendant Bowman has failed to respond to Moses' request for information and records.

65.    After Moses' continued questions about the special accommodations that were being offered to select other applicant(s), upon information and belief, Folck eventually communicated to the Caucasian applicant that Kuti was not going to make the special

Complaint Exhibit 6 - 80

accommodation. The Caucasian applicant, who was allowed to interview and was one of the two final candidates invited back for a second interview scheduled for December 7, 2022, subsequently withdrew himself from consideration for the position.

**Moses' 3rd Application for CED Program Leader**

66. Moses has applied for the position of Community & Economic Development Program Leader on 3 occasions since 2017. Each time Moses was added to the pool, "something happened" to where Moses was not selected and the position was not filled.

67. **June 8, 2017** – Moses applied for one of the two Community and Economic Development Field Specialist/Program Leader vacancies (Posting Number 0800743).

68. **April 24, 2019** – Moses applied for the Community & Economic Development Program Leader vacancy (Posting Number 0800896). Upon information and belief, the position was withdrawn by Alton Johnson, Dean of CESTA/Director of Land-Grant, after Moses was added to the pool of applicants.

69. **December 2 and 10, 2021** – In response to the then pending resignation of Anthony Barwick as CED Program Leader as of January/2022, Moses and Barwick requested of the Associate Administrator of Extension and the Dean of CESTA/Director of Land-Grant that Moses be appointed as the Interim Community & Economic Development Field Specialist/Program Leader within the Cooperative Extension Service at Central State University. The Associate Administrator of Extension responded, and the Dean of CESTA/Director of Land-Grant confirmed, that the Dean of CESTA/Director of Land-Grant was responsible for appointing an interim CED Program Leader, if at all. To date, after nearly a year, no interim Program Leader has been appointed for CED.

70. In or about April of 2022, when the Program Leader, Community and Economic Development for Central State Extension (**Posting Number 0801304/Posting Date 04/27/2022**) job was posted with the targeted and retaliatory terms and conditions.

Verified Complaint - Page **16** of **25**

Complaint Exhibit 6 - 81

Moses, now being discouraged by the repeated retaliation and growing weary of fighting the unlawful employment practices, did not immediately apply for the position.

71.     On **September 27, 2022**, Defendant Folck invited Plaintiff Moses to be part of the selection committee for the Program Leader, Community and Economic Development for Central State Extension (**Posting Number 0801304/Posting Date 04/27/2022**).  Folck's invitation email included no University policy concerning a search committee member's eligibility to apply, interview, and compete for an open employment vacancy with the University.

72.     On **September 28, 2022**, Moses accepted the invitation to be part of the selection committee for the Program Leader, Community and Economic Development for Central State Extension (**Posting Number 0801304/Posting Date 04/27/2022**).

73.     Upon information and belief, as of **October 14, 2022**, the posted position was Program Leader, Community and Economic Development for Central State Extension (**Posting Number 0801304/Posting Date 04/27/2022**) and only one of the applicants met the minimum qualifications for the position.

74.     Upon information and belief, Defendants' select Caucasian applicant, who was incentivized to apply by Defendants' representations and intended efforts to make waivers or modifications to terms and conditions that were not disclosed or offered to Moses and other applicants, did not meet the posted minimum qualifications as of October 14, 2022.

75.     At some point **after October 14, 2022 and before November 16, 2022**, Defendants **posted a new job description** that **changed the minimum qualifications** for the Program Leader, Community and Economic Development for Central State Extension (**Posting Number 0801304/Posting Date 10/03/2022**).

76. The Search Committee decided that all of the applicants would be interviewed.

77. There was no scoring, ranking, or categorizing of the applicants while Moses was on the Search Committee.

78. Upon information and belief, all of the applicants, except Moses, were invited to the first round of interviews.

79. Moses did not interview any applicants or candidates.

80. On **November 16, 2022**, at 9:14 am, prior to the first interview, Moses notified Defendants Kuti, Folck, and Bowman via email that 1) he was withdrawing from the CED Program Leader interview committee, 2) he intended to apply for the CED Program Leader position, and 3) he was concerned that the statement in the position description "This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio" is not a bonafide occupational requirement for the position and appears to be targeted to dissuade Moses from applying for the CED Program Leader position.

81. At approximately 4:00 pm on **November 16, 2022**, Defendant Folck spoke with Moses and stated that "**We can't accept your application** for the program leader because you've been on the search committee."

82. Folck indicated that she had talked with HR about this and that once somebody is on the search committee and has had the opportunity to rank and select applicants for interviews, they cannot then submit their own application for the position.

83. Moses then indicated to Folck that he will still submit his application for the CED Program Leader position. Folck responded and stated that Ms. Bowman in HR said that if Moses had any questions, he can reach out directly to her.

Verified Complaint - Page **18** of **25**

84.     **November 17, 2022** – Moses applied for the newly posted Program Leader, Community and Economic Development vacancy (**Posting Number 0801304/Posting Date 10/03/2022**).

85.     On **November 18, 2022**, Defendant Kuti responded to Moses' email stating that Moses was removed from the Search Committee because he became conflicted upon applying for the position. Moses replied to Kuti's statement and informed Kuti that Moses was not removed from the Search Committee. Moses voluntarily withdrew (recused) himself from the Search Committee prior to submitting his application and resume for the CED Program Leader position.

86.     There was no policy shared with Moses, as a search committee invitee or otherwise, concerning whether or when he would become ineligible as an applicant or candidate for open positions (CED or otherwise) at Central State University as a result of his participation on a search committee.

87.     Defendant Kuti further stated that Moses' application was rejected because Moses had information on the other applicants prior to applying, giving Moses an unfair advantage over the other applicants.

88.     Moses advised Kuti that Moses had no unfair advantage because all applicants have access to the same information.

89.     The Ohio Supreme Court, in the case of State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn., 97 Ohio St.3d 58, 2002-Ohio-5311, has ruled that the names and resumes of applicants are public records under Ohio law. Thus, each of the applicants has access to the same information (i.e. names and resumes of all applicants). The general public has access to the same information. Moses has no unfair advantage.

Complaint Exhibit 6 - 84

90. Defendant Kuti, having received the email from Moses notifying Kuti of Moses' withdrawal from the Search Committee prior to any interviews occurring, went on to incorrectly state that Moses applied after the candidates were ranked and scheduled for interviews.

91. All applicants (except for Moses) were invited to interview.

92. There was no scoring, ranking, or categorizing of the applicants before the first round of interviews.

93. Moses did not interview any applicants or candidates.

94. BEFORE the interviews occurred, Moses was no longer a member of the Search Committee.

95. Moses was not, and is not, conflicted out because he did not participate in any interviews.

96. While Moses was on the Search Committee, there was no ranking of applicants because there was no scoring or categorization of them prior to the interviews, and, to Moses' knowledge, all applicants up to that point were invited to interview.

97. As of **November 30, 2022**, additional applicants, such as Moses, can still be considered because the position is open until filled.

98. **November 23, 2022**, Bowman emailed Moses and stated "With respect to the position for which you expressed interest, please be aware that the second round candidates have been selected and notified. The search committee will not be considering additional applications at this time." However, the job posting states that the position is open until filled.

99. Upon information and belief, it is Moses' understanding that the second interview is scheduled for **December 7, 2022**.

100.     A temporary restraining order and permanent injunction is needed to maintain the status quo and avoid irreparable harm to Moses' legal and constitutional rights.

**Overview of Ambrose Moses III's Qualifications**

101.     Moses meets both the minimum and preferred qualifications, and is well qualified, for the Program Leader, Community and Economic Development for Central State Extension **(Posting Number 0801304/Posting Date 10/03/2022)** position.  *See, Resume of Ambrose Moses III that is included as part of Exhibit 1 – R.C. 124.341 Report, attached hereto.*

102.     Moses is an experienced cooperative extension professional who began his cooperative extension career in 2017 as the first County Extension Agent for Central State University in Wilberforce, Ohio.  Moses' territory was Cuyahoga County, Ohio. Moses resided in Delaware County, Ohio and, for three (3) years, commuted over 240 miles round-trip each day for work.

103.     As a County Agent, Moses learned cooperative extension from a holistic perspective because of his responsibilities for planning, coordinating, delivering, and evaluating researched-based educational programming in all four program areas -- Community & Economic Development (60%), Agriculture and Natural Resources (10%), 4-H and Youth Development (10%), and Family and Consumer Science (10%), as well as Administrative duties (10%). While his area of expertise is CED, he understands how the program areas intersect and complement one another.  He has more than five (5) years of experience working on entrepreneurship, business development, small business development, workforce development, and agribusiness in the context of cooperative extension.

104. Moses has a Juris Doctorate from The Ohio State University College of Law and is licensed by the Ohio Supreme Court as an attorney with several years of experience advising, counseling, and representing individuals, families, and groups, with particular focus on startup entrepreneurs and growing businesses.

105. He is also a committed community economic development professional who, as co-founder of a successful community development corporation, through teaching business-related classes and collaborating with nonprofit organizations, state, local, and federal governmental agencies, and educational institutions, actively works to promote job creation, increase the development of more viable microbusinesses, and strives to empower underserved individuals and groups to influence and control their own destinies and that of their communities through increased self-sufficiency and self-reliance.

**COUNT I**
**DECLARATORY JUDGMENT**

106. Plaintiff incorporates all paragraphs above as if the same were fully rewritten and set forth herein and seeks the following declaratory relief:

A. An order declaring that Ambrose Moses III is eligible to apply, be interviewed, compete, and be hired for the position of Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022).

B. An order declaring that the names and resumes of all applicants for the Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022) position are public records pursuant to Ohio's Public Records Act. See, the Ohio Supreme Court case of State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn., 97 Ohio St.3d 58, 2002-Ohio-5311, where the Court ruled that the names and resumes of applicants are public records under Ohio law.

C. An order declaring that one applicant's viewing of another applicant's name and resume does not, in and of itself, afford the viewing applicant an unfair advantage.

D. An order declaring that the applicants for the position of Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date

Complaint Exhibit 6 - 87

10/03/2022) were not ranked prior to the first round of interviews on November 16, 2022.

E. An order declaring that it is an unlawful discriminatory practice relating to employment for the Defendants in their individual and official capacities to retaliate against Moses for questioning, challenging, and seeking redress for unlawful and discriminatory actions.

F. An order declaring that it is an unlawful discriminatory practice relating to employment for the Defendants in their individual and official capacities to support, encourage, and incentivize the application submission of a Caucasian applicant for the job posting by representing to the Caucasian applicant that Defendant Folck would speak with Defendant Kuti about waiving or modifying the "*This position will report to work Monday – Friday, 8a-5p, at the Central State University main campus in Wilberforce, Ohio*" term and condition of employment and allowing the Caucasian applicant to report to campus a fewer number of days per week instead of five days per week as posted, without making the same terms and conditions of employment available to Moses and other similarly situated Black American applicants.

## COUNT II
## INJUNCTIVE RELIEF

107. Plaintiff incorporates all paragraphs above as if the same were fully rewritten and set forth herein and seeks the following injunctive relief via a temporary restraining order, a preliminary injunction, and a permanent injunction that –

A. Requires the Defendants in their individual and official capacities to suspend all interviews, candidate evaluations, and hiring decisions for the position of Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022), including but not limited to the Second Interviews scheduled for December 7, 2022, until after --

    i. The Defendants disband the current Search Committee and replace it with a new Search Committee that is comprised of all new qualified and unbiased members;

    ii. The Defendants accept Moses' application for the position of Program Leader, Community and Economic Development for Central State University's Cooperative Extension Service (Posting Number 0801304/Posting Date 10/03/2022); and

    iii. The Defendants' new Search Committee has interviewed Moses.

That the Court order Defendants to pay the costs of this lawsuit and attorney fees; nominal damages, and such other and further relief as the Court may deem proper.

Dated this _____ day of December, 2022

**Ambrose Moses, III   (0055231)**
1900 Polaris Parkway, Suite 450-017
Columbus, Ohio 43240
(614) 418-7898
info@MosesLaw.pro

Plaintiff *Pro Se*

Complaint Exhibit 6 - 89

**VERIFICATION**

I, Ambrose Moses III, declare as follows:

1. I am a Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Ohio.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief, and if called on to testify I would compentently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct, as are, based upon information and my belief, the factual statements concerning Central State University and the other Defendants, their activities, and their intentions.

Executed on _____, 2022.

DRAFT

_____
Ambrose Moses, III

Verified Complaint - Page **25** of **25**

Case: 3:25-cv-00336-MJN-PBS Doc #: 1 Filed: 10/06/25 Page: 178 of 332 PAGEID #: 178

Re: Ambrose Moses III - Request for Investigation and Suspension of Interviews on December 7, 2022

Laura Wilson <lwilson@centralstate.edu>
Thu 12/1/2022 6:22 PM
To:Ambrose Moses III <amoses@centralstate.edu>

Mr. Moses, I have received this and your prior correspondence and I am reviewing the provided documents.  I will be in touch once I finish my review of the documents.  Thank you, Laura Wilson

Get Outlook for iOS

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, December 1, 2022 6:18:49 PM
**To:** Mark Hatcher (PM) <mhatcher@bakerlaw.com>; jgamblin@jyginnovations.com <jgamblin@jyginnovations.com>; marlon@marlonmoore.com <marlon@marlonmoore.com>; Christopher L. Wyche <cwyche@centralstate.edu>; jason.r.manns@gmail.com <jason.r.manns@gmail.com>; Natalia Harris <nharris@centralstate.edu>; Richard Perry <rperry@pinkney-perry.com>; Linda D. Matthews <lmatthews@centralstate.edu>; Jack Thomas <jthomas@centralstate.edu>; Laura Wilson <lwilson@centralstate.edu>; F. Erik Brooks <febrooks@centralstate.edu>
**Subject:** Ambrose Moses III - Request for Investigation and Suspension of Interviews on December 7, 2022

Chairman Hatcher:

I hereby request that the Board of Trustees of Central State University initiate and request an independent investigation of the pattern of unlawful employment practices and retaliation as set forth in the attached Verified Complaint for Declaratory and Injunctive Relief, the R.C. §124.341 Report dated November 23, 2022, and the R.C. §124.341 Report dated November 27, 2019.

I hereby request that the Board of Trustees, President, and Provost suspend the interviews scheduled for **December 7, 2022** pending the investigation, for the position of CED Program Leader.

I hereby request that you respond and notify me by close of business on December 2, 2022 as to the action you are taking so that I may decide whether to file the attached Verified Complaint for Declaratory and Injunctive Relief on Monday, December 5, 2022.

Thank you.

Best regards,

Ambrose Moses III



**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Wednesday, November 23, 2022 7:44 PM
**To:** Mark Hatcher (PM) <mhatcher@bakerlaw.com>; jgamblin@jyginnovations.com <jgamblin@jyginnovations.com>; marlon@marlonmoore.com <marlon@marlonmoore.com>; Christopher L. Wyche <cwyche@centralstate.edu>; jason.r.manns@gmail.com <jason.r.manns@gmail.com>; Natalia Harris <nharris@centralstate.edu>; Richard Perry <rperry@pinkney-perry.com>; Linda D. Matthews <lmatthews@centralstate.edu>; Jack Thomas <jthomas@centralstate.edu>; Morakinyo Kuti <mkuti@centralstate.edu>; Alcinda Folck <afolck@centralstate.edu>; Laura Wilson <lwilson@centralstate.edu>; Pamela Bowman <pbowman@centralstate.edu>
**Cc:** Ambrose Moses III <amoses@centralstate.edu>
**Subject:** Ambrose Moses III - Report and Notice of Intent to Sue

Chairman Hatcher and President Thomas:

Please find attached my R.C. 124.341 Report and my Notice of Intent to Sue.

Thank you.

Sincerely,

Ambrose Moses III
(614) 432-4300 mobile

Complaint Exhibit 6 - 91

Case: 3:25-cv-00336-MJN-PBS Doc #: 1 Filed: 10/06/25 Page: 179 of 332 PAGEID #: 179

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu** | www.CentralState.edu/csuextension

Complaint Exhibit 6 - 92

Re: In preparation for our meeting this afternoon

Ambrose Moses III <amoses@centralstate.edu>
Wed 10/4/2023 4:11 PM
To:Morakinyo Kuti <mkuti@centralstate.edu>
Bcc:Amber Twitty <atwitty@centralstate.edu>



Good afternoon, Dr. Kuti:

I am writing to follow up again regarding our meeting on December 9, 2022 where we discussed the issues I have faced and documented related to discriminatory practices, retaliation, and an unfair hiring process within CSU's Land-Grant programs.

It has now been over 9 months since that meeting and I have not received any update from you or anyone else in university mangement or leadership, despite sending a follow-up email on February 9, 2023 that went unanswered.  There continues to be discrimination, retaliation for reporting unlawful activities and problems, and a hostile work environment. I have not seen any noticeable changes or improvements over these past several months.

Given that it has been over 9 months without any response or resolution, I feel it necessary to again formally escalate my complaints through external channels. The workplace culture remains toxic and I fear continued, unabated, retaliation if I continue to solely raise my well-documented concerns internally.  There appears to be no formal complaint process with responsible parties to objectively investigate, evaluate, and resolve such matters in a timely manner.

Could you please provide an update on if there have been any actions taken or changes made in response to the substantial documentation I provided showing noncompliance with state and federal laws? That information represented just a sample of the systemic unlawful and unethical activities occurring within Land-Grant programs.  There are additional wrongful actions that have occurred since December 2022, some of which result in a pattern of reducing and effectively denying cooperative extension services to Black communities with identified needs.

Being treated like this is bad enough, but for it to be done by an HBCU is even more egregious.  While it is harmful to me personally and professionally, it is also harmful to the residents of Ohio.  I am a committed servant-leader who cares about the residents of Ohio.  The residents of Ohio, including, unapologetically, the Black residents and their communities, deserve the full level of insightful, forward-thinking, and professional cooperative extension services like that which I shared with you, Dr. Folck, and Mr. Rendleman via email on July 13, 2023.  That level of needed cooperative extension service is being denied to our Black communities.  I, along with other professional and culturally aware colleagues here at CSU, are being systematically denied the resources and opportunities to serve at the advanced and skilled level that is needed, requested, and appreciated by the Black communities across Ohio.  The harm inflicted upon us is a harm inflicted upon the community in general, and the Black community in specific.

I welcome any insights you can provide on steps taken over the past 9 months and would appreciate a response. Please let me know if you need any clarification or have questions. I look forward to hearing back from you.

Sincerely,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, February 9, 2023 10:31 AM
**To:** Morakinyo Kuti <mkuti@centralstate.edu>
**Subject:** Re: In preparation for our meeting this afternoon

Good morning, Dr. Kuti:

I wanted to follow-up you from our meeting on December 9, 2022.  You were going to review the document and information that I shared with you and we were to look at next steps after the holiday break.

Could you let me know where the matter is and next steps?  Thank you.

Ambrose

**Ambrose Moses III, Esq.**

Complaint Exhibit 6 - 93

10/7/23, 10:20 AM
Case: 3:25-cv-00336-MJN-PBS Doc #: 1 Filed: 10/06/25 Page: 181 of 332 - PAGEID #: 181
In preparation for the meeting this afternoon - Ambrose Moses II - Outlook

*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III
**Sent:** Friday, December 9, 2022 1:15 PM
**To:** Morakinyo Kuti <mkuti@centralstate.edu>
**Subject:** In preparation for our meeting this afternoon

Good afternoon, Dr. Kuti:

In preparation for our quick meeting scheduled for this afternoon at 3 pm, I am writing this email to share some additional context with you concerning the matters set forth in my R.C. 124.341 Reports and the draft Verified Complaint for Declaratory and Injunctive Relief. (See attached.)

First of all, allow me to express and emphasize to you that I do appreciate and thank you for the steps you have taken to, listen to Extension staff, identify some of the problems within Extension, and take some action to address some of those identified problems. Your initial words and subsequent actions were effective in garnering my trust that there was at least one person (i.e. you) in leadership who was listening, understanding, and taking appropriate action to improve conditions and get Extension moving in the right direction.

Because of that trust, I was surprised and disappointed with your November 18th email that contained inaccurate information. The tone of the email seemed contrary to how you had previously communicated with me and others. Quite honestly, I didn't think you had written that email. Because of the inaccurate information, I had to respond to it as I did in my email dated November 22, 2022. I don't know if you were just repeating information you had heard from HR, but it was factually untrue.

The Verified Complaint is attached. While it is now in final draft form, it has not yet been filed. The Verified Complaint sets forth some of the history of wrongful and unlawful practices by University/College/and Extension leadership. I intentionally wrote the Verified Complaint so that you can understand and verify the facts and circumstances contained therein.

You can ask your Land-Grant and CESTA staff to show you the emails and documents that I sent to Dr. Alton Johnson, Dr. Michelle Corley, the HR Directors Tonya Turner and Pam Bowman, Dr. Siddartha Dasgupta, and Anthony Barwick., as a quick way to verify what I have stated in the Verified Complaint.

Your name appears in the Verified Complaint because of the positions of leadership, authority, and responsibility that you occupy. Under the Eleventh Amendment to the U.S. Constitution, States are immune from many lawsuits. As a result, many lawsuits have to be brought against government officials in their individual and official capacities in order for courts to award damages, require actions, or stop other actions. You can check with Laura Wilson or other legal counsel about that.

As you can see from my emails, the Verified Complaint, and an objective investigation, the current hiring process for the CED Program Leader has been tainted. In addition to still being the source of legal action against the University, the tainted hiring process undermines the legitimacy and credibility of the individual hired and the leadership that executed the process.

I look forward to our discussion.

Sincerely,

Ambrose

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

Complaint Exhibit 6 - 94

RE: Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates

Morakinyo Kuti <mkuti@centralstate.edu>
Fri 10/6/2023 8:15 PM
To:Ambrose Moses III <amoses@centralstate.edu>
Cc:Amber Twitty <atwitty@centralstate.edu>;Pamela Bowman <pbowman@centralstate.edu>;John Mackie <jmackie@centralstate.edu>

Thanks for your input.

**Morakinyo A.O. Kuti, Ph.D.,**
**Vice President for Research and Economic Development and Director of the 1890 Land Grant Programs**

1400 Brush Row Road | Wilberforce, Ohio 45384
O: 937-376-6547 | F: 937-376-6598
mkuti@centralstate.edu | CentralState.edu
LinkedIn

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Friday, October 6, 2023 6:41 AM
**To:** Morakinyo Kuti <mkuti@centralstate.edu>
**Cc:** Amber Twitty <atwitty@centralstate.edu>; Pamela Bowman <pbowman@centralstate.edu>; John Mackie <jmackie@centralstate.edu>
**Subject:** Re: Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates

Good morning, Dr. Kuti:

I appreciate your response, but I do not believe you substantively addressed my concerns about inherent conflicts of interest and bias in the search committee composition.

You stated that I should have "faith" in the committee members. However, the issue is not their individual merits, but rather their structural subordinate status to Dr. Folck as a candidate. This inherently risks bias and lack of impartiality, regardless of qualifications.

Relatedly, your response did not acknowledge the past issues I referenced that provide important context about diversity and the race-related concerns within Extension. Dr. Folck's involvement is more than "allegations". The Reports and Request for Investigation that I submitted to you and other University leadership have gone unanswered. Those documents describe objective, factual matters that illustrate the concern, harm, and impact.

Frankly, I believe moving forward without addressing these matters directly could lead to ethical issues, harm public trust, and legal liability. The concerns raised warrant proper investigation and action.

Please let me know if there is anything I can do to assist. Thank you.

Regards,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Morakinyo Kuti <mkuti@centralstate.edu>
**Sent:** Thursday, October 5, 2023 10:01 PM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Cc:** Amber Twitty <atwitty@centralstate.edu>; Pamela Bowman <pbowman@centralstate.edu>; John Mackie <jmackie@centralstate.edu>
**Subject:** RE: Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates

Mr. Moses,

Thanks for your input, I took great care in ensuring that the committee includes a diverse group of individuals whom I trust their judgement, ethics, and professionalism. You should have faith in your colleagues serving on the committee.

Based on your described criteria, all Extension employees would be excluded from the search committee or no internal candidates could apply for the position. That would be inherently unfair.

Complaint Exhibit 6 - 95

Your allegations against with Dr. Folck cannot be the determining factor for hiring the Associate Extension Administrator.

Dr. Folck had no role in the selection of the committee and ranking and review of applicants.

The Search Committee will identify the most qualified applicants and the selected individuals will visit campus to make presentations so all Extension staff and University Leadership can evaluate the candidates.

Thank you.

**Morakinyo A.O. Kuti, Ph.D.,**
**Vice President for Research and Economic Development and Director of the 1890 Land Grant Programs**

1400 Brush Row Road | Wilberforce, Ohio 45384
O: 937-376-6547 | F: 937-376-6598
mkuti@centralstate.edu | CentralState.edu
LinkedIn

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, October 5, 2023 7:27 AM
**To:** Morakinyo Kuti <mkuti@centralstate.edu>
**Cc:** Amber Twitty <atwitty@centralstate.edu>
**Subject:** Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates

Good morning, Dr. Kuti:

I have some questions and concerns about the hiring process being used for the Associate Administrator of Extension position.

Is it true that Dr. Alcinda Folck (who currently serves as the interim Associate Administrator of Extension) is one of the candidates for the Associate Administrator of Extension position? If so, is it also true that a number of the members of the interview committee for the Associate Administrator of Extension currently report directly to Dr. Folck or are otherwise under her in the Central State University Cooperative Extension Service, where she has served as interim Associate Administrator of Extension for numerous months?

If those things are true, that is very troubling, and the process should be halted until a proper review and investigation can be done before a bad situation becomes worse.

If those things are true, there are a number of potential legal and ethical issues. (This is not legal advice. You have access to the university general counsel and the office of the Ohio Attorney General for that.) I am writing as a concerned employee and taxpayer. Here are some areas of concern:

- Conflict of interest - The interview committee members who directly report to Dr. Folck or are under her as Interim Associate Administrator of Extension, Program Leader for Agriculture & Natural Resources, or Interim Program Leader for 4-H/Youth Development, within the Cooperative Extension Service have an inherent conflict of interest. As the current interim Associate Administrator of Extension, Dr. Folck has influence and authority over these subordinates, which could impact their ability to impartially evaluate her as a candidate.

- Bias - The power dynamic and existing relationship between Dr. Folck and the committee members who are under her risks unconscious or conscious bias in the interview and selection process. There is likelihood of favoritism. (Who was in the candidate pool? Who was excluded, rejected, or removed from the candidate pool? What reasons were given for excluding, rejecting, or removing persons from the candidate pool? What role did, or is, Dr. Folck play in the exclusion, rejection, or removal of persons from the candidate pool? Did Dr. Folck's execution of her duties as interim Associate Director of Extension give her an unfair advantage over other internal candidates?)

- Fairness - The scenario creates concerns about fundamental fairness and an equitable hiring process. One candidate (Dr. Folck) would have the advantage of a friendly, non-impartial committee. This might even taint the hiring process by excluding, rejecting, or removing certain persons from the candidate pool.

- Validity - The validity and legitimacy of the hiring decision could be questioned given the committee composition. It would undermine the credibility of the process.

- Ethics - Having a supervisor evaluated by their own subordinates poses risks of breaching ethical principles of accountability, conflicts of interest, abuse of power, and procedural fairness.

- Legal - At a public university, equal employment opportunity laws could be violated by an unfair process that advantages one internal candidate over others. (Were there or are there other internal candidates? Did Dr. Folck's actions as interim Associate Director of Extension give her an opportunity to review, evaluate, or make decisions that impact the exclusion, rejection, or removal of other internal candidates from the candidate pool?)

Complaint Exhibit 6 - 96

Case: 3:25-cv-00336-MJN-PBS Doc #: 1 Filed: 10/06/25 Page: 184 of 332 PAGEID #: 184

- Diversity - Skewed incentives and lack of objectivity could disadvantage external and minority candidates, impacting diversity.  In addition, as I am sure leadership knows, there are race-related concerns in Extension that involve Dr. Folck in both her role as Program Leader for Agriculture and Natural Resources and her role as interim Associate Administrator of Extension.  For context, please see my Report dated November 27, 2019, my Report dated November 23, 2022, and my Request for Investigation dated December 1, 2022.

In summary, if those things are true, there are multiple ethical and legal red flags. The process should be halted to allow for a proper review and investigation.  At a minimum, the committee should be re-structured to have peers evaluate Dr. Folck and care should be taken to allow all qualified candidates to interview.

In service,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

Complaint Exhibit 6 - 97

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**



AMBROSE MOSES III,

    Plaintiff,

v.

CENTRAL STATE UNIVERSITY, ET AL.

    Defendants.

)
)
)
)
)
)
)
)
)
)
)

**Case No. 2:24-CV-03130**

**JUDGE ALGENON L. MARBLEY**

## AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Ambrose Moses III for his Amended Complaint alleges as follows:

### INTRODUCTION

1.      This is a civil rights action brought by Plaintiff Ambrose Moses III, a licensed attorney, civil rights advocate, and Extension Educator, against Central State University, the Board of Trustees of Central State University, and certain Central State University officials in their individual and official capacities. Over a period of several years from 2018 to 2024, the Defendants have violated Plaintiff's constitutional rights under the First and Fourteenth Amendments to the United States Constitution, as well as his statutory rights under 42 U.S.C. § 1983. These violations include, but are not limited to, retaliatory actions, denial of substantive and procedural due process, failure to supervise and control, negligent retention, breach of fiduciary duty imposed by R.C. §3343.05 and §3343.06, and the maintenance of a hostile work environment.

2.      Plaintiff began working as an employee of Defendant Central State University on March 1, 2017.

3.      From July 2018 to the present day, Plaintiff has engaged in persistent advocacy, including protected speech and activities advocating for diversity,

Complaint Exhibit 7 - 1

inclusion, systemic change, and accountability and ethics in governmental service. This advocacy particularly pertained to the development and implementation of Ohio's 1890 Land-Grant University and its Cooperative Extension Service, including, but not limited to, the performance of needs assessments and addressing racism as a public health crisis.  (Exhibit 9)

4.       This lawsuit is not only a personal battle to remedy the violations of Plaintiff's constitutional, statutory, and legal rights; it is also a pivotal moment of advocacy for the broader community.  Plaintiff, who has dedicated his career to promoting legal, social, and economic justice for all, brings this case to shed light on and correct the systemic issues within Central State University and its Cooperative Extension Service and to fight for the rights of historically underserved communities, particularly African Americans in Ohio. Additionally, this lawsuit aims to engage the power and authority of the Court to determine and enforce the obligations and duties of the Board of Trustees of Central State University under R.C. §3343.05 and §3343.06, uphold the University's mission as an 1890 Land-Grant Institution, and ensure proper stewardship of resources in service to communities across Ohio, including African Americans in Ohio, via Defendant CSU's Cooperative Extension Service.

5.       This case transcends a mere workplace dispute over management priorities and job execution. For several years, the Defendants have neglected to perform comprehensive needs assessments, a critical function expected of a Cooperative Extension Service at an 1890 Land-Grant Institution. This negligence constitutes a misuse of state and federal resources, as Extension programs are designed to address identified needs and produce short, medium, and long-term impacts. Without conducting needs assessments, these needs

remain unidentified. According to the organizational structure and job descriptions within Defendant CSU's Cooperative Extension Service, Extension Educators are explicitly tasked with conducting needs assessments as part of their Essential Duties and Responsibilities. Despite this, Defendants have intentionally obstructed Plaintiff and other Extension Educators from fulfilling this duty. Consequently, even after 10 years of Land-Grant status, no comprehensive needs assessment has been carried out. This ongoing failure represents a misuse of resources, including money and personnel. Moreover, in the Defendants' workplace, whistleblowers face retaliation, reprisal, and a hostile work environment.

6.      The case arises amidst legislative and administrative declarations across Ohio recognizing racism as a public health crisis. Plaintiff has tirelessly advocated for diversity, inclusion, and addressing systemic racism within the University's Cooperative Extension Service. His efforts include promoting the recruitment of African Americans into land-grant, research, and Extension roles; advocating for comprehensive needs assessments; raising awareness and seeking resolution of ethical and legal compliance concerns in University operations affecting the Cooperative Extension Service; and leveraging innovative technologies, such as hybrid online/offline distance learning, blockchain, and AI solutions, to bridge the digital divide and assist and empower underserved communities to have more agency and to be more self-determinative. These activities, which address matters of public concern and are underscored by the impact of COVID-19 and the outcry against systemic racism, are protected under the First Amendment and essential to fulfilling the land-grant mission.

7.     Plaintiff's advocacy is informed by the legal philosophy of sociological jurisprudence, which emphasizes the importance of understanding the social context in which laws operate and using the law as a tool to address societal needs and promote justice. This approach underpins Plaintiff's advocacy for comprehensive needs assessments, addressing racism as a public health crisis, and leveraging innovative technologies to serve underserved communities. Plaintiff's efforts aim to ensure that the law serves as a means to achieve legal, social, and economic justice for all, particularly the historically marginalized Black communities in Ohio.

8.     As an Extension Educator, Plaintiff's pedagogy and extension education philosophy parallel his sociological jurisprudence legal philosophy. He believes that effective education, including Extension education, can only be accomplished when one understands the social context in which the education is to be delivered, received, and implemented. Just as good law must be made with an understanding of the social context, effective teaching requires an appreciation of the cultural, economic, and social factors that influence learners. Plaintiff's approach emphasizes the importance of context in both legal and educational practices to create meaningful and impactful outcomes.

9.     The significance of intra-group discrimination is highlighted in this case, drawing a parallel to the U.S. Supreme Court's ruling in Castaneda v. Partida, 430 U.S. 482 (1977), which recognized the possibility of discrimination occurring within the same racial or ethnic group. This theme is echoed in Gary Byrd's song, "Every Brother Ain't a Brother," which conveys that individuals within the same community can act against the best interests of their own community. This case exemplifies that even within an institution designed to uplift African Americans,

Complaint Exhibit 7 - 4

not everyone shares that objective, leading to internal discrimination and retaliation that harm a) advocates such as the Plaintiff, and b) those residents and communities intended to be served within the land-grant ecosystem.

10.     In the context of land-grant and agriculture, while the fox has four legs, fur, and teeth, on the farm the fox is not a colleague. The fox is a colonizer and a threat to the farm and everything that depends upon it.  As to the fox, they not like us.

11.     The Defendants, in their individual capacities, have engaged in conduct that is egregiously malicious, demonstrating a deliberate and conscious disregard for the rights and well-being of both the Plaintiff and Ohio's African American community. Their actions were not only intended to harm and retaliate against the Plaintiff for his advocacy and protected speech but also reflect a broader, reprehensible motive that undermines the mission of the Cooperative Extension Service at Central State University. The malicious intent and ill-will exhibited by the Defendants, characterized by their ongoing retaliatory actions, hostile work environment, and obstruction of Plaintiff's professional duties, warrant the imposition of punitive damages to punish such conduct and deter similar future behavior.

12.     By the fall of 2022, Plaintiff's advocacy, supported by the efforts of his colleagues, had gained significant traction, notably with the hard-fought backing of Siddhartha Dasgupta, the former Associate Administrator of Extension. On September 14, 2022, during a crucial meeting with the CED Team (at the time comprised of by Plaintiff, Amber Twitty, and Eric Smith) and Extension Site Coordinator Janet Corney, Dasgupta acknowledged the legislative declarations across Ohio, particularly focusing on the cities of Cleveland, Columbus, and

Complaint Exhibit 7 - 5

Cincinnati. Dasgupta supported a review of the research conducted by County Commissioners and City Councils that identified racism as a public health crisis, questioning, "Why is that?" and exploring its impact on African American communities in these cities and the role CSU Extension could play. Dasgupta also emphasized the importance of needs assessments in Extension, especially for the Community and Economic Development Team. However, upon information and belief, shortly after this meeting, Defendants Board of Trustees and/or Kuti removed Dasgupta as Associate Administrator of Extension and appointed Defendant Folck as the Interim Associate Administrator of Extension.

13. Upon information and belief, Defendant Folck, who served as the Program Leader for Agriculture and Natural Resources (ANR), was known for implementing employment practices that resulted in an 'alarming limited number of new hires of color,' as highlighted by former CED Program Leader Anthony Barwick. On August 19, 2020, Barwick communicated his concerns to Dasgupta, Defendant Folck, and others, questioning the University's commitment to diversity and inclusion. Barwick asked, 'Are we making a concerted effort to solicit and seek diverse talent across all demographics? Are we ensuring unbiased review, selection, and hiring processes are in place?' Barwick further observed the lack of leadership positions and career advancement opportunities for people of color and existing Extension staff, inadequate professional development opportunities, including certifications and advanced academic achievements, and poor attendance at professional conferences and online training tools. He also noted a lack of professional respect and communication among staff, pervasive cronyism, and overt biases.

Complaint Exhibit 7 - 6

14.     For years, Plaintiff diligently filed internal complaints, whistleblower reports, and repeatedly petitioned the Defendants for a redress of grievances in an effort to avoid litigation. However, the Defendants' persistent wrongful actions towards Plaintiff, coupled with their continued harm to the community, including Ohio's Black community, ultimately compelled Plaintiff to file this lawsuit.

15.     Notably, the Defendants have escalated their retaliatory actions and maintained a hostile work environment since the filing of this civil action on June 7, 2024, including, but not limited to, the following adverse employment actions.

16.     On June 27, 2024, the Defendants suspended Plaintiff for one week without pay for delivering a poster presentation on June 19, 2024 (Juneteenth Holiday) at the National Association of Community Development Extension Professionals (NACDEP) titled "**Empowering Extension Education with Custom GPT Technology: A Case Study on The 4-Page Business Plan**", allegedly in violation of Central State University Policy 608, which governs Employment Rules for Non-Bargaining Unit Administrative, Professional, and Classified Civil Service Staff.

Below is an image of the poster that Plaintiff shared as part of his poster presentation that Plaintiff presented at the National Association of Community Development Extension Professionals (NACDEP) titled "**Empowering Extension Education with Custom GPT Technology: A Case Study on The 4-Page Business Plan**":



17.      Prior to the suspension, Defendants did not give Plaintiff written notice of the allegations against him and an opportunity to respond.

18. On June 27, 2024, after receiving the notice of suspension, Plaintiff, via an email to Shau'De Knight (Defendant CSU's Assistant Director of Human Resources), requested copy of the charge that Knight was investigating when Knight spoke with Plaintiff on Tuesday, June 26, 2024. As of July 15, 2024, the Defendants still have not provided Plaintiff with the requested written notice of the allegations against him or what the Assistant Director of Human Resources was actually investigating.

19. Defendants' notice of suspension to Plaintiff did not inform Plaintiff that the suspension was without pay.

20. The suspension was for one week (June 27, 2024 to July 3, 2024). Plaintiff is paid monthly. Thus, the suspension spanned two days in the June pay period and three days in the July pay period.

21. On June 28, 2024, Plaintiff received his paycheck which had been reduced by more than two days of compensation. The Defendants imposed the entire financial penalty of the 5 day suspension upon Plaintiff's compensation for the June pay period. Again, without prior notice to Plaintiff that this was going to happen. The imposition of an excessive penalty is consistent with the Defendants' efforts to maximize the hostility of the work environment to which they are subjecting Plaintiff.

22. Given Defendant Rendleman's prior rallying call to Defendant Folck that it is time to "circle the wagons", the imposition of the suspension was another concerted effort of multiple Defendants to engage in unlawful and unconstitutional conduct, all under the direction and guidance of the Defendant Board of Trustees who had a statutory fiduciary duty to prevent such conduct. (See Exhibit 8)

23. During the week of June 24, 2024, the Defendants further violated Plaintiff's right to due process by compelling him to undergo a performance appraisal a) without informing him of what position he was being evaluated, and b) based upon using a Performance Appraisal Form that was, according to Defendant CSU's General Counsel, 'in the process of being updated.'

24. On February 8, 2024, Defendants, unilaterally, issued Plaintiff a new job description that is significantly different than the Statewide CED Extension Educator position to which he was appointed in April 2021. Plaintiff has requested the Personnel Action Forms (PAF) related to this change. To date, the Defendants have failed to provide Plaintiff with the requested PAF forms.

25. Thus, in response to the instructions from the Defendants and their General Counsel to complete the Performance Appraisal Form, Plaintiff sought clarification on which position description and which time period should be used for the appraisal. The Defendants, through their General Counsel, responded only with, "[p]lease complete the evaluation using your current job description, which has been previously provided to you. Your evaluation will cover the most recent fiscal year (July 2023 through June 2024). After completion of your evaluation by the University, you will have the option of providing a response to your evaluation, which will be placed with your completed evaluation in your personnel file."

26. The position description accepted by Plaintiff in April 2021 is significantly different from the one unilaterally imposed upon him by the Defendants on February 8, 2024. The Defendants' conduct is retaliatory because their demand is ambiguous, making it impossible to accurately review either of the positions for the "most recent fiscal year (July 2023 through June 2024)." Moreover, the

Defendants refuse to clarify which position description and time period should apply, further evidencing their intent to create confusion and hinder Plaintiff's ability to complete the evaluation properly.

27.     Plaintiff is unaware of any notification circulated to University staff regarding the incomplete status of the form. Under duress and seeking to avoid yet another sham finding of insubordination, Plaintiff completed the initial portion of the form and submitted it to Defendant Rendleman on June 26, 2024, as required by Defendant CSU's General Counsel, Laura Wilson, to meet the June 30, 2024 deadline. However, as anticipated, as of July 14, 2024, Plaintiff has not received or been asked to sign the completed performance appraisal form from Defendant Rendleman or any other Defendant. The appraisal process was to be conducted by Defendant Rendleman, reviewed by Defendant Folck, and administered by Defendant Bowman, all under the executive leadership of Defendant Kuti, who, as of July 1, 2024, has been elevated to the position of University President. These actions clearly evidence the Defendants' resentment towards Plaintiff, their retaliatory motives, and significant due process procedural failures.

28.     The Defendants' actions and inactions in this case, including those committed after the filing of this lawsuit on June 7, 2024, occurred under the power and authority of the Defendant Board of Trustees, pursuant to Ohio Revised Code §3343.05 and §3343.06.

29.     Through its actions and inactions concerning its statutory and fiduciary duties, Defendant Board of Trustees has created and continues to maintain a toxic and hostile work environment marked by unconstitutional and unlawful activities, including retaliation, discrimination, and violations of employee rights.

Complaint Exhibit 7 - 11

The Board's failure to address and rectify these issues has perpetuated an atmosphere of fear and intimidation, misuse of personnel and resources, and unethical conduct. This environment undermines the mission, values, development, and implementation of Ohio's 1890 Land-Grant University and its Cooperative Extension Service, including critical initiatives such as performing needs assessments and addressing racism as a public health crisis.

## JURISDICTION AND VENUE

30. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case arises under the Constitution, laws, or treaties of the United States.

31. This Court has authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The Court has the authority to award costs and attorney's fees under 42 U.S.C. § 1988.

32. This action includes federal questions under the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

33. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the Defendants reside or are located in this district.

## NATURE OF THE CASE

34. The Defendants have violated Plaintiff's constitutional rights under the First and Fourteenth Amendments to the United States Constitution, as well as his statutory rights under 42 U.S.C. § 1983. These violations include, but are not limited to, retaliatory actions, denial of substantive and procedural due process, failure to supervise and control, negligent retention, breach of fiduciary duty imposed by R.C. §3343.05 and §3343.06, and the maintenance of a hostile work environment.

Complaint Exhibit 7 - 12

35.     Context matters. This lawsuit arises within a broader societal and legislative context where racism has been officially recognized as a public health crisis by legislative and administrative bodies across Ohio. These declarations highlight the systemic impact of racism on the health and well-being of racial and ethnic minorities. Plaintiff's advocacy efforts within Central State University's Cooperative Extension Service align with these declarations, as he has tirelessly worked to promote diversity, inclusion, and to address systemic racism. His efforts include advocating for comprehensive needs assessments to identify and address the needs of underserved communities, raising ethical and legal compliance concerns to ensure accountability, and leveraging innovative technologies like blockchain and AI to bridge the digital divide and empower these communities. These activities are matters of public concern, underscoring the importance of First Amendment protection for Plaintiff's speech and actions as a public employee. The retaliation and hostile work environment he has faced are not isolated incidents but indicative of larger systemic issues affecting historically underserved communities, particularly African Americans in Ohio. These contextual factors underscore the urgency and legitimacy of Plaintiff's claims and the pressing need for systemic change within the University. This broader framework reinforces the significant public interest in addressing these issues and holding the Defendants accountable for their actions in both their individual and official capacities.

36.     Plaintiff is employed as an Extension Educator in the Community and Economic Development program area of the Cooperative Extension Service at Central State University, an 1890 Land-Grant University.

37.     On January 29, 2014, Defendant Central State University ("CSU"), a public historically Black university (HBCU) located in Wilberforce, Ohio, was designated as an 1890 Land-Grant University. Land-grant institutions have three primary functions:

   a. **Research:** Conducting scientific research, particularly in agriculture, engineering, and related fields, to advance knowledge and address practical problems.

   b. **Teaching:** Providing higher education that is accessible and relevant to a broader segment of the population, including traditionally underserved communities.

   c. **Extension:** Disseminating research-based knowledge and providing community education and outreach through the Cooperative Extension System.

38.     The Cooperative Extension System (CES) was established by the Smith-Lever Act of 1914 to disseminate the research and knowledge generated by land-grant universities to the public through a nationwide educational network. The CES represents a partnership between federal, state, and local governments, aiming to provide practical, research-based education to individuals, families, and communities. Thomas Monroe Campbell, the first Extension Agent and a protégé of George Washington Carver at Tuskegee University, played a crucial role in the early development and implementation of the CES. Campbell's pioneering efforts in agricultural education and outreach among African American farmers in the South were instrumental. Carver and Campbell's innovative outreach initiative, known as the Movable School—starting with the Jessup Agricultural Wagon in 1906—exemplified the CES mission by

bringing education directly to farmers and families, enhancing learning through practical application and technology.

39.    The Cooperative Extension Service is the operational arm of the Cooperative Extension System at the state and local levels. It involves the direct delivery of educational programs and services to communities, often through county-based Extension offices. Extension educators and agents work with individuals, families, and communities to apply university research to practical, real-world issues, thereby enhancing the quality of life and economic well-being of citizens.

40.    On March 1, 2017, Plaintiff, a licensed attorney and civil rights advocate, was hired by Defendant Central State University as one of the university's inaugural County Extension Agents, his territory being Cuyahoga County, Ohio. Plaintiff commuted daily from his home in Westerville, Ohio to his office in Cleveland, Ohio. He is now the third longest-serving staff member in the Cooperative Extension Service at Defendant Central State University.

41.    In or about December 2021, CED Program Leader Anthony Barwick announced that he was resigning his position to pursue other opportunities outside Defendant Central State University. Barwick recommended to the leadership of the Cooperative Extension Service and Land-Grant Programs that Plaintiff be appointed as the interim CED Program Leader. Barwick's recommendation was supported by members of the CED Team. However, Defendants Associate Administrator of Extension and Director of Land-Grant Programs refused to appoint Plaintiff as the interim CED Program Leader.

42.    When the CED Program Leader position was posted, a term and condition was added to the job description requiring the incumbent to report daily to

campus in Wilberforce, Ohio from 8 am to 5 pm. The other original Program Leader positions did not have that requirement. This requirement made the position undesirable for Plaintiff since he had already served three years commuting a long distance daily in his role as a CED Extension Educator with Defendant CSU.

43.     Due to their resentment towards Plaintiff, Defendants added this job requirement to the position as part of their retaliation and hostile work environment, aiming to dissuade Plaintiff from applying for the CED Program Leader position. This is evidenced by the fact that the Defendants offered to waive the requirement for another candidate and actually did waive the requirement for Defendant Rendleman.

44.     On November 17, 2022, after learning that the Defendants were going to waive the requirement that the CED Program Leader report to campus in Wilberforce, Ohio daily from 8 am to 5 pm for a Caucasian applicant who Defendant Folck had reportedly recruited, Plaintiff decided to submit an application for the position.

45.     On November 23, 2022, despite the job posting stating that the position was open until filled, Defendant Bowman emailed Plaintiff stating that "second round candidates had been selected and notified" and that "[t]he Search Committee will not be considering additional applications at this time."

46.     Plaintiff was not permitted to compete for the CED Program Leader position or even be interviewed in the first round.

47.     Plaintiff's experience and qualifications for the position of CED Program Leader, qualitatively and quantitatively, exceed that of Defendant Rendleman.

Complaint Exhibit 7 - 16

48.     Defendants subsequently hired Defendant Rendleman as the CED Program Leader, and he began working in or about February 2023. Throughout 2023, Defendants Kuti, Folck, Bowman, and Rendleman engaged in a concerted effort to unilaterally alter Plaintiff's Extension Educator, CED position from Statewide to Regional, without his consent or input. During the latter half of 2023, Defendant Rendleman persistently taunted and disrespected Plaintiff in CED Team meetings by deliberately refusing to acknowledge his role as a Statewide Extension Educator. Instead, Rendleman repeatedly misnamed and mischaracterized Plaintiff's role and territory as Southwest Region, Columbus, Central Ohio, or a combination of these descriptions.

49.     Plaintiff's advocacy efforts, which are protected under the First Amendment, have included promoting intentionality in the recruitment of African Americans, advocating for a comprehensive needs assessment to identify and quantify the needs of underserved communities, and leveraging innovative technology to expand the reach and impact of Cooperative Extension Services.

50.     In response to Plaintiff's protected speech and activities, Defendants have engaged in a pattern of retaliatory conduct designed to undermine Plaintiff's professional role, reduce his job responsibilities, and create a hostile work environment. This conduct includes arbitrary reductions in his job responsibilities, denial of necessary approvals for program activities, imposition of unlawful residency requirements, issuance of a written reprimand based on false allegations, and suspension of his employment without pay for delivering a presentation at a professional conference.

51.     Shockingly, Defendants have continued and even escalated their retaliatory and obstructive conduct, despite an ongoing investigation into

Plaintiff's complaints and even after the filing of this lawsuit. This brazen conduct underscores the depth of Defendants' disregard for Plaintiff's rights and the urgent need for judicial intervention to put an end to the ongoing violations.

52.     Defendants' actions have not only impeded Plaintiff's ability to perform his duties effectively but have also violated his rights to substantive and procedural due process under the Fourteenth Amendment. These actions have been taken without fair notice, an opportunity to be heard, or adherence to the University's established policies and procedures.

53.     The Defendants, acting under color of state law, have deprived Plaintiff of his constitutional rights, thus giving rise to claims under 42 U.S.C. § 1983. These actions reflect a deliberate indifference to Plaintiff's rights and a retaliatory motive to suppress his protected speech and activity.

54.     Plaintiff seeks declaratory and injunctive relief to rectify these ongoing violations, as well as compensatory and punitive damages to redress the harm caused by Defendants' unlawful conduct. Plaintiff also seeks costs and attorney's fees pursuant to 42 U.S.C. § 1988.

55.     This case underscores the need for accountability and transparency within public institutions, particularly in ensuring that individuals who advocate for systemic change and diversity are protected from retaliation and unjust treatment. Defendants' actions have created a chilling effect on Plaintiff's and others' willingness to engage in protected speech, undermining the fundamental principles of free expression and equal protection under the law.

## THE PARTIES

### A. Plaintiff

56.     Plaintiff Ambrose Moses III (referred to herein as "Plaintiff") is a licensed attorney and civil rights advocate. He is a United States citizen and resident of Delaware County, Ohio.

### B. Defendants

57.     Defendant Central State University (hereinafter referred to as "Defendant CSU" or "University") is a state university, a public institution of higher learning, which is a body politic and corporate, and a subdivision of the state of Ohio. CSU's main campus is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

58.     Defendant Board of Trustees of Central State University (hereinafter "Defendant Board of Trustees") is the governing body of Defendant CSU.  The Defendant Board of Trustees is responsible for the proper maintenance and successful operation of the University, ensuring that it adheres to the laws of Ohio and the mandates for land-grant institutions.  Ohio law requires that the Defendant Board of Trustees shall take, keep, and maintain exclusive authority, direction, supervision, and control over the operations and conduct of such university, so as to assure for said university the best attainable results with the aid secured to it from the state.[1]  Ohio law further requires that the Board of Trustees of the Central State University shall elect, fix the compensation of, and have the right to remove the president, who shall be the chief executive officer of the university, and elect, fix the compensation of, and remove such number of

---

[1] https://codes.ohio.gov/ohio-revised-code/section-3343.05

Complaint Exhibit 7 - 19

professors, teachers, and other employees as is necessary.[2]  The Board of Trustees' office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

59.     Defendant Alex Johnson (hereinafter "Defendant Johnson"), in his individual and official capacities, is the Interim President of Central State University. Johnson oversees the overall administration of the University, ensures that policies and procedures are followed, and addresses issues of compliance and governance.  Defendant Johnson's office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

60.     Defendant Morakinyo Kuti (hereinafter "Defendant Kuti"), in his individual and official capacities, is the Vice President for Research and Economic Development and Director of 1890 Land-Grant Programs at Central State University.  Defendant Kuti directs the 1890 Land-Grant Programs, including the Cooperative Extension Service, and has a responsibility to ensure the program's compliance with federal and state regulations.  On February 9, 2024, Defendant Kuti was named the 10th President of Defendant Central State University, a position he has, or will have, assumed on July 1, 2024. Defendant Kuti's office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

61.     Defendant Alcinda Folck (hereinafter "Defendant Folck"), in her individual and official capacities, is the Interim Associate Administrator of Extension and the Program Leader for the Agriculture and Natural Resources ("ANR") program area at Central State University. Folck's office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

---

[2] https://codes.ohio.gov/ohio-revised-code/section-3343.06

62.     Defendant Pamela Bowman (hereinafter "Defendant Bowman"), in her individual and official capacities, is the Director of Human Resources at Defendant Central State University. Defendant Bowman's office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

63.     Defendant Mark Rendleman (hereinafter "Defendant Rendleman"), in his individual and official capacities, is the Program Leader for the Community and Economic Development ("CED") program area at Defendant Central State University. Defendant Rendleman resides in Franklin County, Ohio.

## STATEMENT OF FACTS

### A. Defendants' Ongoing Retaliatory and Obstructive Conduct

64.     On April 29, 2024, Plaintiff emailed the Defendant Director of Land-Grant Programs at Central State University, detailing recent instances of obstructive and retaliatory conduct that have hindered his ability to perform his job duties. This email, attached as Exhibit 1, not only documents these retaliatory actions but also constitutes protected activity under the First Amendment and relevant whistleblower statutes. The email provides a comprehensive and well-documented account of the challenges Plaintiff has faced, particularly from Defendant Mark Rendleman, the CED Program Leader, underscoring the ongoing pattern of harassment and retaliation. (See Exhibit 1)

65.     In the email, Moses describes how Rendleman's requirement for direct written approval before engaging in **any** "outreach", "outreach efforts", or "CED activity" has created a bottleneck that prevents Moses from effectively doing his job. This is despite the Director's previous guidance to "do all the options that you need to do" to fulfill job duties. The email also includes a detailed timeline of communications between Moses and Rendleman regarding the Growing Equity Partnership Grant, highlighting Moses' diligent efforts to implement the project and the roadblocks put in place by Rendleman, most notably Rendleman's withholding of direct written approval.

66.    Shockingly, the obstructive and retaliatory conduct detailed in this email has continued unabated, even as the University has initiated an investigation into Plaintiff' complaints. Despite the ongoing investigation, Defendants Kuti, Folck, Bowman, and Rendleman have engaged in concerted activity to further impede Moses' ability to perform his job duties and carry out the mission of the Cooperative Extension Service.

67.    Examples of the ongoing retaliatory and obstructive conduct that has occurred since the investigation began include:

a.    Defendant Rendleman's continued refusal to approve Moses' outreach and CED activities, effectively blocking his ability to engage with the community and fulfill his job duties.

b.    Coordinated efforts by Defendants Kuti, Folck, Bowman, and Rendleman to isolate, marginalize, and penalize Moses, creating a hostile work environment that undermines his professional standing and ability to be effective in his role.

c.    Defendants' unilateral decision to refer Plaintiff's complaints that were submitted to the University pursuant to University policies to the external investigator without the procedural processing, appeals, timeline, and public records transparency that would be afforded via the University policies and applicable state law, which also raises concerns about the integrity of the investigative process and the defendants' commitment to addressing the issues raised by Moses.

68.    The fact that the defendants have continued and even escalated their retaliatory and obstructive conduct in the face of an ongoing investigation underscores the depth of their disregard for Plaintiff' rights and the mission of the Cooperative Extension Service. This brazen conduct also demonstrates the need for immediate judicial intervention to put an end to the defendants' unlawful practices and ensure that Moses can perform his job duties without further interference or retaliation.

## A. Background of Plaintiff and Central State University

69.     On March 1, 2017, Plaintiff, a licensed attorney and civil rights advocate, was hired by Defendant Central State University as one of the university's inaugural County Extension Agents within its Cooperative Extension Service. Plaintiff commuted daily from his home in Westerville, Ohio to his office in Cleveland, Ohio. Throughout his tenure, Plaintiff has developed and implemented educational programs, fostered community partnerships, and provided resources to underserved communities in Ohio. His dedication and innovative approach have been instrumental in expanding the reach and impact of CSU's Cooperative Extension Service. He is now the third longest-serving staff member in the Cooperative Extension Service at Defendant Central State University.

70.     Throughout his tenure at Central State University, Plaintiff Ambrose Moses III has consistently advocated for diversity, inclusion, and addressing systemic issues within the University's Cooperative Extension Service, aligning with the land-grant mission. His efforts include promoting the recruitment of African Americans, advocating for comprehensive needs assessments, and leveraging innovative technologies like blockchain and AI to serve underserved communities. Moses' advocacy is further supported by legislative and administrative declarations across Ohio recognizing racism as a public health crisis. These declarations underscore the urgent need to address systemic racism and its impact on public health, aligning with Moses' efforts to promote equity and justice. These activities, underscored by the impact of COVID-19 and the outcry against systemic racism, are protected under the First Amendment and essential to fulfilling the land-grant mission.

71.     Tragically, the Defendants have engaged in a pattern of retaliatory actions against Plaintiff, undermining the very mission he seeks to uphold. By targeting Moses for his advocacy efforts, the Defendants have not only violated his

constitutional and statutory rights but have also undermined the core principles of the land-grant system. These actions highlight the urgent need for accountability and systemic change within the University's Cooperative Extension Service.

72.     The Defendants, acting both individually and in concert, have violated Plaintiff's rights as guaranteed by the First Amendment and Fourteenth Amendment to the Constitution of the United States, as well as his statutory rights enforced via 42 U.S.C. § 1983. These violations include, but are not limited to, retaliatory actions, denial of substantive and procedural due process, and maintaining a hostile work environment. The Defendants' actions have not only caused significant harm to Plaintiff but have also had a chilling effect on others who may wish to advocate for change and equity within the institution.

73.     This case seeks to hold the Defendants accountable for their unlawful actions and to secure justice for Plaintiff. By doing so, this lawsuit aims to vindicate the rights of those who speak out against systemic inequities and to promote the fundamental principles of diversity, inclusion, and equal protection under the law. The success of this case is not only critical for Plaintiff but also for the future of the land-grant system and its mission to serve all communities, regardless of race or socioeconomic status.

### B. Plaintiff's Advocacy and Protected Activities

74.     A key aspect of Plaintiff's advocacy and protected activities is leveraging his position as a public employee to identify systemic issues, develop practical solutions, and influence governmental actions to implement these solutions. By doing so, Moses seeks to fulfill his mission of ensuring life, liberty, and the pursuit of happiness for all citizens, particularly those from underserved communities.

75.     On November 27, 2019, Plaintiff submitted an R.C. § 124.341 whistleblower report to Defendants, alerting them to noncompliance with state and federal law. Specifically, Plaintiff reported that the Defendants were imposing

Complaint Exhibit 7 - 24

an unlawful residency requirement as part of the minimum qualifications for the newly created Regional Extension Associate positions. (See Exhibit 2)

76. Plaintiff cited Ohio law, which prohibits the imposition of residency requirements on higher education employees (R.C. § 124.70) and certain other employees (R.C. § 9.481). He also referenced the Ohio Supreme Court's decision in Lima v. State, 2009-Ohio-2597, which held that a state law prohibiting general residency requirements for public employees is valid and supersedes local laws to the contrary. (See Exhibit 2)

77. In his report, Plaintiff argued that Defendants' imposition of unlawful residency requirements on higher education employees could disproportionately exclude Black American applicants, violating state and federal civil rights laws. He cited data from the Ohio Development Services Agency, which states that "nearly four out of every ten African Americans in the state live in the cities of Cincinnati, Cleveland, or Columbus." (See Exhibit 2)

78. On August 19, 2020, Plaintiff sent an email to CED Program Leader Anthony Barwick advocating for greater inclusion of Black Americans in the CSU Cooperative Extension Service. He highlighted Ohio's historical and present systemic racism, referencing declarations of racism as a public health crisis by multiple Ohio cities and counties, as well as a statement by Governor Mike DeWine. Moses emphasized the lack of Black representation in Extension services across Ohio and the unique opportunity presented by CSU Extension's expansion to address this disparity. He argued for the inclusion of Black Ohioans in Extension, given the growing number of Black individuals entering agriculture and the USDA's new urban agriculture initiatives. In line with these declarations, Plaintiff has advocated for CSU's Cooperative Extension Service to engage in

efforts and utilize policy, systems, and environmental (PSE) methodologies to address racism as a public health crisis.

79.    On November 4, 2021, Plaintiff sent an email to his direct supervisor, CED Program Leader Anthony Barwick, reporting that the "approved" Requests for Travel (RFTs) he had received back from University leadership had been altered, with his signature forged onto the documents. Moses further reported that similar incidents had occurred with other CED Educators and requested Barwick to review the attached information and documents showing the inaccurate, improper, and potentially unlawful actions concerning the approved RFTs.

80.    On November 8, 2021, Barwick reported the matter up the chain of command to the Defendant Associate Administrator of Extension. At Moses's request, Barwick also escalated the issue to the Defendant Director of Land-Grant Programs. Based on information and belief, Moses understands that the alterations and forged signatures were executed by or at the direction of the Defendant Associate Administrator of Extension.

81.    On September 14, 2022, during a meeting with the Community and Economic Development (CED) team, which included Plaintiff Ambrose Moses III, Siddhartha Dasgupta (then Associate Administrator of Extension) expressed strong support for the needs assessment initiative and the evaluation of racism as a public health crisis.

82.    Dasgupta's support was crucial, demonstrating a significant endorsement from leadership for Plaintiff' advocacy efforts aimed at addressing systemic issues within the University's Cooperative Extension Service.

83.    Upon information and belief, shortly after this meeting, Dasgupta was demoted or removed by Defendant Kuti, who was then Interim Director of Land-

Grant. This demotion/removal disrupted the momentum of the needs assessment initiative and the evaluation of racism as a public health crisis, which had finally begun to gain traction within the leadership.

84.     The removal of Dasgupta, who had begun to support Plaintiff' advocacy efforts, and the installation of Defendant Folck, who had been previously reported by Moses, contributed to a retaliatory and obstructive environment. This sequence of events further hindered Plaintiff's ability to pursue the needs assessment and address racism as a public health crisis, despite these being matters of significant public concern.

85.     On November 23, 2022, Plaintiff submitted another R.C. § 124.341 whistleblower report to Defendants, this time concerning the University's failure to comply with state and federal laws regarding employment discrimination and retaliation.

86.     On December 1, 2022, Plaintiff submitted a request to the Central State University Board of Trustees, President, and Provost for an independent investigation into a pattern of unlawful employment practices and retaliation. In his request, Moses detailed ongoing discriminatory practices, including his own experiences of retaliation and racially discriminatory treatment. He highlighted the University's failure to address previous reports he filed under R.C. § 124.341 and emphasized the urgent need for transparency and corrective actions. Moses specifically requested the suspension of scheduled interviews for the CED Program Leader position pending the investigation and called attention to the University's systemic issues, lack of diversity, and failure to uphold its mission as an 1890 Land-Grant Institution. Plaintiff subsequently sought to engage with

Complaint Exhibit 7 - 27

Defendant Kuti to address the matter internally without taking matters further towards litigation. (See Exhibit 4)

87.     Throughout his tenure, Plaintiff has consistently advocated for intentionality, diversity, and inclusion in the recruitment of African Americans to the Cooperative Extension Service.

88.     Plaintiff has actively advocated for a comprehensive needs assessment to identify and quantify the needs of underserved communities in Ohio, particularly African Americans, which the CSU Cooperative Extension Service can address.

89.     Recognizing the potential of technology to expand the reach and impact of Cooperative Extension Services, Plaintiff has promoted the utilization and leveraging of innovative tools such as blockchain solutions and online communication platforms (Zoom, Microsoft Teams) to better serve underserved residents of Ohio via hybrid (i.e. simultaneously in-person and online) Cooperative Extension Service program activities.

90.     During the COVID-19 pandemic, Plaintiff's role was elevated from a County Extension Educator to a Statewide Extension Educator.  In this new role, Plaintiff's early observation and research highlighted the disparate impact of the pandemic on the Black community and Black-owned businesses.  In response, he developed a program called PRiMR: Disaster Management Education to address these disparities and provide much-needed support to affected communities.

91.     Plaintiff has consistently raised concerns about Defendants' failure to follow University policies and procedures, especially concerning the processing of formal complaints and job description changes. His adherence to proper

Complaint Exhibit 7 - 28

protocols and insistence on transparency and accountability demonstrate his commitment to ensuring fair and equitable practices within the University.

92. Through these and other advocacy efforts, Plaintiff has demonstrated an unwavering dedication to promoting diversity, inclusion, and equity within Central State University's Cooperative Extension Service. His protected activities, aimed at addressing systemic issues and upholding the mission of the 1890 Land-Grant Institution, are central to this Complaint and the broader fight for justice and equal opportunity.

## C. Defendants' Retaliatory Actions

93. In response to Plaintiff's protected speech and activities, Defendants have engaged in a continuous and multifaceted campaign of retaliation designed to undermine Plaintiff's professional standing, hinder his ability to perform his job duties effectively, and create a hostile work environment. The following examples illustrate the depth and breadth of the Defendants' retaliatory actions:

a. In 2018, Defendant Director of Land-Grant, through Defendant CED Program Leader, imposed an unlawful residency requirement on Plaintiff in violation of O.R.C. § 9.481 and O.R.C. § 124.70, which prohibit such requirements for higher education employees. Although Plaintiff resisted this action and the Defendants appeared to drop the issue, Defendant Mark Rendleman, in his individual capacity and his official capacity as CED Program Leader, subsequently began applying and imposing a residency requirement on Plaintiff's work activities without Plaintiff's knowledge until recent disclosures pursuant to a public records request.

b. On November 7, 2019, Plaintiff Ambrose Moses III, an African American, applied for all four newly created Regional Extension Associate

Complaint Exhibit 7 - 29

(REA) positions for which he was qualified. Despite his qualifications, Moses was not selected for any of these positions. Moses contends that the Defendant Director of Land-Grant harbored resentment towards him for his prior protected activities concerning, but not limited to, the unlawful residency requirements the Defendants sought to impose on the REA positions and upon Moses. This lead to Defendants' decision to not hire or promote Moses in retaliation for his exercise of First Amendment rights. The Defendants' decision to hire exclusively Caucasian candidates for all four REA positions, and their failure to hire Moses for either of the two CED Extension Educator positions he applied for on March 9, 2020, and April 7, 2020, also constitutes unequal and discriminatory treatment based on race and national origin, violating the Equal Protection Clause of the Fourteenth Amendment.

c.      Defendants engaged in a concerted and coordinated effort to strip away Plaintiff's Statewide Extension Educator status and demote him to a Regional Extension Educator, effectively reducing his job responsibilities and professional standing. This action was taken in retaliation for Plaintiff's protected speech and activities.

d.      In a clear attempt to undermine Plaintiff's advocacy efforts and professional goals, Defendants removed the service to underserved populations, particularly Black communities, as a critical component of Plaintiff's job description.

e.      Defendants deliberately impeded Plaintiff's professional growth by failing to approve his travel and participation in various professional

development opportunities, such as the HBCU Blockchain Conference and disaster management training sessions.

f.      Defendants imposed an arbitrary and restrictive requirement that Plaintiff obtain prior written approval from Defendant Rendleman before conducting any CED Activities and Outreach Efforts. This approval was rarely granted, effectively stifling Plaintiff's ability to perform his job duties and engage with the community.

g.      The State Personnel Board of Review (SPBR) recently found that Defendants Central State University and Morakinyo Kuti engaged in retaliatory actions against another employee, Dr. Subramania Sritharan (Dr. Sri), following his protected whistleblower activities. Dr. Sri had reported concerns about the improper use of USDA-NIFA grant funds to pay Dr. Kuti's salary, which could potentially violate federal regulations. In response to his whistleblower report, Dr. Kuti, who later became Dr. Sri's supervisor, issued non-renewal notices based on false assertions without proper consultation or justification. The SPBR determined that these non-renewals were retaliatory and that Dr. Sri's subsequent resignation was a constructive dismissal induced by CSU's false information. Notably, Human Resources Director Pamela Bowman failed to conduct a proper review of Dr. Sri's personnel file, which would have confirmed his faculty status, and instead facilitated the retaliatory actions by supporting the non-renewal decisions. The SPBR ordered CSU to restore Dr. Sri to his administrative position with all associated rights and benefits. This finding underscores a pattern of retaliation and denial of due process within CSU,

Complaint Exhibit 7 - 31

highlighting similar retaliatory actions faced by Plaintiff Ambrose Moses III for his protected activities. (See Exhibit 5)

h. During the SPBR proceedings in 2023, Defendant Bowman testified that if "a Dean" like Dr. Kuti requested a letter of non-renewal, she would prepare it without further research or consultation. This testimony underscores Bowman's willingness to prioritize directives from university deans and high-ranking officials over the adherence to established rules, policies, and procedures designed to protect employees' constitutional and legal rights. By failing to conduct proper reviews and blindly following the instructions of deans, Bowman facilitated the retaliatory actions against Dr. Sri and enabled the abuse of power within CSU. This behavior exemplifies the broader issues of retaliation and denial of due process within the university, which are central to Plaintiff's claims. The defendants' concerted and coordinated efforts leading up to the issuance of a written reprimand to Plaintiff on February 8, 2024, mirror the same pattern of misconduct and disregard for proper procedures evident in Dr. Sri's case. Bowman's testimony highlights the systemic nature of these issues and emphasizes the urgent need for accountability to prevent further violations of employees' rights.

i. On January 3, 2024, Plaintiff wrote an email to Defendant Rendleman, stating "Good morning Mark. Since this will be our first CED Team meeting of the new year, could you start us off by explaining the plan for 2024?  Maybe you could walk us through the CED portion of the attached Extension Programs Plan of Work for FY 2024 that Dr. Folck

Complaint Exhibit 7 - 32

posted to Teams.  It will be helpful for the CED Team to know and to discuss—

- the identified needs that CED will be addressing in 2024,
- what specific CED programs will be implemented and conducted in 2024,
- what impact we expect to have with the CED programs,
- how we will measure the impact of the CED programs in 2024, and
- how all of this executes and accomplishes the Extension Programs Plan of Work for FY 2024.

j. On January 9, 2024, Defendant Rendleman sent an email to Defendant Folck regarding Plaintiff's email dated January 3, 2024, which concerned protected activities, stating, "It is definitely time to circle the wagons." This statement, made in response to Plaintiff's email, reveals the Defendants' intent to coordinate a retaliatory response against Plaintiff and subject him to a hostile work environment for engaging in protected speech and activities. The phrase "circle the wagons" implies a defensive and adversarial posture, suggesting that the Defendants viewed Plaintiff's actions as a threat to be countered rather than legitimate concerns to be addressed. This email exchange demonstrates the Defendants' resentment towards Plaintiff, their retaliatory motives, and their concerted efforts to target Plaintiff for his protected activities, further contributing to the hostile work environment and pattern of retaliation he faced. The involvement of multiple levels of University officials in discussing and coordinating this response underscores the pervasive and systemic nature of the retaliation and hostile work environment within Defendant CSU's workplace, which is under the direction, control, and governance of the Defendant Board of Trustees.  (See Exhibit 8)

k.      On January 22, 2024, Defendant Rendleman sent an email to Defendant Folck, revealing their plan to coordinate retaliatory actions against Plaintiff and another employee named Amber Twitty. In the email, Defendant Rendleman wrote, "... Now back to my wish list: ... Let's coordinate on our reprimand strategies for Ambrose and Amber. I will also be coordinating a meeting with HR, Dr. Knight. It would be nice if you could participate in these discussions."

l.      Defendant Rendleman's email dated January 22, 2024, exposes the Defendants' explicit intent to target Plaintiff and another employee with reprimands, demonstrating a premeditated and coordinated effort to retaliate against them. By referring to the reprimands as part of a "wish list," Defendant Rendleman reveals a personal desire to punish Plaintiff and Amber, rather than addressing legitimate performance concerns. Furthermore, Defendant Rendleman's invitation for Folck to participate in discussions with Human Resources and Dr. Knight indicates an effort to involve multiple high-level university officials in the retaliatory scheme.

m.      Defendant Rendleman's email dated January 22, 2024 provides further direct evidence of the Defendants' retaliatory motive and their concerted efforts to take adverse actions against Plaintiff. It also shows how the Defendants actively collaborated to devise strategies for issuing reprimands, creating a hostile and discriminatory work environment. The email supports the allegations in this Complaint of a pattern of retaliation and highlights the Defendants' abuse of their positions to target and punish employees who engage in protected activities or advocacy efforts.

n.     On February 5, 2024, just three days before issuing the written reprimand to Plaintiff, Defendant Rendleman sent an email to Defendant Bowman, stating, "Mrs. Bowman, I have attached the latest final draft of my letter to Ambrose Moses III. It has been reviewed by Dr. Kuti and Dr. Folck. It is at their request that I forward it to your attention. Please review and comment." This email demonstrates the coordinated efforts of Defendants Rendleman, Kuti, Folck, and Bowman in preparing and finalizing the retaliatory written reprimand against Plaintiff. The involvement of multiple defendants in reviewing and approving the reprimand underscores the concerted nature of their actions and the high-level decision within the University to take adverse action against Plaintiff in response to his protected activities. This email further evidences the ongoing pattern of retaliatory conduct and the Defendants' joint efforts to target and punish Plaintiff for his advocacy and whistleblowing.

o.     On February 29, 2024, Defendant Folck forwarded an email to Defendant Rendleman concerning a project titled "Programming in Columbus," stating, "FYI. This is a project that Marc Amante and Ambrose have been working on since 2022." This email highlights Plaintiff's ongoing professional activities and collaborative efforts to serve the community. However, in response, Defendant Rendleman replied to Folck that same day, "Thanks for sharing! What is important to me is the fact that all activities require advance approval. Nothing is grandfathered. I will review the stack of Ambrose emails to verify that there has been a request for advance approval."

p.      Rendleman's response to Folck's email on February 29, 2024 demonstrates a targeted and retaliatory approach to scrutinizing Plaintiff's work, even for projects that had been ongoing since 2022. By emphasizing that "nothing is grandfathered" and expressing his intent to "review the stack of Ambrose emails," Rendleman singles out Plaintiff and subjects him to heightened scrutiny and approval requirements not applied to other employees. This exchange further evidences the defendants' concerted efforts to create obstacles for Plaintiff and restrict his ability to perform his job duties, in retaliation for his protected activities and advocacy efforts. Defendant Rendleman's reply to Defendant Folck also evidences the retaliatory, hostile, arbitrary, and capricious nature of his requirement that all outreach, outreach efforts, and CED activity must be "approved" by him in writing. The email chain also shows how the defendants actively shared information about Plaintiff's work and collaborated to implement retaliatory measures, creating a hostile and discriminatory work environment.

q.      Defendants consistently created a hostile work environment for Plaintiff by marginalizing him, excluding him from important discussions, and characterizing his legitimate professional activities as disruptive. This ongoing conduct was designed to punish Plaintiff for his advocacy efforts and chill his protected speech.

r.      In a clear act of retaliation, Defendant Rendleman unilaterally canceled nearly all one-on-one meetings with Plaintiff between February 2, 2024, and the filing of this Complaint, denying him critical opportunities

Complaint Exhibit 7 - 36

to address important issues and perform his job duties effectively, including but not limited to the Greater Equity Partnership Grant.

s.  Defendant Rendleman further retaliated against Plaintiff by denying his CED Extension Educator Individual Plans of Work for both 2023 and 2024, effectively blocking Plaintiff's ability to carry out his professional responsibilities and advocate for the needs of underserved communities.

t.  On or about July 19, 2023, Defendant Rendleman denied Plaintiff's advocacy and Proposal for a Pilot Project Utilizing the PSE Approach to Needs Assessment and Program Development, another clear example of retaliation designed to impede his advocacy efforts and professional growth.

u.  Defendants failed to approve Plaintiff's request to attend disaster management training at the National Incident Management System Agrosecurity Whole Community Resilience Incident Command System workshop scheduled for May 23-25, 2023 in Montgomery, Alabama, despite the fact that lodging would have been provided by the Extension Disaster Education Network (EDEN). This denial was retaliatory and an adverse action against Plaintiff for engagement in protected activities.

v.  Similarly, Defendants failed to approve Plaintiff's request to attend disaster management training at the 1890 SARE Project Bootcamp in Atlanta, Georgia, on February 7-9, 2024, even though all costs (travel, lodging, food, registration) would have been covered by the 1890 EDEN Advisory Group. This rejection was another instance of retaliation against Plaintiff.

w.      Defendants denied Plaintiff's request, as Central State University's Delegate to EDEN and a member of the 1890 EDEN Advisory Group, to attend the 1890 EDEN Face-to-Face Meeting at North Carolina A&T on June 4-6, 2024, despite the fact that all costs would have been paid by the 1890 EDEN Advisory Group. This denial was a clear attempt to prevent Plaintiff from engaging in important professional activities and advocating for the needs of underserved communities.

x. On October 5, 2023, Plaintiff submitted to Defendant Kuti a report about Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates including the inherent conflicts of interests of Dr. Folck being interviewed by a committee consisting primarily of her subordinates within Extension.  Defendant Kuti responded to Plaintiff's report and questions in a dismissive manner without addressing the inherent conflicts of interest.

y.      Defendants failed to approve Plaintiff's Request for Approval to conduct outreach and cooperative extension services with OEFFA and their Farmer Helpshops on May 20, 2024, and August 19, 2024, further hindering his ability to perform his job duties and serve the community.

z.      On or about December 2, 2021, CED Program Leader Barwick announced his resignation and recommended to the Associate Administrator of Extension that Plaintiff Ambrose Moses III be named Interim CED Program Leader. Despite Barwick's recommendation, which highlighted Moses' qualifications and seniority within CSU Extension, the Dean and Director of Land-Grant Programs did not appoint Moses or anyone else to the interim position, leaving the position vacant for nearly a

year. The Defendants' failure to appoint Moses as Interim CED Program Leader, despite his qualifications and Barwick's recommendation, was a clear act of retaliation against him for his protected activities.

94.     The aforementioned actions are merely a sample of the continuous and multifaceted retaliation and hostile work environment that Plaintiff has endured for his protected speech and activities. As additional evidence is uncovered, the full extent of Defendants' retaliatory conduct will become apparent, further illustrating the severity and pervasiveness of their actions.

### D. Defendants' Denial of Due Process

95.     In addition to the retaliatory actions outlined above, Defendants have consistently denied Plaintiff his right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution. The following examples illustrate the Defendants' pattern of disregarding established University policies and procedures, thereby depriving Plaintiff of fair notice, an opportunity to be heard, and impartial consideration of his grievances:

a.      Defendants arbitrarily reduced Plaintiff's job responsibilities and demoted his position without providing fair notice, an opportunity to be heard, or adhering to the University's established policies and procedures. This denial of due process not only violated Plaintiff's constitutional rights but also undermined his ability to perform his job duties effectively and advocate for the needs of underserved communities.

b.      Central State University's Policy No. 618 mandates that the job performance of all staff members of non-bargaining units be evaluated formally by their supervisor at least annually. In 2022, Defendants failed to appoint an interim CED Program Leader, leaving Plaintiff Ambrose Moses

III, a CED Extension Educator, without a proper supervisor to conduct his performance appraisal as required by Policy No. 618. Instead, the Associate Administrator of Extension, whom Plaintiff had previously reported for forgery, conducted his performance appraisal. The Associate Administrator retaliated against Plaintiff by not following the mandated performance appraisal process and giving Plaintiff an unfair, untrue, and low score. Despite Plaintiff's objections to this violation of University policy, communicated via email on May 13, 2022, to the Dean/Director of Land-Grant, Associate Administrator of Extension, and Director of Human Resources, Defendant Bowman has failed to respond to Moses' concerns, further denying him due process.

c.       Defendants removed key aspects of Plaintiff's job description, including his role in the EDEN Advisory Group, without proper justification or due process. This unilateral action negatively impacted Plaintiff's professional duties and contributions, and denied him the opportunity to contest the changes through established University channels.

d.       Defendants consistently failed to process Plaintiff's formal complaints and grievances according to University policies. Instead, they either ignored and took no action or, more recently, unilaterally referred Plaintiff's complaints to an external investigator who has an attorney-client relationship with the University.

e.       Defendants' referral of Plaintiff's complaints to an external investigator with whom one or more of the Defendants have an attorney-client relationship has, and continues to, deny Plaintiff due process and equal protection as afforded by the Fourteenth Amendment and 42 U.S.C.

§ 1983. This includes but is not limited to the uniform procedural processing, appeals, timelines, and public records transparency that would be available via University policies and applicable state law. This also raises concerns about the integrity, fairness, and impartiality of the investigative process and the Defendants' commitment to addressing the issues raised by Moses as he petitions the government for a redress of his grievances.

f.      On April 16, 2024, Plaintiff Ambrose Moses III submitted a formal complaint to Central State University leadership, including Defendants Alex Johnson, Morakinyo Kuti, and Pamela Bowman, alleging copyright infringement, false attribution, plagiarism, academic dishonesty, retaliation, and hostile work environment by Defendant Mark Rendleman, the CED Program Leader. Moses detailed violations of the University's Professional Code of Conduct, Intellectual Property Policy, and federal copyright laws, asserting that his educational materials were used without authorization and falsely attributed to others. Despite the serious nature of these allegations, the University failed to process Moses' complaint through its Human Resources department, Intellectual Property Committee, or any internal mechanism, instead referring the matter to an external investigator with an attorney-client relationship with the University. This handling of the complaint exemplifies the ongoing denial of due process and the retaliatory actions Moses has faced. (See Exhibit 3)

g.      On April 17, 2024, Plaintiff Ambrose Moses III submitted a formal complaint to Central State University's Director of Human Resources,

Complaint Exhibit 7 - 41

Pamela Bowman, detailing ongoing violations of the University's Professional Code of Conduct, University Policy No. 8, University Policy 607, and University Policy 607.1. The complaint, which followed a previous report on November 28, 2023, addressed persistent wrongful and unlawful treatment, including a "quiet firing" campaign and violations of state and federal laws. Despite the University's policies requiring internal processing of such complaints, Moses' grievances were unilaterally referred to an external investigator who has an attorney-client relationship with the University, thereby denying him timely, fair, and impartial consideration of his claims in accordance with established University procedures.

96.    The Defendants' consistent denial of due process to Plaintiff, as evidenced by the examples above, demonstrates a clear pattern of disregard for his constitutional rights and a failure to adhere to the University's own policies and procedures. These actions have not only caused significant harm to Plaintiff's professional standing and ability to perform his job duties but have also created a chilling effect on his protected speech and advocacy efforts.

97.    By referring Plaintiff's complaints and grievances to an external investigator with an attorney-client relationship with the University, Defendants have effectively denied him access to the impartial complaint resolution mechanisms guaranteed by University policy and the Fourteenth Amendment to the United States Constitution. This denial of due process has compounded the retaliatory nature of Defendants' actions and further underscores the urgent need for judicial intervention to protect Plaintiff's rights.

Complaint Exhibit 7 - 42

98.     The Defendants' consistent denial of due process to Plaintiff, as evidenced by the examples above, demonstrates a clear pattern of disregard for his constitutional rights and a failure to adhere to the University's own policies and procedures. These actions have not only caused significant harm to Plaintiff's professional standing and ability to perform his job duties but have also created a chilling effect on his protected speech and advocacy efforts.

99. By referring Plaintiff's complaints and grievances to an external investigator with an attorney-client relationship with the University, Defendants have effectively denied him access to the impartial complaint resolution mechanisms guaranteed by University policy and the Fourteenth Amendment. This denial of due process has compounded the retaliatory nature of Defendants' actions and further underscores the need for judicial intervention to protect Plaintiff's rights.

### E. Defendants' Retaliation After The Filing of This Lawsuit

100.     Astonishingly, after the filing of this lawsuit on June 7, 2024, the Defendants continued and actually increased their retaliatory conduct and hostile work environment toward Plaintiff.

101.     The policy and practice within the Cooperative Extension Service at Defendant Central State University is that staff members may join (and the Defendant will cover staff members' membership(s) in) professional organizations, including but not limited to, the Joint Council of Extension Professionals ("JCEP") and the National Association of Community Development Extension Professionals ("NACDEP").

102.     On October 10, 2022 and October 19, 2023, Defendant Folck informed Plaintiff and other staff of the Cooperative Extension Services that –

> "As an Extension professional, you have the opportunity to join professional organizations for you to interact with colleagues from

Complaint Exhibit 7 - 43

other Land Grant Universities. We coordinate membership in these organizations with Ohio State University Extension. See the email below from Debby Lewis at Ohio State detailing the procedure for joining these organizations. You will be receiving an email from Ohio State about joining these organizations.

The attached sheet gives detailed information about the organizations you can join. The Joint Council of Extension Professionals (JCEP) is the Ohio organization for Extension employees. The other organizations are national and provide professional development in your technical area of Extension. You can join JCEP, ESP and one national organization. If you are interested in joining an additional national organization, you need approval from your supervisor."

103.     It is also the policy and practice within the Cooperative Extension Service at Defendant Central State University that Extension Educators may participate in one national conference and two regional conferences for professional development and training.

104.     In furtherance of these policies and practices concerning professional association membership, professional development, and training, Defendant Central State University's supervisors, managers, and leadership utilize a Request For Travel ("RFT") process to review and approve budget expenditures for allowable costs like travel, food, and registration fees.

105.     The National Association of Community Development Extension Professionals ("NACDEP") is an organization dedicated to improving the visibility, coordination, professional status and resource base of community and economic development Extension programs and professionals. NACDEP does this by educating and recognizing Extension professionals who support successful diverse and equitable programs and expand resources to strengthen

communities. NACDEP is a member association of the Joint Council of Extension Professionals ("JCEP").

106. Plaintiff (African American male) and his colleagues, CED Extension Educator Amber Twitty (African American female) and CED Extension Educator Eric Smith (Caucasian male), were members of NACDEP in 2022, 2023, and 2024.

107. In January 2023, via Ms. Twitty's efforts, Plaintiff, Ms. Twitty, and Mr. Smith (jointly referred to herein as "Team CED") submitted two abstracts for proposed presentations they would deliver at the NACDEP 2023 Conference in Coeur d'Alene, Idaho.

108. On February 14, 2023, Team CED was notified that their abstracts were accepted for presentation at the NACDEP 2023 Conference.

109. On February 14, 2023, Team CED notified Defendant Rendleman that their abstracts were accepted for presentation at the NACDEP 2023 Conference. Defendant Rendleman did not send Plaintiff and Team CED any written communication concerning their abstracts and presentations at the NACDEP 2023 Conference.

110. On April 17, 2023, Plaintiff submitted his Request For Travel ("RFT") for the NACDEP 2023 Conference expenses to Defendant Rendleman for approval.

111. On April 17, 2023, Defendant Rendleman approved the RFT submitted by Plaintiff for the NACDEP 2023 Conference expenses.

112. Plaintiff attended the NACDEP 2023 Conference between April 29, 2023 and May 4, 2023, during which Plaintiff co-presented two workshops with Team CED (i.e. Ms. Twitty and Mr. Smith).

113.    On September 15, 2023, Defendant Rendleman informed Plaintiff and the other members of the Community & Economic Development Team that "[c]onference and training travel for Educators is restricted to one national and two regional events.  Additional at cost travel will require extraordinary circumstances and may be denied. Free online CED related training is usually acceptable with notification and as long as it doesn't become excessive."

114.    On December 8, 2023, Defendant Folck informed Plaintiff and the other staff of the Cooperative Extension Service that –

> "We are looking to maximize our budget to engage with our target audiences and carefully consider outside conferences before committing to attend. We need to focus on providing programming to the target audiences and want to make sure time is devoted to creating engaging programming as well as deliver the programs. . . . Just a reminder, professional development is limited to one national conference and two regional conferences. Other trainings may be required by your supervisor to connect you with skills and tools related to your area of work."

115.    Based upon Defendants' policies and practices and the precedent of Plaintiff's and Defendants' conduct as described above in Paragraphs 101 to 114, Plaintiff understood and had good cause to believe that his participation in a national conference like NACDEP included attending the conference, engaging with colleagues from other Land-Grant Universities via networking, social interactions, asking questions, submitting abstracts, giving presentations, making statements, and debating and discussing relevant Extension and CED-related topics.

116.    Oddly, confusingly, and contrary to the Defendants' policies and practices and the precedent of Plaintiff's and Defendants' conduct as described above in

Complaint Exhibit 7 - 46

Paragraphs 101 to 114, on January 19, 2024, Defendant Rendleman emailed the CED Team stating –

"All CED Activities intended to be initiated require my advance approval. It is imperative that I understand purpose, who's involved, target groups to be impacted, and expected results.

Requests for approval should be emailed to my attention. I will also forward my approval determination, via email.

This process goes into effect immediately.

It is important that we ensure a clear chain of communication and understanding. Also, there will be a clearly documented audit trail.

If there are any questions or concerns, contact me, as the Program Leader. I will disseminate clarifications, modifications or other additional information to the team as deemed necessary."

117.     On January 19, 2024 at 12:12 pm, Plaintiff replied to Defendant Rendleman's email seeking clarification. Plaintiff inquired, ""All CED activities" could be interpreted to include a wide range of things. Could you please clarify and provide specific examples of what you mean by "All CED activities"?"

118.     On January 19, 2024, consistent with the established policies, practices, and precedent set forth above in Paragraphs 101 to 114, concerning participation in national conferences, via Ms. Twitty's efforts, Plaintiff, Ms. Twitty, and Mr. Smith intended and endeavored to submit abstracts for proposed presentations they would deliver at the NACDEP 2024 Conference in Houston, Texas. However, given the confusing procedures set forth in Defendant Rendleman's email from earlier that day, Ms. Twitty sent an email to Defendant Rendleman at 4:57 pm requesting his approval to submit the abstracts. It was common practice for Defendant Rendleman to be passive-aggressive and to not respond or to not

Complaint Exhibit 7 - 47

respond in a timely manner to communications from CED Extension Educators, especially Plaintiff and Ms. Twitty. Consistent with his practice of being passive-aggressive and nonresponsive, Rendleman did not respond to Ms. Twitty's email dated January 19, 2024 seeking approval to submit the abstracts.

119.    On January 22, 2024 at 10:15 am, Ms. Twitty sent Rendleman a follow-up email seeking his approval to submit the abstracts for the NACDEP 2024 Conference. Ms. Twitty received notification from the email system that her email sent to Rendleman on Monday, January 22, 2024 at 10:15 am was read on Monday, January 22, 2024 at 3:19 pm. Despite this notification, Rendleman, again, did not respond to Ms. Twitty's communication.

120.    On January 23, 2024, Ms. Twitty sent Defendant Rendleman an update email concerning the extended deadline for submissions --

> "Mark,
>
> Great news the deadline for NACDEP submissions of abstracts to be considered for the national conference has been extended! We submitted our presentation abstracts for you to review in writing last week as you requested. We are now in urgent need of your approval to be able to submit. Will you be able to render a positive reply to proceed by the end of business today so that we can get our submissions in?
>
> For details of what we would like to present at the national conference, please scroll down this email stream. We look forward to receiving a positive response.
>
> Thanks Again!
>
> Amber"

121.    Rendleman did not reply to Ms. Twitty's email dated January 23, 2024 concerning the extended deadline and continued request for approval.

122.    On January 25, 2024 at 5:54 pm, Plaintiff escalated the matter to Defendant Folck (Interim Associate Administrator of Extension) and Defendant Kuti (Vice President of Research and Economic Development and Director of 1890 Land-Grant Programs) via email –

> "Below are the proposals. I'm sending this to you all because the extended deadline is tomorrow.
>
> Additionally, you all know that I have proposed leveraging technology in our Extension work since 2018/2019 when I shared the idea of the Urban Ag Blockchain Project and presented at both the OFFEA Conference and the National Black Farmers Conference. The leveraging of AI and GPT technology in Cooperative Extension Service will happen. When you look at the massive and rapid change that is happening in virtually all industries right now, it has to happen in Extension also. In addition, when you look at instructional design and the teaching methods in adult education, leveraging technology is a must. Even in Zanesville (Muskingum County/Southeast Region) where I have been teaching Ready, Set, Grow!: Agribusiness as a hybrid format with Amber Twitty, we have had 300% more attendance online than in person.
>
> Thank you."

123.    Defendants Rendleman, Folck, and Kuti did not respond to Plaintiff's email dated January 25, 2024 seeking approval to submit the abstracts.

124.    On January 26, 2024, at 11:10 pm, Ms. Twitty sent Rendleman an email informing him that the abstracts had been submitted –

> "Mark,
>
> I took the liberty to submit the three (3) abstracts that we sent you last week as the deadline is less than an hour away and we have yet to hear from you. In the event that you choose to provide a denial of our request, I will let the conference committee know that we will need to withdraw our submissions for consideration of presenting at our national conference.
>
> Thanks,
>
> Amber"

125.    On February 6, 2024 at 12:22 pm, Defendant Rendleman responded to Ms. Twitty's email dated January 26, 2024 --

"Retract the submission of the (3) proposed abstracts, they lack prior approval.  If it's, you intend to participate in the 2024 NACDEP Conference consider volunteering with setup and registration and or other event coordination activities.

I understand paving a path to the future, but we're not there yet.  Wi-Fi is still not readily available.  There are still too many folks left behind.   We must meet the people we serve where they are."

126.    On February 6, 2024 at 3:30 pm, Plaintiff responded to Defendant Rendleman's email from earlier that day at 12:22 pm –

"Mark,

I am writing this with the absolute best of intentions.  Please know that.  (I'm not as smooth as Eric with the words. lol)  I have not discussed it with Amber and Eric.  I am writing in an effort to pull us all together and to save this team.

This is only between the core, senior members of the CED Team who have been together for years.  (Obviously, there is a need for all of the CED Team to be engaged, but I wanted to start with the core and try to get us reset to a common foundation.  If we can't work through issues within our team, how can we expect to be effective in serving the community?)

On your first day on the job, Amber, Eric, and I offered and tried very hard to get you to sit down with us to bond and to show you "the lay of the land".  **This is important because your success as a Program Leader and our success as Extension Professionals are intertwined**.  If we succeed, you succeed.  If you look good, we look good.

When you joined CSUE as CED Program Leader, you inherited a strong, experienced, skillful, and innovative team of professionals who know their stuff and who are respected in the Community and Economic Development space across the State of Ohio and nationally within the Cooperative Extension System.  You inherited the strongest unit within Land-Grant.

It's like inheriting the Bulls with Jordan, Pippen, and Rodman.  Now, the leader still has to add additional players to the

Complaint Exhibit 7 - 50

roster to build the team, respect, motivate and inspire, strategize, practice, play games, win some, lose some, win the championship. Then, repeat.

One of the Essential Duties and Responsibilities in your Position Description as Program Leader is **"Provides leadership to educators, coordinators, specialists, and program assistants in delivering CED programs."**

There are differences between leadership, management, and supervision. <u>They are not the same things</u>:

- Supervision is a management activity, and supervisors have a management role in the organization.
- **Leadership is the ability to effectively and responsibly engage with people, processes, and programs, to achieve organizational, team, or individual goals.**
- Managers focus on systems, **leaders focus on people**.
- Managers do things right, **leaders do the right things**.
- Managers maintain, **leaders develop**.
- Managers rely on control, **leaders inspire trust**.
- Managers have a short-term perspective, **leaders have a longer-term perspective**.

I suggest to you that the four of us need to have the meeting that we tried to have on your first day. We can fight or we can build. I prefer to build and extend my hand to you all in that spirit of building **Team CED**.

What do you all think?

In Service,

Ambrose"

127. Defendant Rendleman did not reply to Plaintiff's email dated February 6, 2024.

128. On February 8, 2024, as alleged previously in this Amended Complaint, after working in concert with Defendants Bowman and Kuti, Defendants Folck and Rendleman conducted a "mandatory meeting" with Plaintiff wherein they gave Plaintiff a written reprimand and a purported new job description demoting

him from a Statewide Extension Educator to a Regional Extension Educator and eliminating critical aspects of the position, including but not limited to, "[a] critical aspect of this position is to strengthen the inclusion of all stakeholders, with special efforts to reach those historically underserved by Extension".

129.    On March 12, 2024, Defendant Rendleman approved Plaintiff' participation in the NACDEP 2024 Conference.  Defendant Rendleman wrote to Plaintiff, "Ambrose, You are approved for NACDEP."

130.    Because "All CED activities", as of January 19, 2024, now require Defendant Rendleman's approval, it is essential for Plaintiff and others on the CED Team (and now this Court) to know what is meant by "All CED activities".

131.    After delaying and dodging the question for nearly 3 months, on April 10, 2024, Defendant Rendleman finally answered the question, "What is a CED Activity?"  Rendleman stated that "A CED activity is a curriculum course offered by a CED Educator."

132.    Plaintiff' membership in NACDEP and participation in both the NACDEP 2023 Conference and the NACDEP 2024 Conference as permitted by Defendants' policies and practices and the precedent of Plaintiff's and Defendants' prior conduct as described above in Paragraphs 101 to 114 is not a "CED Activity" as defined by Defendant Rendleman.  Therefore, Plaintiff's membership in NACDEP and participation in both the NACDEP 2023 Conference and the NACDEP 2024 Conference as permitted by Defendants' policies and practices and the precedent of Plaintiff's and Defendants' prior conduct as described above in Paragraphs 101 to 114 did not require Defendant Rendleman's approval as described in Defendant Rendleman's email dated January 19, 2024 concerning "procedures".  In the context of the NACDEP 2024

Complaint Exhibit 7 - 52

Conference, Defendant Rendleman's approval is only required on the Request For Travel (RFT) which authorizes the allocation of budgeted funds for allowable expenses.

133. The policy, pattern, and practice, as described above in Paragraphs 101 to 114, is that Plaintiff, as an Extension Educator, could participate in one national conference and two regional conferences. Plaintiff chose to participate in the NACDEP 2024 Conference in Houston, Texas as his one national conference. To that end, Plaintiff understood and had good cause to believe that his participation in the NACDEP 2024 Conference included attending the conference, engaging with colleagues from other Land-Grant Universities via networking, social interactions, asking questions, submitting abstracts, giving presentations, making statements, and debating and discussing relevant Extension and CED-related topics.

134. Upon information and belief, on a date prior to the start of the NACDEP 2024 Conference, Defendant Rendleman "approved" for Mr. Eric Smith to submit an abstract and to present at the NACDEP 2024 Conference.

135. Mr. Smith did, in fact, present at the NACDEP 2024 Conference. Plaintiff attended Mr. Smith's presentation and supported his colleague.

136. On June 7, 2024, Plaintiff filed this lawsuit and emailed the Notice of Lawsuit, Request for Waiver of Service of Summons, and Waiver of Service of Summons to each of the individual Defendants and to Defendant Central State University's General Counsel.

137. Plaintiff traveled to and participated in the NACDEP 2024 Conference in Houston, Texas from June 16, 2024 to June 21, 2024. The NACDEP 2024 Conference was historic because it was the first time that the conference was

Complaint Exhibit 7 - 53

being hosted an HBCU ("Historically Black College or University"), to wit, Prairie View A&M University, an 1890 Land-Grant Institution.

138.    On June 17, 2024, at 8:43 a.m., while Defendant Rendleman, Plaintiff, Ms. Twitty, Mr. Smith, and the remaining Educators of the CED Team were attending the NACDEP 2024 Conference, Defendant Rendleman sent Plaintiff an email titled "Follow-up to February 8, 2024 Letter." In this email, Defendant Rendleman accused Plaintiff of failing to address concerns outlined in the February 8, 2024, written reprimand and demanded the completion of specific reporting tasks by June 20, 2024, under threat of disciplinary action, up to and including termination. The email detailed the need for engagement activity reporting, status updates on approved educational activities, and adherence to the Individual Plan of Work.

139.    Plaintiff responded on June 17, 2024, at 10:32 a.m., addressing Defendant Rendleman, and copying University General Counsel Laura Wilson and the investigator assigned to Plaintiff's internal complaints of retaliation and hostile work environment. Plaintiff highlighted that the timing of Defendant Rendleman's email appeared calculated to disrupt his participation in the conference and professional development activities. Plaintiff reiterated the ongoing retaliatory conduct and hostile work environment detailed in his federal lawsuit and objected to the arbitrary and unreasonable demands posed by Defendant Rendleman. Plaintiff also emphasized the seriousness of his allegations, including violations of his constitutional rights, and called for corrective action from the University. Plaintiff's response underscored the retaliatory motives and obstructive behavior of the Defendants, further illustrating

the need for judicial intervention. (See Exhibits 6 and 7 for Plaintiff's full response emails.)

140.     This exchange highlights the ongoing retaliatory actions and hostile work environment that Plaintiff has faced, supporting the claims of retaliation, due process violations, and the necessity for judicial intervention articulated in the Amended Complaint.

141.     On June 19, 2024, Central State University was closed for the Juneteenth Holiday.

142.     On June 19, 2024, Plaintiff delivered his poster presentation at the NACDEP 2024 Conference titled *Empowering Extension Education with Custom GPT Technology: A Case Study on "The 4-Page Business Plan"*.

143.     On Sunday, June 23, 2024, Plaintiff sent a post-conference email to Defendants Rendleman, Folck, Bowman, Kuti, Board of Trustees (via Chair Jacqueline Gamblin), Johnson, and General Counsel Laura Wilson, and Investigator Jennifer McHugh.  The following is an excerpt from that email:

Mr. Rendleman:

As you know, the 2024 NACDEP Conference was a success for Central State University's Community & Economic Development (CED) Team.

Our veterans, **Ambrose Moses III, Amber Twitty, and Eric Smith** were recognized as the 2024 Regional Winner for Cross-Program: Team for **Ready, Set, Grow! Agriculture**.  This award is for a CED Team's successful efforts collaborating with Extension professionals in other program areas, such as in our case, Agriculture and Natural Resources.



Ambrose, Amber, and Eric were also selected to present the RSG! Entrepreneur Toolkit during the conference.

**RSG! Entrepreneur Toolkit**

Community & Economic Development Extension Educator Amber Twitty BBA, Community and Economic Development Extension Educator Eric Smith MA, Community and Economic Development Extension Educator Ambrose Moses, III JD

Central State University, Wilberforce, USA

**Abstract**
The RSG! Entrepreneur Toolkit is a niche Ready, Set, Grow! training series for both new and established entrepreneurs. This 4-part curriculum is designed to help entrepreneurs assess, clarify, and strengthen their business model. Specifically, participants will learn about the business model canvas, as well as explore how better to create, deliver, and capture value. By the conclusion of the training, entrepreneurs will (1) have a business model canvas, and (2) have identified the next steps to launch or grow their business.

Amber was selected to deliver an engaging presentation on **Reach, Teach & Engage: Effective Outreach Strategies for BIPOC and Underserved Populations**.



**Reach, Teach & Engage:  Effective Outreach Strategies for BIPOC and Underserved Populations**
Community and Economic Development Extension Educator Amber Twitty BBA

Central State University, Wilberforce, USA

**Abstract**
How can we, as extension educators, researchers, and community partners better engage the BIPOC and underserved communities?

Amber also represents Central State University Cooperative Extension well on a number of committees, including Co-Chair of the DEI Committee.

## NACDEP COMMITTEE CHAIRS


DEI Co-Chair
**Amber Twitty**


2024 Conference Chair
Southern Region Rep Elect
**Natriez "Nate" Peterson**


DEI Co-Chair
**Jose "Lupe" Vattierra**


2024 Conference Co-Chair
CED Program Leader
**Jimmy Henry**

Eric was selected to deliver an interactive presentation on **The ABCDs of Inside-Out Change: How Some Communities are Leading from the Emerging Future, and How Yours Can Too**.



**The ABCDs of Inside-Out Change: How Some Communities are Leading from the Emerging Future, and How Yours Can Too**
Eric Smith MA, Dr. Hunter Goodman PhD

Central State University Extension, Wilberforce, USA. University of Arkansas System, Little Rock, USA

**Abstract**
Asset-Based Community Development (ABCD) is a transformative approach that shifts the focus from community deficits to strengths. By identifying and leveraging local assets—skills, talents, and resources—ABCD fosters self-reliance and empowers communities. This method encourages residents to take an active role in shaping their futures, promoting a sense of ownership and pride. ABCD not only enhances social cohesion but also cultivates sustainable solutions as it builds upon existing community capacities. This approach fosters resilience and adaptability, creating a foundation for positive change. Learn how Extension is piloting this approach in Ohio and Arkansas.

Complaint Exhibit 7 - 57

Ambrose was selected to share a poster presentation of his work concerning utilization of rapidly developing artificial intelligence (AI) and **Custom GPT Technology** as an empowering tool within the Cooperative Extension Education space.



**Empowering Extension Education with Custom GPT Technology: A Case Study on The 4-Page Business Plan**
Community and Economic Development Extension Educator Ambrose Moses, III JD

Central State University, Wilberforce, USA

**Abstract**
This proposal introduces a groundbreaking methodology for Cooperative Extension Service education, centered around the development and utilization of custom GPT (Generative Pre-trained Transformer) technology. The aim is to demonstrate how this AI-powered approach can significantly enhance the educational and advisory services provided by Extension Educators.

As evidenced by the award, compliments, and requests for future engagements from our colleagues across the nation, we are respected, knowledgeable, and professional servant leaders in the Cooperative Extension and CED spaces. We were prepared and made an impressive showing on behalf of Central State University and its Cooperative Extension Service. You can verify this by asking the NACDEP President Dr. Michelle Eley, Dr. Michael Wilcox, and our colleagues from The Ohio State University who were present, also received awards and recognition, and joined us for dinner during States' Night Out.

144.	On Tuesday, June 25, 2024, at 5:56 a.m., Defendant CSU's Assistant Director of Human Resources, Shau'De Knight, sent an email to Plaintiff, with the subject "HR Meeting", stating --

**From:** Shau'De Knight <sknight@centralstate.edu>
**Sent:** Tuesday, June 25, 2024 5:56 AM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Subject:** HR Meeting

Good Morning Mr. Moses,

I hope this email finds you well.

I am reaching out to set up a meeting with you regarding a situation that was brought to my attention recently.

I will send you a meeting invite for today at 10:00am. Please accept the invitation so that we can discuss this important matter.

Thank you,

Dr. Shau'De Knight
Assistant Director of Human Resources
**Central State University**
1400 Brush Row Rd. | Wilberforce, OH 45384
O: (937) 376-6545 | F: (937) 376-6245
sknight@centralstate.edu | CentralState.edu

Get Outlook for iOS

145.	Plaintiff responded as follows:

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Tuesday, June 25, 2024 7:48 AM
**To:** Shau'De Knight <sknight@centralstate.edu>
**Subject:** Re: HR Meeting

Good morning, Ms. Knight:

To help me prepare, could you please tell me the nature of the situation you would like to discuss?  Thank you.

Sincerely,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

amoses@CentralState.edu | www.CentralState.edu/csuextension

146.	Dr. Knight replied:

**From:** Shau'De Knight <sknight@centralstate.edu>
**Sent:** Tuesday, June 25, 2024 8:21 AM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Subject:** Re: HR Meeting

Good Morning Mr. Moses,

Absolutely!

The conversation is about the 2024 NACDEP Conference you attended last week and the Ready, Set, Grow initiative.

Thank you,

Dr. Shau'De Knight
Assistant Director of Human Resources
**Central State University**
1400 Brush Row Rd. | Wilberforce, OH 45384
O: (937) 376-6545 | F: (937) 376-6245
sknight@centralstate.edu | CentralState.edu

7

147.     Defendant CSU's Assistant Director of Human Resources, Dr. Knight, denied Plaintiff due process and did not inform Plaintiff that he was being accused of violating a University policy nor did Dr. Knight provide Plaintiff with a copy of the allegations, if any, against him.  Dr. Knight's reference to "the Ready, Set, Grow Initiative" was understood by Plaintiff to be a reference to "Ready, Set, Grow!: Agriculture", the name of the program for which Plaintiff, Ms. Twitty, and Mr. Smith ("Team CED") received an award at the NACDEP 2024 Conference.

## CAUSES OF ACTION

### COUNT I:
### VIOLATION OF FIRST AMENDMENT RIGHTS
### UNDER 42 U.S.C. § 1983
### RETALIATION FOR PROTECTED SPEECH AND ACTIVITIES

148.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

149.     Plaintiff Ambrose Moses III engaged in constitutionally protected speech and activities, including but not limited to: a. Advocating for diversity, inclusion, and addressing systemic issues within Central State University's Cooperative Extension Service; b. Promoting intentionality in the recruitment of African Americans into the Cooperative Extension Service; c. Advocating for a comprehensive needs assessment to identify and quantify the needs of underserved communities, particularly African American communities across Ohio; d. Leveraging innovative technology to expand the reach and impact of Cooperative Extension Services; e. Reporting noncompliance with state and federal laws, including whistleblower reports filed under R.C. § 124.341.

150.     Plaintiff's protected First Amendment speech and activities addressed matters of public concern, including but not limited to, the effective functioning of

Complaint Exhibit 7 - 60

the University's Cooperative Extension Service, the fulfillment of its mission as an 1890 Land-Grant Institution (including but not limited to the completion of proper needs assessments), compliance with state and federal laws, and addressing racism as a public health crisis.

151. In response to Plaintiff's protected speech and activities, Defendants, acting under color of state law, took adverse actions against Plaintiff, including but not limited to: a. Reducing Plaintiff's job responsibilities and demoting his position; b. Imposing unlawful residency requirements on Plaintiff; c. Issuing a written reprimand to Plaintiff based on false allegations of insubordination; d. Creating and maintaining a hostile work environment that marginalized Plaintiff, excluded him from important discussions, and characterized his legitimate professional activities as disruptive.

152. Defendants' adverse actions were substantially motivated by Plaintiff's protected speech and activities, as evidenced by the temporal proximity between Plaintiff's advocacy efforts and the retaliatory conduct, as well as the pattern of targeting Plaintiff for his protected expression.

153. By retaliating against Plaintiff for his protected speech and activities, Defendants violated Plaintiff's rights under the First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

154. Defendants' retaliatory actions have caused and continue to cause significant harm to Plaintiff, including emotional distress, humiliation, loss of professional reputation, and other damages.

155. As a direct and proximate result of Defendants' unconstitutional retaliation and actions, Plaintiff has suffered and continues to suffer irreparable injury,

Complaint Exhibit 7 - 61

including but not limited to, emotional distress, humiliation, loss of professional reputation, and other damages for which there is no adequate remedy at law.

156.  Plaintiff is entitled to declaratory relief, injunctive relief enjoining Defendants from further retaliatory actions, compensatory damages, punitive damages to deter future unconstitutional conduct, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT II:**
**VIOLATION OF FOURTEENTH AMENDMENT**
**DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983**
**DENIAL OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS**

157.  Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

158.  Plaintiff Ambrose Moses III had a protected property interest in his continued employment with Central State University, as well as a protected liberty interest in his professional reputation and ability to pursue his chosen career.

159.  Defendants, acting under color of state law, deprived Plaintiff of his protected property interests and liberty interests without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. Specifically, but not limited to, Defendants: a) Reduced Plaintiff's job responsibilities and demoted him without providing fair notice, an opportunity to be heard, or following established University policies and procedures; b) Failed to process Plaintiff's formal complaints and grievances according to University policies, instead unilaterally referring them to an external investigator with an attorney-client relationship with the University, denying Plaintiff access to a fair, transparent, and impartial investigation; c) Removed key aspects of Plaintiff's job description, including his role as an EDEN Delegate, a member of the EDEN

Advisory Group, and serving communities historically underserved by Extension, without proper justification or due process, negatively impacting his professional duties and contributions; and d) Defendants Rendleman (Program Leader), Folck (Interim Associate Administrator of Extension), Bowman (Director of Human Resources), and Kuti (Director of Land-Grant and Vice President of Research and Economic Development) engaged in coordinated and concerted retaliatory, adverse, and hostile work environment actions that tainted the established policies and procedures for addressing employee complaints and grievances.

160.     Defendants' actions were arbitrary, capricious, and not rationally related to any legitimate governmental interest, violating Plaintiff's right to substantive due process.

161.     As a direct and proximate result of Defendants' violation of Plaintiff's procedural and substantive due process rights, Plaintiff has suffered and continues to suffer emotional distress, humiliation, loss of professional reputation, and other damages.

162.     Plaintiff is entitled to declaratory relief, injunctive relief requiring Defendants to comply with due process requirements, compensatory damages, punitive damages to deter future constitutional violations, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT III:**
**VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS**
**UNDER 42 U.S.C. § 1983**
**MAINTENANCE OF A HOSTILE WORK ENVIRONMENT**

163.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

164.     Defendants, acting under color of state law, created and maintained a hostile work environment that violated Plaintiff's rights under the First and

Fourteenth Amendments to the United States Constitution. Defendants' actions included, but were not limited to: a. Marginalizing Plaintiff and excluding him from important discussions related to his job duties and professional responsibilities; b. Characterizing Plaintiff's legitimate professional activities and protected speech as disruptive, disrespectful, or insubordinate; c. Subjecting Plaintiff to unwarranted disciplinary actions, such as the issuance of a written reprimand based on false allegations of insubordination; d. Repeatedly denying Plaintiff's requests to attend professional development opportunities and engage in community outreach activities.

165.     Defendants' actions were sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

166.     The hostile work environment created by Defendants was retaliatory in nature and designed to punish Plaintiff for his protected speech and activities, in violation of the First Amendment.

167.     Defendants' maintenance of a hostile work environment also deprived Plaintiff of his protected property and liberty interests without due process of law, in violation of the Fourteenth Amendment.

168.     As a direct and proximate result of Defendants' creation and maintenance of a hostile work environment in violation of Plaintiff's First and Fourteenth Amendment rights, Plaintiff has suffered and continues to suffer emotional distress, humiliation, loss of professional reputation, and other damages.

169.     Plaintiff is entitled to declaratory relief, injunctive relief requiring Defendants to cease their unconstitutional conduct and take steps to prevent future violations, compensatory damages, punitive damages to deter future

Complaint Exhibit 7 - 64

constitutional violations, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Ambrose Moses III respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and grant the following relief:

A. Declaratory Relief:

a. A declaration that Defendants' actions, as described herein, violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

b. A declaration that Defendants' actions, as described herein, violated 42 U.S.C. § 1983 by depriving Plaintiff of his constitutional rights under color of state law.

B. Injunctive Relief:

1. A preliminary and permanent injunction enjoining Defendants, their agents, employees, and all persons acting in concert with them, from engaging in any further retaliation against Plaintiff for his protected speech and activities;

2. An order requiring Defendants to reinstate Plaintiff to his previous position as a Statewide Extension Educator or an equivalent position, with all associated rights, benefits, and privileges;

3. An order requiring Defendants to remove any negative or retaliatory materials from Plaintiff's personnel file, including, but not limited to, the written reprimand, the finding of Policy 608 violation, and the one-week suspension;

4.      An order requiring Defendants to provide written notification to all employees of Central State University's Cooperative Extension Service, stating that Defendants' actions violated Plaintiff's constitutional rights and affirming Plaintiff's right to engage in protected speech and activities without fear of retaliation.

C. Compensatory Damages:

1.      An award of compensatory damages against Defendants in their individual capacities, jointly and severally, in an amount to be determined at trial, for the emotional distress, humiliation, loss of professional reputation, loss of income, and other damages suffered by Plaintiff as a result of Defendants' unconstitutional actions.

D. Punitive Damages:

1.      An award of punitive damages against Defendants in their individual capacities, jointly and severally, in an amount to be determined at trial, to punish Defendants for their willful, malicious, and reckless disregard for Plaintiff's constitutional rights and to deter similar misconduct in the future.

E. Costs and Attorney's Fees:

1.      An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, incurred in bringing this action to vindicate Plaintiff's constitutional rights.

F. Pre- and Post-Judgment Interest:

1.      An award of pre-judgment and post-judgment interest on all monetary awards, to the fullest extent permitted by law.

G. Retention of Jurisdiction:

    1.    An order retaining jurisdiction over this matter to ensure Defendants' compliance with the Court's orders and to provide any additional relief that may be necessary and appropriate.

H. Any other relief the Court deems just, proper, and equitable.

Dated this 16TH day of July, 2024

**s/ Ambrose Moses III**

**Ambrose Moses III   (0055231)**
Attorney at Law
1900 Polaris Parkway, Suite 450-017
Columbus, Ohio 43240
(614) 418-7898
info@MosesLaw.pro

Plaintiff *Pro Se*

**JURY DEMAND**

Plaintiff Ambrose Moses III hereby demands a trial by jury on all issues so triable.

**s/ Ambrose Moses III**

**Ambrose Moses III   (0055231)**

**CERTIFICATE OF SERVICE**

This will certify that the foregoing Amended Complaint was filed electronically on July 15, 2024.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**s/ Ambrose Moses III**

**Ambrose Moses III   (0055231)**

Complaint Exhibit 7 - 67

Case: 2:24-cv-00335-MLN-EPD Doc #: 11-4 Filed: 07/15/24 Page 1 of 33 PAGEID #: 252



**EXHIBIT 1**

## Request for Assistance of Director of Land-Grant

Ambrose Moses III <amoses@centralstate.edu>

Mon 4/29/2024 5:11 PM

To:Morakinyo Kuti <mkuti@centralstate.edu>

Good afternoon, Dr. Kuti:

Can I get your assistance with an important matter?

On September 1, 2022, Eric Smith, Amber Twitty, and I met with you to talk about CED. During the meeting we talked about outreach, among a number of other topics. We shared with you some of the challenges we faced where certain individuals in management were preventing us from doing our jobs by restricting our ability to talk, meet, and engage with the community in building relationships, and developing opportunities to deliver our cooperative extension program activities.

You shared that you believe in people having the necessary resources and tools to do their jobs. To that end, you gave us the directive "You guys do all the options that you need to do. . . . That's your job."

Similarly, in a different meeting, other staff have shared with me how, in response to their requests for you to assist them in addressing management's efforts to restrict them from distributing helpful information to staff members, you directed that all information should be shared without any preconditions.

Well, we are once again in a situation where management is impeding our ability to do our job. This has gone on for several months and has now gotten to the point where I am being denied the opportunity to effectively do my job.

On February 2, 2024, Mark Rendleman, CED Program Leader, informed the CED Team about the Growing Equity Partnership Grant and identified it as a priority project for the CED Team. I immediately began to diligently pursue implementation of the project.

The problem is that Mr. Rendleman requires that we get his direct, written approval before engaging in **<u>any</u>** "outreach", "outreach efforts", or "CED activity". This has created a bottleneck as he will go for days, weeks, and even months without giving his approval or disapproval. Without his direct, written approval I am unable to effectively do my job.

I am asking your assistance and guidance because if I follow your September 1, 2022 directive of "You guys do all the options that you need to do. . . . That's your job", Mr. Rendleman and Dr. Alcinda Folck are likely to penalize me.

Here is my most recent communication with Mr. Rendleman that includes the relevant factual background:

**TO:** Mark Rendleman, CED Program Leader

**FROM:** Ambrose Moses III, Esq, Extension Educator, SW Region (Franklin County)

**Date:** April 28, 2024

**RE:  Proposal for New Farmer Business Education**
(A program implementation and delivery utilizing the Growing Equity Partnership Grant)

---

**Relevant Background re: Implementation of the Growing Equity Partnership Grant**

**February 2, 2024** – Rendleman canceled Weekly One-on-One Meeting with Moses.

Complaint Exhibit 7 - 68

**February 2, 2024**, the Rendleman as CED Program Leader issued a directive to the CED Team to implement the Growing Equity Partnership Grant that was recently awarded.

Moses, as a Statewide Extension Educator, was assigned to provide coverage for "Greater Columbus area & SE Region"

The following timetable was given for implementation:

- Commence your coordination with me, identifying proposed partners by **Friday, February 9, 2024**.
- Commence coordination to determine locations for education efforts by **Friday, March 1, 2024**.
- Determine dates for education efforts considering scheduled calendar events.
- Conduct recruiting of attendees and report back to Program Leader by **Friday, March 22, 2024**.

**February 2, 2024** – Moses began reviewing and researching the assigned project. Moses prepared a Proposed Partner Plan for the Greater Columbus Area and the Southeast Region and commenced his coordination with Rendleman via email. Moses proposed 4 partners for the Greater Columbus Area. Moses proposed engaging with other CSU Extension colleagues in the Southeast Region to identify potential partners in that region. Moses received no timely reply from Rendleman.

**February 6, 2024** – After conducting additional research and analysis of the project, Moses submitted an updated Proposed Partner Plan for the Greater Columbus Area and the Southeast Region. Moses asked Rendleman several preliminary questions concerning the project. Rendleman did not answer Moses' questions. Moses again proposed 4 partners for the Greater Columbus Area. Moses proposed 2 partners for the Southeast Region in addition to engaging with other CSU Extension colleagues in the Southeast Region to identify potential partners in that region. Moses also asked if there is anything else that Rendleman required by the Friday, February 9, 2024 deadline. Moses received no timely reply from Rendleman.

**February 6, 2024** – Rendleman canceled Weekly One-on-One Meeting with Moses. This would have been an opportunity to discuss the Growing Equity Partnership Grant and approval of Moses' Proposed Partner Plan.

**March 12, 2024** – Rendleman emailed and requested that Moses resend him the February 6, 2024 email with the Proposed Partner Plan for the Greater Columbus Area and the Southeast Region, "During our One-on-One discussion today, you referenced that you forwarded your proposal for the Growing Equity Partnership Grant to me in an email dated February 6, 2024. Please resend that email for my review. I am ready to review it and make my final determination."

**March 12, 2024** -- Moses resent the February 6, 2024 email to Rendleman as requested.

**March 12, 2024** – After receiving the February 6, 2024 email again, Rendleman responded, "The funding through this grant is limited as I explained during our discussion today. The coverage for our related programing opportunities is divided throughout most of our regions in the state of Ohio. Ideally, and especially as a part of this first round of funding I would prefer that you reduce your number of proposed stakeholder organizations and others. No more than three curriculum offerings are preferred from each educator. There will be additional offerings throughout the course of the year and beyond.

Please revise your offering accordingly."

**March 15, 2024** – Moses revised and submitted an Updated Proposed Partner Plan for the Greater Columbus Area and the Southeast Region. This plan reduced the proposed number of partners from 4

Complaint Exhibit 7 - 69

5/28/24, 10:45 PM                    Request Assistance of Director - Jonathan Grant - Angese Moses II - Outlook

to 2 in the Columbus Area.  This plan proposed working with the ANR Educator in the Southeast Region to connect with producers and food business owners as a way to build upon the RSG!: Agribusiness series that Moses had just completed in that region.  The plan also proposed three curriculums: Ready, Set, Grow! (RSG!: Entrepreneur Toolkit), Agribusiness Series curated by Eric Smith, and Money Smart for Small Business. Moses received no timely reply from Rendleman.

**March 15, 2024** – Rendleman canceled Weekly One-on-One Meeting with Moses.  This would have been an opportunity to discuss the Growing Equity Partnership Grant and approval of Moses' Proposed Partner Plan.

**March 22, 2024** – Rendleman canceled Weekly One-on-One Meeting with Moses.  This would have been an opportunity to discuss the Growing Equity Partnership Grant and approval of Moses' Proposed Partner Plan.

**March 29, 2024** – Rendleman canceled Weekly One-on-One Meeting with Moses.  This would have been an opportunity to discuss the Growing Equity Partnership Grant and approval of Moses' Proposed Partner Plan.

**April 4, 2024** – Rendleman emailed the CED Team requesting "I need each of you to send to my attention the scope of your intentions (Stakeholder Engagements / Dates / Times / Locations / Attendee Expectations) regarding participation with the Growing Equity Partnership Grant.  We will be using the New Farmer Education Curriculums refined by Eric Smith and Stephen Washington.  A timeline was previously established for these requests, and those timelines remain in effect.  Time is of the essence."

**April 4, 2024** – Moses emailed Rendleman requesting guidance and clarification.  Moses received no timely reply from Rendleman concerning his requests.

**April 4, 2024** – Per Rendleman's April 4th request to the CED Team, Moses emailed Rendleman, "In addition to the email I sent a few moments ago, I have attached hereto and below the most recent documentation/information I have concerning the Growing Equity Partnership Grant.  Again, to date, I am awaiting approval and clarification from you.  Thank you."

**April 5, 2024** – Rendleman canceled Weekly One-on-One Meeting with Moses.  This would have been an opportunity to discuss the Growing Equity Partnership Grant and approval of Moses' Proposed Partner Plan.

**April 10, 2024** – Moses emailed Rendleman, "Just following up with you, again, concerning my requests for approval and clarification concerning the Growing Equity Partnership Grant.  Please advise."

**April 10, 2024** – Rendleman replied to Moses, "The curriculum is already defined for this Growing Equity Partnership education effort.  Coordinate with Eric and Stephen to access that curriculum.  No curriculum deviations will be approved.

Focus your outreach efforts on the Franklin County, Ohio space.  We will capture the Southeast Region later.

I still need locations, dates, and times to be disclosed to me.

Forward the requested documentation and a final approval decision will be made."

Complaint Exhibit 7 - 70

**PROJECT CHANGE -** Rendleman's first notification that he changed the territorial coverage area assigned to Moses. This was the first notification that Rendleman gave to Moses that the coverage area assigned on February 2, 2024 had been changed from the "Greater Columbus Area and the Southeast Region" to "Franklin County, Ohio".

**PROJECT CHANGE -** Rendleman's statement that he "still" needed locations, dates, and times to be disclosed to him was false, and at best, disengenuous because Moses had submitted Proposed Partner Plans to Rendleman on February 2nd, February 6th, and March 15th. Between March 15, 2024 and April 10, 2024, Rendleman, while in possession of Moses' March 15th Proposed Partner Plan, canceled four (4) one-on-one meetings with Moses and did not reschedule them. This would have been an opportunity to discuss the Growing Equity Partnership Grant and Rendleman's approval of Moses' Proposed Partner Plan, and more. Thus, to say that he "still" needs locations, dates, and times to be disclosed to him is disengenuous. Rendleman requires direct approval, in writing, of all outreach efforts and CED activity.

**April 11, 2024** – Moses responded to Rendleman's April 10th email by providing context and requesting clarification.

**April 12, 2024** – Rendleman canceled Weekly One-on-One Meeting with Moses. This would have been an opportunity to discuss the Growing Equity Partnership Grant and approval of Moses' Proposed Partner Plan.

**April 15, 2024** – Rendleman emailed Moses, "I need you to revise your proposal for the Growing Equity Partnership Grant. I have requested some modifications. Forward your adjustments so that I can consider approval. Time is of the essence."

**April 15, 2024** – Moses replied to Rendleman, "I submitted a revised Proposed Partner Plan to you on March 15, 2024 and have not received a response from you concerning the same.

There are also other requests for clarification in my email dated April 11, 2024 that you have not answered. Thank you."

**April 18, 2024** – Rendleman canceled Weekly One-on-One Meeting with Moses. This would have been an opportunity to discuss the Growing Equity Partnership Grant and approval of Moses' Proposed Partner Plan.

**April 24, 2024** – Rendleman replied to Moses' email dated April 4, 2024. "Ambrose, The scope of territorial coverage for you regarding the Growing Equity Partnership Grant has been redefined to focus on Franklin County.

Refer to the email from me to you dated, April 10, 2024. In that email I stated, "Focus your outreach efforts on the Franklin County, Ohio space. We will capture the Southeast Region later."

Forward your modified proposal to my attention so that we can get you started. I'm prepared to review that proposal and if it lines up with the defined scope, approval will be provided.

Submit your revised Growing Equity Partnership proposal, based on coverage in Franklin county.

Your proposal should at a minimum include:

- Identify you proposed partner(s) in Franklin County, Ohio.
- Your location(s) for education efforts.
- Your date(s) for education efforts.

Case: 2:24-cv-00336-MLN-FBM-Doc #: 1-14 Filed 00/75/34 2:05:5 PAGE ID #: 256

- Evidence that you are conducting recruiting effort for attendees.

***I need this information submitted to my attention by Friday, May 3, 2024.**"

**PROJECT CHANGE**-This was Rendleman's first notification that he changed the structure of the implementation plan to require a "Growing Equity Partnership proposal"**.**  This was the first notification that Rendleman gave to Moses that he now wanted a "Growing Equity Partnership proposal".  To date, Rendleman has not approved the Proposed Partner Plan submitted by Moses.

Approved partners are required before one can determine and coordinate locations and dates of the group instruction and individual instruction extension education activities.

**PROJECT CHANGE**-This was Rendleman's first notification that he changed the deliverables to include the requirement that Moses provide "evidence that you are conducting recruiting effort for attendees." How is an extension educator supposed to effectively recruit attendees for  program activity sessions that Rendleman has not approved, dates and locations that Rendleman has not approved, and with partners that Rendleman has not approved?

Rendleman's requests and requirements are contradictory and unclear.  What is the current scope of the project?  What is the current timetable of the project?  Is prior approval from Rendleman required or not?  If so, what is Rendleman approving?

**April 28, 2024** – Below is Moses' "Growing Equity Partnership Proposal" (incorporating therein the Updated Proposed Partner Plan originally submitted on February 2, 2024).

**Executive Summary:**

**New Farmer Business Education** is a targeted extension education initiative designed to empower agricultural entrepreneurs in Franklin County with the necessary tools to start and sustain successful urban agriculture businesses. This program will be implemented and delivered utilizing the **Growing Equity Partnership Grant**.  The implementation and delivery of this program also involves the collaboration with key local partners, ensuring it is deeply integrated with community needs and strengths.

**Project Overview:**

- **Project Name:** New Farmer Business Education
- **Location:** Franklin County, Ohio
- **Format:**  Virtual and/or In-Person
- **Sessions:** 6 sessions, beginning in May 6, 2024
- **Lead Presenter:** Ambrose Moses III

**Objectives:**

1. Provide actionable education tailored to the nuances of urban agricultural business.
2. Foster a supportive network among urban agricultural entrepreneurs.
3. Enhance the economic impact of urban agriculture through improved business practices.

**Session Details:**

Complaint Exhibit 7 - 72

1. **Business Mission Vision Values** - Equip entrepreneurs to define and articulate their business's core principles.

2. **Business Structures** - Guide choices on the appropriate legal structure for stability and growth.

3. **Business Planning** - Facilitate strategic planning for sustainability and profitability.

4. **Business Marketing** - Develop skills for effective marketing and customer engagement.

5. **Business Records and Financials** - Teach financial literacy and management for business health.

6. **Business Operations and Resources** - Optimize operational efficiency and resource utilization.

**Proposed Partners and Community Involvement:**

The three (3) core proposed partners will be the Urban Farmers Coalition, Ohio Ecological Food and Farm Association (OEFFA), and We Grow NES.  This proposed collaboration of partners leverages community resources for comprehensive support, including venue selection, participant recruitment, and widespread promotional efforts.

**Location(s) of Extension Education Activities:**

The extension education activities, e.g. group and/or individual instruction, can be delivered in-person or via an online platform like Microsoft Teams or Zoom.  The project partners will help determine which delivery format is better for their constituents.  Moses is able to facilitate both in-person and/or online.

**Dates of Extension Education Activities:**

Moses has tentatively selected May 6, 2024 as a beginning date.  However, Rendleman has not yet approved the proposed partners from February 2nd, February 6th, March 15th, or April 28th.  As a result, it is difficult to coordinate dates with proposed partners when they have not yet been approved to be actual partners on the project.  Once partners are approved, there will be a need for a reasonable time to schedule and promote the program activities.

**Recruitment of Participants for the Program:**

Moses has engaged with the Urban Farmers Coalition, OEFFA, and We Grow NES and discussed the program as a helpful resource to their members constituents.  Since Rendleman has not provided pre-approval to Moses for the 1) Proposed Partners, 2) Location(s), or 3) dates and times, Moses has refrained from promising or building program delivery expectations with the proposed partners or their constituents.

**Expected Outcomes:**

- Participants will acquire essential knowledge and skills in urban agribusiness.
- Establishment and growth of sustainable urban agriculture enterprises.
- Strengthened community ties and economic development within the urban agriculture sector.

**Budget and Funding:**

Complaint Exhibit 7 - 73

Case: 2:24-cv-00336-MLN-BMS Doc #: 1-14 Filed: 00/15/24 Page: 7 of 8 PAGEID #: 258

Details to be provided upon confirmation of partner contributions and grant allocations, ensuring all resources are appropriately leveraged to maximize program impact.

**Conclusion:**

The New Farmer Business Education series is poised to make a significant impact in Franklin County, embodying Central State University's mission of fostering community growth through strategic education and collaboration. Your approval and support are crucial for moving this promising initiative forward.

**Program Implementation and Delivery Schedule:**

| Cultivate: An Urban Ag Startup & Success Series | | | | | |
|---|---|---|---|---|---|
| **Business Technical Assistance (BTA)** | | | **New Farmer Business Education - Cohort 1 (2024)** Location: Columbus (Franklin County) | | |
| **Session** | **Topic** | **Description** | **Lead Presenter** | **Date** | **Time** |
| 1 | **Business Mission Vision Values** | Define core values, mission, and vision for business clarity. | Ambrose | 5/6/2024 | 12 p – 1:30 p |
| 2 | **Business Structures** | Explore legal frameworks and structures for business formation. | Ambrose | TBD | 12 p – 1:30 p |
| 3 | **Business Planning** | Strategic planning for sustainable business growth and success. | Ambrose | TBD | 12 p – 1:30 p |
| 4 | **Business Marketing** | Effective marketing strategies to boost business visibility and sales. | Ambrose | TBD | 12 p – 1:30 p |
| 5 | **Business Records and Financials** | Manage essential financial records and understand financial statements. | Ambrose | TBD | 12 p – 1:30 p |
| 6 | **Business Operations and Resources** | Optimize business operations and effectively utilize resources. | Ambrose | TBD | 12 p – 1:30 p |
| | | | | *As of 04/24/24 @ 8:00 PM* | |

Complaint Exhibit 7 - 74

**Virtual Training Sessions:** Via Microsoft Teams

             and/or

**In-Person Training Sessions:**  at TBD


Your assistance is greatly appreciated.  Thank you.


Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

Complaint Exhibit 7 - 75



**EXHIBIT 2**

**Report**

November 27, 2019

**TO:**

**Supervisor:** Anthony Barwick (abarwick@centralstate.edu)
**Appointing Authority:** Board of Trustees c/o Mark Hatcher, Esq. (mhatcher@bakerlaw.com) and Larry Macon Jr., Esq. (copastor@mtzionoakwood.org)
President: Dr. Cynthia Jackson-Hammond (chammond@centralstate.edu)
Dean: Dr. Alton Johnson (ajohnson@centralstate.edu)
Associate Director of Extension: Anthony Barwick (abarwick@centralstate.edu)
General Counsel: Laura Wilson, Esq. (lwilson@centralstate.edu)
Human Resources: Tonya Turner (tturner@centralstate.edu)
Central State University
1400 Brush Row Road
P. O. Box 1004
Wilberforce, OH 45384-1004

**FROM:**

Ambrose Moses III, Esq.(amoses@centralstate.edu)
Cuyahoga County Educator
Central State University Extension
12200 Fairhill Road, E-Building
Cleveland, OH 44120

**RE:**  Noncompliance with State and Federal Law:
Residency Requirements Prohibited in Ohio and Could have Racially Discriminatory Disparate Impact Upon African-Americans

I hereby submit and otherwise file this written report pursuant to R.C. §124.341.

On November 6, 2019, I, as a Central State University employee, received a notification about job postings, including, but not limited to, for Regional Extension Associate. There are four (4) Regional Extension Associate positions posted. As of November 26, 2019, each of the Regional Extension Associate job postings contains a residency requirment that is prohibited by Ohio law.

Specifically, each of the Regional Extension Associate positions **contains a residency requirement** as a minimum qualification that is prohibited by Ohio statutory law and Ohio Supreme Court case law:

> **Position:** Regional Extension Associate-Southwest
> **Minimum Qualifications:** "• Upon hire must reside in the Southwest Region."
> **Job Summary:** "Southwest Region includes the following Counties: Adams Brown, Butler, Clermont, Clinton, Darke, Fayette, Franklin, Greene, Hamilton, Highland, Miami, Mercer, Montgomery Pickaway, Preble, Ross, Shelby and Warren."

> **Position:** Regional Extension Associate-Southeast
> **Minimum Qualifications:** "• Upon hire must reside in the Southeast Region."
> **Job Summary:** "Southeast Region includes the following Counties: Athens, Belmont, Gallia, Guernsey, Jackson, Lawrence, Meigs, Monroe, Morgan, Muskingum, Noble, Perry, Pike, Scioto, Washington, and Vinton."

> **Position:** Regional Extension Associate, Northwest
> **Minimum Qualifications:** "• Upon hire must reside in the Northwest Region."
> **Job Summary:** "Northwest Region includes the following Counties: Crawford, Hardin, Lucas, Marion, Wood, Wyandot, Allen, and Auglaize"

> **Position:** Regional Extension Associate, Northeast
> **Minimum Qualifications:** "• Upon hire must reside in the Northeast Region."
> **Job Summary:** "Northeast Region includes the following Counties: Ashtabula, Carroll, Columbiana, Cuyahoga, Geauga, Harrison, Jefferson, Lake, Mahoning, Portage, Stark, Trumbull, Tuscarawas,"

Ohio law prohibits the imposition of Residency Requirements upon higher education employees and certain other employees.

- R.C. §9.481 Residency requirements prohibited for certain employees.
- R.C. §124.70 No residency requirement for higher education employees.
- The Ohio Supreme Court, in <u>Lima v State</u>, 2009-Ohio-2597, held that a state law *prohibiting* general residency requirements for public employees is valid and supersedes local laws to the contrary.

According to the Ohio Development Services Agency, in Ohio, "nearly four out of every ten African Americans in the state live in the cities of Cincinnati, Cleveland, or Columbus." The impact of the residency requirement could also disproportionately eliminate African American Ohio residents from competing for a majority of the restricted positions, in violation of state and federal civil rights laws.

Respectfully submitted,

Ambrose Moses III, Esq
Cuyahoga County Educator
Central State University Extension

- Page2

Complaint Exhibit 7 - 77

# Regional Extension Associate-Southwest

## Posting Details

Posting Details

| | |
|---|---|
| **Posting Number** | 0800973 |
| **Classification Title** | Regional Extension Associate-Southwest |
| **Working Title** | |
| **Department** | 1890 Land Grant Extension |
| **Job Summary/Basic Function** | Southwest Region includes the following Counties: Adams Brown, Butler, Clermont, Clinton, Darke, Fayette, Franklin, Greene, Hamilton, Highland, Miami, Mercer, Montgomery Pickaway, Preble, Ross, Shelby and Warren.<br>Job Summary:<br>The Regional Extension Associate will lead an effective work team of CSU Extension educators in the assigned region to deliver high quality educational programs designed to meet the needs across the region. This position will assist in hiring training and supporting the regional team. The Regional Extension Associate will report to the Operations and Program Manager.<br>Essential Duties and Responsibilities:<br>• Must reside in the region of assignment.<br>• Work with Program Leaders to manage day to day activities of program staff with in the region.<br>• Oversee implementation and evaluation of all programming in assigned multi-county region.<br>• Oversee professional development of regional team, ensuring the team has the resources and expertise needed to effectively carry out their job duties.<br>• Oversee and coordinate the development and implementation of partner level agreements in the region.<br>• Analyze programmatic data and financial information to determine ways to better focus resources for effectively and efficiently reaching the regional communities and residents<br>• Manage and monitor data and budget for projects and programs.<br>Program Development and Implementation<br>• Develop strategies and facilitate the regional implementation of train-the-trainer and or programming opportunities for regional organizations.<br>• Conduct programming in area of expertise delivering evidence-based programs in a community setting.<br>• Maintain a sound understanding of and familiarity with the key regional partners and stakeholders.<br>Communications and Community Partnerships<br>• Serve as the official liaison of cooperative efforts with other institutions agencies and organizations in the region.<br>•Lead positive communications and ongoing updates internally and externally with all stakeholders regionally.<br>• Coordinate and facilitate meetings with staff, stakeholders and partners.<br>• Develop community advisory boards. Lead the quarterly meetings.<br>• Develop relationships with local county OSU Extension offices to determine joint programs and projects.<br>• Cultivate new partnerships and maintain professional relationships to further Extension programming to improve the lives of individuals and families within the region in both rural and urban communities.<br>• Understand the needs of culturally and economically diverse audiences.<br>• Prepare timely reports of programmatic activities and success stories in the region.<br>• Other responsibilities assigned as needed |
| **Minimum Qualifications** | Minimum Qualifications<br>• Master's degree in education, communications, agriculture, community development health, nutrition, family relationships, youth development or a closely related discipline.<br>• Experience with program development and management.<br>• Ability to communicate clear work direction and broad understanding of programming priorities.<br>• Ability to work effectively in an environment that combines independent action and teamwork with colleagues and external organizations.<br>• Ability to build effective work teams and manage conflict.<br>• Respectful, professional communication style both oral and in written.<br>• Organizational and time management skills with attention to detail.<br>• Computer skills: Able to effectively use Microsoft Office Suite of software programs.<br>• Ability to plan and maintain a flexible work schedule, including evening and weekend work to meet time demands and/or special needs of program management.<br>• Valid driver's license, reliable vehicle with required liability insurance, to be utilized for frequent travel.<br>• Must be able to lift 25 pounds.<br>• Upon hire must reside in the Southwest Region. |
| **Preferred Qualifications** | Preferred Qualifications<br>• 1-3 years of experience in teaching, community organizing, community and/or community education.<br>• Direct experience in grants management and administration.<br>• Ability to oversee the compliance of budgetary requirements and financial policies and procedures. |
| **Posting Date** | 11/06/2019 |

Complaint Exhibit 7 - 78

| | |
|---|---|
| **Closing Date** | 12/20/2019 |
| **Open Until Filled** | No |
| **Special Instructions to Applicants** | Three Letters of Recommendation and Official Transcripts are required. A Letter of Recommendation request will be sent to your references if you are selected for interview. Please ensure you provide your references' name and email address where indicated on the application. Send Official Transcripts to: Central State University Attn: Michelle Smith PO Box 1004 1400 Brush Row Road Wilberforce, OH 45384 For questions or general inquiries, email Michelle Smith at msmith2@centralstate.edu. |
| **Position Category** | Staff - Monthly (Exempt) |

## Supplemental Questions

Required fields are indicated with an asterisk (*).

1. * What is the highest degree you hold?

   - Doctorate
   - Completed all Doctorate coursework, but has not completed dissertation
   - Master's Degree
   - Bachelor's Degree
   - Assoicate's Degree
   - High School Diploma or GED

2 .*D o you have a valid Driver's License?

   - Yes
   - No

## Required Documents

### Required Documents

1. Resume
2. Cover Letter
3. Unofficial Transcripts

### Optional Documents

1. Curriculum Vitae

2 of 2

11/21/2019, 6:56 AM

Complaint Exhibit 7 - 79

Case: 2:25-cv-05330-MHW-CBS Doc #: 11-12 Filed: 06/05/25 Page: 45 of 83 PAGEID #: 264

# Regional Extension Associate-Southeast

## Posting Details

Posting Details

| | |
|---|---|
| **Posting Number** | 0800975 |
| **Classification Title** | Regional Extension Associate-Southeast |
| **Working Title** | |
| **Department** | 1890 Land Grant Extension |
| **Job Summary/Basic Function** | Southeast Region includes the following Counties: Athens, Belmont, Gallia, Guernsey, Jackson, Lawrence, Meigs, Monroe, Morgan, Muskingum, Noble, Perry, Pike, Scioto, Washington, and Vinton.<br>Job Summary:<br>The Regional Extension Associate will lead an effective work team of CSU Extension educators in the assigned region to deliver high quality educational programs designed to meet the needs across the region. This position will assist in hiring training and supporting the regional team. The Regional Extension Associate will report to the Operations and Program Manager.<br>Essential Duties and Responsibilities:<br>• Must reside in the region of assignment.<br>• Work with Program Leaders to manage day to day activities of program staff with in the region.<br>• Oversee implementation and evaluation of all programming in assigned multi-county region.<br>• Oversee professional development of regional team, ensuring the team has the resources and expertise needed to effectively carry out their job duties.<br>• Oversee and coordinate the development and implementation of partner level agreements in the region.<br>• Analyze programmatic data and financial information to determine ways to better focus resources for effectively and efficiently reaching the regional communities and residents<br>• Manage and monitor data and budget for projects and programs.<br>Program Development and Implementation<br>• Develop strategies and facilitate the regional implementation of train-the-trainer and or programming opportunities for regional organizations.<br>• Conduct programming in area of expertise delivering evidence-based programs in a community setting.<br>• Maintain a sound understanding of and familiarity with the key regional partners and stakeholders.<br>Communications and Community Partnerships<br>• Serve as the official liaison of cooperative efforts with other institutions agencies and organizations in the region.<br>•Lead positive communications and ongoing updates internally and externally with all stakeholders regionally.<br>• Coordinate and facilitate meetings with staff, stakeholders and partners.<br>• Develop community advisory boards. Lead the quarterly meetings.<br>• Develop relationships with local county OSU Extension offices to determine joint programs and projects.<br>• Cultivate new partnerships and maintain professional relationships to further Extension programming to improve the lives of individuals and families within the region in both rural and urban communities.<br>• Understand the needs of culturally and economically diverse audiences.<br>• Prepare timely reports of programmatic activities and success stories in the region.<br>• Other responsibilities assigned as needed |
| **Minimum Qualifications** | Required Qualifications<br>• Master's degree in education, communications, agriculture, community development health, nutrition, family relationships, youth development or a closely related discipline.<br>• Experience with program development and management.<br>• Ability to communicate clear work direction and broad understanding of programming priorities.<br>• Ability to work effectively in an environment that combines independent action and teamwork with colleagues and external organizations.<br>• Ability to build effective work teams and manage conflict.<br>• Respectful, professional communication style both oral and in written.<br>• Organizational and time management skills with attention to detail.<br>• Computer skills: Able to effectively use Microsoft Office Suite of software programs.<br>• Ability to plan and maintain a flexible work schedule, including evening and weekend work to meet time demands and/or special needs of program management.<br>• Valid driver's license, reliable vehicle with required liability insurance, to be utilized for frequent travel.<br>• Must be able to lift 25 pounds.<br>• Upon hire must reside in the Southeast Region. |
| **Preferred Qualifications** | Preferred Qualifications<br>•1-3 years of experience in teaching, community organizing, community and/or community education.<br>• Direct experience in grants management and administration.<br>• Ability to oversee the compliance of budgetary requirements and financial policies and procedures. |
| **Posting Date** | 11/06/2019 |

Complaint Exhibit 7 - 80

| | |
|---|---|
| **Closing Date** | 12/20/2019 |
| **Open Until Filled** | No |
| **Special Instructions to Applicants** | Three Letters of Recommendation and Official Transcripts are required. A Letter of Recommendation request will be sent to your references if you are selected for interview. Please ensure you provide your references' name and email address where indicated on the application. Send Official Transcripts to: Central State University Attn: Michelle Smith PO Box 1004 1400 Brush Row Road Wilberforce, OH 45384 For questions or general inquiries, email Michelle Smith at msmith2@centralstate.edu. |
| **Position Category** | Staff - Monthly (Exempt) |

## Supplemental Questions

Required fields are indicated with an asterisk (*).

1. * Do you have a valid Driver's License?

   - Yes
   - No

2. * What is the highest degree you hold?

   - Doctorate
   - Completed all Doctorate coursework, but has not completed dissertation
   - Master's Degree
   - Bachelor's Degree
   - Assoicate's Degree
   - High School Diploma or GED

## Required Documents

**Required Documents**

1. Resume
2. Cover Letter
3. Unofficial Transcripts

**Optional Documents**

1. Curriculum Vitae

Complaint Exhibit 7 - 81

# Regional Extension Associate, Northwest

## Posting Details

Posting Details

| | |
|---|---|
| **Posting Number** | 0800976 |
| **Classification Title** | Regional Extension Associate, Northwest |
| **Working Title** | |
| **Department** | 1890 Land Grant Extension |
| **Job Summary/Basic Function** | Northwest Region includes the following Counties: Crawford, Hardin, Lucas, Marion, Wood, Wyandot, Allen, and Auglaize<br>Job Summary:<br>The Regional Extension Associate will lead an effective work team of CSU Extension educators in the assigned region to deliver high quality educational programs designed to meet the needs across the region. This position will assist in hiring training and supporting the regional team. The Regional Extension Associate will report to the Operations and Program Manager.<br>Essential Duties and Responsibilities:<br>• Must reside in the region of assignment.<br>• Work with Program Leaders to manage day to day activities of program staff with in the region.<br>• Oversee implementation and evaluation of all programming in assigned multi-county region.<br>• Oversee professional development of regional team, ensuring the team has the resources and expertise needed to effectively carry out their job duties.<br>• Oversee and coordinate the development and implementation of partner level agreements in the region.<br>• Analyze programmatic data and financial information to determine ways to better focus resources for effectively and efficiently reaching the regional communities and residents<br>• Manage and monitor data and budget for projects and programs.<br>Program Development and Implementation<br>• Develop strategies and facilitate the regional implementation of train-the-trainer and or programming opportunities for regional organizations.<br>• Conduct programming in area of expertise delivering evidence-based programs in a community setting.<br>• Maintain a sound understanding of and familiarity with the key regional partners and stakeholders.<br>Communications and Community Partnerships<br>• Serve as the official liaison of cooperative efforts with other institutions agencies and organizations in the region.<br>• Lead positive communications and ongoing updates internally and externally with all stakeholders regionally.<br>• Coordinate and facilitate meetings with staff, stakeholders and partners.<br>• Develop community advisory boards. Lead the quarterly meetings.<br>• Develop relationships with local county OSU Extension offices to determine joint programs and projects.<br>• Cultivate new partnerships and maintain professional relationships to further Extension programming to improve the lives of individuals and families within the region in both rural and urban communities..<br>• Understand the needs of culturally and economically diverse audiences.<br>• Prepare timely reports of programmatic activities and success stories in the region.<br>• Other responsibilities assigned as needed |
| **Minimum Qualifications** | Required Qualifications<br>• Master's degree in education, communications, agriculture, community development health, nutrition, family relationships, youth development or a closely related discipline.<br>• Experience with program development and management.<br>• Ability to communicate clear work direction and broad understanding of programming priorities.<br>• Ability to work effectively in an environment that combines independent action and teamwork with colleagues and external organizations.<br>• Ability to build effective work teams and manage conflict.<br>• Respectful, professional communication style both oral and in written.<br>• Organizational and time management skills with attention to detail.<br>• Computer skills: Able to effectively use Microsoft Office Suite of software programs.<br>• Ability to plan and maintain a flexible work schedule, including evening and weekend work to meet time demands and/or special needs of program management.<br>• Valid driver's license, reliable vehicle with required liability insurance, to be utilized for frequent travel.<br>• Must be able to lift 25 pounds.<br>• Upon hire must reside in the Northwest Region. |
| **Preferred Qualifications** | Preferred Qualifications<br>• 1-3 years of experience in teaching, community organizing, community and/or community education.<br>• Direct experience in grants management and administration.<br>• Ability to oversee the compliance of budgetary requirements and financial policies and procedures. |
| **Posting Date** | 11/06/2019 |

Complaint Exhibit 7 - 82

| Closing Date | 12/20/2019 |
| --- | --- |
| Open Until Filled | No |
| Special Instructions to Applicants | Three Letters of Recommendation and Official Transcripts are required. A Letter of Recommendation request will be sent to your references if you are selected for interview. Please ensure you provide your references' name and email address where indicated on the application. Send Official Transcripts to: Central State University Attn: Michelle Smith PO Box 1004 1400 Brush Row Road Wilberforce, OH 45384 For questions or general inquiries, email Michelle Smith at msmith2@centralstate.edu. |
| Position Category | Staff - Monthly (Exempt) |

## Supplemental Questions

Required fields are indicated with an asterisk (*).

1. * What is the highest degree you hold?

   - Doctorate
   - Completed all Doctorate coursework, but has not completed dissertation
   - Master's Degree
   - Bachelor's Degree
   - Assoicate's Degree
   - High School Diploma or GED

2. * Do you have a valid Driver's License?

   - Yes
   - No

## Required Documents

### Required Documents

1. Resume
2. Cover Letter
3. Unofficial Transcripts

### Optional Documents

1. Curriculum Vitae

Complaint Exhibit 7 - 83

Case: 2.25-cv-05130-ALM-CBS Doc #: 11-1 Filed: 06/05/25 Page: 268 of 332 PAGEID #: 268

# Regional Extension Associate, Northeast

## Posting Details

Posting Details

| | |
|---|---|
| **Posting Number** | 0800974 |
| **Classification Title** | Regional Extension Associate, Northeast |
| **Working Title** | |
| **Department** | 1890 Land Grant Extension |
| **Job Summary/Basic Function** | Northeast Region includes the following Counties: Ashtabula, Carroll, Columbiana, Cuyahoga, Geauga, Harrison, Jefferson, Lake, Mahoning, Portage, Stark, Trumbull, Tuscarawas,<br>Job Summary:<br>The Regional Extension Associate will lead an effective work team of CSU Extension educators in the assigned region to deliver high quality educational programs designed to meet the needs across the region. This position will assist in hiring training and supporting the regional team. The Regional Extension Associate will report to the Operations and Program Manager.<br>Essential Duties and Responsibilities:<br>• Must reside in the region of assignment.<br>• Work with Program Leaders to manage day to day activities of program staff with in the region.<br>• Oversee implementation and evaluation of all programming in assigned multi-county region.<br>• Oversee professional development of regional team, ensuring the team has the resources and expertise needed to effectively carry out their job duties.<br>• Oversee and coordinate the development and implementation of partner level agreements in the region.<br>• Analyze programmatic data and financial information to determine ways to better focus resources for effectively and efficiently reaching the regional communities and residents<br>• Manage and monitor data and budget for projects and programs.<br>Program Development and implementation<br>• Develop strategies and facilitate the regional implementation of train-the-trainer and or programming opportunities for regional organizations.<br>• Conduct programming in area of expertise delivering evidence-based programs in a community setting.<br>• Maintain a sound understanding of and familiarity with the key regional partners and stakeholders.<br>Communications and Community Partnerships<br>• Serve as the official liaison of cooperative efforts with other institutions agencies and organizations in the region.<br>• Lead positive communications and ongoing updates internally and externally with all stakeholders regionally.<br>• Coordinate and facilitate meetings with staff, stakeholders and partners.<br>• Develop community advisory boards. Lead the quarterly meetings.<br>• Develop relationships with local county OSU Extension offices to determine joint programs and projects.<br>• Cultivate new partnerships and maintain professional relationships to further Extension programming to improve the lives of individuals and families within the region in both rural and urban communities.<br>• Understand the needs of culturally and economically diverse audiences.<br>• Prepare timely reports of programmatic activities and success stories in the region.<br>• Other responsibilities assigned as needed |
| **Minimum Qualifications** | Required Qualifications<br>• Master's degree in education, communications, agriculture, community development health, nutrition, family relationships, youth development or a closely related discipline.<br>• Experience with program development and management.<br>• Ability to communicate clear work direction and broad understanding of programming priorities.<br>• Ability to work effectively in an environment that combines independent action and teamwork with colleagues and external organizations.<br>• Ability to build effective work teams and manage conflict.<br>• Respectful, professional communication style both oral and in written.<br>• Organizational and time management skills with attention to detail.<br>• Computer skills: Able to effectively use Microsoft Office Suite of software programs.<br>• Ability to plan and maintain a flexible work schedule, including evening and weekend work to meet time demands and/or special needs of program management.<br>• Valid driver's license, reliable vehicle with required liability insurance, to be utilized for frequent travel.<br>• Must be able to lift 25 pounds.<br>• Upon hire must reside in the Northeast Region. |
| **Preferred Qualifications** | Preferred Qualifications<br>• 1-3 years of experience in teaching, community organizing, community and/or community education.<br>• Direct experience in grants management and administration.<br>• Ability to oversee the compliance of budgetary requirements and financial policies and procedures. |
| **Posting Date** | 11/06/2019 |

Complaint Exhibit 7 - 84

| Closing Date | 12/20/2019 |
|---|---|
| Open Until Filled | No |
| Special Instructions to Applicants | Three Letters of Recommendation and Official Transcripts are required. A Letter of Recommendation request will be sent to your references if you are selected for interview. Please ensure you provide your references' name and email address where indicated on the application. Send Official Transcripts to: Central State University Attn: Michelle Smith PO Box 1004 1400 Brush Row Road Wilberforce, OH 45384 For questions or general inquiries, email Michelle Smith at msmith2@centralstate.edu. |
| Position Category | Staff - Monthly (Exempt) |

## Supplemental Questions

Required fields are indicated with an asterisk (*).

1. * What is the highest degree you hold?

   - Doctorate
   - Completed all Doctorate coursework, but has not completed dissertation
   - Master's Degree
   - Bachelor's Degree
   - Assoicate's Degree
   - High School Diploma or GED

2. * Do you have a valid Driver's License?

   - Yes
   - No

## Required Documents

### Required Documents

1. Resume
2. Cover Letter
3. Unofficial Transcripts

### Optional Documents

1. Curriculum Vitae

Complaint Exhibit 7 - 85



**EXHIBIT 3**

**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ⬧ WILBERFORCE, OH 45384-1004 ⬧ 937-376-6652 ⬧ FAX 937-376-6680

**Ambrose Moses III, Esq**
Extension Educator, CED
Cooperative Extension Service
Central State University
**amoses@centralstate.edu**

**April 16, 2024**

**To:**

| | |
|---|---|
| **Alex Johnson** | **F. Erik Brooks** |
| abjohnson@centralstate.edu | febrooks@centralstate.edu |
| **Morakinyo Kuti** | **Laura Wilson** |
| mkuti@centralstate.edu | lwilson@centralstate.edu |
| **Pamela Bowman** | **Ibrahim Katampe** |
| pbowman@centralstate.edu | ikatampe@centralstate.edu |

**Subject:** Formal Complaint of Copyright Infringement, False Attribution, Plagiarism, Academic Dishonesty, Retaliation, and Hostile Work Environment

Dear University Leadership:

I, Ambrose Moses III, a CED Extension Educator at Central State University, am writing to formally file a complaint against Mark Rendleman, CED Program Leader at Central State University, for violations of, including but not limited to, the University's Professional Code of Conduct, Intellectual Property Policy, Copyright Infringement, False Attribution, Plagiarism, Academic Dishonesty, Retaliation, and Hostile Work Environment occurring from on or about February 2, 2024 to the present.

I also petition and request all available due process from the University in addressing the multiple issues of state and federal law, common law, and University policy that comprise this matter.

## Background and Context

Ambrose Moses III ("Moses") holds a Juris Doctor degree from The Ohio State University College of Law and is a licensed attorney in the State of Ohio. During his years of service to

Page **1** of **8**



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ⬥ WILBERFORCE, OH 45384-1004 ⬥ 937-376-6652 ⬥ FAX 937-376-6680

the community, he has engaged in a general law practice, Staff Attorney with the Legal Aid Society of Columbus, Associate General Counsel with the Ohio Civil Service Employees Association (OCSEA, AFSCME Local 11, AFL-CIO), and handled a wide range of civil, administrative, and criminal matters which include, but are not limited to, business entity formation, contracts, mergers and acquisitions, residential and commercial real estate, personal injury, copyright, trademark, entertainment transactions, nonprofit formation, tax exempt organizations, unemployment claims, workers compensation claims, employment discrimination, collective bargaining, community development corporations, affordable housing, access to capital, consumer protection, juvenile adjudications, misdemeanor and felony litigation, civil rights, trials, state and federal appeals, and *pro bono* community-based workshops and presentations.

Moses' primary area of practice, professional engagement, and passion is community development, economic development, empowerment, and business law.

Moses' path towards Central State University began in the early 2000's when he focused his professional service upon small business development and community empowerment.  From 2004-2009, Moses worked as a Staff Attorney with the Legal Aid Society of Columbus. In 2010, he returned to full-time private practice, with a focus on expanding access to legal services by low and moderate income individuals in the area of civil matters, primarily business and transactional law. As part of the mission of his law practice, Moses volunteered and delivered business law-related workshops and presentations to groups at the Central Ohio Minority Business Association (COMBA), the Ohio Small Business Development Center (SBDC), the U.S. Small Business Administration (SBA), and others.

In 2015, Moses was awarded the U.S. Small Business Administration Legal Assistance Champion of the Year.

In 2010 Moses authored his framework for addressing the formation of business entities and expressed it in writing and electronic format via a PowerPoint presentation.  Around this same time, after observing a need for a more accessible business planning process, Moses developed and authored a 4-Page Business Plan framework and expressed that in writing.

Over the years, Moses has, and continues to, refine these works.  These works are protected by copyright law.  When these works are combined with an in-person or virtual lecture or are recorded, the combined work constitutes an interactive textbook on the topics of entity formation and business planning.  The layout and content of the works, coupled with Moses' unique delivery elucidates these two critical areas of business development in a manner that is accessible to virtually any teenage to adult learner.  This ability to elucidate and empower

Page **2** of **8**



**CENTRAL STATE UNIVERSITY EXTENSION**

P.O. BOX 1004 ◆ WILBERFORCE, OH 45384-1004 ◆ 937-376-6652 ◆ FAX 937-376-6680

the learner with useful and usable knowledge is a significant aspect of Moses' personal brand as both an educator and a professional.

On March 1, 2017, Moses joined Central State University's Cooperative Extension Service as the University's first County Extension Agent. By March 14, 2017, at the direction of the Associate Director of Extension, Moses modified one of his existing works concerning business entity formation for use in his first presentation as a CED County Extension Agent, titled "Intro to LLCs & Corporations". In the weeks following March 2017, Moses developed a series of curriculum modules, including, but not limited to, the topics of entity formation and the 4-Page Business Plan.

By Fall of 2017, the Cooperative Extension Service had hired Anthony Barwick as the CED Program Leader. By the Spring of 2018, Moses and Barwick had collaborated on the unique methodology of a cooperative extension business development program that Barwick branded as Ready, Set, Grow!.

The methodology of Ready, Set, Grow! is that it includes a growing body of knowledge and educational content that is created and curated by the team of CED Extension Educators. This body of knowledge and content is then customized into curriculums to address the identified needs of the audiences with whom the CED Extension Educators engage. Some examples are "Ready, Set, Grow!", "RSG!: Agriculture", "RSG!: Entrepreneur Toolkit", and "RSG!: Small Business".

As a result, while our Cooperative Extension Service, is in its infancy, it would engage with "wantrepreneurs" and startup businesses and agribusinesses. But, over time, the diversity of businesses served would begin to include established and mature businesses.

Moses' business entity formation work and 4-Page Business Plan work were included in the curriculum for the Ready, Set, Grow! program. Moses' work remains a cornerstone part of that signature CED program today.

CED Educators at Central State University are researching, developing, and delivering innovative extension content, services, and educational experiences. For instance, in recent months, Moses has also proposed an innovative utilization of AI and GPT technology in the delivery of Cooperative Extension Services, using the 4-Page Business Plan as a pilot.

This could be a way to commercialize and expand the reach and impact of Cooperative Extension professionals, utilizing the Ohio I.P. Promise Initiative. In fact, another CED Extension Educator is currently exploring the Ohio I.P. Promise Initiative and other

Page **3** of **8**



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ◆ WILBERFORCE, OH 45384-1004 ◆ 937-376-6652 ◆ FAX 937-376-6680

commercialization options for their work.  The academic, innovation, and intellectual property works of University faculty and staff, including staff in the University's Cooperative Extension Service, are important, valuable, and deserving of protection.

Mark Rendleman is the CED Program Leader at Central State University.  Among other things, his essential duties and responsibilities include developing and delivering CED objective and research-based educational programs to meet the needs of diverse audiences in Ohio.  As CED Program Leader, Mr. Rendleman is also responsible for reviewing, knowing, and approving the content of the curriculums that are part of the CED programs he develops and delivers.

On February 2, 2024, Mark Rendleman, CED Program Leader at Central State University, instructed the CED Team about the Growing Equity Partnership Grant and stated--

> **"The scope of this New Farmer Business Education work would include but not limited to: . . . Distribution of use of the curriculum developed by Eric Smith in Toledo. (Everyone is expected to coordinate with Eric Smith on his curriculum)"**

Moses contacted Eric Smith as instructed. Eric Smith informed Moses, "It's **RSG Ag**, but with a picture of the SARE book on the front." RSG Ag means **Ready, Set, Grow!: Agriculture**, which is one of the custom curriculums that had been developed as part of the Ready, Set, Grow! program methodology.  RSG Ag includes the works at issue here which were authored and created by Moses prior to joining the University.

On February 6, 2024, Eric Smith sent an email to the CED Team and stated,

> **"Please note that my presentations took an existing body of work and parsed them out according to the Planning Tasks in the workbook. I would like to acknowledge that I could not have done my work without significant contributions by Amber, Ambrose, and Stephen."**

On April 4, 2024, despite the clear attributions by Smith, Mark Rendleman further instructed the CED Team,

> **"We will be using the New Farmer Education Curriculums refined by Eric Smith and Stephen Washington."**

On April 10, 2024, Mr. Rendleman gave further instruction to Mr. Moses that --

Page **4** of **8**



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ◆ WILBERFORCE, OH 45384-1004 ◆ 937-376-6652 ◆ FAX 937-376-6680

> **"The curriculum is already defined for this Growing Equity Partnership education effort. Coordinate with Eric and Stephen to access that curriculum. No curriculum deviations will be approved."**

Rendleman has been, and is, actively engaged in a "quiet firing" campaign and hostile work environment against Moses. In December 2023, the University's General Counsel requested an outside investigator on Moses' Report of Unresolved Retaliation and Hostile Environment.

In the context of his responsibility as CED Program Leader and his active quiet firing campaign against Moses, Rendleman's Copyright Infringement, False Attribution, Plagiarism, Academic Dishonesty, Retaliation, and Hostile Work Environment are knowing and intentional.

Moses is a public employee with over seven (7) years of service, who has vested rights, and a property interest in his employment with the State of Ohio. Rendleman's conduct, as the Statewide CED Program Leader at Ohio's 1890 Land-Grant University, is state action and acting under color of law in depriving Moses of his property interests and his federal legal and constitutional rights without substantive and procedural due process. Rendleman's conduct exposes himself and the University to a risk of liability.

## Summary of Claims

A summary of the claims that arise from Mr. Rendleman's conduct include, but are not limited to the following causes of action:

1. **Copyright Infringement**: Mr. Rendleman, as the University's CED Program Leader, has and is using Mr. Moses' copyrighted work without authorization. Rendleman is also directing the CED Team to implement Rendleman's instructions, which is a violation of state and federal copyright law and the University's Intellectual Property Policy.

2. **Academic Dishonesty, False Attribution, and Plagiarism**: On multiple occasions, Mr. Rendleman falsely attributed Mr. Moses' work to other individuals, misleading Cooperative Extension peers and the audiences we serve, and constituting academic dishonesty.

3. **Retaliation and Hostile Work Environment**: This conduct is part of Mr. Rendleman's continued "Quiet Firing" campaign of retaliation and hostile work environment,

Page **5** of **8**

Complaint Exhibit 7 - 90



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ◆ WILBERFORCE, OH 45384-1004 ◆ 937-376-6652 ◆ FAX 937-376-6680

following the numerous whistleblower notices and protected activities in which Mr. Moses has engaged.

## Impact Statement

When I joined Central State University in 2017, I was proud to be associated with and part of the University, it's new 1890 Land-Grant status, it's history as an HBCU, and the role it is positioned to play in the lives of citizens across Ohio and beyond, with an unapologetic approach in advancing the needs and interests of Black Americans in Ohio and beyond. I saw this as an opportunity to grow with the University.

I engage with my colleagues with dignity, respect, and enthusiasm. That being said, Rendleman was disrespectful in refusing to acknowledge my position as a Statewide Extension Educator. He repeatedly taunted me in front of the CED Team over a period of months by representing my territory as Southwest, Columbus, or Central Ohio instead of Statewide. It culminated with he and I arguing about it during my 5 minute report period of our CED Team Meeting (via Microsoft Teams) in January 2024. I regret that I allowed him to "get in my head". However, his actions were taunting and calculated. It was like I had been disrespected and pushed to the point where I was outside my body watching this happen. The humiliation and disrespect in front of my colleagues was really beyond words to explain.

That being said, it is even more distressing when I review the public records that General Counsel provided to me and discover that Alcinda Folck, Interim Associate Administrator of Extension, and Mark Rendleman were discussing, plotting, and planning to strip away my Statewide Extension Educator status over a year ago in March 2023. This means that Mark Rendleman's repeated refusal throughout 2023 to acknowledge my Statewide Extension Educator status was intentional and calculated, and apparently in coordination with Dr. Folck.

So, now, after stripping away my Statewide Extension Educator position, Rendleman is trying to erase my authorship of my copyrighted work by falsely attributing it to another individual.

I view everyone the same. We need people in all positions throughout the organization, from the volunteer cleaning up after an event to the chairperson of the Board of Trustees. They all deserve the same level of dignity and respect.

I freely share my knowledge, information, and understanding with the community and my colleagues at the University. I ask questions to explore and understand "what" it is, "how" does it work, "why" is it like that. I think and analyze things. I offer ideas, suggestions, and proposals. I test, experiment, and evaluate new and different ways to improve how we

Complaint Exhibit 7 - 91



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ⬥ WILBERFORCE, OH 45384-1004 ⬥ 937-376-6652 ⬥ FAX 937-376-6680

educate and impact.  That is part of the reason my business entity formation work and my 4-Page Business Plan work have endured the test of time (and why I am developing an implementation of it via AI and GPT technology).   It is also why my authorship, work, copyright, and intellectual contribution should be respected by the University's CED Program Leader.

## Requested Actions

Given the range and magnitude of legal, ethical, academic integrity, and university policy issues raised by Mr. Rendleman's conduct, I do not know who all are the appropriate University officials and offices to whom this should be addressed.

I am sending it to who appear to me to be appropriate University officials.  However, I do ask your assistance in identifying such persons.

To that end, I urge the Provost & VP of Academic Affairs, Director of Land-Grant, Office of the General Counsel, Director of Human Resources, Chief Intellectual Property Officer, Intellectual Property Advisory Committee, Intellectual Property Rights Resolution Board, Administrator of the University's Ohio I.P. Promise program, and AAUP to conduct a thorough investigation into these allegations and enforce appropriate corrective measures including:

- Rectifying the attribution of all work and materials I have developed.
- Ceasing the unauthorized use of my copyrighted materials.
- Considering corrective actions against Mr. Rendleman for his violations of law and the University policies, including but not limited to, the Professional Code of Conduct, Academic Integrity, and his retaliatory behavior.
- A request for all available due process from the University in addressing the multiple issues of state and federal law, common law, and University policy that comprise this matter.
- A request for workshops on copyright law and academic integrity within the Cooperative Extension Service.
- A request for training on the benefits, value, and process for utilizing the Ohio I.P. Promise Initiative and the University's efforts in that regard.

I am prepared to provide further details and documentation to support this complaint and am willing to meet to discuss this matter at your earliest convenience.

Page **7** of **8**



**CENTRAL STATE UNIVERSITY EXTENSION**
P.O. BOX 1004 ⬧ WILBERFORCE, OH 45384-1004 ⬧ 937-376-6652 ⬧ FAX 937-376-6680

Thank you for your attention to this serious matter. I trust that the University will uphold its standards of integrity and fairness by addressing this complaint promptly.

Sincerely,

/s/ Ambrose Moses III

**Ambrose Moses III, Esq**
*Extension Educator, Southwest Region*
*Community & Economic Development*
**Central State University Extension**
1400 Brush Row Road | Wilberforce, Ohio 45384
(614) 432-4300 (mobile)
amoses@CentralState.edu

Page **8** of **8**


**EXHIBIT 4**

Re: In preparation for our meeting this afternoon

Ambrose Moses III <amoses@centralstate.edu>
Wed 10/4/2023 4:11 PM
To:Morakinyo Kuti <mkuti@centralstate.edu>
Bcc:Amber Twitty <atwitty@centralstate.edu>

Good afternoon, Dr. Kuti:

I am writing to follow up again regarding our meeting on December 9, 2022 where we discussed the issues I have faced and documented related to discriminatory practices, retaliation, and an unfair hiring process within CSU's Land-Grant programs.

It has now been over 9 months since that meeting and I have not received any update from you or anyone else in university mangement or leadership, despite sending a follow-up email on February 9, 2023 that went unanswered.  There continues to be discrimination, retaliation for reporting unlawful activities and problems, and a hostile work environment. I have not seen any noticeable changes or improvements over these past several months.

Given that it has been over 9 months without any response or resolution, I feel it necessary to again formally escalate my complaints through external channels. The workplace culture remains toxic and I fear continued, unabated, retaliation if I continue to solely raise my well-documented concerns internally.  There appears to be no formal complaint process with responsible parties to objectively investigate, evaluate, and resolve such matters in a timely manner.

Could you please provide an update on if there have been any actions taken or changes made in response to the substantial documentation I provided showing noncompliance with state and federal laws? That information represented just a sample of the systemic unlawful and unethical activities occurring within Land-Grant programs.  There are additional wrongful actions that have occurred since December 2022, some of which result in a pattern of reducing and effectively denying cooperative extension services to Black communities with identified needs.

Being treated like this is bad enough, but for it to be done by an HBCU is even more egregious.  While it is harmful to me personally and professionally, it is also harmful to the residents of Ohio.  I am a committed servant-leader who cares about the residents of Ohio.  The residents of Ohio, including, unapologetically, the Black residents and their communities, deserve the full level of insightful, forward-thinking, and professional cooperative extension services like that which I shared with you, Dr. Folck, and Mr. Rendleman via email on July 13, 2023.  That level of needed cooperative extension service is being denied to our Black communities.  I, along with other professional and culturally aware colleagues here at CSU, are being systematically denied the resources and opportunities to serve at the advanced and skilled level that is needed, requested, and appreciated by the Black communities across Ohio.  The harm inflicted upon us is a harm inflicted upon the community in general, and the Black community in specific.

I welcome any insights you can provide on steps taken over the past 9 months and would appreciate a response. Please let me know if you need any clarification or have questions. I look forward to hearing back from you.

Sincerely,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, February 9, 2023 10:31 AM
**To:** Morakinyo Kuti <mkuti@centralstate.edu>
**Subject:** Re: In preparation for our meeting this afternoon

Good morning, Dr. Kuti:

I wanted to follow-up you from our meeting on December 9, 2022.  You were going to review the document and information that I shared with you and we were to look at next steps after the holiday break.

Could you let me know where the matter is and next steps?  Thank you.

Ambrose

**Ambrose Moses III, Esq.**

Complaint Exhibit 7 - 94

*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu** | www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III
**Sent:** Friday, December 9, 2022 1:15 PM
**To:** Morakinyo Kuti <mkuti@centralstate.edu>
**Subject:** In preparation for our meeting this afternoon

Good afternoon, Dr. Kuti:

In preparation for our quick meeting scheduled for this afternoon at 3 pm, I am writing this email to share some additional context with you concerning the matters set forth in my R.C. 124.341 Reports and the draft Verified Complaint for Declaratory and Injunctive Relief.   (See attached.)

First of all, allow me to express and emphasize to you that I do appreciate and thank you for the steps you have taken to, listen to Extension staff, identify some of the problems within Extension, and take some action to address some of those identified problems.  Your initial words and subsequent actions were effective in garnering my trust that there was at least one person (i.e. you) in leadership who was listening, understanding, and taking appropriate action to improve conditions and get Extension moving in the right direction.

Because of that trust, I was surprised and disappointed with your November 18th email that contained inaccurate information.  The tone of the email seemed contrary to how you had previously communicated with me and others.  Quite honestly, I didn't think you had written that email.  Because of the inaccurate information, I had to respond to it as I did in my email dated November 22, 2022.  I don't know if you were just repeating information you had heard from HR, but it was factually untrue.

The Verified Complaint is attached.  While it is now in final draft form, it has not yet been filed.  The Verified Complaint sets forth some of the history of wrongful and unlawful practices by University/College/and Extension leadership.  I intentionally wrote the Verified Complaint so that you can understand and verify the facts and circumstances contained therein.

You can ask your Land-Grant and CESTA staff to show you the emails and documents that I sent to Dr. Alton Johnson, Dr. Michelle Corley, the HR Directors Tonya Turner and Pam Bowman, Dr. Siddartha Dasgupta, and Anthony Barwick., as a quick way to verify what I have stated in the Verified Complaint.

Your name appears in the Verified Complaint because of the positions of leadership, authority, and responsibility that you occupy.  Under the Eleventh Amendment to the U.S. Constitution, States are immune from many lawsuits.  As a result, many lawsuits have to be brought against government officials in their individual and official capacities in order for courts to award damages, require actions, or stop other actions.  You can check with Laura Wilson or other legal counsel about that.

As you can see from my emails, the Verified Complaint, and an objective investigation, the current hiring process for the CED Program Leader has been tainted.  In addition to still being the source of legal action against the University, the tainted hiring process undermines the legitimacy and credibility of the individual hired and the leadership that executed the process.

I look forward to our discussion.

Sincerely,

Ambrose

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu** | www.CentralState.edu/csuextension

Complaint Exhibit 7 - 95

**EXHIBIT 5**

### STATE OF OHIO
### STATE PERSONNEL BOARD OF REVIEW

Subramania Sritharan

    *Appellant*

    v.

Central State University

    *Appellee*

Case Nos. 2022-FRN-10-0137
            2022-MIS-I0-0138
            2023-REM-04-0067
            2023-MIS-04-0068
            2023-WHB-04-0069

### ORDER

These matters came on for consideration on the Report and Recommendation of the Administrative Law Judge in the above-captioned appeals.

After a thorough examination of the entirety of the records, including a review of the Report and Recommendation of the Administrative Law Judge, along with any objections to that report which have been timely and properly filed, the Board hereby adopts the Recommendation of the Administrative Law Judge.

Wherefore, it is hereby **ORDERED** that Appellant's R.C. 124.341 Whistleblower appeal, Case No. 2023-WHB-04-0069, is **GRANTED**, and that he be restored to his administrative position of Associate Director of Research with all rights and benefits including the faculty fallback provision. Because Appellant was at all times an unclassified employee, Case Nos. 2022-FRN-10-0137, 2022-MIS-10-0138, 2023-REM-04-0067, and 2023-MIS-04-0068 are **DISMISSED** for lack of jurisdiction over the person, pursuant to R.C. 124.03 and R.C. 124.34.



Casey-Aye
McGregor - Aye
Strahorn - Aye

Terry L. Casey, *Chairman*

### CERTIFICATION

The State of Ohio, State Personnel Board of Review, ss:

I, the undersigned clerk of the State Personnel Board of Review, hereby certify that this document and any attachment thereto constitutes (the original/a true copy of the original) order or resolution of the State Personnel Board of Review as entered upon the Board's Journal, a copy of which has been forwarded to the parties this date, October 05, 2023.

*Clerk*

**NOTE:** *Please see the reverse side of this Order, or the attachment to this Order for information regarding your appeal rights.*

NOTICE

Where applicable, this Order may be appealed under the provisions of Chapters 124 and 119 of Ohio Revised Code. An original written Notice of Appeal or a copy of your Notice of Appeal setting forth the Order appealed from and the grounds of appeal must be filed with this Board fifteen (15) days after the mailing of this Notice. Additionally, an original written Notice of Appeal or a copy of your Notice of Appeal must be filed with the appropriate court within fifteen (15) days after the mailing of this Notice. At the time of filing the Notice of Appeal or copy of your Notice of Appeal with this Board, the party appealing must provide a security deposit to the Board. In accordance with administrative rule 124-15-08 of the Ohio Administrative Code, the amount of deposit is based on the length of the digital recording of your hearing and the costs incurred by the Board in certifying your case to court. After the board has received the deposit, the transcript and copies of the file will be prepared and the cost of those items will be calculated. If the deposit exceeds the costs of these items, then a refund of the excess will be issued; if the deposit does not cover the full amount, then the appealing party will be billed for the outstanding balance. The length of the digital recording, the costs incurred, the corresponding amount of deposit required, and the final date that the Notice of Appeal or copy of your Notice of Appeal and the Deposit will be accepted by this Board are listed at the bottom of this Notice. If a full or partial transcript of the digital recording has been prepared prior to the filing of an appeal, the costs of a copy of that certified transcript will be accepted by this Board; transcript costs will be listed at the bottom of this Notice.

IF YOU ELECT TO APPEAL THIS BOARD'S FINAL ORDER, THEN YOU MUST PROVIDE THE DEPOSIT LISTED BELOW AT THE TIME YOU FILE YOUR NOTICE OF APPEAL OR COPY OF YOUR NOTICE OF APPEAL WITH THIS BOARD. Please note that the law provides that you have fifteen (15) calendar days from the mailing of the final Board Order to file your Notice of Appeal or copy of your Notice of Appeal both with this Board and with the Court of Common Pleas. The fifteenth day is the date that appears at the bottom of this Notice.

METHOD OF PAYMENT: for all entities other than State agencies, payment of the deposit must be by money order, certified check, or cashier's check. State agencies are required to use the Intra-State Transfer Voucher (ISTV) system. The State Employment Relations Board Fiscal Office will initiate the ISTV after receipt of the Notice of Appeal. The Fiscal Office can be contacted at (614) 466-1128.

IF YOU MAINTAIN YOU CANNOT AFFORD TO PAY THE DEPOSIT LISTED BELOW, THEN YOU MUST COMPLETE THE BOARD'S "AFFIDAVIT OF INDIGENCE" FORM. YOU CAN OBTAIN THAT FORM BY CALLING 614/466-7046. THE COMPLETED AFFIDAVIT MUST BE RECEIVED BY THIS BOARD ON OR BEFORE October 12, 2023. You will be notified in writing of the Board's determination. If the Board determines you are indigent, you will be relieved of the responsibility to pay the deposit to the Board. However, if the Board determines you are NOT indigent, then YOU MUST FILE YOUR NOTICE OF APPEAL OR A COPY OF YOUR NOTICE OF APPEAL AND PAY THE DEPOSIT BY THE DATE LISTED BELOW.

**If you have any questions regarding this notice, please contact the Board at 614/466-7046.**

Case Number:     2022-FRN-10-0137 et al

Transcript Costs:   $1014.00          Administrative Costs:    $25.00

Total Deposit Required:   * $1039.00

Notice of Appeal and Deposit Must
Be Received by SPBR on or Before:     October 20, 2023

Complaint Exhibit 7 - 97

## STATE OF OHIO
## STATE PERSONNEL BOARD OF REVIEW

Subramania Sritharan

Case No. 2022-FRN-10-0137 *et. al.*

*Appellant*

v.

August 23, 2023

Central State University

Raymond M. Geis
*Appellee*                          *Administrative Law Judge*

### REPORT AND RECOMMENDATION

To the Honorable State Personnel Board of Review:

These consolidated appeals: 2022-FRN-10-0137, 2022-MIS-10-0138, 2023-REM-04-0067, 2023-MIS-04-0068, and 2023-WHB-04-0069 came to hearing on July 19, 2023. Appellant Dr. Subramania Sritharan a.k.a. Dr. Sri ("Dr. Sri") appeared and was represented by Attorney David Duwel. Appellee Central State University ("CSU") appeared through its designee Dean Dr. Morakinyu Kuti ("Dr. Kuti") and was represented by Assistant Attorneys General Joseph Rosenthal and Lorenzo Washington.

The appeals filed in year 2022 came after Dr. Sri's contract was not renewed for his administrative position of Associate Director of Research. Following this first non-renewal, Dr. Sri resumed a faculty position on a one-year contract. The 2023 appeals come after his non-renewal from that faculty position.

At hearing Dr. Sri, Dr. Kuti, and Human Resources Director Pamela Bowman ("HR Dir. Bowman") testified.

### CONSOLIDATED STATEMENT OF THE CASE AND FINDINGS OF FACT

On March 23, 2021, while serving as Associate Director of Research, Dr. Sri wrote his then Dean, Dr. Brooks and his then colleague Dr. Kuti a letter (by email). This letter implored them not to fund Dr. Kuti's position with earmarked federal grant funds unless approval was obtained from the funder.   Dr. Sri articulated that funding Dr. Kuti's salary from the grant could constitute a violation of the federal regulations governing distribution of U.S. Department of Agriculture, National Institute of Food and Agriculture funds ("USDA-NIFA"). CSU is an 1890 Land Grant College whose mission includes delivering agricultural research, education, and extension programs for the benefit of the agricultural sciences.[1]

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 2


At this time, Dr. Sri was a necessary signatory to approve the distribution of funds for Dr. Kuti's salary. Approximately 40% of Dr. Kuti's salary was set to be funded with the USDA-NIFA grant. Dr. Brooks wrote Dr. Sri back stating he had information from the "blue ribbon committee" that the funding strategy was indeed permissible and that direct approval from the USDA-NIFA was unnecessary. Dean Brooks then directed Dr. Sri to, "[p]lease approve the Personnel Action Form..." and added "It is my expectation that these actions will be completed quickly..." Dr. Sri obeyed Dean Brook's request.

Dr. Kuti was promoted on March 24, 2021, following funding approval for his new position. With the promotion, Dr. Kuti was now Dr. Sri's supervisor. Dr. Sri received a notice of non-renewal from his position of Associate Director of Research on September 16, 2022. His employment ended on September 22, 2022. Dr. Sri's annual contract was apparently renewed at least once between 2021 and 2022.[2]

Dr. Sri's Associate Director of Research position is statutorily unclassified pursuant to R.C. 124.11(A)(7)(a) because the position consists of administrative duties related to research at a public University, namely CSU. Despite this, CSU enters into one-year contracts with its unclassified administrators, which may be renewed annually. Dr. Sri was a party to a series of these one-year contracts.

Dr. Kuti and Dr. Sri have known each other for about 25 years and worked in the same Land Grant College division of CSU. Dr. Sri taught courses for much of this time.

Prior faculty status was a prerequisite qualification for the Associate Director of Research position. Dr. Kuti testified that he formulated an honest (but erroneous) belief that Dr. Sri was never faculty and therefore was unqualified for continued employment as the Associate Director of Research. But Dr. Kuti did not check Dr. Sri's employee history, or request that Human Resources check his personnel file. Dr. Kuti explained that it is not unusual for administrators to also teach courses, so this fact did not alert him to Dr. Sri's prior faculty status. Dr. Kuti proceeded to issue a non-renewal letter to Dr. Sri, dated September 16, 2022, based solely upon the false assertion that he was unqualified due to lack of prior faculty status.

At the meeting where Dr. Sri received his letter of non-renewal, Dr. Sri informed Dr. Kuti and HR Dir. Bowman that he had been a professor *i.e.*, faculty. Unswayed, Dr. Kuti told Dr. Sri that he could resign, or the Dean would remove him. That Friday, Dr. Kuti gave Dr. Sri the weekend to think about resignation but insisted upon his decision no later than noon on the following Monday.

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 3


Dr. Sri did not want to be removed by the Dean. He tendered his letter of resignation by the deadline. Dr. Kuti responded with an email thanking Dr. Sri for his years of service. Shortly thereafter, Dr. Sri produced a copy of his appointment letter which showed that he could fall back from the administrative position to a non-tenured professor. This proof, however, did not cause Dr. Kuti to rescind the non-renewal letter or correct it to acknowledge this right.

Up to this point, neither HR Dir. Bowman nor Dr. Kuti memorialized Dr. Sri's right of return to his former position. (At some point after the notice of non-renewal HR Dir. Bowman found the same letter of appointment that Dr. Sri produced to them in his official personnel file.) Not having heard any official acknowledgement from Dr. Kuti acknowledging his prior faculty status, Dr. Sri rescinded his resignation ostensibly in an attempt to preserve his ability to fall back to his old faculty position.

HR Dir. Bowman wrote Dr. Sri several days later rejecting Dr. Sri's rescission but finally acknowledged his right to fall back to the faculty position. Dr. Sri returned to the faculty position under a one-year contract pursuant to a collective bargaining agreement ("CBA").

Under the CBA, Dr. Kuti must consult with the department faculty chairman ahead of time each year before *renewing* Dr. Sri's contract. Dr. Kuti believed the absence of the word *non-renew* in the CBA language meant consultation was not required for non-renewal. In fact, the department faculty chairman wanted Dr. Sri to stay on as faculty and already scheduled classes for him to teach. This course of conduct indicated the department faculty chairman's preference that Dr. Sri be renewed.

But Dr. Kuti testified that he felt that the department faculty chairman was too partial to Dr. Sri and purposely decided not to consult him to avoid any protest about his intended non-renewal of Dr. Sri's contract. After Dr. Sri received this notice of non-renewal, the chairman wrote Dr. Kuti requesting that Dr. Sri be renewed to teach the classes. However, Dr. Kuti did not change his decision.

Dr. Kuti testified that Dr. Sri was the only *non-tenured* faculty, that the tenured faculty were protected from job loss, and that he needed to trim the budget because in his view there were too many professors and not enough students. Dr. Kuti provided no financial documentation or student data to support his view at hearing. On the other hand, Dr. Sri ascribes his job losses to his letter to Dr. Kuti alerting him that his salary funding was improper, and Dr. Kuti's subsequent retaliation.

Complaint Exhibit 7 - 100

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 4

## CONCLUSIONS OF LAW

R.C. 124.341(B) Violation or Misuse – Whistleblower Protection states in pertinent part "no officer or employee in the classified or unclassified civil service shall take any disciplinary action against an employee in the classified or unclassified civil service for making any report or filing a complaint." The decisions to terminate renewal of Dr. Sri's contracts constitute the disciplinary action of removal.

To invoke whistleblower protection the employee must file a written report alleging a violation of rules or misuse of funds with the supervisor or appointing authority. R.C. 124.341(A).

Here, Dr. Sri wrote Dean Brooks (the appointing authority) and Dr. Kuti stating he believed that using earmark funds to pay Dr. Kuti likely may run afoul of the grant usage rules. Dr. Sri based his opinion on the fact that Dr. Kuti did not directly support research efforts in his new administrative position, and that the funds were to be used only for positions that directly supported research in agriculture and food science.

Dr. Brooks and Dr. Kuti reasonably disagreed with Dr. Sri's interpretation. However, Dr. Sri's interpretation was still rational. The code of federal regulation requires the grantee to only charge costs to administrative support services which "directly" support research, and not for general administrative costs. There is no dispute that Dr. Kuti's duties extended beyond just research. Therefore, the proportion of salary which could be paid out of the grant was open to dispute. Dr. Sri did not want to approve the use of the funds because of this, without first getting approval from the grantor.

Having established that Dr. Sri filed a written report in conformance with R.C. 124.341, the next issue is whether it is more likely than not that either or both non-renewals suffered by Dr. Sri were for his filing of his whistleblower report.

There is a span of almost 18 months between the time of Dr. Sri's March 23, 2021, whistleblower report and his September 16, 2022, non-renewal notice. Apparently, Dr. Sri was renewed near or around September 2021.

At hearing, Dr. Kuti testified that although he believed Dr. Sri was not a previous faculty member and that this was sufficient grounds for his first non-renewal, he had other reasons for non-renewing Dr. Sri which were not articulated in the letter. Dr. Kuti testified wanting a change in leadership because the Land Grant program was floundering. Dr. Kuti testified he discussed these other reasons with HR Dir. Bowman. However, HR Dir. Bowman testified that she could

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 5

not recall that Dr. Kuti ever spoke about the other reasons, and that he came up with the articulated reason for non-renewal all by himself.

Though CSU employs a CBA administrator who is an attorney, and the non-renewal involved interpretation of the CBA, neither Dr. Kuti nor HR Dir. Bowman ever attempted to consult her. HR Dir. Bowman testified that if "a Dean" like Dr. Kuti requested a letter of non-renewal, she would type it up without further research or consultation.

The manifest weight of the evidence supports that Dr. Kuti single-handedly decided to non-renew Dr. Sri and predicated his action on a notion which could not reasonably be assumed. Namely, Dr. Kuti had every reason to know that Dr. Sri historically taught classes since at least 1990, and this would prompt a reasonable person standing in Dr. Kuti's shoes to check further as to whether Dr. Sri held faculty status.

Dr. Kuti's reckless attribution of an unsupported assertion about Dr. Sri's employment history raises the inference of retaliation. As an unclassified employee, Dr. Sri could have been non-renewed for the reasons that Dr. Kuti articulated after the fact, if genuine.

Dr. Kuti's decision to issue his letter without checking for accuracy combined with his failure to include his other purported reasons in the letter from the outset demonstrate shifting reasoning. "An employer's changing rationale for making an adverse employment decision can be evidence of pretext" to establish retaliation. *Sells v. Holiday Mgt. Ltd.*, 10th Dist. Franklin No. 11AP-205, 2011-Ohio-5974, ¶ 27 quoting *Thurman v. Yellow Freight Sys., Inc.* (C.A.6, 1996), 90 F.3d 1160, 1167.

Dr. Kuti chose very specific CBA language to justify both Dr. Sri's non-renewal and also to strip him of his faculty fallback rights. What is more, after being required to reinstate Dr. Sri to his faculty position, Dr. Kuti non-renewed Dr. Sri from the faculty position as soon as contractually possible, and purposely avoided any discussion with the department faculty chair (to avoid his disapproval) before carrying out the decision.

To sum up, Dr. Kuti articulated a false reason for his first non-renewal of Dr. Sri. Dr. Kuti had ample reason to question his unproven assumption about Dr. Sri's previous status before trying to use it as the solely articulated basis for non-renewal. When the reason was demonstrated to be false, Dr. Kuti failed to reverse his erroneous decision. Dr. Kuti's "other" reasons for the first non-renewal come only through his testimony at hearing, without corroboration, or any

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 6

contemporaneous documentation of the purported events.  Dr. Sri denies the characterization of these other events as recalled by Dr. Kuti.

Dr. Kuti's second non-renewal of Dr. Sri, purportedly for financial reasons, also comes without any corroborating evidence.  Dr. Kuti's articulated reasoning is further undermined because the department faculty chair put Dr. Sri on the schedule to teach, and Dr. Kuti purposely avoided any prior notice or consultation with him.  Dr. Kuti's rebuttal that the department faculty chair was biased in favor of Dr. Sri does not seem to be a convincing excuse to avoid him.  Afterall, as a dean, Dr. Kuti could surely surmise that preparations for the fall class scheduled were well underway and his plan to non-renew Dr. Sri would likely hamper the accuracy of the course offerings.

In the end Dr. Kuti's reasons for the two non-renewals articulated at hearing are not convincing.  They are not reliable or credible because of the complete lack of evidence to corroborate his standalone testimony.

This leaves only the inference that Dr. Sri's R.C. 124.341 report, potentially endangering both Dr. Kuti's promotion and salary, caused Dr. Sri to suffer retaliatory discipline in the form of loss of employment.

<u>Dr. Sri's resignation does **not** cut off his right to be made whole and to be free from retaliatory discipline for his R.C. 124.341 Whistleblower report.</u>

Appellee would have this Board find that Dr. Sri's resignation was effective and operates deny him the instant R.C. 124.341 Whistleblower appeal or at least forfeit the remedy of reinstatement.  This Board does not have direct jurisdiction over a claim of forced resignation for an unclassified employee but can nevertheless reverse retaliation in violation of R.C. 124.341.

In this context, when an appointing authority induces resignation as the only alternative to removal based on false information, it is a constructive removal which will not work to deny the employee his appeal. *Kinney v. Ohio State Dept. of Adm. Services*, 14 Ohio App.3d 33, 36, (10th Dist.1984) When a public employee voluntarily resigns, the court must consider whether an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if they were in that employee's position. *Bennett v. Columbiana Cty. Coroner*, 7th Dist. No. 14 CO 0039, 2016-Ohio-7182, ¶ 49 A resignation is not effective when wrongfully persuaded based on contrary representations. *Williams v. State ex rel. Gribben*, 127 Ohio St. 398, 400 (1933)

Dr. Sri produced his appointment letter retaining his faculty rights to HR Dir. Bowman after his resignation from his administrative position.  But CSU did not

Complaint Exhibit 7 - 103

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 7

communicate that it would honor Dr. Sri's fall back to a faculty position in writing until after rejecting Dr. Sri's rescission of his resignation.

Dr. Sri's resignation was more likely than not induced by CSU's reckless disregard for knowing the truth about Dr. Sri's qualification, and his fallback rights under the CBA. Dr. Bri states that Dr. Kuti and HR Dir. Bowman were dismissive when he brought up his former faculty status at the meeting where he received his notice. Dr. Kuti and HR Dir. Bowman testified that they told Dr. Sri he could fall back to a faculty position if he showed proof of his prior faculty status.

Telling though is HR Dir. Bowman's lack of research into Dr. Sri's personnel file prior to the meeting. Equally telling is Dr. Kuti's setting of a tight deadline for Dr. Sri's resignation for the following Monday at noon even when Dr. Sri's contract did not expire until several days later. Perhaps most damning is HR Dir. Bowman's failure to have Dr. Sri's original letter of appointment ready for Dr. Sri to examine before he resigned that Monday. She admitted to finding the letter in Dr. Sri's personnel file at some later point. Why didn't she find it right after the non-renewal meeting or before? This course of events evinces an intentional desire on the part of CSU through HR Dir. Bowman and Dr. Kuti to capitalize on false information to induce the resignation of Dr. Sri., in spite of Dr. Sri's calling the information into question.

Moreover, Dr. Kuti's resignation deadline imposed a false sense of urgency for Dr. Sri. to resign quickly or "be removed". It also bolsters Dr. Sri's testimony about the tenor of the non-renewal meeting and tends to undercut Dr. Kuti and HR Dir. Bowman's recollection of their supposedly more conciliatory tone toward Dr. Sri at the meeting.

Under such circumstances, a reasonable person standing in Dr. Sri's shoes would believe that CSU was not going to honor his faculty status, and that he would be removed for the false reason of not meeting qualifications if he did not resign. Couching his resignation as a retirement was more dignified in the face of CSU's apparent *fait accompli*. Dr. Sri's resignation was therefore not voluntary at law, but rather a constructive dismissal.

The remedy for CSU's retaliatory conduct is reinstatement of Dr. Sri to his original administrative position with all the rights and emoluments contained in his original letter of appointment to that position including but not limited to the right to resume a faculty position. (Ex. 14) Dr. Sri is the prevailing party under R.C. 124.341.

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 8

## RECOMMENDATION

Therefore, I respectfully **RECOMMEND** that Appellant's R.C. 124.341 Whistleblower appeal case no. 2023-WHB-04-0069 be **GRANTED**, and that he be restored to his administrative position of Associate Director of Research with all rights and benefits including the faculty fallback provision. Because Appellant was at all times an unclassified employee it is further recommended that Case Nos. 2022-FRN-10-0137, 2022-MIS-10-0138, 2023-REM-04-0067, 2023-MIS-04-0068 be **DISMISSED** for lack of jurisdiction over the person, pursuant to R.C. 124.03 and R.C. 124.34.

Raymond M. Geis
*Administrative Law Judge*

---

[1] https://www.usda.gov/partnerships/1890s-program (accessed July 27, 2023)
[2] See Ex. 13 Personnel Action Form ("PAR") for annual contract ending 3/31/21. Appellee did not introduce the subsequent PAR, or any notice of non-renewal for the following term, therefore it is assumed that Dr. Sri was renewed with a contract end date of 3/22.

Complaint Exhibit 7 - 105

6/17/24, 10:32 AM
Case: 2:24-cv-03330-MLN-RBS Doc #: 11-6 Filed: 09/05/24 Page: 1 of 32 PAGEID #: 290
Re: Follow-up to February 8, 2024 Letter

EXHIBT 6

## Re: Follow-up to February 8, 2024 Letter

**Ambrose Moses III** <amoses@centralstate.edu>
Mon 6/17/2024 10:32 AM

To:Mark Rendleman <mrendleman@centralstate.edu>
Cc:Alcinda Folck <afolck@centralstate.edu>;Pamela Bowman <pbowman@centralstate.edu>;Jennifer McHugh <jMcHugh@snlaw.com>;Alex Johnson <abjohnson@centralstate.edu>;Morakinyo Kuti <mkuti@centralstate.edu>;Laura Wilson <lwilson@centralstate.edu>;Jacqueline Y. Gamblin (jgamblin@jyginnovations.com) <jgamblin@jyginnovations.com>

Mr. Rendleman, Dr. Folck, and Ms. Bowman:

I am copying Laura Wilson, University General Counsel, and Jennifer McHugh, the investigator assigned to look into my internal complaints of retaliation and hostile work environment, which I have raised through the proper University channels over the past several years. I am including them on this response to ensure all relevant parties are informed about the ongoing situation and Mr. Rendleman's email in light of the serious allegations of retaliation, hostile work environment, and deprivation of my constitutional and statutory rights as detailed in my recently filed federal complaint.

Please see my response below.


Dear Mr. Rendleman,

I am in receipt of your email dated June 17, 2024, which was sent during the first day of the NACDEP conference where our entire CED team, including myself, is in attendance this entire week. The timing of your email appears deliberately calculated to cause maximum disruption and anxiety while I am away from the office and engaged in professional development activities with my colleagues.  You even threaten ". . . disciplinary action, up to and including termination."  Was that done in accordance with University policy?

As you are well aware, I have recently filed a federal lawsuit against Central State University and various university officials, including yourself, alleging violations of my constitutional rights under the First and Fourteenth Amendments, as well as my statutory rights under 42 U.S.C. § 1983. The complaint details a pattern of retaliatory actions, denial of due process, and the maintenance of a hostile work environment in response to my protected speech and activities advocating for diversity, inclusion, and addressing systemic issues within the University's Cooperative Extension Service.

It is important to note that the University has been aware of these issues for a significant period of time, as evidenced by the fact that an investigator was assigned to look into my internal complaints of retaliation and hostile work environment prior to the filing of the lawsuit. Despite this ongoing investigation, you and other defendants have continued to engage in retaliatory conduct and perpetuate a hostile work environment, which ultimately necessitated the filing of the federal complaint to protect my rights.

Your email and the arbitrary demands contained therein appear to be a direct continuation of the retaliatory and obstructive conduct detailed in my federal complaint. The complaint clearly alleges that you have engaged in a concerted effort to impede my ability to perform my job duties by withholding approvals for my outreach and CED activities, issuing unwarranted reprimands, and setting unreasonable deadlines and demands.

The timing and content of your June 17th email, sent while I am out of the office at a conference, epitomizes the catch-22 situation I have been subjected to, where you obstruct my

Complaint Exhibit 7 - 106

work and then admonish me for not reporting on the very activities you have impeded. This is but one example of the retaliatory conduct and hostile work environment you, in concert with others, have maintained in violation of my rights, even after the commencement of the University's investigation into these matters.

Furthermore, your dismissive response to my recently submitted Individual Plan of Work from June 4, 2024, is deeply troubling and further evidence of retaliation. The Plan of Work I submitted clearly outlines CED programming and initiatives aimed at addressing matters of significant public concern, namely the impact of racism as a public health crisis in Columbus and Franklin County. These efforts align directly with the University's mission as an 1890 Land-Grant Institution to serve underserved communities and promote social and economic equity.

Your summary rejection of this Plan of Work without substantive explanation, coupled with your vague references to previously approved projects and reporting requirements, appears to be a deliberate attempt to suppress my advocacy on these critical issues and restrict my ability to effectively serve the needs of the communities we are duty-bound to support. This conduct not only perpetuates the hostile work environment I have been subjected to but also raises serious concerns about the University's commitment to its fundamental purpose and the vital role of Cooperative Extension in addressing societal inequities.

Please be advised that I unequivocally object to your ongoing retaliatory actions, unreasonable demands, and the maintenance of a hostile work environment as alleged in detail in my pending federal lawsuit. Your dismissive treatment of my proposed Plan of Work and its focus on matters of public concern is further evidence of the deprivation of my constitutional and statutory rights for which I am seeking judicial intervention and appropriate relief.

With this email, I have reported your latest retaliatory actions to the University's General Counsel and the investigator assigned to look into my internal complaints. I expect the University to take swift corrective action to address the ongoing violations of my rights and ensure that I can perform my job duties, including advocating for underserved communities, without further retaliation or obstruction.

Sincerely,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Mark Rendleman <mrendleman@centralstate.edu>
**Sent:** Monday, June 17, 2024 8:43 AM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Cc:** Alcinda Folck <afolck@centralstate.edu>; Pamela Bowman <pbowman@centralstate.edu>
**Subject:** Follow-up to February 8, 2024 Letter

Complaint Exhibit 7 - 107

You have failed to address many of the concerns outlined to you in the February 8, 2024, written reprimand. You must complete the items listed below by Thursday, June 20, 2024.

**Engagement Activity Weekly Reporting Requirement**:

You have not posted any documentation into the Engagement Activity Weekly Report since 4/4/2023, which is your responsibility as Community and Economic Development (CED) Educator to report programing efforts. This failure to report is a direct violation of the February 8, 2024, letter.

If there are any engagements/activities that have not been reported that occurred prior to 4/4/2023 you should add those specifically as well.

Approved Activities:

> The following Educational Activities have been approved and should have been completed or remain in process. The results associated with these activities need to be reported.

> - Fast Track Farming (With ANR)
>
>   - You were assigned to educate in Zanesville, Ohio during the Fall of 2023.
>
>   - You coordinated farm business classes in Zanesville (Southeast Region) with Denise Natoli Brooks.
>
>   - Please provide detailed explanations on status and circumstances associated with that education effort.
>
>   - Results from the education engagement must also be added into the Engagement Activity Weekly Reporting System (NIFA Reporting).
>
> - The 2024 Cohort - Teach the Grower Program (With Marc Amante, ANR)
>
>   - Your participation in this engagement was approved on March 12, 2024.
>
>   - You indicated that the CED sessions would be conducted from April 11, 2024, to June 13, 2024, on Thursdays from 10 a.m. to 12:30p.m. Please complete NIFA Reporting relating to these education efforts in the Engagement Activity Weekly Reporting System (NIFA Reporting).
>
>   - Please provide detailed explanations on status and circumstances associated with that education effort.

**Your Individual Plan of Work**

Additionally, you submitted another Individual Plan of Work on June 4, 2024, even though previous Individual Plans of Work have not been approved. I have outlined the focus for your current CED Works efforts several times. Please focus on the projects which have been approved and assigned to you. Accurate reporting is critical to the mission of CED and your continued failure to complete your reports could jeopardize continued funding and program efforts.

While you will be at the NACDEP Conference in Houston, TX, you need to make completion of this directive by June 20, 2024, your priority. Your failure to timely respond will result in disciplinary action, up to and including termination.

Complaint Exhibit 7 - 108

Complaint Exhibit 7 - 109

Case: 2:24-cv-03330-MLN-PBS Doc #: 11-7 Filed: 09/05/24 Page: 1 of 32 PAGEID #: 294

EXHIBIT 7

## Re: Follow-up to February 8, 2024 Letter

Ambrose Moses III <amoses@centralstate.edu>
Sun 6/23/2024 11:05 PM

To:Mark Rendleman <mrendleman@centralstate.edu>
Cc:Alcinda Folck <afolck@centralstate.edu>;Pamela Bowman <pbowman@centralstate.edu>;Laura Wilson <lwilson@centralstate.edu>;Jacqueline Y. Gamblin (jgamblin@jyginnovations.com) <jgamblin@jyginnovations.com>;Jennifer McHugh <jMcHugh@snlaw.com>;Morakinyo Kuti <mkuti@centralstate.edu>;Alex Johnson <abjohnson@centralstate.edu>

Mr. Rendleman:

As you know, the 2024 NACDEP Conference was a success for Central State University's Community & Economic Development (CED) Team.  Our veterans, **Ambrose Moses III, Amber Twitty, and Eric Smith** were recognized as the 2024 Regional Winner for Cross-Program: Team for **Ready, Set, Grow! Agriculture**.  This award is for a CED Team's successful efforts collaborating with Extension professionals in other program areas, such as in our case, Agriculture and Natural Resources.



Ambrose, Amber, and Eric were also selected to present the RSG! Entrepreneur Toolkit during the conference.

Complaint Exhibit 7 - 110

## RSG! Entrepreneur Toolkit

Community & Economic Development Extension Educator Amber Twitty BBA, Community and Economic Development Extension Educator Eric Smith MA, Community and Economic Development Extension Educator Ambrose Moses, III JD

## Central State University, Wilberforce, USA

### Abstract
The RSG! Entrepreneur Toolkit is a niche Ready, Set, Grow! training series for both new and established entrepreneurs. This 4-part curriculum is designed to help entrepreneurs assess, clarify, and strengthen their business model. Specifically, participants will learn about the business model canvas, as well as explore how better to create, deliver, and capture value. By the conclusion of the training, entrepreneurs will (1) have a business model canvas, and (2) have identified the next steps to launch or grow their business.

Amber was selected to deliver an engaging presentation on **Reach, Teach & Engage: Effective Outreach Strategies for BIPOC and Underserved Populations**.



Complaint Exhibit 7 - 111

## Reach, Teach & Engage: Effective Outreach Strategies for BIPOC and Underserved Populations

Community and Economic Development Extension Educator Amber Twitty BBA

Central State University, Wilberforce, USA

### Abstract

How can we, as extension educators, researchers, and community partners better engage the BIPOC and underserved communities?

Amber also represents Central State University Cooperative Extension well on a number of committees, including Co-Chair of the DEI Committee.

# NACDEP COMMITTEE CHAIRS



DEI Co-Chair
**Amber Twitty**



2024 Conference Chair
Southern Region Rep Elect
**Natriez "Nate" Peterson**



DEI Co-Chair
**Jose "Lupe" Vattierra**



2024 Conference Co-Chair
CED Program Leader
**Jimmy Henry**

Eric was selected to deliver an interactive presentation on **The ABCDs of Inside-Out Change: How Some Communities are Leading from the Emerging Future, and How Yours Can Too**.

Complaint Exhibit 7 - 112



## The ABCDs of Inside-Out Change: How Some Communities are Leading from the Emerging Future, and How Yours Can Too

Eric Smith MA, Dr. Hunter Goodman PhD

Central State University Extension, Wilberforce, USA. University of Arkansas System, Little Rock, USA

### Abstract

Asset-Based Community Development (ABCD) is a transformative approach that shifts the focus from community deficits to strengths. By identifying and leveraging local assets— skills, talents, and resources—ABCD fosters self-reliance and empowers communities. This method encourages residents to take an active role in shaping their futures, promoting a sense of ownership and pride. ABCD not only enhances social cohesion but also cultivates sustainable solutions as it builds upon existing community capacities. This approach fosters resilience and adaptability, creating a foundation for positive change. Learn how Extension is piloting this approach in Ohio and Arkansas.

Ambrose was selected to share a poster presentation of his work concerning utilization of rapidly developing artificial intelligence (AI) and **Custom GPT Technology** as an empowering tool within the Cooperative Extension Education space.

Complaint Exhibit 7 - 113



# Empowering Extension Education with Custom GPT Technology:
# A Case Study on "The 4-Page Business Plan"

## Introduction

Artificial Intelligence (AI) and Generative Pre-trained Transformer (GPT) technology are revolutionizing the way Cooperative Extension Services deliver education and services. This poster explores the innovative use of GPT technology, specifically through the creation of the 4-Page Business Plan Creator, to enhance the educational offerings of Extension Educators. By integrating AI, we aim to provide more interactive, personalized, and accessible resources for small business owners and entrepreneurs.

## Objectives

•**Demonstrate** the potential of GPT technology tailored to the needs of Extension Educators.
•**Showcase** practical applications through the 4-Page Business Plan Creator.
•**Encourage** engagement and feedback from the Cooperative Extension professional community.
•**Highlight** the benefits of AI integration in delivering educational content and services.

## Methodology

The development and implementation of the 4-Page Business Plan Creator involves several key steps:

**1.Research and Development**: Understanding GPT capabilities and identifying suitable use cases within Extension Education.

**2.Customization**: Tailoring the GPT model to create the 4-Page Business Plan Creator, incorporating specific prompts, examples, and multimodal capabilities.

**3.Pilot Testing (Current Phase):** Initial testing with a selected group of users to refine functionality and user experience.

**4.Launch and Integration (Upcoming):** Deploying the GPT tool in real-world educational settings and integrating it with existing Extension programs.

## Application in Cooperative Extension

The 4-Page Business Plan Creator is designed to assist entrepreneurs in developing comprehensive business plans. Key applications include:

•**Guided Business Planning**

•**Interactive Learning**

•**Broad Accessibility**



## Challenges & Solutions

**Learning and Adopting GPT Technology**: Extension Educators need time and resources to become familiar with AI tools.

•**Solution**: Provide training sessions and resources to build AI literacy among educators.

**Developing Relevant Use Cases**: Identifying practical and impactful applications of GPT technology in Extension Education.

•**Solution**: Collaborate with educators to brainstorm and pilot various use cases, starting with the 4-Page Business Plan Creator.

**Communicating Benefits**: Effectively explaining the advantages of AI tools to colleagues and stakeholders.

•**Solution**: Use demonstrations, case studies, and data-driven presentations to highlight successes and potential.

**Keeping Up with AI Advancements**: Rapid changes in AI technology can make it challenging to stay updated.

•**Solution**: Establish continuous learning and collaboration networks among extension educators and AI experts.

## Engagement & Feedback

We welcome your ideas, observations, and questions.

•**QR Code**: Scan the QR code to access the 4-Page Business Plan Creator and share your thoughts by entering **"Feedback"**.

 

Scan Here

## Future Directions

We envision expanding the use of GPT technology across various Extension Education programs. This includes:

•**Development of New Tools**: Creating more AI-driven tools tailored to different educational topics and community needs.

•**Broader Integration**: Embedding AI tools within the wider Cooperative Extension framework to enhance overall service delivery.

•**Ongoing Research**: Continuously evaluating the impact of AI tools and adapting them based on user feedback and technological advancements.

## Conclusion

Integrating GPT technology into Extension Education offers significant opportunities for enhancing educational services. The 4-Page Business Plan Creator is just the beginning, showcasing the potential of AI to transform how we deliver knowledge and support to our communities. We invite you to engage with this innovative tool and share your feedback to help us shape the future of Extension Education.

**Contact:**

**Ambrose Moses III, J.D.**
Extension Educator
Community & Economic Development
amoses@CentralState.edu

Community & Economic Development
Cooperative Extension Service
**CENTRAL STATE UNIVERSITY**
Wilberforce, Ohio

Complaint Exhibit 7 - 114

# Empowering Extension Education with Custom GPT Technology: A Case Study on The 4-Page Business Plan

Community and Economic Development Extension Educator Ambrose Moses, III JD

Central State University, Wilberforce, USA

## Abstract
This proposal introduces a groundbreaking methodology for Cooperative Extension Service education, centered around the development and utilization of custom GPT (Generative Pre-trained Transformer) technology. The aim is to demonstrate how this AI-powered approach can significantly enhance the educational and advisory services provided by Extension Educators.

As evidenced by the award, compliments, and requests for future engagements from our colleagues across the nation, we are respected, knowledgeable, and professional servant leaders in the Cooperative Extension and CED spaces.  We were prepared and made an impressive showing on behalf of Central State University and its Cooperative Extension Service.  You can verify this by asking the NACDEP President Dr. Michelle Eley, Dr. Michael Wilcox, and our colleagues from The Ohio State University who were present, also received awards and recognition, and joined us for dinner during States' Night Out.

As a supplement to my email dated June 17, 2024, please see my responses below in red.  –

You have failed to address many of the concerns outlined to you in the February 8, 2024, written reprimand. You must complete the items listed below by Thursday, June 20, 2024. - Please see my email dated June 17, 2024.

**Engagement Activity Weekly Reporting Requirement**:

You have not posted any documentation into the Engagement Activity Weekly Report since 4/4/2023, which is your responsibility as Community and Economic Development (CED) Educator to report programing efforts. This failure to report is a direct violation of the February 8, 2024, letter. -Please see my email dated June 17, 2024.  As of June 23, 2024, I have also updated the entries to the CSU-Extension Engagement Activity Weekly Report.

If there are any engagements/activities that have not been reported that occurred prior to 4/4/2023 you should add those specifically as well.

Approved Activities:

> The following Educational Activities have been approved and should have been completed or remain in process.  The results associated with these activities need to be reported.

> > ○ Fast Track Farming (With ANR)

> > > ▪ You were assigned to educate in Zanesville, Ohio during the Fall of 2023. - As I have previously reported during CED Team Meetings, this project has been completed.

> > > ▪ You coordinated farm business classes in Zanesville (Southeast Region) with Denise Natoli Brooks. - I coordinated and taught the award-winning Ready, Set, Grow!: Agribusiness curriculum.

Complaint Exhibit 7 - 115

- Please provide detailed explanations on status and circumstances associated with that education effort. -The Extension education engagement in Zanesville was successfully completed in March 2024.

- Results from the education engagement must also be added into the Engagement Activity Weekly Reporting System (NIFA Reporting). - Done.

- The 2024 Cohort - Teach the Grower Program (With Marc Amante, ANR)

  - Your participation in this engagement was approved on March 12, 2024.

  - You indicated that the CED sessions would be conducted from April 11, 2024, to June 13, 2024, on Thursdays from 10 a.m. to 12:30p.m.  Please complete NIFA Reporting relating to these education efforts in the Engagement Activity Weekly Reporting System (NIFA Reporting). -As I have reported during our CED Team Meetings, the 2024 cohort of Teach the Grower has been postponed by the community partner as they work through fundraising matters concerning the program.  The partner indicated that they expect to secure funding by the end of the month.  I have reached out to the partner for an update.  I will update you once I receive further information.  There is no activity to input into the system.

  - Please provide detailed explanations on status and circumstances associated with that education effort. -Please see the previous response.

**Your Individual Plan of Work**

Additionally, you submitted another Individual Plan of Work on June 4, 2024, even though previous Individual Plans of Work have not been approved.  I have outlined the focus for your current CED Works efforts several times.  Please focus on the projects which have been approved and assigned to you.  Accurate reporting is critical to the mission of CED and your continued failure to complete your reports could jeopardize continued funding and program efforts. -I have done nothing to jeopardize continued funding and program efforts.  To the contrary, it is noteworthy that, to date, Extension leadership has not coordinated and led the completion of a proper needs assessment within the territory and communities that we serve.  I, for years now, have advocated for the completion of a needs assessment.  Prior to receiving your February 8, 2024 letter of reprimand, I even sent you, as CED Program Leader, a written request for a copy of the needs assessments that you and the leadership team utilized in determining the State Critical Issues and writing the CSUE Plan of Work.  To date, I have received no such information from you.  In response, leadership has berated me and been dismissive towards my efforts concerning needs assessment.

I have shared with Extension educators (and you) research-based approaches to conducting limited needs assessments and anecdotal needs assessments in the absence of a comprehensive needs assessment being completed.

To that end, as set forth in my proposed Individual Plan of Work, please note the following concerning my assigned territory: **Identified Need:** Racism has been declared a public health crisis in Columbus and Franklin County. Racism can affect all aspects of people's lives, including access to safe and affordable housing; employment and financial security; education; incarceration and health and mental health. These racial disparities can contribute to barriers to accessing health care, including lack of transportation, insurance or finances. It can also lead to a rise in illnesses or shorten the life expectancy of marginalized people due to chronic illnesses

brought on by stress, diabetes, obesity, and cardiac disease. Over the past decade, there's also been a widening gap between white and Black infant mortality rates.

The Individual Plan of Work is a standard best practice within the Cooperative Extension System.  I have provided you with research-based evidence of this.  The Individual Plan of Work I submitted on June 4, 2024 includes the "CED Works efforts" that you have outlined as well as the "**Identified Need**" within my territory, to wit, Franklin County, Ohio.  **Do you agree with my efforts as a CED Extension Educator to address racism as a public health crisis in my territory?**

While you will be at the NACDEP Conference in Houston, TX, you need to make completion of this directive by June 20, 2024, your priority. Your failure to timely respond will result in disciplinary action, up to and including termination. -Please see my timely response sent via email dated June 17, 2024.

Thank you.

Sincerely,


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Mark Rendleman <mrendleman@centralstate.edu>
**Sent:** Monday, June 17, 2024 8:43 AM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Cc:** Alcinda Folck <afolck@centralstate.edu>; Pamela Bowman <pbowman@centralstate.edu>
**Subject:** Follow-up to February 8, 2024 Letter

You have failed to address many of the concerns outlined to you in the February 8, 2024, written reprimand. You must complete the items listed below by Thursday, June 20, 2024.

**Engagement Activity Weekly Reporting Requirement**:

You have not posted any documentation into the Engagement Activity Weekly Report since 4/4/2023, which is your responsibility as Community and Economic Development (CED) Educator to report programing efforts. This failure to report is a direct violation of the February 8, 2024, letter.

If there are any engagements/activities that have not been reported that occurred prior to 4/4/2023 you should add those specifically as well.

Approved Activities:

    The following Educational Activities have been approved and should have been completed or remain in process.  The results associated with these activities need to be reported.

       ◦ Fast Track Farming (With ANR)

          ▪ You were assigned to educate in Zanesville, Ohio during the Fall of 2023.

- You coordinated farm business classes in Zanesville (Southeast Region) with Denise Natoli Brooks.

- Please provide detailed explanations on status and circumstances associated with that education effort.

- Results from the education engagement must also be added into the Engagement Activity Weekly Reporting System (NIFA Reporting).

  ○ The 2024 Cohort - Teach the Grower Program (With Marc Amante, ANR)

  - Your participation in this engagement was approved on March 12, 2024.

  - You indicated that the CED sessions would be conducted from April 11, 2024, to June 13, 2024, on Thursdays from 10 a.m. to 12:30p.m.  Please complete NIFA Reporting relating to these education efforts in the Engagement Activity Weekly Reporting System (NIFA Reporting).

  - Please provide detailed explanations on status and circumstances associated with that education effort.

**Your Individual Plan of Work**

Additionally, you submitted another Individual Plan of Work on June 4, 2024, even though previous Individual Plans of Work have not been approved.  I have outlined the focus for your current CED Works efforts several times.  Please focus on the projects which have been approved and assigned to you.  Accurate reporting is critical to the mission of CED and your continued failure to complete your reports could jeopardize continued funding and program efforts.

While you will be at the NACDEP Conference in Houston, TX, you need to make completion of this directive by June 20, 2024, your priority. Your failure to timely respond will result in disciplinary action, up to and including termination.

Complaint Exhibit 7 - 118

Fw: Happy New Year!

**Mark Rendleman** <mrendleman@centralstate.edu>

Tue 1/9/2024 6:21 AM

Cc:Alcinda Folck <afolck@centralstate.edu>

📎 1 attachments (240 KB)

Extension Program Plans of Work FY 2024.pdf;

Good morning,

Cindy, as I told you previously, I'm headed to Findley, Ohio today for second interviews with two prospects.

I wanted to forward to you this email from Ambrose. He sent it to my entire group upon returning after the holidays. I have not responded to it yet. Instead, focusing on catching up with carried over responsibilities accumulated during my holiday vacation. I intend to prepare a response by the end of this week.

I will also be forwarding a second chain of emails from Amber. They both are locked in a disruption mode to start out this new year. It is definitely time to circle the wagons. Her response will also be completed by the end of this week.

Otherwise, all is well.

**Mark Rendleman, MBA**
*State Program Leader, Community and Economic Development*
Central State University Extension - E.J. Emery Hall, A201
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
**mrendleman@CentralState.edu** | CentralState.edu



An 1890 LAND-GRANT INSTITUTION

---

**From:** Mark Rendleman
**Sent:** Wednesday, January 3, 2024 3:56 PM
**To:** Alcinda Folck <afolck@centralstate.edu>
**Subject:** FW: Happy New Year!

FYI

**Mark Rendleman, MBA**
*State Program Leader, Community and Economic Development*
Central State University Extension - E.J. Emery Hall, A201
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
**mrendleman@CentralState.edu** | CentralState.edu



**Extension**

An 1890 LAND-GRANT INSTITUTION

From: Ambrose Moses III <amoses@centralstate.edu>
Sent: Wednesday, January 3, 2024 9:43 AM
To: Mark Rendleman <mrendleman@centralstate.edu>; Camille Johnson <cjohnson@centralstate.edu>; Kunta Jackson <kjackson6@centralstate.edu>; Stephen Washington <swashington@centralstate.edu>; Eric Smith <esmith2@centralstate.edu>; Autumn Swanson <aswanson@centralstate.edu>; Amber Twitty <atwitty@centralstate.edu>
Subject: Re: Happy New Year!

Good morning, Mark,

Since this will be our first CED Team meeting of the new year, could you start us off by explaining the plan for 2024? Maybe you could walk us through the CED portion of the attached Extension Programs Plan of Work for FY 2024 that Dr. Folck posted to Teams.

It will be helpful for the CED Team to know and to discuss –

- the identified needs that CED will be addressing in 2024,
- what specific CED programs will be implemented and conducted in 2024,
- what impact we expect to have with the CED programs,
- how we will measure the impact of the CED programs in 2024, and
- how all of this executesand accomplishes the Extension Programs Plan of Work for FY 2024.

Please let me know if there is anything I can do to help.

I will be resuming our Ready, Set, Grow!: Agribusiness series in Zanesville on Tuesday: https://www.whiznews.com/read-set-grow-business-series-in-zanesville/. This is a continued collaboration between the CED and ANR program areas in serving food-based businesses.

Thank you.

Regards,

Ambrose


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

**From:** Mark Rendleman <mrendleman@centralstate.edu>
**Sent:** Tuesday, January 2, 2024 9:42 AM
**To:** Camille Johnson <cjohnson@centralstate.edu>; Kunta Jackson <kjackson6@centralstate.edu>; Stephen Washington <swashington@centralstate.edu>; Eric Smith <esmith2@centralstate.edu>; Autumn Swanson <aswanson@centralstate.edu>; Amber Twitty <atwitty@centralstate.edu>; Ambrose Moses III <amoses@centralstate.edu>
**Subject:** Happy New Year!

Welcome back!
I'm hopeful that everyone enjoyed their time with family and friends this
End of year holiday season. Well, the new year is upon us, so I hope that you're as excited as I am about the possibilities of 2024.

Our Team Meetings will continue Tuesdays @ 10:00 am. But since today is the first day back, I believe it's best to delay our first 2024 session until next week. Use this week to get on top of any carryover from 2023 and start groundwork for things to come in 2024. I will do my best to reach out to everyone at some point this week.


Get Outlook for iOS

Case: 3:25-cv-00330-MJN-PBS Doc #: 1-10 Filed: 10/07/5534 Page: 306 of 332 PAGEID #: 296

RE: Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates

Morakinyo Kuti <mkuti@centralstate.edu>

Fri 10/6/2023 8:15 PM

To:Ambrose Moses III <amoses@centralstate.edu>

Cc:Amber Twitty <atwitty@centralstate.edu>;Pamela Bowman <pbowman@centralstate.edu>;John Mackie <jmackie@centralstate.edu>

Thanks for your input.

**Morakinyo A.O. Kuti, Ph.D.,**
**Vice President for Research and Economic Development and Director of the 1890 Land Grant Programs**

1400 Brush Row Road | Wilberforce, Ohio  45384
O:  937-376-6547 | F:  937-376-6598
mkuti@centralstate.edu | CentralState.edu
LinkedIn

**EXHIBIT 9**

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Friday, October 6, 2023 6:41 AM
**To:** Morakinyo Kuti <mkuti@centralstate.edu>
**Cc:** Amber Twitty <atwitty@centralstate.edu>; Pamela Bowman <pbowman@centralstate.edu>; John Mackie <jmackie@centralstate.edu>
**Subject:** Re: Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates

Good morning, Dr. Kuti:

I appreciate your response, but I do not believe you substantively addressed my concerns about inherent conflicts of interest and bias in the search committee composition.

You stated that I should have "faith" in the committee members. However, the issue is not their individual merits, but rather their structural subordinate status to Dr. Folck as a candidate. This inherently risks bias and lack of impartiality, regardless of qualifications.

Relatedly, your response did not acknowledge the past issues I referenced that provide important context about diversity and the race-related concerns within Extension.  Dr. Folck's involvement is more than "allegations".  The Reports and Request for Investigation that I submitted to you and other University leadership have gone unanswered.  Those documents describe objective, factual matters that illustrate the concern, harm, and impact.

Frankly, I believe moving forward without addressing these matters directly could lead to ethical issues, harm public trust, and legal liability. The concerns raised warrant proper investigation and action.

Please let me know if there is anything I can do to assist.  Thank you.

Regards,

Ambrose Moses III

**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Morakinyo Kuti <mkuti@centralstate.edu>
**Sent:** Thursday, October 5, 2023 10:01 PM
**To:** Ambrose Moses III <amoses@centralstate.edu>
**Cc:** Amber Twitty <atwitty@centralstate.edu>; Pamela Bowman <pbowman@centralstate.edu>; John Mackie <jmackie@centralstate.edu>
**Subject:** RE: Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates

Mr. Moses,

Thanks for your input, I took great care in ensuring that the committee includes a diverse group of individuals whom I trust their judgement, ethics, and professionalism. You should have faith in your colleagues serving on the committee.

Based on your described criteria, all Extension employees would be excluded from the search committee or no internal candidates could apply for the position. That would be inherently unfair.

Complaint Exhibit 7 - 122

Your allegations against with Dr. Folck cannot be the determining factor for hiring the Associate Extension Administrator.

Dr. Folck had no role in the selection of the committee and ranking and review of applicants.

The Search Committee will identify the most qualified applicants and the selected individuals will visit campus to make presentations so all Extension staff and University Leadership can evaluate the candidates.

Thank you.

**Morakinyo A.O. Kuti, Ph.D.,**
**Vice President for Research and Economic Development and Director of the 1890 Land Grant Programs**

1400 Brush Row Road | Wilberforce, Ohio 45384
O: 937-376-6547 | F: 937-376-6598
mkuti@centralstate.edu | CentralState.edu
LinkedIn

---

**From:** Ambrose Moses III <amoses@centralstate.edu>
**Sent:** Thursday, October 5, 2023 7:27 AM
**To:** Morakinyo Kuti <mkuti@centralstate.edu>
**Cc:** Amber Twitty <atwitty@centralstate.edu>
**Subject:** Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates

Good morning, Dr. Kuti:

I have some questions and concerns about the hiring process being used for the Associate Administrator of Extension position.

Is it true that Dr. Alcinda Folck (who currently serves as the interim Associate Administrator of Extension) is one of the candidates for the Associate Administrator of Extension position? If so, is it also true that a number of the members of the interview committee for the Associate Administrator of Extension currently report directly to Dr. Folck or are otherwise under her in the Central State University Cooperative Extension Service, where she has served as interim Associate Administrator of Extension for numerous months?

If those things are true, that is very troubling, and the process should be halted until a proper review and investigation can be done before a bad situation becomes worse.

If those things are true, there are a number of potential legal and ethical issues. (This is not legal advice. You have access to the university general counsel and the office of the Ohio Attorney General for that.) I am writing as a concerned employee and taxpayer. Here are some areas of concern:

- Conflict of interest - The interview committee members who directly report to Dr. Folck or are under her as Interim Associate Administrator of Extension, Program Leader for Agriculture & Natural Resources, or Interim Program Leader for 4-H/Youth Development, within the Cooperative Extension Service have an inherent conflict of interest. As the current interim Associate Administrator of Extension, Dr. Folck has influence and authority over these subordinates, which could impact their ability to impartially evaluate her as a candidate.

- Bias - The power dynamic and existing relationship between Dr. Folck and the committee members who are under her risks unconscious or conscious bias in the interview and selection process. There is likelihood of favoritism. (Who was in the candidate pool? Who was excluded, rejected, or removed from the candidate pool? What reasons were given for excluding, rejecting, or removing persons from the candidate pool? What role did, or is, Dr. Folck play in the exclusion, rejection, or removal of persons from the candidate pool? Did Dr. Folck's execution of her duties as interim Associate Director of Extension give her an unfair advantage over other internal candidates?)

- Fairness - The scenario creates concerns about fundamental fairness and an equitable hiring process. One candidate (Dr. Folck) would have the advantage of a friendly, non-impartial committee. This might even taint the hiring process by excluding, rejecting, or removing certain persons from the candidate pool.

- Validity - The validity and legitimacy of the hiring decision could be questioned given the committee composition. It would undermine the credibility of the process.

- Ethics - Having a supervisor evaluated by their own subordinates poses risks of breaching ethical principles of accountability, conflicts of interest, abuse of power, and procedural fairness.

- Legal - At a public university, equal employment opportunity laws could be violated by an unfair process that advantages one internal candidate over others. (Were there or are there other internal candidates? Did Dr. Folck's actions as interim Associate Director of Extension give her an opportunity to review, evaluate, or make decisions that impact the exclusion, rejection, or removal of other internal candidates from the candidate pool?)

Complaint Exhibit 7 - 123

Case: 3:25-cv-00330-MJN-PBS Doc #: 1-10 Filed: 10/07/23 Page: 3 of 332 PAGEID #: 308

- Diversity - Skewed incentives and lack of objectivity could disadvantage external and minority candidates, impacting diversity.  In addition, as I am sure leadership knows, there are race-related concerns in Extension that involve Dr. Folck in both her role as Program Leader for Agriculture and Natural Resources and her role as interim Associate Administrator of Extension.  For context, please see my Report dated November 27, 2019, my Report dated November 23, 2022, and my Request for Investigation dated December 1, 2022.

In summary, if those things are true, there are multiple ethical and legal red flags. The process should be halted to allow for a proper review and investigation.  At a minimum, the committee should be re-structured to have peers evaluate Dr. Folck and care should be taken to allow all qualified candidates to interview.

In service,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

Complaint Exhibit 7 - 124



**EXHIBIT 8**

**Summary of
Appellant's Protected and Whistleblower Activity
and Appellee's Adverse Actions**

The following chart summarizes and illustrates some of Appellant's protected and whistleblower activity and the adverse actions, retaliation, and hostile work environment, created and maintained by the Appellee over a period of several years in response to some of Appellee's protected and whistleblower activity:

| Date | Description | Detail |
|---|---|---|
| | | |
| July 9, 2018 | Protected Activity R.C. §124.341 Report | Plaintiff submitted R.C. §124.341 Report re: Dr. Alton Johnson's (Dean and Director of Land-Grant) and Extension leadership's violation of state, federal, or local law, rule, or regulation, or a misuse of public resources. Specifically, the failure to comply with the Central State University Departmental Reorganization Process policy when changing County Agents to Extension Agents and Extension Educators. |
| August 16, 2018 | Hostile Work Environment Reprisal | Imposition of unlawful residency requirement on Plaintiff |
| August 16, 2018 | Hostile Work Environment  Discrimination – Race and National Origin | Imposition of unlawful residency requirement on Plaintiff. Dr. Johnson, who is of Liberian national origin was biased against Black men of American national origin. Dr. Johnson did not impose the same unlawful residency requirement upon Caucasian female employees who worked within the Cooperative Extension Service and resided outside of the county in which they worked. |
| August 24, 2018 | Protected Activity | Plaintiff filed Notice of Appeal with the State Personnel Board of Review. 18-REC-08-0144 (Reclass) 18-RED-08-0145 (Reduction) 18-INV-08-0146 (Investigation) 18-MIS-08-0147 (Miscellaneous) |
| April 4, 2019 to November 17, 2022 | Reprisal Hostile Work Environment | Plaintiff applied for 8 open positions for promotions within the Cooperative Extension Service. While being the third-longest serving staff member, being one of the most credentiled staff member with a Juris Doctor degree, having over 25 years of relevant professional experience, and undeniably knowledgeable in the area of Cooperative Extension, Plaintiff was not allowed to advance to any of the applied for positions. In 2021, his county-based position was converted to a Statewide Extension Educator and he was given additional duties and compensation. On February 8, 2024, Defendants unilaterally demoted Plaintiff from a Statewide to a Regional Extension Educator. Plaintiff has requested, but has not received any formal documentation |

Overview of Protected and Whistleblower Activity – Page **1** of **6**

| | | showing that the demotion was properly performed and approved. |
|---|---|---|
| November 7, 2019 | Reprisal<br>Hostile Work Environment | Plaintiff applied for all four (4) newly created Regional Extension Associate (REA) positions.  Dr. Johnson (Dean and Director of Land-Grant) declared that Plaintiff was not to be hired or promoted to any of the newly created REA positions.  The University did not promote Plaintiff and, instead, hired exclusively Caucasians for all four REA positions.  The University also did not hire Plaintiff for either of the newly created regional CED Extension Educator positions for which he applied. |
| November 27, 2019 | Protected Activity<br>R.C. §124.341 Report | Plaintiff submitted R.C. §124.341 Report to Central State University leadership and Board of Trustees.  Among other things, Plaintiff reported how the imposition of unlawful residency requirements on newly created Regional Extension Associate (REA) positions would have a disparate impact upon Black American applicants in Ohio.  To date, Plaintiff has received no formal response to his report.  To  Plaintiff' knowledge, there has been no investigation, determination, or corrective action taken. |
| February 27, 2020 | Reprisal<br>Hostile Work Environment | Plaintiff was awarded a fellowship to attend the 2nd National HBCU Blockchain Summit by the FinTech Center at Morgan State University because of interest in his efforts to develop an Urban Agriculture Blockchain Project at CSU Extension. The Director of Land-Grant and the Associate Administrator of Extension refused to support and allow Plaintiff to participate in the awarded fellowship. |
| November 4, 2021 | Protected Activity | Plaintiff submitted R.C. §124.341 Report and complaint to his direct supervisor of alterations and forged signatures done by or at the direction of Dr. Siddartha Dasgupta, the Associate Administrator of Extension. |
| December 2, 2021 | Reprisal<br>Hostile Work Environment | Dr. Michelle Corley (Dean and Director of Land-Grant) and Dr. Siddartha Dasgupta (Associate Administrator of Extension) denied Plaintiff the promotion and opportunity to serve as Interim CED Program Leader following the resignation of the incumbent.  The resigning CED Program Leader and members of the CED Team all supported Plaintiff serving as Interim CED Program Leader.  The position of CED Program Leader would remain vacant for more than a year.  (Exhibit G, Page 15) |
| May 2022 | Reprisal<br>Hostile Work Environment | In violation of Central State University Policy No. 618, Extension leadership and the Director of Human Resources subjected Plaintiff to a performance evaluation by someone other than his supervisor.  Specifically, the performance evaluation was performed by Dr. Siddartha Dasgupta.  Dr. Dasgupta was the subject of the forgery that Plaintiff reported on November 4, 2021. |
| November 16, 2022 | Reprisal | Dr. Alcinda Folck, in concert with the Director of Human |

Overview of Protected and Whistleblower Activity – Page **2** of **6**

| | Discrimination – Race<br>Hostile Work Environment | Resources and others in leadership, engaged in discrimination and unlawful employment practices to deny Plaintiff an opportunity to apply and compete for the vacant CED Program Leader position. |
|---|---|---|
| November 23, 2022 | Protected Activity<br>R.C. §124.341 Report | Plaintiff submitted R.C. §124.341 Report and complaint to University leadership (Board of Trustees, President, Director of Land-Grant, Administrator of Extension, (No CED Program Leader hired)) concerning Noncompliance with State and Federal Law: Wrongful and Unlawful Employment Practices, Denial of Substantive and Procedural Due Process, Denal of Equal Protection, 42 U.S.C. 1983 – Civil action for deprivation of rights, Disparate Impact Upon African Americans |
| December 1, 2022 | Protected Activity<br>Request for Investigation | Plaintiff submitted a Request for Investigation of Unlawful Discriminatory Practices & Retaliation and a Request for Suspension of Interviews on December 7, 2022, Pending Investigation. |
| December 1, 2022 | Email from University General Counsel | Ms. Laura Wilson, Central State University General Counsel, emailed Plaintiff stating that she had received his December 1, 2022 Request for Investigation, and his prior correspondence and that she is reviewing the provided documents.  Ms. Wilson wrote that she would be in touch once she had finished her review of the documents.  To date, Ms. Wilson has not contacted Plaintiff concerning these matters. |
| December 9, 2022 | Quick Meeting – No Follow-up<br>Hostile Work Environment | Defendant Kuti, Interim Dean and Director of Land-Grant met with Plaintiff briefly via Microsoft Teams. Defendant Kuti stated that he was going to review the document and information that Plaintiff had shared with him and that they would look at next steps after the holiday break. |
| February 17, 2023 | Protected Activity<br>R.C. §124.341 Report<br>to Supervisor | Plaintiff submitted to CED Program Leader (as supervisor) a copy of Plaintiff's Request for Investigation of Unlawful Discriminatory Practices & Retaliation and a Request for Suspension of Interviews on December 7, 2022, Pending Investigation. |
| October 4, 2023 | Hostile Work Environment | Plaintiff has made multiple inquiries to Defendant Kuti about meeting, but, to date, Defendant Kuti has not followed up with Plaintiff concerning the subject of the December 9, 2022 meeting. |
| October 5, 2023 | Protected Activity<br>R.C. §124.341 Report | Plaintiff submitted a report about Ethical and Legal Questions Concerning Interview Committee for Associate Administrator of Extension Candidates including the inherent conflicts of interests of Dr. Folck being interviewed by a committee consisting primarily of her subordinates within Extension. |
| October 5, 2023 | Reprisal<br>Hostile Work Environment | Defendant Kuti responded to Plaintiff' report and questions in a dismissive manner without addressing the inherent conflicts of interest. |
| July 9, 2018 to July 15, 2024 | Hostile Work Environment | The ongoing, unabated reprisal, discrimination, and failure to investigate and address the reported unlawful activity has created and maintains a hostile work |

Overview of Protected and Whistleblower Activity – Page **3** of **6**

| | | |
|---|---|---|
| | | environment. |
| October 10, 2023 | Protected Activity | Plaintiff filed Program Discrimination Complaint with USDA/NIFA. |
| October 31, 2024 | | Issuance of Investigation Report to University |
| November 17-20, 2023 | Hostile Work Environment | Defendant Kuti refused to reschedule a meeting involving Defendant Kuti (Director of Land-Grant), Plaintiff and Amber Twitty (CED Extension Educators), Defendant Rendleman (CED Program Leader), and Alcinda Folck (Interim Associate Administrator of Extension).  Plaintiff and Twitty, among other matters, were raising concerns about Extension leadership's failure and refusal to properly and adequately serve the Black community in Ohio.  Plaintiff and Twitty aksed to reschedule the meeting to a date after the USDA Title VI investigation that Plaintiff was requesting. |
| November 28, 2023 | Protected Activity R.C. §124.341 Report, & USDA Program Discrimination Complaint | Plaintiff submitted to the University President, Chair of the Board of Trustees, and Director of Land-Grant, a R.C. §124.341 report and written request for an independent, external investigation into all documented unlawful practices and dereliction of mandated public-facing duties - with a postponement of Defendant Kuti's 11/29/2023 meeting until unbiased completion of this matter to halt further conflict of interest, retaliation, and hostile work environment.  The submission included a copy of the USDA Program Discrimination Complaint and other relevant documents. |
| December 1, 2023 | Email from University General Counsel | University General Counsel sent an email stating that she received the report and is reviewing the file. |
| December 8, 2023 | Email from University General Counsel | University General Counsel informed Plaintiff that she is requesting an outside investigator on this matter. |
| January 9, 2024 | CSU Premeditated and Coordinated Plan of Unlawful Retaliation and Hostile Work Environment | Mark Rendleman to Alcinda Folck, "It is definitely time to circle the wagons." |
| January 22, 2024 | CSU's Premeditated and Coordinated Plan of Unlawful Targeting, Retaliation, and Hostile Work Environment | Mark Rendleman to Alcinda Folck, " . . . Now back to my wish list: . . . Let's coordinate on our reprimand strategies for Ambrose and Amber.  I will also be coordinating a meeting with HR, Dr. Knight.  It would be nice if you could participate in these discussions." |
| February 6, 2024 | Reprisal Hostile Work Environment | CED Program Leader Defendant Rendleman refuses to respond with his approval or disapproval before the deadline (or extended deadline) for Plaintiff, Twitty, and Smith to submit presentation abstracts to the NACDEP Annual Conference being hosted by Prairie View A&M University in June 2024.  Subsequently, Rendleman responds and orders that the abstracts be retracted because they lacked his prior approval.  Defendant Rendleman, still, never approved or disapproved the abstracts.   Defendant Rendleman's conduct is the epitome of arbitrary and capricious. |
| February 8, 2024 | Reprisal | Rendleman and Folck used their own false accusations |

Overview of Protected and Whistleblower Activity — Page **4** of **6**

|  | Hostile Work Environment | as a basis to reprimand Plaintiff (who just months ago had a very strong performance appraisal) for alleged unprofessional conduct, substandard job performance, and insubordination.<br><br>The alleged acts of insubordination included Plaintiff presenting a proposal to the marketing conference committee for Plaintiff and Twitty to use their experience as CED Extension Educators who have strong hybrid (online & in-person) presentation skills, to add an online component to the marketing conference to provide access to stakeholders in other parts of the state.<br><br>The alleged insubordination was compounded by Plaintiff recruiting assistance from another Extension Educator (i.e. Twitty) to assist him if the proposal was accepted.  (One person is in the room managing the equipment while the other person is online managing the online attendees.  They have it worked out to a science and are constantly improving on it.)<br><br>Finally, Plaintiff was allegedly insubordinate because he messaged two of his CED Team colleagues (and cc'd Program Leader Rendleman) who had missed the Marketing Conference Committee meeting and updated them on what was being requested during the meeting. |
| February 8, 2024 | Reprisal<br>Hostile Work Environment | Rendleman and Folck demoted Plaintiff from being the only Statewide Extension Educator to the position of CED Extension Educator (Southwest Region). |
| February 20, 2024 | Investigation<br>Due Process Denial<br>Hostile Work Environment | Defendant Central State University retains attorney to conduct an investigation related to Plaintiff's emailed complaint titled Urgent Report of Unresolved Retaliation and Hostile Environment, sent on November 28, 2023.  Attorney-client relationship is not transparent and cloaks Defendants' wrongful conduct in secrecy. |
| June 7, 2024 | Protected Activity<br>R.C. §124.341 Report, &<br>41 U.S.C. § 4712 Disclosure | Filed Complaint in Federal Court |
|  |  |  |
| June 26, 2024 | Adverse Action & Retaliation | 5-Day Suspension |
| April 22, 2024 – January 31, 2025 | Adverse Action & Retaliation | Refusal to render decision on requests for approval to conduct CED activity. |
|  | Adverse Action & Retaliation | Delay in decision re: NACDEP Presentation |
| January 19, 2024 – June 26, 2024 | Adverse Action & Retaliation | Disparate treatment in denial of NACDEP Presentation |
| July 16, 2024 | Protected Activity<br>R.C. §124.341 Report, &<br>41 U.S.C. § 4712 Disclosure | Filed Amended Complaint in Federal Court |
| February 2, 2024 – | Adverse Action & Retaliation | Growing Equity Project – CSU/Rendleman delayed |

Overview of Protected and Whistleblower Activity – Page **5** of **6**

| | | |
|---|---|---|
| July 25, 2024 | | decision regarding approval of plan |
| September 11, 2024 – January 31, 2025 | Adverse Action & Retaliation | Growing Equity Project – CSU/Rendleman failed to issue a decision regarding approval or disapproval of Moses' request to modify program from in-person only to hybrid delivery format |
| | Adverse Action & Retaliation | Failure to issue decision re approval to contact stakeholders and community |
| October 4, 2024 – January 31, 2025 | Adverse Action & Retaliation | Performance Improvement Plan – CSU/Rendleman/Knight refused to meet or respond to questions concerning "CED Advance Approval Process" and more. |
| October 14, 2024 | Protected Activity R.C. §124.341 Report, & 41 U.S.C. § 4712 Disclosure | Moses submitted to Human Resources and University General Counsel a Formal Complaint for Dishonesty, Falsification of Public Records, Retaliation, Harassment, and Hostile Work Environment in Violation of University Policies and Procedures by Rendleman |
| October 14, 2024 – January 31, 2025 | Adverse Action & Retaliation | CSU/Pamela Bowman failed to process the complaint pursuant to CSU Policy Process 607.1. |
| December 20, 2024 | Adverse Action & Retaliation | After unreasonable delay, Investigation report made available to Appellant. |
| January 6, 2025 | Protected Activity R.C. §124.341 Report, 41 U.S.C. § 4712 Disclosure, & Ethics Request to University General Counsel | Whistleblower and Ethical Dilemma Reports: Submitted to Supervisor, Mark Rendleman, Dr. Jose Toledo (January 6, 2025) and University General Counsel (October 14, 2024 & January 6, 2025), detailing wrongful conduct and retaliation. |
| January 10, 2025 | Protected Activity R.C. §124.341 Report, 41 U.S.C. § 4712 Disclosure | January 10, 2025 report about misuse of public resources and violation of state/federal law through blocking required services to stakeholders |
| January 16, 2025 | Adverse Action | Notice of Pre-Disciplinary Hearing |
| January 17, 2025 | Adverse Action | Pre-Disciplinary Hearing – falsely alleged violation of "CED Advance Approval Process" |
| January 31, 2025 | Adverse Action | Termination of Employment |

Overview of Protected and Whistleblower Activity – Page **6** of **6**

**EXHIBIT 9**

Fw: Happy New Year!

Mark Rendleman <mrendleman@centralstate.edu>
Tue 1/9/2024 6:21 AM
Cc:Alcinda Folck <afolck@centralstate.edu>

📎 1 attachments (240 KB)
Extension Program Plans of Work FY 2024.pdf;

Good morning,
Cindy, as I told you previously, I'm headed to Findley, Ohio today for second interviews with two prospects.

I wanted to forward to you this email from Ambrose. He sent it to my entire group upon returning after the holidays. I have not responded to it yet. Instead, focusing on catching up with carried over responsibilities accumulated during my holiday vacation. I intend to prepare a response by the end of this week.

I will also be forwarding a second chain of emails from Amber. They both are locked in a disruption mode to start out this new year. It is definitely time to circle the wagons. Her response will also be completed by the end of this week.

Otherwise, all is well.

**Mark Rendleman, MBA**
*State Program Leader, Community and Economic Development*
**Central State University Extension - E.J. Emery Hall, A201**
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
mrendleman@CentralState.edu | CentralState.edu



CENTRAL STATE UNIVERSITY | Extension

An 1890 LAND-GRANT INSTITUTION

---

**From:** Mark Rendleman
**Sent:** Wednesday, January 3, 2024 3:56 PM
**To:** Alcinda Folck <afolck@centralstate.edu>
**Subject:** FW: Happy New Year!

FYI

**Mark Rendleman, MBA**
*State Program Leader, Community and Economic Development*
Central State University Extension - E.J. Emery Hall, A201
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
mrendleman@CentralState.edu | CentralState.edu



**CENTRAL STATE UNIVERSITY** | **Extension**

An 1890 LAND-GRANT INSTITUTION

From: Ambrose Moses III <amoses@centralstate.edu>
Sent: Wednesday, January 3, 2024 9:43 AM
To: Mark Rendleman <mrendleman@centralstate.edu>; Camille Johnson <cjohnson@centralstate.edu>; Kunta Jackson <kjackson6@centralstate.edu>; Stephen Washington <swashington@centralstate.edu>; Eric Smith <esmith2@centralstate.edu>; Autumn Swanson <aswanson@centralstate.edu>; Amber Twitty <atwitty@centralstate.edu>
Subject: Re: Happy New Year!

Good morning, Mark,

Since this will be our first CED Team meeting of the new year, could you start us off by explaining the plan for 2024? Maybe you could walk us through the CED portion of the attached Extension Programs Plan of Work for FY 2024 that Dr. Folck posted to Teams.

It will be helpful for the CED Team to know and to discuss --

- the identified needs that CED will be addressing in 2024,
- what specific CED programs will be implemented and conducted in 2024,
- what impact we expect to have with the CED programs,
- how we will measure the impact of the CED programs in 2024, and
- how all of this executesand accomplishes the Extension Programs Plan of Work for FY 2024.

Please let me know if there is anything I can do to help.

I will be resuming our Ready, Set, Grow!: Agribusiness series in Zanesville on Tuesday: https://www.whiznews.com/read-set-grow-business-series-in-zanesville/. This is a continued collaboration between the CED and ANR program areas in serving food-based businesses.

Thank you.

Regards,

Ambrose


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

**From:** Mark Rendleman <mrendleman@centralstate.edu>
**Sent:** Tuesday, January 2, 2024 9:42 AM
**To:** Camille Johnson <cjohnson@centralstate.edu>; Kunta Jackson <kjackson6@centralstate.edu>; Stephen Washington <swashington@centralstate.edu>; Eric Smith <esmith2@centralstate.edu>; Autumn Swanson <aswanson@centralstate.edu>; Amber Twitty <atwitty@centralstate.edu>; Ambrose Moses III <amoses@centralstate.edu>
**Subject:** Happy New Year!

Welcome back!
I'm hopeful that everyone enjoyed their time with family and friends this
End of year holiday season. Well, the new year is upon us, so I hope that you're as excited as I am about the possibilities of 2024.

Our Team Meetings will continue Tuesdays @ 10:00 am. But since today is the first day back, I believe it's best to delay our first 2024 session until next week. Use this week to get on top of any carryover from 2023 and start groundwork for things to come in 2024. I will do my best to reach out to everyone at some point this week.

Get Outlook for iOS

Fw: IEDC Entrepreneurship Development Professional Certfication Overview

Mark Rendleman <mrendleman@centralstate.edu>

Tue 1/9/2024 6:32 AM

To:Alcinda Folck <afolck@centralstate.edu>

Cindy,

This chain of emails was initiated by Amber Twitty. This is her contribution to CED disruption. She is referencing training that was never going to be approved. It was a part of her wish list that predates our travel limitations. But what is important here is that Stephen has presented some push back to her blanketing the team with her personal grievances. He has requested to be removed from future personal stuff. It is my belief that future inclusion would be a form of harassment. He forwarded his conversation with Amber confidentially. I advised him separately to send a complaint to me regarding his displeasure and that I would forward it to you.

Confidentially, Kunta has also expressed a desire to be excluded from this disruption. I am not sure if he has mentioned his preference to Ambrose and Amber. But that intention is definitely on his mind.

As I indicated on a separate email, I will be preparing responses to both Ambrose and Amber by the end of this week.

**Mark Rendleman, MBA**
***State Program Leader, Community and Economic Development***
Central State University Extension - E.J. Emery Hall, A201
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
mrendleman@CentralState.edu | CentralState.edu



**From:** Stephen Washington <swashington@centralstate.edu>
**Sent:** Monday, January 8, 2024 1:49 PM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** Fwd: IEDC Entrepreneurship Development Professional Certfication Overview

Get Outlook for iOS

**From:** Amber Twitty <atwitty@centralstate.edu>
**Sent:** Monday, January 8, 2024 1:13:19 PM
**To:** Stephen Washington <swashington@centralstate.edu>
**Subject:** Re: IEDC Entrepreneurship Development Professional Certfication Overview

Steve,

Please note this was originally a team request to Mark with Eric, Ambrose, and me (the CED team at the time as stated in the email). I was simply including all of the new team members to see if you all were interested in the training that was requested and to share the other IEDC nationally recognized CED professional development offerings as well. Especially, since there seem to be numerous conversations around training with only some of the team members. I like to keep whatever I share that applies to the group transparent. Your request is duly noted though.

Amber

**Amber J. Twitty**
*Extension Educator – Community and Economic Development – Southern Ohio Region*
**Central State University**
**Cooperative Extension Service**
E.J. Emery Hall
1400 Brush Row Road | Wilberforce, Ohio 45384
atwitty@centralstate.edu | CentralState.edu/csuextension

**From:** Stephen Washington <swashington@centralstate.edu>
**Sent:** Monday, January 8, 2024 1:05 PM
**To:** Amber Twitty <atwitty@centralstate.edu>
**Subject:** Re: IEDC Entrepreneurship Development Professional Certfication Overview

Hi Amber,

With all due respect in the future, when communicating with Mark, directly regarding specific issues or requests you are following up on with him, I don't need to be copied. Hopefully, any requests you personally are making will be shared with the group when a decision is made.

Thank you for understanding,

Steve

Get Outlook for iOS

**From:** Amber Twitty <atwitty@centralstate.edu>
**Sent:** Monday, January 8, 2024 12:50:59 PM
**To:** Mark Rendleman <mrendleman@centralstate.edu>; Kunta Jackson <kjackson6@centralstate.edu>; Camille Johnson <cjohnson@centralstate.edu>; Stephen Washington <swashington@centralstate.edu>; Eric Smith <esmith2@centralstate.edu>; Ambrose Moses III <amoses@centralstate.edu>
**Subject:** Re: IEDC Entrepreneurship Development Professional Certfication Overview

Mark,

I am following up to see if my request for IEDC Entrepreneurship Development Professional Certification has been approved or not. IEDC is one of the key professional development entities for community and economic development worldwide. They are highly used by various units of government. Eric, Ambrose, and I expressed interest in taking this course last year, but never received a reply. It would be nice if the entire CED team could take this course (if they are interested). The requested training and other IEDC training offerings are directly aligned with our financial literacy and all of our CED work. Please advise.

Entrepreneurship Development Professional- International Economic Development Council (iedconline.org)

www.iedconline.org

Thanks,

Amber
**Amber J. Twitty**
*Extension Educator - Community and Economic Development - Southern Ohio Region*
**Central State University**
**Cooperative Extension Service**
E.J. Emery Hall
1400 Brush Row Road | Wilberforce, Ohio 45384
atwitty@centralstate.edu | CentralState.edu/csuextension

---

**From:** Amber Twitty
**Sent:** Thursday, February 9, 2023 7:25 PM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** IEDC Entrepreneurship Development Professional Certfication Overview

Entrepreneurship Development Professional- International Economic Development Council (iedconline.org)

**Amber J. Twitty**
*Extension Educator - Community and Economic Development - Southern Ohio Region*
**Central State University**
**Cooperative Extension Service**
E.J. Emery Hall
1400 Brush Row Road | Wilberforce, Ohio 45384
atwitty@centralstate.edu | CentralState.edu/csuextension

## My wish list for today's discussion

**Mark Rendleman <mrendleman@centralstate.edu>**

Mon 1/22/2024 10:36 AM

To:Alcinda Folck <afolck@centralstate.edu>

Good morning!

I hope you had a great weekend. Mine was interesting.

I have learned that my Kidney stone remains a going concern. My Doctor consultant has advised that it would be in our best interest to remove it. That procedure would be conducted on Friday, February 9th. That date would allow for two days of healing before possibly requesting a sick day on the following Monday.

Now back to my wish list:

- Identification of stakeholders and outreach efforts to secure additional Fast Track Farming and New Farmer Education series associated with the Growing Equity Grant from the American Farmland Trust.
- Let's coordinate on our reprimand strategies for Ambrose and Amber. I will also be coordinating a meeting with HR, Dr. Knight. It would be nice if you could participate in these discussions.
- I will be requesting my CED Educators to include a daily hour of "Focus" on their weekly Work Schedules. This hour will cover their time to review emails. Administrative time will focus on scheduling outreach efforts and preparation for upcoming and or on-going events.
- I desire to coordinate with you and Michelle to formally change my office location to include two days remote. That is not to say that I won't continue to report to the office, but at least I will have it as a backup.
- My travel schedule will start to take shape this week. I will be preparing RFTs as appropriate.
- Michelle introduced an additional candidate for CED's NW Regional Educator Position. I will consult with my hiring committee for review of that additional application.
- Otherwise, Dr. Kuti has indicated that your discretion in conjunction with mine will be sufficient to move forward with the hiring process for CED's NW Region Educator position (if this third candidate does not pan out).
- I will be formally scheduling one hour a week with each of my CED staff. This will be an opportunity to ensure that we are in sync on Regional activities.
- I'm still looking for a Wall Calendar for 2024.
- Any other topics we need to discuss.

Please advise on your availability for today.

Thanks.

**Mark Rendleman, MBA**
*State Program Leader, Community and Economic Development*
Central State University Extension - E.J. Emery Hall, A201
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
**mrendleman@CentralState.edu | CentralState.edu**



An 1890 LAND-GRANT INSTITUTION

RE: URGENT: Upcoming Events

**Mark Rendleman** <mrendleman@centralstate.edu>

Thu 1/25/2024 11:52 AM

To:Alcinda Folck <afolck@centralstate.edu>

📎 6 attachments (2 MB)

Re: ASAP; Ambrose Moses Two Weeks Activity Summary.pdf; Eric Smith Two Weeks Activity Summary.pdf; Re: ASAP; Re: ASAP; Camille Johnson Glenn Two Weeks Activity Summary.msg;

Two Week Work Schedules are included above.

If there are any questions, please contact me.

Thanks

**Mark Rendleman, MBA**
*State Program Leader, Community and Economic Development*
**Central State University Extension - E.J. Emery Hall, A201**
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
**mrendleman@CentralState.edu** | CentralState.edu



An 1890 LAND-GRANT INSTITUTION

From: Alcinda Folck <afolck@centralstate.edu>
Sent: Wednesday, January 24, 2024 10:02 AM
To: Mark Rendleman <mrendleman@centralstate.edu>; Janet Corney <jcorney@centralstate.edu>; Renita Porter <rporter@centralstate.edu>
Subject: URGENT: Upcoming Events
Importance: High

Hi Everyone,

I need the Extension programs your staff will be doing the next two weeks (Jan. 29- Feb. 9). I need:

Title of Program
Date
Time
Location
Educators Involved

I need the information by the end of the day. This is for a weekly update that Dr. Kuti is doing.

Thanks!
Cindy

**Cindy Folck, PhD (Alcinda)**

*Interim Associate Extension Administrator*
*State Program Leader, Agriculture & Natural Resources*

**Central State University Extension**

**1890 Land Grant Programs**

**A002 Emery Hall | 1400 Brush Row Road | Wilberforce, Ohio 45384**

O: 937-376-6101

**afolck@centralstate.edu** | **centralstate.edu**



Extension

An 1890 LAND-GRANT INSTITUTION

From: Ambrose Moses III <amoses@centralstate.edu>
Sent: Tuesday, February 27, 2024 8:00 AM
To: Mark Rendleman <mrendleman@centralstate.edu>
Subject: Re: EDEN

Good morning Mr. Rendleman:  4 of 7

In preparation for our meeting at 9:30 am below are some of the questions that I have.  Thank you.

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

---

**From:** Ambrose Moses III
**Sent:** Wednesday, February 14, 2024 10:07 AM
**To:** Mark Rendleman <mrendleman@centralstate.edu>
**Subject:** EDEN

Mr. Rendleman:

As you know, EDEN and the 1890 EDEN Advisory Group were removed from my job description.  Would you please provide me with an explanation as to why that was done?  Thank you.

Regards,

Ambrose Moses III


**Ambrose Moses III, Esq.**
*Extension Educator*
*Community & Economic Development*
**Central State University Extension**
E.J. Emery Hall | 1400 Brush Row Road | Wilberforce, OH 45384

**amoses@CentralState.edu**| www.CentralState.edu/csuextension

Complaint Exhibit 9 - 13

Fw: EDEN

Mark Rendleman <mrendleman@centralstate.edu>
Mon 3/18/2024 8:50 AM
To:Alcinda Folck <afolck@centralstate.edu>

Here is the response drafted with the assistance of Mrs. Bowman, HR. I will be sending it out today.

Recently, you received an updated job description. The job description outlines the essential job duties of your position. If there was reference to an Eden Advisory Group in the past, your current job description has a different focus as we have previously discussed.

Mark Rendleman, MBA
*State Program Leader, Community and Economic Development*
Central State University Extension - E.J. Emery Hall, A201
1400 Brush Row Road | Wilberforce, Ohio 45384
937.376.6088
mrendleman@CentralState.edu | CentralState.edu



An 1890 LAND-GRANT INSTITUTION

---

**From:** Mark Rendleman
**Sent:** Friday, March 15, 2024 12:34 PM
**To:** Pamela Bowman <pbowman@centralstate.edu>
**Subject:** FW: EDEN

Here is a draft of my response to Ambrose Moses.

Good morning,

I don't recall the inclusion of the Eden Advisory Group on your official job description. I'm not aware why there would be reference to a specific organization affiliation on a job description. A job description is intended to describe general job performance expectations.

I am not familiar with the Eden Advisory Group. I don't have a clue about the scope of its operations. I have never seen any reference in to this organization in your work efforts.

Mark Rendleman, MBA
*State Program Leader, Community and Economic Development*
Central State University Extension - E.J. Emery Hall, A201
1400 Brush Row Road | Wilberforce, Ohio 45384
937.376.6088
mrendleman@CentralState.edu | CentralState.edu

RE: Programming in Columbus

Mark Rendleman <mrendleman@centralstate.edu>
Thu 2/29/2024 5:19 PM
To:Alcinda Folck <afolck@centralstate.edu>
Thanks for sharing!

What is important to me is the fact that all activities require advance approval.  Nothing is grandfathered.  I will review the stack of Ambrose emails to verify  that there has been a request for advance approval.

**Mark Rendleman, MBA**
***State Program Leader, Community and Economic Development***
Central State University Extension - E.J. Emery Hall,  A201
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
**mrendleman@CentralState.edu | CentralState.edu**



An 1890 LAND-GRANT INSTITUTION

From: Alcinda Folck <afolck@centralstate.edu>
Sent: Thursday, February 29, 2024 12:26 PM
To: Mark Rendleman <mrendleman@centralstate.edu>
Subject: Fw: Programming in Columbus

FYI. This is a project the Marc Amante and Ambrose have been working on since 2022.


**Cindy Folck, PhD (Alcinda)**

*Interim Associate Extension Administrator*
*State Program Leader, Agriculture & Natural Resources*

**Central State University Extension**

**1890 Land Grant Programs**

**A002 Emery Hall |1400 Brush Row Road | Wilberforce, Ohio 45384**

O: 937-376-6101

**afolck@centralstate.edu** | **centralstate.edu**

___

**From:** Marc Amante <mamante@centralstate.edu>
**Sent:** Thursday, February 29, 2024 12:05 PM
**To:** Alcinda Folck <afolck@centralstate.edu>
**Cc:** Ambrose Moses III <amoses@centralstate.edu>
**Subject:** Programming in Columbus

Hey Cindy,

Per our conversation, here is some info on what I am working on in Columbus based on some changes that have gone on with some of our partners there. I have cc'd Ambrose on this email in case he wants to add anything he is doing or to provide his own context and understanding.

Last year, we had done a 10-11 week intensive training that was modeled after the Incubator farm curriculum's ANR and CED components. We did this with the Urban Farmers Coalition (UFC), which was partnered with the National Center for Urban Solutions (NCUS). The primary partners involved were Chad Anderson with NCUS (who I had worked with previously when he was ED at FACCES), Julialynne Walker with Bronzeville Growers Market, and Asad Shabazz of Fresh Life Farm Market. At the time, UFC was organized by Chad as I think a for-profit LLC, but they have since reorganized to a 501c(3) nonprofit entity.

There were a number of organizational and interpersonal issues that arose over the course of the collaboration and transition to 501c(3), not all of which I am privy to the details of, but they are largely irrelevant to our involvement. Essentially, the new board of UFC (including Julialynne and Asad) have decided to sever ties with Chad and NCUS because of these issues.

We had planned on re-starting the intensive course coming up in March, and since they are still offering that via NCUS's programming, I believe Ambrose and I are still on track to continue with that programming, under different branding than previously due to the change in coordinators and with a new co-educator since Julialynne will no longer be involved.

Whether UFC will continue with its own set of programming I think is still being worked on, but I have offered my assistance/collaboration as needed. From my conversation with Ambrose after a meeting earlier this week, I gather that he told Julialynne and Asad, and I corroborated, this does not impact our commitment to provide education and assistance to any interested members of our target audience(s). So that while we will continue with the NCUS training, we are equally committed to working with them on any programming needs that they have.

That about sums it up

Marc A

## Discussion Topics from my Email

**Mark Rendleman <mrendleman@centralstate.edu>**
Fri 3/1/2024 12:56 PM
To:Alcinda Folck <afolck@centralstate.edu>

I felt it would be best to forward these summaries in advance for your review.

Let me know when we can talk.

This list is not all inclusive.

- Ambrose requested that I reach out to a Minister Aaron Hopkins to discuss collaborating on an Urban Agriculture Innovation Grant.
  - I excluded Ambrose from the conversation.
  - I've requested literature on the grant to review in advance of a conversation.
  - I explained that I would need to consult with CSU Extension Leadership before scheduling conversations.

- Open House:
  - I met with Debora Alberico. She provided a list of legislature representatives for the area.
  - She also indicated that we should invite the Governor.
  - She referred us to reach out to Chris Widner for dignitaries also.
  - I directed Eric to reach out to Crystal/Dr. Ibe to identify who might have a list of attendees from last year's Open House. I was advised that a preliminary correspondence was sent out to last year's attendees.
  - I directed him to reach out to other members on the committee to determine if email was sufficient, or if a meeting for the committee would be preferred.
  - I requested that he request Research to start listing their stakeholders on the public list.
  - I told him to use Autumn to assist if necessary.
  - I indicated that I would coordinate with you to discuss inside the tent.

- FY2024 StratégEconomic and Community Development (SECD) Funding Opportunity:
  - I registered for the Webinar.
  - Is this a grant that we have had previously?

- The Rural Energy for America Program (REAP) Offers 506 Funding for Energy Replacement and Efficiency Projects.
  - Thanks for the inclusion.
  - Grant request is due by 3/15/2024.

- I need to reach out to Bridget Rucci.
  - UGA Extension/Office of Learning and Organizational Development.
  - To discuss Lead21.

- Declined Ambrose's Nov 2023 Reimbursement Request.

- Declined Ambrose's Dec 2023 Reimbursement Request.

- Approved Ambrose's Jan 2024 Reimbursement Request.

- The Urban Agriculture and Innovation Production Grant.
  - I will be discussing this grant opportunity with Stephen.

- The Impact Report 2023 (North Central Region). Discuss with Cindy. The report references Amber for the year 2022???

- Approved Amber's January 2024 Reimbursement Report.

- Must get Lisa signed up for:
  - USDA emails
  - JCEP
  - NACDEP

- Contact Stephen on the Economic Impact Report from Pettis/CSU.

Thanks.

**Mark Rendleman, MBA**
***State Program Leader, Community and Economic Development***
Central State University Extension - E.J. Emery Hall, A201
**1400 Brush Row Road | Wilberforce, Ohio 45384**
**937.376.6088**
mrendleman@CentralState.edu | CentralState.edu

